# No. 17-20545

## In the United States Court of Appeals
## For the Fifth Circuit

ENVIRONMENT TEXAS CITIZEN LOBBY,
INCORPORATED; SIERRA CLUB,
*Plaintiffs – Appellees*,

v.

EXXONMOBIL CORPORATION; EXXONMOBIL CHEMICAL COMPANY;
EXXONMOBIL REFINING & SUPPLY COMPANY,
*Defendants – Appellants.*

Appeal from the United States District Court for the
Southern District of Texas, Houston Division; No. 4:10-CV-4969

## APPELLANTS' RECORD EXCERPTS

WINSTEAD PC
  Albert R. Axe
  Keith A. Courtney
401 Congress Ave., Suite 2100
Austin, TX 78701
(512) 270-2800
(512) 370-2850 (Fax)

BECK REDDEN LLP
  Russell S. Post
  Eric J.R. Nichols
  Fields Alexander
  Robert D. Daniel
  Bryon A. Rice
1221 McKinney, Suite 4500
Houston, TX  77010
(713) 951-3700
(713) 951-3720 (Fax)

## COUNSEL FOR APPELLANTS,
## EXXONMOBIL CORPORATION, EXXONMOBIL CHEMICAL COMPANY
## AND EXXONMOBIL REFINING & SUPPLY COMPANY

# TABLE OF CONTENTS

**Tab**

1        Docket Sheet (ROA.1)

2        Notice of Appeal (ROA.15560)

3        Final Judgment (ROA.15568)

4        Revised Findings of Fact and Conclusions of Law (ROA.13201)

5        Order denying Exxon Defendants' Motion to Alter or Amend the Judgment and Findings (ROA.15551)

6        The ExxonMobil Defendants' Motion to Bifurcate Trial (ROA.6376)

7        Excerpts from Plaintiffs' Trial Exhibits Counting Actionable Violations (ROA.67910, 67929-30, 67937-40, 67942, 69271, 69279-80)

8        Excerpts from Closing Arguments (ROA.18929, 18931, 19011-12, 19045-47)

9        DX222, TCEQ Agreed Order dated February 22, 2012 (ROA.44835)

Respectfully submitted,

BECK REDDEN LLP

By:  *Russell S. Post*
     Russell S. Post
     Eric J.R. Nichols
     Fields Alexander
     Robert D. Daniel
     Bryon A. Rice
1221 McKinney, Suite 4500
Houston, TX  77010
(713) 951-3700
(713) 951-3720 (Fax)

WINSTEAD PC
Albert R. Axe
Keith A. Courtney
401 Congress Ave., Suite 2100
Austin, TX 78701
(512) 270-2800
(512) 370-2850 (Fax)

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2018, a true and correct copy of the above and foregoing Appellants' Record Excerpts was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered, otherwise by email, as follows:

Philip H. Hilder
philip@hilderlaw.com
HILDER & ASSOCIATES, P.C.
819 Lovett Boulevard
Houston, TX 77006

Charles C. Caldart
cccnelc@aol.com
NATIONAL ENVIRONMENTAL
   LAW CENTER
1402 Third Avenue, Suite 715
Seattle, WA 98101

Joshua R. Kratka
josh.kratka@nelconline.org
NATIONAL ENVIRONMENTAL
   LAW CENTER
294 Washington Street, Suite 500
Boston, MA 02108

David A. Nicholas
dnicholas@verizon.net
20 Whitney Road
Newton, MA 02460

*Attorneys for Plaintiffs-Appellees,*
*Environment Texas Citizen Lobby, Incorporated and Sierra Club*

/s/ *Russell S. Post*
Russell S. Post

# TAB 1

Docket Sheet
(ROA.1)

APPEAL,CLOSED

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Houston)
# CIVIL DOCKET FOR CASE #: 4:10-cv-04969
# Internal Use Only

| | |
|---|---|
| Environment Texas Citizen Lobby, Inc. et al v. ExxonMobil Corporation et al | Date Filed: 12/13/2010 |
| Assigned to: Judge David Hittner | Date Terminated: 04/26/2017 |
| Cause: 42:7604 Clear Air Act (Emission Standards) | Jury Demand: None |
| | Nature of Suit: 893 Environmental Matters |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Environment Texas Citizen Lobby, Inc.**    represented by    **Heather A. Govern**
National Environmental Law Center
294 Washington St
Ste 500
Boston, MA 02108
617-747-4301
Email: govern.nelc@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Harlan Hilder**
Hilder & Associates, P.C.
819 Lovett Blvd
Houston, TX 77006-3905
713-655-9111
Fax: 713-655-9112
Email: philip@hilderlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bracha Y Etengoff**
National Environmental Law Center
44 Winger Street
4th Floor
Boston, MA 02108
617-747-4304
Email: bracha@nelconline.org
*ATTORNEY TO BE NOTICED*

**Charles C Caldart**
National Environmental Law Center
1402 Third Avenue
Suite 715
Seattle, WA 98101
206-568 2853
Email: cccnelc@aol.com
*ATTORNEY TO BE NOTICED*

17-20545.1

**David A Nicholas**
Attorney at Law
20 Whitney Rd
Newton, MA 02460
617-964-1548
Fax: 617-663-6233
Email: dnicholas@verizon.net
*ATTORNEY TO BE NOTICED*

**Joshua R Kratka**
Nat'l Environmental Law Center
44 Winter St
4th Fl
Boston, MA 02108
617-747-4333
Fax: 617-292-8057
Email: josh.kratka@nelconline.org
*ATTORNEY TO BE NOTICED*

**Rachel Gore Freed**
National Environmental Law Center
44 Winter St
4th Floor
Boston, MA 02108
617-747-4304
Email: rfreed@nelconline.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sierra Club**                          represented by   **Heather A. Govern**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philip Harlan Hilder**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bracha Y Etengoff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Charles C Caldart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David A Nicholas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua R Kratka**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Rachel Gore Freed**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**ExxonMobil Corporation**                  represented by  **Jefferson Gregory Copeland**
Baker Botts LLP
910 Louisiana
Ste 3000
Houston, TX 77002-4995
713-229-1301
Fax: 713-229-2701
Email: greg.copeland@bakerbotts.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Albert R. Axe , Jr.**
Winstead PC
401 Congress Ave
Ste 2100
Austin, TX 78701
512-370-2806
Email: aaxe@winstead.com
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
Beck Redden LLP
1221 McKinney Street
Suite 4500
Houston, TX 77010
713-951-6256
Email: brice@beckredden.com
*ATTORNEY TO BE NOTICED*

**Eric J R Nichols**
Beck, Redden & Secrest, L.L.P
515 Congress Ave
Ste 1900
Austin, TX 78701
512-708-1000
Email: enichols@beckredden.com
*ATTORNEY TO BE NOTICED*

**Fields Alexander**
Beck Redden LLP
1221 McKinney
Ste 4500
Houston, TX 77010

713-951-3700
Email: falexander@beckredden.com
*ATTORNEY TO BE NOTICED*

**Jeffrey M Golub**
Beck Redden
1221 McKinney
Ste 4500
Houston, TX 77010
713-951-3700
Fax: 713-951-3720
Email: jgolub@beckredden.com
*ATTORNEY TO BE NOTICED*

**Kathleen E Weir**
Baker Botts LLP
910 Louisiana St
Houston, TX 77002
713-229-2108
Fax: 713-229-7908
Email: kathleen.weir@bakerbotts.com
*ATTORNEY TO BE NOTICED*

**Keith A. Courtney**
Winstead PC
401 Congress Ave
Ste 2100
Austin, TX 78701
512-370-2813
Email: kcourtney@winstead.com
*ATTORNEY TO BE NOTICED*

**Rebecca Rentz**
Winstead PC
600 Travis
Ste 1100
Houston, TX 77002
713-650-2776
Email: rrentz@winstead.com
*ATTORNEY TO BE NOTICED*

**Russell Stanley Post**
Beck Redden LLP
1221 McKinney St
Suite 4500
Houston, TX 77010
713-951-3700
Email: rpost@beckredden.com
*ATTORNEY TO BE NOTICED*

**Tynan Buthod**
Baker Botts LLP
One Shell Plaza

910 Louisiana St
Houston, TX 77002
713-229-1912
Fax: 713-229-2712
Email: ty.buthod@bakerbotts.com
*ATTORNEY TO BE NOTICED*

**William Bradley Coffey**
Beck Redden LLP
1221 McKinney
Suite 4500
Houston, Tx 77010-2010
713-951-3700
Fax: 713-951-3720
Email: bcoffey@beckredden.com *(Inactive)*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ExxonMobil Chemical Company**          represented by   **Jefferson Gregory Copeland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric J R Nichols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Fields Alexander**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey M Golub**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kathleen E Weir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Russell Stanley Post**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tynan Buthod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Bradley Coffey**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

**ExxonMobil Refining and Supply Company**

represented by **Jefferson Gregory Copeland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bryon A Rice**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric J R Nichols**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Fields Alexander**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey M Golub**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kathleen E Weir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Russell Stanley Post**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tynan Buthod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Bradley Coffey**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/13/2010 | 1 | COMPLAINT against ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company (Filing fee $ 350 receipt number 0541-7410188) filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Attachments: # 1 Exhibit 1, Part A, # 2 Exhibit 1, Part B, # 3 Exhibit 1, Part C, # 4 Exhibit 1, Part D, # 5 Exhibit 1, Part E, # 6 Exhibit 2, Part A, # 7 Exhibit 2, Part B, # 8 Exhibit 2, Part C, # 9 Exhibit 2, Part D, # 10 Exhibit 2, Part E, # 11 Exhibit 2, Part F, # 12 Exhibit 2, Part G, # 13 Exhibit 2, Part H, # 14 Exhibit 2, Part I, # 15 Exhibit 2, Part J, # 16 Exhibit 2, Part K, # 17 Exhibit 2, Part L, # 18 Exhibit 2, Part M, # 19 Exhibit 2, Part N, # 20 |

| | | |
|---|---|---|
| | | Exhibit 2, Part O, # <u>21</u> Exhibit 2, Part P, # <u>22</u> Exhibit 2, Part Q, # <u>23</u> Exhibit 3, # <u>24</u> Exhibit 4, # <u>25</u> Exhibit 5, # <u>26</u> Exhibit 6, Part A, # <u>27</u> Exhibit 6, Part B, # <u>28</u> Exhibit 6, Part C, # <u>29</u> Exhibit 6, Part D, # <u>30</u> Exhibit 6, Part E, # <u>31</u> Exhibit 6, Part F, # <u>32</u> Exhibit 6, Part G, # <u>33</u> Exhibit 6, Part H, # <u>34</u> Exhibit 6, Part I, # <u>35</u> Exhibit 7, Part A, # <u>36</u> Exhibit 7, Part B, # <u>37</u> Civil Cover Sheet)(Hilder, Philip) (Entered: 12/13/2010) |
| 12/15/2010 | 2 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 4/29/2011 at 02:00 PM in Room 11521 before Judge Ewing Werlein, Jr.(Signed by Judge Ewing Werlein, Jr) Parties notified.(mmapps, ) (Entered: 12/15/2010) |
| 12/16/2010 | 3 | RECUSAL ORDER. Judge Ewing Werlein, Jr recused. Deadlines in scheduling orders subsist. Court settings are vacated.(Signed by Judge Ewing Werlein, Jr) Parties notified.(kcarr, ) (Entered: 12/16/2010) |
| 12/17/2010 | 4 | NOTICE of Reassignment. Case reassigned to Judge Melinda Harmon. Judge Ewing Werlein, Jr no longer assigned to the case. Parties notified, filed. (dhansen, ) (Entered: 12/17/2010) |
| 12/21/2010 | 5 | RECUSAL ORDER. Judge Melinda Harmon recused. Deadlines in scheduling orders continue in effect. Court settings are vacated.(Signed by Judge Melinda Harmon) Parties notified.(htippen, ) (Entered: 12/21/2010) |
| 12/22/2010 | 6 | NOTICE of Reassignment. Case reassigned to Judge David Hittner. Judge Melinda Harmon no longer assigned to the case. Parties notified, filed. (dhansen, ) (Entered: 12/22/2010) |
| 12/28/2010 | 7 | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 3/17/2011 at 03:00 PM in Courtroom 703 before Magistrate Judge Stephen Smith.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 12/29/2010) |
| 03/04/2011 | 8 | NOTICE of Resetting. Parties notified. Initial Conference set for 4/7/2011 at 11:00 AM in Courtroom 703 before Magistrate Judge Stephen Wm Smith, filed. (jmarchand) (Entered: 03/04/2011) |
| 03/07/2011 | 9 | Unopposed MOTION for Leave to File Motion to Dismiss Not to Exceed 30 Pages by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 3/28/2011. (Attachments: # <u>1</u> Proposed Order)(Copeland, Jefferson) (Entered: 03/07/2011) |
| 03/07/2011 | 10 | MOTION to Dismiss by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 3/28/2011. (Attachments: # <u>1</u> Exhibit 1, # <u>2</u> Exhibit 2, # <u>3</u> Exhibit 3, # <u>4</u> Exhibit 4, # <u>5</u> Exhibit 5, # <u>6</u> Exhibit 6, # <u>7</u> Exhibit 7, # <u>8</u> Exhibit 8)(Copeland, Jefferson) (Entered: 03/07/2011) |
| 03/07/2011 | 11 | MOTION for Bracha Y. Statman to Appear Pro Hac Vice by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion |

| | | |
|---|---|---|
| | | Docket Date 3/28/2011. (Hilder, Philip) (Entered: 03/07/2011) |
| 03/09/2011 | | (Court only) ***Attorney Tynan Buthod,Kathleen E Weir for ExxonMobil Chemical Company,Tynan Buthod,Kathleen E Weir for ExxonMobil Corporation,Tynan Buthod,Kathleen E Weir for ExxonMobil Refining and Supply Company added. (emathis, ) (Entered: 03/09/2011) |
| 03/09/2011 | 12 | ORDER granting 9 Motion for Leave to Exceed Page Limits.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 03/10/2011) |
| 03/09/2011 | | (Court only) ***Attorney Bracha Y Statman for Environment Texas Citizen Lobby, Inc.,Bracha Y Statman for Sierra Club added. (ealexander, ) (Entered: 03/10/2011) |
| 03/09/2011 | 13 | ORDER granting 11 Motion to Appear Pro Hac Vice on behalf of Bracha Y. Statman.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 03/10/2011) |
| 03/15/2011 | 14 | Unopposed MOTION for Extension of Time to Respond to Defendants' Motion to Dismiss by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 4/5/2011. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 03/15/2011) |
| 03/16/2011 | 15 | ORDER granting 14 Motion for Extension of Time to Respond to Defendants' Motion to Dismiss from March 28, 2011 to May 6, 2011.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 03/17/2011) |
| 03/28/2011 | 16 | REPORT of Rule 26(f) Planning Meeting by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Buthod, Tynan) (Entered: 03/28/2011) |
| 04/07/2011 | 17 | Minute Entry for proceedings held before Magistrate Judge Stephen Wm Smith. SCHEDULING CONFERENCE held on 4/7/2011. Scheduling order issued. Appearances: David A Nicholas, Joshua R Kratka, Philip Harlan Hilder, Tynan Buthod, Kathleen E Weir. (ERO:D. Cartmill), filed. (jmarchand) (Entered: 04/07/2011) |
| 04/07/2011 | 18 | SCHEDULING ORDER. Trial Term: November/December 2012. ETT: 8 days. Bench trial. Amended Pleadings due by 9/1/2011. Joinder of Parties due by 6/1/2011 Pltf Expert Witness List due by 3/5/2012. Pltf Expert Report due by 3/5/2012 Deft Expert Witness List due by 4/16/2012. Deft Expert Report due by 4/16/2012 Discovery due by 5/25/2012. Dispositive Motion Filing due by 7/2/2012. Non-Dispositive Motion Filing due by 7/2/2012. Joint Pretrial Order due by 10/19/2012. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified. (jmarchand) (Entered: 04/07/2011) |
| 04/25/2011 | 19 | Mail Returned Undeliverable as to attorney Bracha Y Etengoff as to Environment Texas Citizen Lobby, Inc. re: 18 Scheduling Order,. Address has been updated and notice has been resent., filed. (tgarcia, ) (Entered: 04/25/2011) |
| 05/06/2011 | 20 | |

| | | |
|---|---|---|
| | | Unopposed MOTION for Leave to File Excess Pages by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 5/27/2011. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 05/06/2011) |
| 05/06/2011 | 21 | RESPONSE in Opposition to 10 MOTION to Dismiss, filed by Environment Citizen Lobby, Inc., Sierra Club. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Hilder, Philip) (Entered: 05/06/2011) |
| 05/06/2011 | 22 | EXHIBITS re: 21 Response in Opposition to Motion by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Exhibit # 5 (Attachments: # 1 Exhibit 6, # 2 Exhibit 7)(Hilder, Philip) (Entered: 05/06/2011) |
| 05/06/2011 | 23 | EXHIBITS re: 21 Response in Opposition to Motion by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Exhibit 8(Attachments: # 1 Exhibit 9)(Hilder, Philip) (Additional attachment(s) added on 3/17/2015: # 2 Exhibit, # 3 Exhibit) (hler, 4). (Entered: 05/06/2011) |
| 05/09/2011 | 24 | PROPOSED ORDER re: 21 Response in Opposition to Motion, filed.(Hilder, Philip) (Entered: 05/09/2011) |
| 05/09/2011 | 25 | DECLARATION of David A. Nicholas re: 21 Response in Opposition to Motion, filed.(Hilder, Philip) (Entered: 05/09/2011) |
| 05/09/2011 | 26 | ORDER granting 20 Motion for Leave to File Excess Pages.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 05/10/2011) |
| 05/17/2011 | 27 | MOTION for Charles C. Caldart to Appear Pro Hac Vice by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 6/7/2011. (Hilder, Philip) (Entered: 05/17/2011) |
| 05/18/2011 | | (Court only) ***Attorney Charles C Caldart for Environment Texas Citizen Lobby, Inc.,Charles C Caldart for Sierra Club added. (ealexander, ) (Entered: 05/19/2011) |
| 05/18/2011 | 28 | ORDER granting 27 Motion to Appear Pro Hac Vice on behalf of Charles C. Caldart.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 05/19/2011) |
| 05/20/2011 | 29 | Opposed MOTION for Submission Date by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 6/10/2011. (Weir, Kathleen) (Entered: 05/20/2011) |
| 05/25/2011 | 30 | RESPONSE to 29 Opposed MOTION for Submission Date filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Hilder, Philip) (Entered: 05/25/2011) |
| 05/25/2011 | 31 | PROPOSED ORDER *Denying Defendants' Motion for Submission Date* re: 30 Response to Motion, filed.(Hilder, Philip) (Entered: 05/25/2011) |
| 05/25/2011 | 32 | DECLARATION of Philip H. Hilder re: 30 Response to Motion, filed.(Hilder, Philip) (Entered: 05/25/2011) |

| | | |
|---|---|---|
| 05/27/2011 | 33 | ORDER denying 29 Motion for Submission Date.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 05/27/2011) |
| 06/01/2011 | 34 | Opposed MOTION for Leave to File Reply to Plaintiffs' Response to Defendants' Motion to Dismiss by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 6/22/2011. (Attachments: # 1 Proposed Order)(Weir, Kathleen) (Entered: 06/01/2011) |
| 06/03/2011 | 35 | ORDER granting 34 Motion for Leave to File a Reply. Defendants may file a Reply by 6/22/11.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 06/03/2011) |
| 06/07/2011 | 36 | ORDER denying 10 Motion to Dismiss.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 06/07/2011) |
| 06/21/2011 | 37 | ANSWER to 1 Complaint,,,, by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Weir, Kathleen) (Entered: 06/21/2011) |
| 11/04/2011 | 38 | Agreed MOTION for Entry of Order re: Confidentiality Order by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 11/25/2011. (Attachments: # 1 Proposed Order Confidentiality Order)(Buthod, Tynan) (Entered: 11/04/2011) |
| 11/07/2011 | 39 | ORDER granting 38 Motion for Entry of Order.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 11/08/2011) |
| 01/17/2012 | 40 | Unopposed MOTION to Substitute Attorney Eric J.R. Nichols in place of J. Gregory Copeland by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 2/7/2012. (Attachments: # 1 Proposed Order)(Nichols, Eric) (Entered: 01/17/2012) |
| 01/17/2012 | | (Court only) ***Attorney Fields Alexander for ExxonMobil Chemical Company,Fields Alexander for ExxonMobil Corporation,Fields Alexander for ExxonMobil Refining and Supply Company added. (ealexander, ) (Entered: 01/17/2012) |
| 01/17/2012 | | (Court only) ***Attorney Bryon A Rice for ExxonMobil Chemical Company,Bryon A Rice for ExxonMobil Corporation,Bryon A Rice for ExxonMobil Refining and Supply Company added. (ealexander, ) (Entered: 01/17/2012) |
| 01/18/2012 | 41 | ORDER granting 40 Motion to Substitute Attorney Eric J.R. Nichols as Attorney-in-Charge.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 01/19/2012) |
| 02/10/2012 | | (Court only) ***Attorney Keith Courtney,Albert R. Axe,Rebecca Rentz for ExxonMobil Corporation added for Pro Hac Vice Purposes. (kgilyard, ) (Entered: 02/10/2012) |
| 02/10/2012 | 42 | MOTION for Rebecca Rentz to Appear Pro Hac Vice by ExxonMobil Corporation, filed. Motion Docket Date 3/2/2012. (kgilyard, ) (Entered: 02/10/2012) |

| 02/10/2012 | 43 | MOTION for Keith Courtney to Appear Pro Hac Vice by ExxonMobil Corporation, filed. Motion Docket Date 3/2/2012. (kgilyard, ) (Entered: 02/10/2012) |
|---|---|---|
| 02/10/2012 | 44 | MOTION for Albert R. Axe to Appear Pro Hac Vice by ExxonMobil Corporation, filed. Motion Docket Date 3/2/2012. (kgilyard, ) (Entered: 02/10/2012) |
| 02/13/2012 | 45 | Clerks Notice regarding CMECF notice returned undeliverable from brice@brsfirms.com on the account of Bryon A Rice. The referenced email address has been deleted from your CM/ECF account, filed. (tferguson, ) (Entered: 02/13/2012) |
| 02/14/2012 | | (Court only) ***Motion(s) terminated: 42 MOTION for Rebecca Rentz to Appear Pro Hac Vice. (ealexander, ) (Entered: 02/14/2012) |
| 02/14/2012 | 46 | ORDER granting 43 Motion to Appear Pro Hac Vice on behalf of Keith A. Courtney.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 02/15/2012) |
| 02/24/2012 | 47 | ORDER granting the Mtoion for Admission Pro Hac Vice on behalf of Rebecca Rentz.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 02/27/2012) |
| 02/24/2012 | 48 | ORDER granting 44 Motion to Appear Pro Hac Vice on behalf of Albert R. Axe.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 02/27/2012) |
| 02/28/2012 | 49 | Unopposed MOTION for Extension of Time to Designate Experts and Serve Expert Reports by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 3/20/2012. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 02/28/2012) |
| 02/29/2012 | 50 | ORDER granting 49 Motion for Extension of Time.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 03/02/2012) |
| 03/08/2012 | 51 | Unopposed MOTION for Leave to File Supplemental Answer by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 3/29/2012. (Attachments: # 1 Exhibit Exhibit A - Supplemental Answer, # 2 Proposed Order)(Golub, Jeffrey) (Entered: 03/08/2012) |
| 03/12/2012 | 52 | ORDER granting 51 Motion for Leave to File Supplemental Answer.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 03/12/2012) |
| 03/12/2012 | 53 | SUPPLMENTAL ANSWER to 1 Complaint, by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(ealexander, ) (Entered: 03/12/2012) |
| 03/16/2012 | 54 | *Initial Expert Designations and Rule 26(a)(2)(C) Disclosures* by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. (Attachments: # 1 Exhibit 1)(Nichols, Eric) (Entered: 03/16/2012) |
| 03/19/2012 | 55 | NOTICE of Appearance by Brad Coffey on behalf of ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining |

| | | |
|---|---|---|
| | | and Supply Company, filed. (Nichols, Eric) (Entered: 03/19/2012) |
| 04/16/2012 | 56 | Unopposed MOTION to Amend by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 5/7/2012. (Attachments: # 1 Proposed Order Order)(Coffey, William) (Entered: 04/16/2012) |
| 04/17/2012 | 57 | ORDER granting 56 Motion to Amend. The deadline for Defendants, or the responding party, to designate experts and serve expert reports is extended to May 15, 2012 and the deadline by which the parties must complete discovery is extended to June 29, 2012.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 04/18/2012) |
| 05/15/2012 | 58 | Supplemental DESIGNATION OF EXPERT WITNESS LIST by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Nichols, Eric) (Entered: 05/15/2012) |
| 07/10/2012 | 59 | MOTION for Rachel Gore Freed to Appear Pro Hac Vice by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 7/31/2012. (Hilder, Philip) (Entered: 07/10/2012) |
| 07/10/2012 | 60 | NOTICE of Appearance by William B. Graham on behalf of Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Hilder, Philip) (Entered: 07/10/2012) |
| 07/11/2012 | | (Court only) ***Attorney Rachel Gore Freed for Environment Texas Citizen Lobby, Inc.,Rachel Gore Freed for Sierra Club added. (ealexander, ) (Entered: 07/12/2012) |
| 07/11/2012 | 61 | ORDER granting 59 Motion to Appear Pro Hac Vice on behalf of Rachel Gore Freed.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 07/12/2012) |
| 07/18/2012 | 62 | Unopposed MOTION to Amend 18 Scheduling Order,, by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 8/8/2012. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 07/18/2012) |
| 07/19/2012 | 63 | ORDER granting 62 Unopposed Motion to Amend Rule 16 Scheduling Order to Extend the Deadline to File Summary Judgment and Daubert Motions. The deadline is extended to August 10, 2012.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 07/20/2012) |
| 08/02/2012 | 64 | Unopposed MOTION for Leave to File Excess Pages by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 8/23/2012. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 08/02/2012) |
| 08/02/2012 | 65 | Unopposed MOTION for Leave to File Exceed Page Limits by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 8/23/2012. (Attachments: # 1 Proposed Order Order Granting ExxonMobil Defendants' Unopposed Motion for Leave to Exceed Page Limits)(Alexander, Fields) (Entered: 08/02/2012) |

| 08/03/2012 | 66 | ORDER granting 64 Motion for Leave to File Excess Pages.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 08/06/2012) |
|---|---|---|
| 08/03/2012 | 67 | ORDER granting 65 Motion for Leave to Exceed Page Limits.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 08/06/2012) |
| 08/10/2012 | 68 | MOTION to Exclude the Testimony of Defendants' Expert Karen T. Olson by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 8/31/2012. (Attachments: # 1 Affidavit D.Nicholas Declaration in Support, # 2 Exhibit A-D to D.Nicholas Declaration in Support, # 3 Proposed Order)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 69 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 70 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 71 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 72 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 73 | MOTION for Partial Summary Judgment *on Liability* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 8/31/2012. (Attachments: # 1 Affidavit D.Nicholas Declaration in Support, # 2 Exhibit 1-10 to D.Nicholas Declaration in Support, # 3 Exhibit 11, # 4 Continuation Exhibit 11, # 5 Exhibit 12, # 6 Exhibit 13A, # 7 Exhibit 13B, # 8 Exhibit 13C, # 9 Exhibit 13D, # 10 Exhibit 13E, # 11 Exhibit 13F, # 12 Exhibit 13G, # 13 Exhibit 13H, # 14 Exhibit 13I, # 15 Exhibit 13J, # 16 Exhibit 13K, # 17 Exhibit 13L, # 18 Exhibit 13M, # 19 Exhibit 13N, # 20 Exhibit 13O, # 21 Exhibit 13P, # 22 Exhibit 13Q, # 23 Exhibit 13R, # 24 Exhibit 13S, # 25 Exhibit 13T, # 26 Exhibit 13U, # 27 Exhibit 13V, # 28 Exhibit 13W, # 29 Exhibit 13X, # 30 Supplement 13Y, # 31 Exhibit 13Z)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 74 | EXHIBITS re: 73 MOTION for Partial Summary Judgment *on Liability* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Exhibit 13AC, # 2 Exhibit 13AD, # 3 Exhibit 13AE, # 4 Exhibit 13AF, # 5 Exhibit 13AG, # 6 Exhibit 13AH, # 7 Exhibit 13AI, # 8 Exhibit 13AJ, # 9 Exhibit 13AK, # 10 Exhibit 13AL, # 11 Exhibit 13AM, # 12 Exhibit 13AN, # 13 Exhibit 13AO, # 14 Exhibit 13AP, # 15 Exhibit 13AQ, # 16 Exhibit 13AR, # 17 Exhibit 13AS, # 18 Exhibit 13AT, # 19 Exhibit 13AU, # 20 Exhibit 13AV, # 21 Exhibit 13AW, # 22 Exhibit 13AX, # 23 Exhibit 13AY, # 24 Exhibit 13AZ)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 75 | EXHIBITS re: 73 MOTION for Partial Summary Judgment *on Liability* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Exhibit 13BA to D.Nicholas Declaration in Support, # 2 Exhibit 13BB, # 3 Exhibit 13BC, # 4 Exhibit 13BD, # 5 Exhibit 13BE, # 6 Exhibit 13BF, # 7 Exhibit 13BG, # 8 Exhibit 13BH, # 9 Exhibit 13BI, # 10 Continuation of Exh. 13BI, # 11 Exhibit 14, # 12 Exhibit 15, # 13 Exhibit 16, # 14 Exhibit 17, # 15 Exhibit 18-29, # 16 Exhibit 30, # 17 Exhibit 31-33, # 18 Exhibit 34)(Hilder, Philip) |

| | | |
|---|---|---|
| | | (Entered: 08/10/2012) |
| 08/10/2012 | 76 | EXHIBITS re: 73 MOTION for Partial Summary Judgment *on Liability* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Exhibit 1 to M.Rock Declaration in Support, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 77 | DECLARATION of Luke Metzger re: 73 MOTION for Partial Summary Judgment *on Liability*, filed.(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 78 | DECLARATION of Neil Carman re: 73 MOTION for Partial Summary Judgment *on Liability*, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2A, # 3 Exhibit 2B, # 4 Exhibit 2C, # 5 Exhibit 2D, # 6 Exhibit 2E, # 7 Exhibit 2F, # 8 Exhibit 2G, # 9 Exhibit 2H, # 10 Exhibit 2I, # 11 Exhibit 2J, # 12 Exhibit 2K)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 79 | DECLARATION of Stuart Halpryn re: 73 MOTION for Partial Summary Judgment *on Liability*, filed. (Attachments: # 1 Exhibit 1)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 80 | DECLARATION of Sharon Sprayberry re: 73 MOTION for Partial Summary Judgment *on Liability*, filed. (Attachments: # 1 Exhibit 1)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 81 | DECLARATION of Joshua Kratka re: 73 MOTION for Partial Summary Judgment *on Liability*, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 82 | MOTION for Summary Judgment by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 8/31/2012. (Attachments: # 1 Proposed Order Proposed Order)(Nichols, Eric) (Entered: 08/10/2012) |
| 08/10/2012 | 83 | PROPOSED ORDER re: 73 MOTION for Partial Summary Judgment *on Liability*, filed.(Hilder, Philip) (Entered: 08/10/2012) |
| 08/10/2012 | 84 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 85 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 86 | MOTION to Exclude Testimony of Edward G. Brooks by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 8/31/2012. (Attachments: # 1 Proposed Order Proposed Order, # 2 Appendix Appendix)(Nichols, Eric) (Entered: 08/10/2012) |
| 08/10/2012 | 87 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 88 | Sealed Event, filed. (With attachments) (Entered: 08/10/2012) |
| 08/10/2012 | 89 | |

| | | |
|---|---|---|
| | | MOTION to Exclude Testimony of Keith E. Bowers by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 8/31/2012. (Attachments: # 1 Proposed Order Proposed Order)(Nichols, Eric) (Entered: 08/10/2012) |
| 08/10/2012 | 90 | MOTION to Bifurcate Trial by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 8/31/2012. (Attachments: # 1 Proposed Order Proposed Order)(Nichols, Eric) (Entered: 08/10/2012) |
| 08/10/2012 | 91 | Sealed Event, filed. (Entered: 08/16/2012) |
| 08/17/2012 | 92 | Unopposed MOTION for Extension of Time Local Rule 7.3 Deadline to Respond to Summary Judgment, Daubert and Bifurcation Motions by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 9/7/2012. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 08/17/2012) |
| 08/20/2012 | 93 | ORDER granting 92 Motion for Extension of Time.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 08/21/2012) |
| 09/10/2012 | 94 | Unopposed MOTION for Leave to File Excess Pages by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 10/1/2012. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Hilder, Philip) (Entered: 09/10/2012) |
| 09/10/2012 | 95 | Unopposed MOTION for Leave to File Excess Pages by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 10/1/2012. (Attachments: # 1 Proposed Order Proposed Order)(Coffey, William) (Entered: 09/10/2012) |
| 09/12/2012 | 96 | ORDER granting 95 Motion for Leave to File Excess Pages.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 09/12/2012) |
| 09/12/2012 | 97 | ORDER granting 94 Motion for Leave to File Excess Pages.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 09/12/2012) |
| 09/14/2012 | 98 | RESPONSE to 82 MOTION for Summary Judgment filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Attachments: # 1 Affidavit Declaration of David A. Nicholas in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Proposed Order)(Hilder, Philip) (Entered: 09/14/2012) |
| 09/14/2012 | 99 | RESPONSE to 90 MOTION to Bifurcate Trial filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 09/14/2012) |
| 09/14/2012 | 100 | Sealed Event, filed. (Entered: 09/14/2012) |

| 09/14/2012 | 101 | Sealed Event, filed. (With attachments) (Entered: 09/14/2012) |
|---|---|---|
| 09/14/2012 | 102 | Sealed Event, filed. (With attachments) (Entered: 09/14/2012) |
| 09/14/2012 | 103 | Sealed Event, filed. (With attachments) (Entered: 09/14/2012) |
| 09/14/2012 | 104 | OBJECTIONS to 73 MOTION for Partial Summary Judgment *on Liability*, filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Attachments: # 1 Proposed Order)(Coffey, William) (Entered: 09/14/2012) |
| 09/14/2012 | 105 | RESPONSE to 73 MOTION for Partial Summary Judgment *on Liability* filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Attachments: # 1 Proposed Order, # 2 Appendix)(Coffey, William) (Entered: 09/14/2012) |
| 09/14/2012 | 106 | Sealed Event, filed. (With attachments) (Entered: 09/14/2012) |
| 09/14/2012 | 107 | RESPONSE to 70 Sealed Event, 72 Sealed Event, 68 MOTION to Exclude the Testimony of Defendants' Expert Karen T. Olson, 71 Sealed Event, 69 Sealed Event filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Attachments: # 1 Proposed Order, # 2 Appendix)(Coffey, William) (Entered: 09/14/2012) |
| 09/14/2012 | 108 | Sealed Event, filed. (With attachments) (Entered: 09/14/2012) |
| 09/14/2012 | 109 | Sealed Event, filed. (With attachments) (Entered: 09/14/2012) |
| 10/09/2012 |  | (Court only) ***Motion(s) terminated:, ***Deadlines terminated. (ealexander, ) (Entered: 10/09/2012) |
| 10/09/2012 | 110 | SCHEDULING ORDER. Trial Term: January/February, 2013. ETT: 5 Days. Bench Trial. Joint Pretrial Order due by 12/19/2012.(Signed by Judge David Hittner) Parties notified.(ealexander, ) Modified on 10/25/2012 (ealexander, ). (Entered: 10/09/2012) |
| 10/18/2012 | 111 | RESPONSE *to Defendants' Request for Oral Argument on Summary Judgment Motions*, filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Hilder, Philip) (Entered: 10/18/2012) |
| 10/24/2012 | 112 | SUPPLEMENT to 73 MOTION for Partial Summary Judgment *on Liability* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Second Declaration of Shae Cottar)(Hilder, Philip) (Entered: 10/24/2012) |
| 10/29/2012 | 113 | ORDER, ORDER Setting Hearing on all pending Motions ( Motion Hearing set for 11/15/2012 at 09:00 AM in Courtroom 8A before Judge David Hittner)(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 10/29/2012) |
| 11/01/2012 |  | (Court only) ***Motion(s) terminated: 84 Sealed Event. This is not a motion it is a Memorandum of Law. (ealexander, ) (Entered: 11/01/2012) |

| | | |
|---|---|---|
| 11/12/2012 | 114 | REPLY in Support of 82 MOTION for Summary Judgment, filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Coffey, William) (Entered: 11/12/2012) |
| 11/13/2012 | 115 | MOTION Objection to Reply Brief by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 12/4/2012. (Hilder, Philip) (Entered: 11/13/2012) |
| 11/15/2012 | 116 | Minute Entry for proceedings held before Judge David Hittner. MOTION HEARING held on 11/15/2012. Written order to issue. Appearances: David A Nicholas, Joshua R Kratka, Eric J R Nichols, Bryon A Rice, Fields Alexander, William Bradley Coffey, William Graham.(Court Reporter: Mayra Malone), filed.(ealexander, ) (Entered: 11/16/2012) |
| 11/20/2012 | 117 | ORDER denying 73 Motion for Partial Summary Judgment; overruling 115 Plaintiffs' Objections to Defendants' Reply in Support of their Motion for Summary Judgment.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 11/20/2012) |
| 12/04/2012 | 118 | TRANSCRIPT re: Motion Hearing held on November 15, 2012 before Judge David Hittner. Court Reporter/Transcriber Mayra Malone. Release of Transcript Restriction set for 3/4/2013., filed. (mmalone, ) (Entered: 12/04/2012) |
| 12/05/2012 | 119 | Notice of Filing of Official Transcript as to 118 Transcript. Party notified, filed. (jdav, ) (Entered: 12/05/2012) |
| 12/05/2012 | 120 | ORDER ; Motion-related deadline set re: 70 Sealed Event, 72 Sealed Event, 68 MOTION to Exclude the Testimony of Defendants' Expert Karen T. Olson, 71 Sealed Event, 89 MOTION to Exclude Testimony of Keith E. Bowers, 86 MOTION to Exclude Testimony of Edward G. Brooks, 90 MOTION to Bifurcate Trial, 69 Sealed Event, 82 MOTION for Summary Judgment, CASE REFERRED to Magistrate Judge Stephen Smith for all pretrial matters including all pending and future summary judgment motions, orders and recommendations.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 12/05/2012) |
| 12/21/2012 | 121 | *Request to Judge Smith for a Recommendation that Plaintiffs be Granted Summary Judgment on Liability* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 12/21/2012) |
| 01/29/2013 | 122 | MEMORANDUM *on Motions Referred for Report and Recommendation* by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. (Attachments: # 1 Attachments to Memorandum)(Nichols, Eric) (Entered: 01/29/2013) |
| 03/01/2013 | 123 | ORDER terminating 68 Motion to Exclude; terminating 69 Sealed Motion; terminating 70 Sealed Motion; terminating 71 Sealed Motion; terminating 72 Sealed Motion; terminating 86 Motion to Exclude; terminating 89 Motion to Exclude; terminating 90 Motion to Bifurcate. Motions are administratively terminated without prejudice to full |

| | | consideration without need for refiling after resolution of the motion for summary judgment. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified.(jmarchand) (Entered: 03/06/2013) |
|---|---|---|
| 03/19/2013 | 124 | NOTICE of Setting as to 82 MOTION for Summary Judgment. Parties notified. Motion Hearing set for 4/2/2013 at 10:00 AM in Courtroom 703 before Magistrate Judge Stephen Wm Smith, filed. (jmarchand) (Entered: 03/19/2013) |
| 04/02/2013 | 125 | Minute Entry for proceedings held before Magistrate Judge Stephen Wm Smith. MOTION HEARING held on 4/2/2013 re: 82 MOTION for Summary Judgment. Motion taken under advisement. Appearances:William Graham, David A Nicholas, Joshua R Kratka, Philip Harlan Hilder, Eric J R Nichols, Fields Alexander, William Bradley Coffey, Keith A. Courtney.(ERO:J. Davenport), filed.(jmarchand) (Entered: 04/02/2013) |
| 04/03/2013 | 126 | MEMORANDUM AND RECOMMENDATIONS re 82 MOTION for Summary Judgment. Objections due within 14 days of service of this order. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified.(jmarchand) (Entered: 04/03/2013) |
| 04/04/2013 | 127 | AO 435 TRANSCRIPT ORDER FORM by Brad Coffey. This is to order a transcript of held on 4/2/2013 before Magistrate Judge Stephen Smith (Expedited Daily), filed. (jdav, ) Electronically forwarded to Judicial Transcribers of Texas on 4/5/2013 (amwilliams, ). (Entered: 04/04/2013) |
| 04/10/2013 | 128 | TRANSCRIPT re: Motion for Summary Judgment held on April 2, 2013 before Magistrate Judge Stephen Smith. Court Reporter/Transcriber Judicial Transcribers of Texas, LLC. Release of Transcript Restriction set for 7/9/2013., filed. (mahenry, ) (Entered: 04/10/2013) |
| 04/11/2013 | 129 | Notice of Filing of Official Transcript as to 128 Transcript. Party notified, filed. (jdav, ) (Entered: 04/11/2013) |
| 04/17/2013 | 130 | OBJECTIONS to 126 Memorandum and Recommendations, filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Hilder, Philip) (Entered: 04/17/2013) |
| 04/17/2013 | 131 | OBJECTIONS to 126 Memorandum and Recommendations, filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Alexander, Fields) (Entered: 04/17/2013) |
| 04/17/2013 | 132 | Sealed Event, filed. (Entered: 04/17/2013) |
| 04/18/2013 | 133 | AO 435 TRANSCRIPT ORDER FORM by Mary Rock. This is to order a transcript of motion hearing held on 4/2/13 before Magistrate Judge Stephen Smith (original). Court Reporter/Transcriber: Digital Scroll, filed. (ckrus, ) Electronically forwarded to Judicial Transcribers of Texas on 4/22/2013 (amwilliams). (Entered: 04/18/2013) |
| 05/01/2013 | 134 | RESPONSE *to the ExxonMobil Defendants' Objections to Memorandum and Recommendation by the Hon. Stephen Wm. Smith* |

| | | |
|---|---|---|
| | | *on Motion for Summary Judgment*, filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Hilder, Philip) (Entered: 05/01/2013) |
| 05/02/2013 | 135 | ORDER ADOPTING MEMORANDUM AND RECOMMENDATIONS re: 126 Memorandum and Recommendations, 82 MOTION for Summary Judgment (Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 05/02/2013) |
| 05/23/2013 | 136 | MOTION Submission of Amended Schedules of Alleged Violations Remaining for Trial and Request for Status Conference and Ruling on Daubert MotionsMotions referred to Stephen Smith. by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 6/13/2013. (Attachments: # 1 Exhibit Count I Table1A, # 2 Exhibit Count I Table 1B Part 1, # 3 Exhibit Count I Table 1B Part 2, # 4 Exhibit Count I Table 1B Part 3, # 5 Exhibit Count II Table 2A, # 6 Exhibit Count II Table 2B Part 1, # 7 Exhibit Count II Table 2B Part 2, # 8 Exhibit Count II Table 2B Part 3, # 9 Exhibit Count II Table 2C, # 10 Exhibit Count II Table 2D, # 11 Exhibit Count II Table 2E, # 12 Exhibit Count II Table 2F, # 13 Exhibit Count III Table 3, # 14 Exhibit Count IV Table 4, # 15 Exhibit Count V Table 5, # 16 Exhibit Count VI Table 6, # 17 Exhibit Count VII Table 7A, # 18 Exhibit Count VII Table 7B, # 19 Exhibit Count VII Table 7C, # 20 Exhibit Count VII Table 7D, # 21 Exhibit Count VII Table 7E)(Hilder, Philip) (Entered: 05/23/2013) |
| 05/23/2013 | 137 | MOTION Motion to Seal ECF Docket Entry 136-12Motions referred to Stephen Smith. by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 6/13/2013. (Hilder, Philip) (Entered: 05/23/2013) |
| 05/23/2013 | 138 | NOTICE *of Schedules of Events and Incidents that Remain Pending for Trial* by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Nichols, Eric) (Entered: 05/23/2013) |
| 06/10/2013 | 139 | ORDER granting 137 MOTION to Seal ECF Docket Entry 136-12 ( Status Conference set for 6/25/2013 at 10:00 AM in Courtroom 703 before Magistrate Judge Stephen Wm Smith)(Signed by Magistrate Judge Stephen Wm Smith) Parties notified.(jmarchand) (Entered: 06/10/2013) |
| 06/10/2013 | 140 | RESPONSE to 136 MOTION Submission of Amended Schedules of Alleged Violations Remaining for Trial and Request for Status Conference and Ruling on Daubert Motions filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Attachments: # 1 Exhibit A)(Nichols, Eric) (Entered: 06/10/2013) |
| 06/20/2013 | 141 | MEMORANDUM for the June 25, 2013, Status Conference by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Hilder, Philip) (Entered: 06/20/2013) |

| | | |
|---|---|---|
| 06/25/2013 | 142 | Minute Entry for proceedings held before Magistrate Judge Stephen Wm Smith. STATUS CONFERENCE held on 6/25/2013. Written order to be issued. Appearances:William Graham, David A Nicholas, Joshua R Kratka, Philip Harlan Hilder, Eric J R Nichols, Fields Alexander, Bryon A Rice, Keith A. Courtney.(ERO:W. Bostic), filed.(jmarchand) (Entered: 06/25/2013) |
| 06/25/2013 | 143 | ORDER re: Status Conference held 6/25/2013 regarding trial details. Parties shall notify the court of thier preferred trial term within 7 days of entry of this order. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified.(jmarchand) (Entered: 06/25/2013) |
| 06/26/2013 | 145 | ORDER - The court overrules defendants' objection to the inclusion of approximately 2,100 recordable events on plaintiffs' schedules. The parties' schedules of violations remaing for trial may include recordable events occurring within the statue of limitations period up to the 120-day pre-trial deadline. (Signed by Magistrate Judge Stephen Wm Smith) Parties notified.(jmarchand) (Entered: 06/27/2013) |
| 06/27/2013 | 144 | NOTICE *of Preferred Trial Term* re: 143 Order by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Hilder, Philip) (Entered: 06/27/2013) |
| 06/28/2013 | 146 | NOTICE *of Preferred Trial Term* re: 143 Order by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. (Nichols, Eric) (Entered: 06/28/2013) |
| 07/01/2013 | 147 | ORDER that this case is set for the January/February, 2014 trial term. The Joint Pretrial Order is due December 27, 2013.(Signed by Judge David Hittner) Parties notified.(ealexander, ) (Entered: 07/02/2013) |
| 07/09/2013 | | (Court only) ***Motion(s) terminated: 136 MOTION Submission of Amended Schedules of Alleged Violations Remaining for Trial and Request for Status Conference and Ruling on Daubert Motions. (ealexander, ) (Entered: 07/09/2013) |
| 07/10/2013 | 148 | AO 435 TRANSCRIPT ORDER FORM by Brad Coffey. This is to order a transcript of Status Conference held on 6/25/2013 before Magistrate Judge Stephen Smith. Transcriber: Judicial Transcribers of Texas. (Original), filed. (jdav, ). Daily Order forwarded electronically to Judicial Transcribers of Texas on 7-11-2012. Modified on 7/11/2013 (pcrawford, ). (Entered: 07/10/2013) |
| 07/12/2013 | 149 | TRANSCRIPT re: Status Conference held on June 25, 2013 before Magistrate Judge Stephen Smith. Court Reporter/Transcriber Judicial Transcribers of Texas, LLC. Release of Transcript Restriction set for 10/10/2013., filed. (mahenry, ) (Entered: 07/12/2013) |
| 07/15/2013 | 150 | Notice of Filing of Official Transcript as to 149 Transcript. Party notified, filed. (olindor, ) (Entered: 07/15/2013) |
| 09/04/2013 | 151 | AO 435 TRANSCRIPT ORDER FORM by Mary Rock. This is to order a transcript of Status Conference held on 6/25/2013 before Magistrate Judge Stephen Smith (Copy). Court Reporter/Transcriber: Judicial Transcribers of Texas, filed. (amwilliams) (Entered: 09/05/2013) |

| | | |
|---|---|---|
| 09/30/2013 | <u>152</u> | Opposed MOTION to Bar Exxon from Supplementing its Experts' Opinions Regarding Certain ViolationsMotions referred to Stephen Smith. by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 10/21/2013. (Attachments: # <u>1</u> Proposed Order)(Hilder, Philip) (Entered: 09/30/2013) |
| 09/30/2013 | <u>153</u> | DECLARATION of David A. Nicholas re: <u>152</u> Opposed MOTION to Bar Exxon from Supplementing its Experts' Opinions Regarding Certain Violations, filed. (Attachments: # <u>1</u> Exhibit 1 through 5, # <u>2</u> Exhibit 6 through 10, # <u>3</u> Exhibit 11 through 13)(Hilder, Philip) (Entered: 09/30/2013) |
| 10/21/2013 | <u>154</u> | RESPONSE to <u>152</u> Opposed MOTION to Bar Exxon from Supplementing its Experts' Opinions Regarding Certain Violations filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Attachments: # <u>1</u> Exhibit A)(Coffey, William) (Entered: 10/21/2013) |
| 10/22/2013 | <u>155</u> | ORDER denying <u>152</u> Motion to Bar Supplementation. All supplementation is due 11/22/2013. Issue of admissibility will be reserved until time of trial.(Signed by Magistrate Judge Stephen Wm Smith) Parties notified.(jmarchand, 4) (Entered: 10/22/2013) |
| 12/06/2013 | | (Court only) ***Deadlines terminated. (ealexander, 4) (Entered: 12/06/2013) |
| 12/06/2013 | <u>156</u> | SCHEDULING ORDER. ETT: 4 weeks. Bench Trial. Joint Pretrial Order due by 1/17/2014. Pretrial Conference set for 2/7/2014 at 01:30 PM in Courtroom 8A before Judge David Hittner Bench Trial set for 2/10/2014 at 10:00 AM in Courtroom 8A before Judge David Hittner(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 12/06/2013) |
| 12/06/2013 | | (Court only) ***Case No Longer Referred to Magistrate Judge Stephen Smith. (ealexander, 4) (Entered: 07/28/2017) |
| 01/03/2014 | <u>157</u> | TRIAL SCHEDULING ORDER - Parties are to file a detailed initial trial plan on or before Friday, January 10, 2014 and a final trial plan on or before Monday, January 13, 2014. (Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 01/03/2014) |
| 01/10/2014 | <u>158</u> | *Plaintiffs' Initial Trial Plan* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 01/10/2014) |
| 01/10/2014 | <u>159</u> | CERTIFICATE OF SERVICE of <u>158</u> Document by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 01/10/2014) |
| 01/10/2014 | <u>160</u> | DEFENDANT'S INITIAL TRIAL PLAN by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Rice, Bryon) (Entered: 01/10/2014) |
| 01/13/2014 | <u>161</u> | *Plaintiffs' Final Trial Plan* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 01/13/2014) |
| 01/13/2014 | <u>162</u> | *The ExxonMobil Defendants' Final Trial Plan* by ExxonMobil |

| | | |
|---|---|---|
| | | Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Rice, Bryon) (Entered: 01/13/2014) |
| 01/15/2014 | 163 | TIMING ORDER - that Plaintiff is allocated a total time of 46.0 hours and Defendant is allocated a total time of 44.0 hours.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 01/15/2014) |
| 01/17/2014 | 164 | Joint Proposed Pretrial Order by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Exhibit 1A, # 2 Exhibit 1B, # 3 Exhibit 2A, # 4 Exhibit 2B, # 5 Exhibit 2C, # 6 Exhibit 2D, # 7 Exhibit 2E, # 8 Exhibit 2F, # 9 Exhibit 3, # 10 Exhibit 4, # 11 Exhibit 5, # 12 Exhibit 6, # 13 Exhibit Consent Decree Events, # 14 Plaintiffs' Witness List, # 15 Defendants' Witness List, # 16 Plaintiffs' Exhibit List, # 17 Defendants' Preliminary Exhibit List, # 18 Plaintiffs' Proposed Findings of Fact, # 19 Plaintiffs' Proposed Conclusions of Law, # 20 Defendants' Preliminary Proposed Findings of Fact and Conclusions of Law, # 21 Plaintiffs' Expert Witness Qualifications, # 22 Defendants' Expert Witness Qualifications)(Hilder, Philip) (Entered: 01/17/2014) |
| 01/17/2014 | 165 | *Plaintiffs' Pretrial Brief* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 01/17/2014) |
| 01/17/2014 | 166 | Sealed Event, filed. (Entered: 01/17/2014) |
| 01/29/2014 | 167 | Supplemental Proposed Pretrial Order by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Exhibit 7A, # 2 Exhibit 7B, # 3 Exhibit 7C, # 4 Exhibit 7D, # 5 Exhibit 7E)(Hilder, Philip) (Entered: 01/29/2014) |
| 01/31/2014 | 168 | MOTION for Heather Govern to Appear Pro Hac ViceMotions referred to Stephen Smith. by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 2/21/2014. (Hilder, Philip) (Entered: 01/31/2014) |
| 02/03/2014 | 169 | Sealed Event, filed. (With attachments) (Entered: 02/03/2014) |
| 02/03/2014 | 170 | OBJECTIONS *to the Admissibility of Plaintiffs' Exhibits*, filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Coffey, William) (Entered: 02/03/2014) |
| 02/03/2014 | | (Court only) ***Attorney Heather Govern for Environment Texas Citizen Lobby, Inc.,Heather Govern for Sierra Club added. (ealexander, 4) (Entered: 02/04/2014) |
| 02/03/2014 | 171 | ORDER granting 168 Motion to Appear Pro Hac Vice on behalf of Heather Govern.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 02/04/2014) |
| 02/06/2014 | 172 | *Government Documents about the Effect of Certain Chemicals and Pollutants are Admissible* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 02/06/2014) |
| 02/06/2014 | 173 | *Plaintiffs Designation of Portions of the Deposition Transcript of John Sadlier* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. |

| | | |
|---|---|---|
| | | (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D)(Hilder, Philip) (Entered: 02/06/2014) |
| 02/07/2014 | <u>174</u> | Minute Entry for proceedings held before Judge David Hittner. Final PRETRIAL CONFERENCE held on 2/7/2014. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/10/2014) |
| 02/10/2014 | <u>175</u> | Minute Entry for proceedings held before Judge David Hittner. First day of BENCH TRIAL held on 2/10/2014. Testimony taken. Bench trial held and continued to February 11, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/11/2014) |
| 02/11/2014 | <u>176</u> | Minute Entry for proceedings held before Judge David Hittner. Second day of BENCH TRIAL held on 2/11/2014. Testimony taken. Bench Trial held and continued to February 12, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/12/2014) |
| 02/12/2014 | <u>177</u> | Minute Entry for proceedings held before Judge David Hittner. Third day of BENCH TRIAL held on 2/12/2014. Testimony taken. Bench Trial held and continued to February 13, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/13/2014) |
| 02/13/2014 | <u>178</u> | Minute Entry for proceedings held before Judge David Hittner. Fourth day of BENCH TRIAL held on 2/13/2014. Testimony taken. Bench trial held and continued to February 14, 2014 at 11:30 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/14/2014) |
| 02/14/2014 | <u>179</u> | Minute Entry for proceedings held before Judge David Hittner. Fifth day of BENCH TRIAL held on 2/14/2014. Testimony taken. Bench trial held and continued to February 18, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/18/2014) |
| 02/18/2014 | <u>180</u> | |

| | | |
|---|---|---|
| | | Supplemental Witness List by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Rice, Bryon) (Entered: 02/18/2014) |
| 02/18/2014 | 181 | Minute Entry for proceedings held before Judge David Hittner. Sixth day of BENCH TRIAL held on 2/18/2014. Testimony taken. Bench trial held and continued to February 19, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) Modified on 2/20/2014 (ealexander, 4). (Main Document 181 replaced on 2/20/2014) (ealexander, 4). (Entered: 02/19/2014) |
| 02/19/2014 | 182 | Minute Entry for proceedings held before Judge David Hittner. Seventh day of BENCH TRIAL held on 2/19/2014. Testimony taken. Bench trial held and continued to February 20, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/20/2014) |
| 02/20/2014 | 183 | Minute Entry for proceedings held before Judge David Hittner. Eighth day of BENCH TRIAL held on 2/20/2014. Plaintiffs rest their case. Defendant's Motion for Judgment as a Matter of Law heard and denied. Defendant's begin their portion of the case. Testimony taken. Bench trial held and continued to February 21, 2014 at 11:30 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/21/2014) |
| 02/21/2014 | 184 | Minute Entry for proceedings held before Judge David Hittner. Ninth day of BENCH TRIAL held on 2/21/2014. Testimony taken. Bench trial held and continued to February 24, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/24/2014) |
| 02/24/2014 | 185 | Minute Entry for proceedings held before Judge David Hittner. Tenth day of BENCH TRIAL held on 2/24/2014. Testimony taken. Bench trial held and continued to February 25, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/25/2014) |
| 02/25/2014 | 186 | Minute Entry for proceedings held before Judge David Hittner. Eleventh day of BENCH TRIAL held on 2/25/2014. Testimony taken. Bench trial held and continued to February 26, 2014 at 10:00 a.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, |

| | | |
|---|---|---|
| | | Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/26/2014) |
| 02/26/2014 | 188 | Minute Entry for proceedings held before Judge David Hittner. Twelftfh day of BENCH TRIAL held on 2/26/2014. Testimony taken. Defendant's rest their case. Closing arguments set for February 28, 2014 at 1:30 p.m. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Will Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Gayle Dye), filed.(ealexander, 4) (Entered: 02/27/2014) |
| 02/27/2014 | 187 | RESPONSE *to Motion for Reconsideration of Court's Ruling on Admissibility of "Business Record" Affidavit*, filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Nichols, Eric) (Entered: 02/27/2014) |
| 02/27/2014 | 189 | Sealed Event (Defendant's Exhibit DX530), filed. (Additional attachment(s) added on 4/3/2015: # 1 Exhibit) (hler, 4). (Entered: 02/27/2014) |
| 02/28/2014 | 190 | Minute Entry for proceedings held before Judge David Hittner. Thirteenth day of BENCH TRIAL held on 2/28/2014. Closing arguments held. The Court Reporter will produce and file the transcript by April 14, 2014. Parties will exchange Findings of Fact and Conclusion of Law by May 14, 2014 and the final Findings of Fact and Conclusions of Law will be filed by June 16, 2014. Appearances: David A Nicholas, Joshua R Kratka, Heather Govern, Philip Harlan Hilder, Phil Graham, Eric J R Nichols, Fields Alexander, Bryon A Rice, William Bradley Coffey, Keith A. Courtney.(Court Reporter: Peggy Antone), filed.(ealexander, 4) (Main Document 190 replaced on 3/3/2014) (ealexander, 4). Modified on 3/3/2014 (ealexander, 4). (Additional attachment(s) added on 4/3/2015: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (hler, 4). (Entered: 03/03/2014) |
| 03/04/2014 | 191 | ORDER that the entire trial trasncript will be filed and delivered on or before April 14, 2014. Parties shall exchange their initial drafts of the Findings of Fact and Conclusions of Law by May 14, 2014 and their final Findings of Fact and Conclusions of Law must be filed with the court by June 16, 2014. (Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 03/04/2014) |
| 03/14/2014 | 192 | AO 435 TRANSCRIPT ORDER FORM by Fields Alexander. This is to order a transcript of Pre-Trial held on 2/7/2014 before Judge David Hittner (original), filed. (olindor, 4) (Entered: 03/14/2014) |
| 03/21/2014 | 193 | AO 435 TRANSCRIPT ORDER FORM by Mary Rock. This is to order a transcript of Pretrial / Bench Trial held on 02/7/2014 & 02/10/2014-02/28/2014 before Judge David Hittner (Original), filed. (mxperez, 5) (Entered: 03/21/2014) |
| 03/21/2014 | 194 | AO 435 TRANSCRIPT ORDER FORM by 2/7/14; 2/10/14 - 2/28/14. This is to order a transcript of Pre-Trial and Bench Trial before Judge |

| | | |
|---|---|---|
| | | David Hittner (Original), filed. (lusmith, 3) (Entered: 03/21/2014) |
| 04/16/2014 | <u>195</u> | TRANSCRIPT re: Bench Trial - Day 1 of 13 held on February 10, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Poirrier Release of Transcript Restriction set for 7/15/2014., filed. (gdye, ) (Entered: 04/16/2014) |
| 04/16/2014 | <u>196</u> | TRANSCRIPT re: Bench Trial - Day 2 of 13 held on February 11, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/15/2014., filed. (gdye, ) (Entered: 04/16/2014) |
| 04/17/2014 | <u>197</u> | Notice of Filing of Official Transcript as to <u>195</u> Transcript, <u>196</u> Transcript. Party notified, filed. (hcarr, 4) (Entered: 04/17/2014) |
| 04/17/2014 | <u>198</u> | **This was incorrectly filed and has been corrected with document # 243.** TRANSCRIPT re: Bench Trial - Day 3 of 13 held on February 12, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/16/2014., filed. (gdye, ) Modified on 9/27/2017 (bcampos, 1). (Entered: 04/17/2014) |
| 04/17/2014 | <u>209</u> | AMENDED ORDER that the parties shall exchange their initial drafts of the Findings of Fact and Conclusions of Law by May 21, 2014 and file their final Findings of Fact and Concusions of Law with the Court by June 23, 2014.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 04/21/2014) |
| 04/18/2014 | <u>199</u> | TRANSCRIPT re: Bench Trial - Day 4 of 13 held on February 13, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/17/2014., filed. (gdye, ) (Entered: 04/18/2014) |
| 04/18/2014 | <u>200</u> | Notice of Filing of Official Transcript as to <u>198</u> Transcript. Party notified, filed. (hcarr, 4) (Entered: 04/18/2014) |
| 04/18/2014 | <u>201</u> | **This was incorrectly filed and has been corrected with document # 202.** TRANSCRIPT re: Bench Trial - Day 5 of 13 held on February 14, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/17/2014., filed. (gdye, ) Modified on 9/27/2017 (bcampos, 1). (Entered: 04/18/2014) |
| 04/18/2014 | <u>202</u> | TRANSCRIPT re: Bench Trial - Day 5 of 13 (CORRECTED INDEX PAGE) held on February 14, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/17/2014., filed. (gdye, ) (Entered: 04/18/2014) |
| 04/18/2014 | <u>203</u> | TRANSCRIPT re: Bench Trial - Day 6 of 13 held on February 18, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/17/2014., filed. (gdye, ) (Entered: 04/18/2014) |
| 04/19/2014 | <u>204</u> | TRANSCRIPT re: Bench Trial - Day 7 of 13 held on February 19, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. |

| | | |
|---|---|---|
| | | Ordering Party Alexander Release of Transcript Restriction set for 7/18/2014, filed. (gdye, ) (Entered: 04/19/2014) |
| 04/19/2014 | 205 | TRANSCRIPT re: Bench Trial - Day 9 of 13 held on February 21, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/18/2014., filed. (gdye, ) (Entered: 04/19/2014) |
| 04/20/2014 | 206 | TRANSCRIPT re: Bench Trial - Day 8 of 13 held on February 20, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/21/2014., filed. (gdye, ) (Entered: 04/20/2014) |
| 04/20/2014 | 207 | TRANSCRIPT re: Bench Trial - Day 10 of 13 held on February 24, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/21/2014., filed. (gdye, ) (Entered: 04/20/2014) |
| 04/21/2014 | 208 | Notice of Filing of Official Transcript as to 203 Transcript, 204 Transcript, 202 Transcript, 205 Transcript, 201 Transcript, 199 Transcript, 207 Transcript, 206 Transcript. Party notified, filed. (hcarr, 4) (Entered: 04/21/2014) |
| 04/21/2014 | 210 | TRANSCRIPT re: Bench Trial - Day 11 of 13 held on February 25, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/21/2014., filed. (gdye, ) (Entered: 04/21/2014) |
| 04/21/2014 | 211 | TRANSCRIPT re: Bench Trial - Day 12 of 13 held on February 26, 2014, before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/21/2014., filed. (gdye, ) (Entered: 04/21/2014) |
| 04/22/2014 | 212 | Notice of Filing of Official Transcript as to 211 Transcript, 210 Transcript. Party notified, filed. (hcarr, 4) (Entered: 04/22/2014) |
| 04/22/2014 | 213 | TRANSCRIPT re: Closing Arguments held on 2/28/2014 before Judge David Hittner. Court Reporter/Transcriber Peggy Antone. Release of Transcript Restriction set for 7/21/2014., filed. (emathis, 4) (Entered: 04/22/2014) |
| 04/22/2014 | 214 | TRANSCRIPT re: Pretrial Conference held on February 7, 2014 before Judge David Hittner. Court Reporter/Transcriber Dye. Ordering Party Alexander Release of Transcript Restriction set for 7/21/2014., filed. (gdye, ) (Entered: 04/22/2014) |
| 04/23/2014 | 215 | Notice of Filing of Official Transcript as to 214 Transcript, 213 Transcript. Party notified, filed. (hcarr, 4) (Entered: 04/23/2014) |
| 06/23/2014 | 216 | NOTICE *of Filing of Proposed Findings of Fact and Conclusions of Law* by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. (Attachments: # 1 Exhibit Attachment 1)(Coffey, William) (Entered: 06/23/2014) |
| 06/23/2014 | 217 | Exhibit List by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, |

| | | filed.(Coffey, William) (Entered: 06/23/2014) |
|---|---|---|
| 06/23/2014 | 218 | Proposed Findings of Fact/Conclusions of Law by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 06/23/2014) |
| 06/24/2014 | 219 | Exhibit List by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Trial Exhibit List)(Hilder, Philip) (Entered: 06/24/2014) |
| 08/25/2014 | 220 | ORDER that the parties shall file revised Findings of Fact and Conclusions of Law with the Court, in the same forms previously filed, by September 30, 2014. (Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 08/25/2014) |
| 09/08/2014 | 221 | AMENDED ORDER that the parties are to file their initial revised Findings of Fact and Conclusions of Law by 9/30/14 and their final by October 7, 2014. (Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 09/08/2014) |
| 10/07/2014 | 222 | Proposed Findings of Fact/Conclusions of Law by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 10/07/2014) |
| 10/07/2014 | 223 | CERTIFICATE OF SERVICE of 222 Proposed Findings of Fact/Conclusions of Law by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 10/07/2014) |
| 10/07/2014 | 224 | Proposed Findings of Fact/Conclusions of Law by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. (Attachments: # 1 Exhibit ExxonMobil Defs' Proposed FFCL)(Coffey, William) (Entered: 10/07/2014) |
| 12/17/2014 | 225 | FINDINGS OF FACT AND CONCLUSIONS OF LAW(Signed by Judge David Hittner) (Attachments: # 1 Continuation, # 2 Continuation) Parties notified.(ealexander, 4) (Entered: 12/17/2014) |
| 12/17/2014 | 226 | FINAL JUDGMENT. Case terminated on December 17, 2014(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 12/17/2014) |
| 12/31/2014 | 227 | BILL OF COSTS in total amount $80,658.48 by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Rice, Bryon) (Entered: 12/31/2014) |
| 01/07/2015 | 228 | Amended BILL OF COSTS in total amount $51,882.96 by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Rice, Bryon) (Entered: 01/07/2015) |
| 01/16/2015 | 229 | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 226 Final Judgment, 225 Findings of Fact & Conclusions of Law by Environment Texas Citizen Lobby, Inc., Sierra Club (Filing fee $ 505, receipt number 0541-14306388), filed.(Hilder, Philip) (Entered: 01/16/2015) |
| 01/20/2015 | 230 | |

| | | |
|---|---|---|
| | | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: <u>229</u> Notice of Appeal. Fee status: Paid. Reporter(s): ERO; Court Reporter: M. Malone, G. Dye, P. Antone, filed. (avleal, 1) (Additional attachment(s) added on 1/20/2015: # <u>1</u> Notice of Appeal, # <u>2</u> Final Judgment, # <u>3</u> Public Docket Sheet) (avleal, 1). (Entered: 01/20/2015) |
| 01/20/2015 | | Appeal Review Notes re: <u>229</u> Notice of Appeal. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of appeal.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 4, filed.(avleal, 1) (Entered: 01/20/2015) |
| 01/23/2015 | | Costs Taxed in the amount of $ 51,882.96 re: <u>228</u> Bill of Costs, filed. (dhansen, 4) (Entered: 01/23/2015) |
| 01/26/2015 | <u>231</u> | DKT-13 TRANSCRIPT ORDER FORM *Transcript Order* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Transcript is already on file in Clerk's office. (Hilder, Philip) Modified on 1/26/2015 (dnoriega, 1). (Entered: 01/26/2015) |
| 01/26/2015 | <u>232</u> | *Certificate of Service* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed.(Hilder, Philip) (Entered: 01/26/2015) |
| 01/26/2015 | | (Court only) Set/Cleared Flags. Appeal_Nat flag cleared. (dnoriega, 1) (Entered: 01/26/2015) |
| 02/02/2015 | | Notice of Assignment of USCA No. 15-20030 re: <u>229</u> Notice of Appeal, filed.(avleal, 1) (Entered: 02/02/2015) |
| 02/18/2015 | | (Court only) ***(PRIVATE ENTRY) Electronic Record on Appeal Requested from District Ccourt for 4:10-CV-4969. Electronic ROA due on 03/05/2015, filed. (mperez, 1) (Entered: 02/18/2015) |
| 03/06/2015 | | Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: <u>229</u> Notice of Appeal, USCA No. 15-20030, filed.(mperez, 1) (Entered: 03/06/2015) |
| 03/09/2015 | <u>233</u> | REQUEST for Electronic Copy of Certified Record on Appeal re: <u>229</u> Notice of Appeal, by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed.(Post, Russell) (Entered: 03/09/2015) |
| 03/10/2015 | <u>234</u> | Transmittal Letter on Appeal re: <u>229</u> Notice of Appeal,. The electronic record on CD (Vol. 1 & 2) is being sent to counsel for appellant, counsel for appellee via regular mail. (USCA No. 15-20030), filed. (mperez, 1) (Entered: 03/10/2015) |
| 03/11/2015 | <u>235</u> | DEFENDANT'S TRIAL EXHIBITS by ExxonMobil Chemical Company, filed. (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit, # <u>3</u> Exhibit, # <u>4</u> Exhibit, # <u>5</u> Exhibit)(hler, 4) (Additional attachment(s) added on 3/11/2015: # <u>6</u> Exhibit, # <u>7</u> Exhibit, # <u>8</u> Exhibit, # <u>9</u> Exhibit, # <u>10</u> Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # <u>11</u> Exhibit, # <u>12</u> Exhibit, # <u>13</u> Exhibit, # <u>14</u> Exhibit, # <u>15</u> Exhibit, # <u>16</u> |

Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 21 Exhibit, # 22 Exhibit, # 23 Exhibit, # 24 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 29 Exhibit, # 30 Exhibit, # 31 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 32 Exhibit, # 33 Exhibit, # 34 Exhibit, # 35 Exhibit, # 36 Exhibit, # 37 Exhibit, # 38 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 39 Exhibit, # 40 Exhibit, # 41 Exhibit, # 42 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 43 Exhibit, # 44 Exhibit, # 45 Exhibit, # 46 Exhibit, # 47 Exhibit, # 48 Exhibit, # 49 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 50 Exhibit, # 51 Exhibit, # 52 Exhibit, # 53 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 54 Exhibit, # 55 Exhibit, # 56 Exhibit, # 57 Exhibit, # 58 Exhibit, # 59 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 60 Exhibit, # 61 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 62 Exhibit, # 63 Exhibit, # 64 Exhibit, # 65 Exhibit, # 66 Exhibit, # 67 Exhibit, # 68 Exhibit, # 69 Exhibit, # 70 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 71 Exhibit, # 72 Exhibit, # 73 Exhibit, # 74 Exhibit, # 75 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 76 Exhibit, # 77 Exhibit, # 78 Exhibit, # 79 Exhibit, # 80 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 81 Exhibit, # 82 Exhibit, # 83 Exhibit, # 84 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 85 Exhibit, # 86 Exhibit, # 87 Exhibit, # 88 Exhibit, # 89 Exhibit, # 90 Exhibit, # 91 Exhibit, # 92 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 93 Exhibit, # 94 Exhibit, # 95 Exhibit, # 96 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 97 Exhibit, # 98 Exhibit, # 99 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 100 Exhibit, # 101 Exhibit, # 102 Exhibit, # 103 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 104 Exhibit, # 105 Exhibit, # 106 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 107 Exhibit, # 108 Exhibit, # 109 Exhibit, # 110 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 111 Exhibit, # 112 Exhibit, # 113 Exhibit, # 114 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 115 Exhibit, # 116 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 117 Exhibit, # 118 Exhibit, # 119 Exhibit, # 120 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 121 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 122 Exhibit, # 123 Exhibit, # 124 Exhibit, # 125 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 126 Exhibit, # 127 Exhibit, # 128 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 129 Exhibit, # 130 Exhibit, # 131 Exhibit, # 132 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 133 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 134 Exhibit, # 135 Exhibit, # 136 Exhibit, # 137 Exhibit, # 138 Exhibit, # 139 Exhibit, # 140 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 141 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 142 Exhibit, # 143 Exhibit, # 144 Exhibit, # 145 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 146 Exhibit) (hler, 4).

(Additional attachment(s) added on 3/11/2015: # 147 Exhibit, # 148 Exhibit, # 149 Exhibit, # 150 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 151 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 152 Exhibit, # 153 Exhibit, # 154 Exhibit, # 155 Exhibit, # 156 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 157 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 158 Exhibit, # 159 Exhibit, # 160 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 161 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 162 Exhibit, # 163 Exhibit, # 164 Exhibit, # 166 Exhibit, # 167 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 168 Exhibit, # 169 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 170 Exhibit, # 171 Exhibit, # 172 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 173 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 174 Exhibit, # 175 Exhibit, # 176 Exhibit, # 177 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 178 Exhibit, # 179 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 180 Exhibit, # 181 Exhibit, # 182 Exhibit, # 183 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 184 Exhibit, # 185 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 186 Exhibit, # 187 Exhibit, # 188 Exhibit, # 189 Exhibit, # 190 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 191 Exhibit, # 192 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 193 Exhibit, # 194 Exhibit, # 195 Exhibit, # 196 Exhibit) (hler, 4). Modified on 3/11/2015 (hler, 4). (Additional attachment(s) added on 3/11/2015: # 197 Exhibit, # 198 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 199 Exhibit, # 200 Exhibit, # 201 Exhibit, # 202 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 203 Exhibit, # 204 Exhibit, # 205 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 206 Exhibit, # 207 Exhibit, # 208 Exhibit, # 209 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 210 Exhibit, # 211 Exhibit, # 212 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 213 Exhibit, # 214 Exhibit, # 215 Exhibit, # 216 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 217 Exhibit, # 218 Exhibit, # 219 Exhibit, # 220 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 221 Exhibit, # 222 Exhibit, # 223 Exhibit, # 224 Exhibit, # 225 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 226 Exhibit, # 227 Exhibit, # 228 Exhibit, # 229 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 230 Exhibit, # 231 Exhibit, # 232 Exhibit, # 233 Exhibit, # 234 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 235 Exhibit, # 236 Exhibit, # 237 Exhibit, # 238 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 239 Exhibit, # 240 Exhibit, # 241 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 242 Exhibit, # 243 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 244 Exhibit, # 245 Exhibit, # 246 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 247 Exhibit, # 248 Exhibit, # 249 Exhibit, # 250 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 251 Exhibit, # 252 Exhibit, # 253 Exhibit, # 254 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 255 Exhibit, # 256 Exhibit, # 257 Exhibit, # 258 Exhibit, # 259 Exhibit, # 260

Exhibit, # 261 Exhibit) (hler, 4). (Additional attachment(s) added on
3/11/2015: # 262 Exhibit, # 263 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/11/2015: # 264 Exhibit, # 265 Exhibit) (hler,
4). (Additional attachment(s) added on 3/11/2015: # 266 Exhibit, # 267
Exhibit, # 268 Exhibit) (hler, 4). (Additional attachment(s) added on
3/11/2015: # 269 Exhibit, # 270 Exhibit, # 271 Exhibit, # 272 Exhibit,
# 273 Exhibit, # 274 Exhibit, # 275 Exhibit, # 276 Exhibit, # 277
Exhibit, # 278 Exhibit, # 279 Exhibit, # 280 Exhibit, # 281 Exhibit, #
282 Exhibit, # 283 Exhibit, # 284 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/11/2015: # 285 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/11/2015: # 286 Exhibit, # 287 Exhibit) (hler,
4). (Additional attachment(s) added on 3/11/2015: # 288 Exhibit, # 289
Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 290
Exhibit, # 291 Exhibit, # 292 Exhibit, # 293 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/11/2015: # 294 Exhibit, # 295
Exhibit, # 296 Exhibit, # 297 Exhibit, # 298 Exhibit, # 299 Exhibit, #
300 Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: #
301 Exhibit, # 302 Exhibit, # 303 Exhibit, # 304 Exhibit, # 305
Exhibit, # 306 Exhibit) (hler, 4). (Additional attachment(s) added on
3/11/2015: # 307 Exhibit, # 308 Exhibit, # 309 Exhibit, # 310 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/11/2015: # 311 Exhibit,
# 312 Exhibit, # 313 Exhibit, # 314 Exhibit, # 315 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/11/2015: # 316 Exhibit, # 317
Exhibit, # 318 Exhibit, # 319 Exhibit, # 320 Exhibit, # 321 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/11/2015: # 322 Exhibit,
# 323 Exhibit, # 324 Exhibit, # 325 Exhibit, # 326 Exhibit, # 327
Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 328
Exhibit, # 329 Exhibit, # 330 Exhibit, # 331 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/11/2015: # 332 Exhibit, # 333
Exhibit, # 334 Exhibit) (hler, 4). (Additional attachment(s) added on
3/11/2015: # 335 Exhibit, # 336 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/11/2015: # 337 Exhibit, # 338 Exhibit) (hler,
4). (Additional attachment(s) added on 3/11/2015: # 339 Exhibit) (hler,
4). (Additional attachment(s) added on 3/11/2015: # 340 Exhibit) (hler,
4). (Additional attachment(s) added on 3/11/2015: # 341 Exhibit) (hler,
4). (Additional attachment(s) added on 3/11/2015: # 342 Exhibit, # 343
Exhibit) (hler, 4). (Additional attachment(s) added on 3/11/2015: # 344
Exhibit, # 345 Exhibit) (hler, 4). (Additional attachment(s) added on
3/11/2015: # 346 Exhibit, # 347 Exhibit, # 348 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/11/2015: # 349 Exhibit, # 350
Exhibit, # 351 Exhibit, # 352 Exhibit, # 353 Exhibit, # 354 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/11/2015: # 355 Exhibit,
# 356 Exhibit, # 357 Exhibit) (hler, 4). (Additional attachment(s)
added on 3/11/2015: # 358 Exhibit, # 359 Exhibit, # 360 Exhibit) (hler,
4). (Additional attachment(s) added on 3/11/2015: # 361 Exhibit, # 362
Exhibit, # 363 Exhibit) (hler, 4). (Additional attachment(s) added on
3/12/2015: # 364 Exhibit, # 365 Exhibit, # 366 Exhibit, # 367 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/12/2015: # 368 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/12/2015: # 369 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/12/2015: # 370 Exhibit,
# 371 Exhibit) (hler, 4). (Additional attachment(s) added on 3/12/2015:
# 372 Exhibit) (hler, 4). (Additional attachment(s) added on 3/12/2015:
# 373 Exhibit, # 374 Exhibit) (hler, 4). (Additional attachment(s)

added on 3/12/2015: # 375 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 376 Exhibit, # 377 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 378 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 379 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 380 Exhibit, # 381 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 382 Exhibit, # 383 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 384 Exhibit, # 385 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 386 Exhibit, # 387 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 388 Exhibit, # 389 Exhibit, # 390 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 391 Exhibit, # 392 Exhibit, # 393 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 394 Exhibit, # 395 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 396 Exhibit, # 397 Exhibit, # 398 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 399 Exhibit, # 400 Exhibit, # 401 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 402 Exhibit, # 403 Exhibit, # 404 Exhibit, # 405 Exhibit, # 406 Exhibit, # 407 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 408 Exhibit, # 409 Exhibit, # 410 Exhibit, # 411 Exhibit, # 412 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 413 Exhibit, # 414 Exhibit, # 415 Exhibit, # 416 Exhibit, # 417 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 418 Exhibit, # 419 Exhibit, # 420 Exhibit, # 421 Exhibit, # 422 Exhibit, # 423 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 424 Exhibit, # 425 Exhibit, # 426 Exhibit, # 427 Exhibit, # 428 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 429 Exhibit, # 430 Exhibit, # 431 Exhibit, # 432 Exhibit, # 433 Exhibit, # 434 Exhibit, # 435 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 436 Exhibit, # 437 Exhibit, # 438 Exhibit, # 439 Exhibit, # 440 Exhibit, # 441 Exhibit, # 442 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 443 Exhibit, # 444 Exhibit, # 445 Exhibit, # 446 Exhibit, # 447 Exhibit, # 448 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 449 Exhibit, # 450 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 451 Exhibit, # 452 Exhibit, # 453 Exhibit, # 454 Exhibit, # 455 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 456 Exhibit, # 457 Exhibit, # 458 Exhibit, # 459 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 460 Exhibit, # 461 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 462 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 463 Exhibit, # 464 Exhibit, # 465 Exhibit, # 466 Exhibit, # 467 Exhibit, # 468 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 469 Exhibit, # 470 Exhibit, # 471 Exhibit, # 472 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 473 Exhibit, # 474 Exhibit, # 475 Exhibit, # 476 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 477 Exhibit, # 478 Exhibit, # 479 Exhibit, # 480 Exhibit, # 481 Exhibit, # 482 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 483 Exhibit, # 484 Exhibit, # 485 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 486 Exhibit, # 487 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 488 Exhibit, # 489 Exhibit, # 490 Exhibit, # 491 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: # 492 Exhibit, # 493

Exhibit, # 494 Exhibit) (hler, 4). (Additional attachment(s) added on
3/13/2015: # 495 Exhibit, # 496 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/13/2015: # 497 Exhibit, # 498 Exhibit, # 499
Exhibit, # 500 Exhibit, # 501 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/13/2015: # 502 Exhibit, # 503 Exhibit, # 504
Exhibit, # 505 Exhibit, # 506 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/13/2015: # 507 Exhibit, # 508 Exhibit, # 509
Exhibit, # 510 Exhibit) (hler, 4). (Additional attachment(s) added on
3/13/2015: # 511 Exhibit, # 512 Exhibit, # 513 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/13/2015: # 514 Exhibit, # 515
Exhibit, # 516 Exhibit, # 517 Exhibit, # 518 Exhibit, # 519 Exhibit, #
520 Exhibit) (hler, 4). (Additional attachment(s) added on 3/13/2015: #
521 Exhibit, # 522 Exhibit, # 523 Exhibit, # 524 Exhibit, # 525
Exhibit, # 526 Exhibit, # 527 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/16/2015: # 528 Exhibit, # 530 Exhibit, # 531
Exhibit, # 532 Exhibit, # 533 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/16/2015: # 534 Exhibit, # 535 Exhibit, # 536
Exhibit, # 537 Exhibit) (hler, 4). (Additional attachment(s) added on
3/16/2015: # 538 Exhibit, # 539 Exhibit, # 540 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/16/2015: # 541 Exhibit, # 542
Exhibit, # 543 Exhibit, # 544 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/16/2015: # 545 Exhibit, # 546 Exhibit, # 547
Exhibit) (hler, 4). (Additional attachment(s) added on 3/16/2015: # 548
Exhibit, # 549 Exhibit, # 550 Exhibit, # 551 Exhibit, # 552 Exhibit, #
553 Exhibit) (hler, 4). (Additional attachment(s) added on 3/16/2015:
554 Exhibit, # 555 Exhibit, # 556 Exhibit, # 557 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/16/2015: # 558 Exhibit, # 559
Exhibit, # 560 Exhibit, # 561 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/16/2015: # 562 Exhibit, # 563 Exhibit, # 564
Exhibit, # 565 Exhibit, # 566 Exhibit) (hler, 4). Modified on 3/17/2015
(hler, 4). Unable to attach the following DX026J.104416 pdf are
shortcuts , (Additional attachment(s) added on 3/17/2015: # 567
Exhibit, # 568 Exhibit, # 569 Exhibit, # 570 Exhibit, # 571 Exhibit, #
572 Exhibit, # 573 Exhibit) (hler, 4). (Additional attachment(s) added
on 3/17/2015: # 574 Exhibit, # 575 Exhibit, # 576 Exhibit, # 577
Exhibit, # 578 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 579 Exhibit, # 580 Exhibit, # 581 Exhibit, # 582 Exhibit,
# 583 Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015:
# 584 Exhibit, # 585 Exhibit) (hler, 4). (Additional attachment(s)
added on 3/17/2015: # 586 Exhibit, # 587 Exhibit, # 588 Exhibit, # 589
Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015: # 590
Exhibit, # 591 Exhibit, # 592 Exhibit, # 593 Exhibit, # 594 Exhibit, #
595 Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015: #
596 Exhibit, # 597 Exhibit, # 598 Exhibit, # 599 Exhibit, # 600
Exhibit, # 601 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 602 Exhibit, # 603 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/17/2015: # 604 Exhibit, # 605 Exhibit, # 606
Exhibit, # 607 Exhibit, # 608 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/17/2015: # 609 Exhibit, # 610 Exhibit, # 611
Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015: # 612
Exhibit, # 613 Exhibit, # 614 Exhibit, # 615 Exhibit, # 616 Exhibit, #
617 Exhibit, # 618 Exhibit, # 619 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/17/2015: # 620 Exhibit, # 621 Exhibit, # 622

Exhibit, # 623 Exhibit, # 624 Exhibit, # 625 Exhibit, # 626 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/17/2015: # 627 Exhibit,
# 628 Exhibit, # 629 Exhibit, # 630 Exhibit, # 631 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/17/2015: # 632 Exhibit, # 633
Exhibit, # 634 Exhibit, # 635 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/17/2015: # 636 Exhibit, # 637 Exhibit, # 638
Exhibit, # 639 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 640 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 641 Exhibit, # 645 Exhibit, # 646 Exhibit, # 647 Exhibit,
# 648 Exhibit, # 649 Exhibit) (hler, 4). (Additional attachment(s)
added on 3/17/2015: # 650 Exhibit, # 651 Exhibit, # 652 Exhibit, # 653
Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015: # 654
Exhibit, # 655 Exhibit, # 656 Exhibit, # 657 Exhibit, # 658 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/17/2015: # 659 Exhibit,
# 660 Exhibit, # 661 Exhibit) (hler, 4). (Additional attachment(s)
added on 3/17/2015: # 662 Exhibit, # 663 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/17/2015: # 664 Exhibit, # 665
Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015: # 666
Exhibit, # 667 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 668 Exhibit, # 669 Exhibit, # 670 Exhibit, # 671 Exhibit,
# 672 Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015:
# 673 Exhibit, # 674 Exhibit, # 675 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/17/2015: # 676 Exhibit, # 677 Exhibit) (hler,
4). (Additional attachment(s) added on 3/17/2015: # 678 Exhibit) (hler,
4). (Additional attachment(s) added on 3/17/2015: # 679 Exhibit, # 680
Exhibit) (hler, 4). (Additional attachment(s) added on 3/17/2015: # 681
Exhibit, # 682 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 683 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 684 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 685 Exhibit) (hler, 4). (Additional attachment(s) added on
3/17/2015: # 686 Exhibit, # 687 Exhibit, # 688 Exhibit, # 689 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/17/2015: # 690 Exhibit,
# 691 Exhibit, # 692 Exhibit, # 693 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/17/2015: # 694 Exhibit, # 695 Exhibit) (hler,
4). (Additional attachment(s) added on 3/18/2015: # 696 Exhibit, # 697
Exhibit, # 698 Exhibit, # 699 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/18/2015: # 700 Exhibit, # 701 Exhibit, # 702
Exhibit) (hler, 4). (Additional attachment(s) added on 3/18/2015: # 703
Exhibit, # 704 Exhibit, # 705 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/18/2015: # 706 Exhibit, # 707 Exhibit, # 708
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 709
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 710
Exhibit, # 711 Exhibit) (hler, 4). (Additional attachment(s) added on
3/19/2015: # 712 Exhibit, # 713 Exhibit, # 714 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 715 Exhibit, # 716
Exhibit, # 717 Exhibit, # 718 Exhibit, # 719 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 720 Exhibit, # 721
Exhibit, # 722 Exhibit, # 723 Exhibit, # 724 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 725 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 726 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 727 Exhibit, # 728
Exhibit, # 729 Exhibit, # 731 Exhibit, # 732 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 733 Exhibit, # 734

Exhibit, # 735 Exhibit, # 736 Exhibit, # 737 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 738 Exhibit, # 739
Exhibit, # 740 Exhibit, # 741 Exhibit, # 742 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 743 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 744 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 745 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 746 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 747 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 748 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 749 Exhibit, # 750
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 751
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 752
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 753
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 754
Exhibit, # 755 Exhibit, # 756 Exhibit, # 757 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 758 Exhibit, # 759
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 760
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 761
Exhibit) (hler, 4). (Additional attachment(s) added on 3/19/2015: # 762
Exhibit, # 763 Exhibit, # 764 Exhibit, # 765 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 766 Exhibit, # 767
Exhibit, # 768 Exhibit, # 769 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/19/2015: # 770 Exhibit, # 771 Exhibit) (hler,
4). (Additional attachment(s) added on 3/19/2015: # 772 Exhibit, # 773
Exhibit, # 774 Exhibit, # 775 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/19/2015: # 776 Exhibit, # 777 Exhibit, # 778
Exhibit, # 779 Exhibit) (hler, 4). (Additional attachment(s) added on
3/19/2015: # 780 Exhibit, # 781 Exhibit, # 782 Exhibit, # 783 Exhibit,
# 784 Exhibit, # 785 Exhibit) (hler, 4). (Additional attachment(s)
added on 3/19/2015: # 786 Exhibit, # 787 Exhibit, # 788 Exhibit, # 789
Exhibit, # 790 Exhibit) (hler, 4). (Additional attachment(s) added on
3/19/2015: # 791 Exhibit, # 792 Exhibit, # 793 Exhibit, # 794 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/19/2015: # 795 Exhibit,
# 796 Exhibit, # 797 Exhibit, # 798 Exhibit) (hler, 4). (Additional
attachment(s) added on 3/19/2015: # 801 Exhibit, # 802 Exhibit, # 803
Exhibit, # 804 Exhibit) (hler, 4). (Additional attachment(s) added on
3/19/2015: # 805 Exhibit, # 806 Exhibit, # 807 Exhibit, # 808 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/19/2015: # 809 Exhibit,
# 810 Exhibit, # 811 Exhibit, # 812 Exhibit, # 813 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 814 Exhibit, # 815
Exhibit, # 816 Exhibit, # 817 Exhibit, # 818 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/19/2015: # 819 Exhibit, # 820
Exhibit, # 821 Exhibit, # 822 Exhibit, # 823 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/20/2015: # 824 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/20/2015: # 825 Exhibit, # 826
Exhibit, # 827 Exhibit, # 828 Exhibit, # 829 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/20/2015: # 830 Exhibit, # 831
Exhibit, # 832 Exhibit, # 833 Exhibit, # 834 Exhibit) (hler, 4).
(Additional attachment(s) added on 3/20/2015: # 835 Exhibit, # 836
Exhibit, # 837 Exhibit, # 838 Exhibit, # 839 Exhibit, # 840 Exhibit)
(hler, 4). (Additional attachment(s) added on 3/20/2015: # 841 Exhibit,
# 842 Exhibit, # 843 Exhibit, # 844 Exhibit, # 845 Exhibit, # 846
Exhibit, # 847 Exhibit) (hler, 4). (Additional attachment(s) added on

3/20/2015: # 848 Exhibit, # 849 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 850 Exhibit, # 851 Exhibit, # 852 Exhibit, # 853 Exhibit, # 854 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 855 Exhibit, # 856 Exhibit, # 857 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 858 Exhibit, # 859 Exhibit, # 860 Exhibit, # 861 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 862 Exhibit, # 863 Exhibit, # 864 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 865 Exhibit, # 866 Exhibit, # 867 Exhibit, # 868 Exhibit, # 869 Exhibit) (hler, 4). Modified on 3/20/2015 (hler, 4). (Additional attachment(s) added on 3/20/2015: # 870 Exhibit, # 871 Exhibit, # 872 Exhibit, # 873 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 874 Exhibit, # 875 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 876 Exhibit, # 877 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 878 Exhibit, # 879 Exhibit, # 880 Exhibit, # 881 Exhibit, # 882 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 883 Exhibit, # 884 Exhibit, # 885 Exhibit, # 886 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 887 Exhibit, # 888 Exhibit, # 889 Exhibit, # 890 Exhibit, # 891 Exhibit) (hler, 4). (Additional attachment(s) added on 3/20/2015: # 892 Exhibit, # 893 Exhibit, # 894 Exhibit, # 895 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 896 Exhibit, # 897 Exhibit, # 898 Exhibit, # 899 Exhibit, # 900 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 901 Exhibit, # 902 Exhibit, # 903 Exhibit, # 904 Exhibit, # 905 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 906 Exhibit, # 907 Exhibit, # 908 Exhibit, # 909 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 910 Exhibit, # 911 Exhibit, # 912 Exhibit, # 913 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 914 Exhibit, # 915 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 916 Exhibit, # 917 Exhibit, # 918 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 919 Exhibit, # 920 Exhibit, # 921 Exhibit, # 922 Exhibit, # 923 Exhibit, # 924 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 925 Exhibit, # 926 Exhibit, # 927 Exhibit, # 928 Exhibit, # 929 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 930 Exhibit, # 931 Exhibit, # 932 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 933 Exhibit, # 934 Exhibit, # 935 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 936 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 937 Exhibit, # 938 Exhibit, # 939 Exhibit, # 940 Exhibit, # 941 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 942 Exhibit, # 943 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 944 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 945 Exhibit, # 946 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 947 Exhibit, # 948 Exhibit, # 949 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 950 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 951 Exhibit, # 952 Exhibit, # 953 Exhibit, # 954 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 955 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 956 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 957 Exhibit, # 958 Exhibit, # 959 Exhibit, # 960 Exhibit) (hler, 4). (Additional

attachment(s) added on 3/23/2015: # 961 Exhibit, # 962 Exhibit, # 963 Exhibit, # 964 Exhibit, # 965 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 966 Exhibit, # 967 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 968 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 969 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 970 Exhibit) (hler, 4). (Additional attachment(s) added on 3/23/2015: # 971 Exhibit, # 972 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 974 Exhibit, # 975 Exhibit, # 976 Exhibit, # 977 Exhibit, # 978 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 979 Exhibit, # 980 Exhibit, # 981 Exhibit, # 982 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 983 Exhibit, # 984 Exhibit, # 985 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 986 Exhibit, # 987 Exhibit, # 988 Exhibit, # 989 Exhibit, # 990 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 991 Exhibit, # 992 Exhibit, # 993 Exhibit, # 994 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 995 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 996 Exhibit, # 997 Exhibit, # 998 Exhibit, # 999 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1000 Exhibit, # 1001 Exhibit, # 1002 Exhibit, # 1003 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1004 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1005 Exhibit, # 1006 Exhibit, # 1007 Errata, # 1008 Exhibit, # 1009 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1010 Exhibit, # 1011 Exhibit, # 1012 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1013 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1014 Exhibit, # 1015 Exhibit, # 1016 Exhibit, # 1017 Exhibit, # 1018 Exhibit, # 1019 Exhibit, # 1020 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1021 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1022 Exhibit, # 1023 Exhibit, # 1024 Exhibit, # 1025 Exhibit, # 1026 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1027 Exhibit, # 1028 Exhibit, # 1029 Exhibit, # 1030 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1031 Exhibit, # 1032 Exhibit, # 1033 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1034 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1035 Exhibit, # 1036 Exhibit, # 1037 Exhibit, # 1038 Exhibit, # 1039 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1040 Exhibit, # 1041 Exhibit, # 1042 Exhibit, # 1043 Exhibit, # 1044 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1045 Exhibit, # 1046 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1047 Exhibit, # 1048 Exhibit, # 1049 Exhibit, # 1050 Exhibit, # 1051 Exhibit, # 1052 Exhibit, # 1053 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1054 Exhibit, # 1055 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1056 Exhibit, # 1057 Exhibit, # 1058 Exhibit, # 1059 Exhibit, # 1060 Exhibit, # 1061 Exhibit, # 1062 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1063 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1064 Exhibit, # 1065 Exhibit, # 1066 Exhibit, # 1067 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1068 Exhibit, # 1069 Exhibit, # 1070 Exhibit, # 1071 Exhibit) (hler, 4). (Additional attachment(s)

added on 3/24/2015: # 1072 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1073 Exhibit, # 1074 Exhibit, # 1075 Exhibit, # 1076 Exhibit, # 1077 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1078 Exhibit, # 1079 Exhibit, # 1080 Exhibit, # 1081 Exhibit, # 1082 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1083 Exhibit, # 1084 Exhibit, # 1085 Exhibit, # 1086 Exhibit, # 1087 Exhibit, # 1088 Exhibit, # 1089 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1090 Exhibit, # 1091 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1092 Exhibit, # 1093 Exhibit, # 1094 Exhibit, # 1095 Exhibit, # 1096 Exhibit, # 1097 Exhibit, # 1098 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1099 Exhibit, # 1100 Exhibit, # 1101 Exhibit, # 1102 Exhibit, # 1103 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1104 Exhibit, # 1105 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1106 Exhibit, # 1107 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1108 Exhibit, # 1109 Exhibit, # 1110 Exhibit, # 1111 Exhibit, # 1112 Exhibit, # 1113 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1114 Exhibit, # 1115 Exhibit, # 1116 Exhibit, # 1117 Exhibit, # 1118 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1119 Exhibit, # 1120 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1121 Exhibit, # 1122 Exhibit, # 1123 Exhibit, # 1124 Exhibit, # 1125 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1126 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1127 Exhibit, # 1128 Exhibit, # 1129 Exhibit, # 1130 Exhibit, # 1131 Exhibit, # 1132 Exhibit, # 1133 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1134 Exhibit, # 1135 Exhibit, # 1136 Exhibit, # 1137 Exhibit, # 1138 Exhibit, # 1139 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1140 Exhibit, # 1141 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1142 Exhibit, # 1143 Exhibit, # 1144 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1145 Exhibit, # 1146 Exhibit, # 1147 Exhibit, # 1148 Exhibit, # 1149 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1150 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1151 Exhibit, # 1152 Exhibit, # 1153 Exhibit, # 1154 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1155 Exhibit, # 1156 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1157 Exhibit, # 1158 Exhibit, # 1159 Exhibit, # 1160 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1161 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1162 Exhibit, # 1163 Exhibit, # 1164 Exhibit, # 1165 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1166 Exhibit, # 1167 Exhibit, # 1168 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1169 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1170 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1171 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1172 Exhibit, # 1173 Exhibit, # 1174 Exhibit, # 1175 Exhibit, # 1176 Exhibit, # 1177 Exhibit, # 1178 Exhibit, # 1179 Exhibit) (hler, 4). (Additional attachment(s) added on 3/24/2015: # 1180 Exhibit, # 1181 Exhibit, # 1182 Exhibit) (hler, 4). Modified on 3/26/2015 (hler, 4). Unable to attach the following DX165, DX166,

DX167 and DX197 Excel Speadsheets pdf folders. (Additional attachment(s) added on 3/26/2015: # 1183 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1184 Exhibit, # 1185 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1186 Exhibit, # 1187 Exhibit, # 1188 Exhibit, # 1189 Exhibit, # 1190 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1191 Exhibit, # 1192 Exhibit, # 1193 Exhibit, # 1194 Exhibit, # 1195 Exhibit, # 1196 Exhibit, # 1197 Exhibit ) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1198 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1199 Exhibit, # 1200 Exhibit, # 1201 Exhibit, # 1202 Exhibit, # 1203 Exhibit, # 1204 Exhibit, # 1205 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1206 Exhibit, # 1207 Exhibit, # 1208 Exhibit, # 1209 Exhibit, # 1210 Exhibit, # 1211 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1212 Exhibit, # 1213 Exhibit, # 1214 Exhibit, # 1215 Exhibit, # 1216 Exhibit, # 1217 Exhibit, # 1218 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1219 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1220 Exhibit, # 1221 Exhibit, # 1222 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1223 Exhibit, # 1224 Exhibit, # 1225 Exhibit, # 1226 Exhibit, # 1227 Exhibit, # 1228 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1229 Exhibit, # 1230 Exhibit, # 1231 Exhibit, # 1232 Exhibit, # 1233 Exhibit, # 1234 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1235 Exhibit, # 1236 Exhibit, # 1237 Exhibit, # 1238 Exhibit, # 1239 Exhibit) (hler, 4). Unable to attach the following DX037 (pictures) on 3/27/2015 (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1240 Exhibit, # 1241 Exhibit, # 1242 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1243 Exhibit, # 1244 Exhibit, # 1245 Exhibit, # 1246 Exhibit, # 1247 Exhibit, # 1248 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1249 Exhibit, # 1250 Exhibit, # 1251 Exhibit, # 1252 Exhibit, # 1253 Exhibit, # 1254 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1255 Exhibit, # 1256 Exhibit, # 1257 Exhibit, # 1258 Exhibit, # 1259 Exhibit, # 1260 Exhibit, # 1261 Exhibit) (hler, 4). (Additional attachment(s) added on 3/27/2015: # 1262 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1263 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1264 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1265 Exhibit, # 1266 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1267 Exhibit, # 1268 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1269 Exhibit, # 1270 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1271 Exhibit, # 1272 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1273 Exhibit, # 1274 Exhibit, # 1275 Exhibit, # 1276 Exhibit, # 1277 Exhibit, # 1278 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1279 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1280 Exhibit, # 1281 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1282 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1283 Exhibit, # 1284 Exhibit, # 1285 Exhibit, # 1286 Exhibit, # 1287 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1288 Exhibit, # 1289 Exhibit, # 1290 Exhibit, # 1291 Exhibit, # 1292 Exhibit) (hler, 4). (Additional attachment(s) added on

4/3/2015: # 1293 Exhibit, # 1294 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1295 Exhibit, # 1296 Exhibit, # 1297 Exhibit, # 1298 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1299 Exhibit, # 1300 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1301 Exhibit, # 1302 Exhibit, # 1303 Exhibit, # 1304 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1305 Exhibit, # 1306 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1307 Exhibit, # 1308 Exhibit, # 1309 Exhibit, # 1310 Exhibit, # 1311 Exhibit, # 1312 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1313 Exhibit, # 1314 Exhibit, # 1315 Exhibit, # 1316 Exhibit, # 1317 Exhibit, # 1318 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1319 Exhibit, # 1320 Exhibit, # 1321 Exhibit, # 1322 Exhibit, # 1323 Exhibit, # 1324 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1325 Exhibit, # 1326 Exhibit, # 1327 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1328 Exhibit, # 1329 Exhibit, # 1330 Exhibit, # 1331 Exhibit, # 1332 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1333 Exhibit, # 1334 Exhibit, # 1335 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1336 Exhibit, # 1337 Exhibit, # 1338 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1339 Exhibit, # 1340 Exhibit, # 1341 Exhibit, # 1342 Exhibit, # 1343 Exhibit, # 1344 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1345 Exhibit, # 1346 Exhibit, # 1347 Exhibit, # 1348 Exhibit, # 1349 Exhibit, # 1350 Exhibit, # 1351 Exhibit, # 1352 Exhibit) (hler, 4). (Additional attachment(s) added on 4/3/2015: # 1353 Exhibit, # 1354 Exhibit, # 1355 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1356 Exhibit, # 1357 Exhibit, # 1358 Exhibit, # 1359 Exhibit, # 1360 Exhibit, # 1361 Exhibit, # 1362 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1363 Exhibit, # 1364 Exhibit, # 1365 Exhibit, # 1366 Exhibit, # 1367 Exhibit, # 1368 Exhibit, # 1369 Exhibit, # 1370 Exhibit, # 1371 Exhibit, # 1372 Exhibit, # 1373 Exhibit, # 1374 Exhibit, # 1375 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1376 Exhibit, # 1377 Exhibit, # 1378 Exhibit, # 1379 Exhibit, # 1380 Exhibit, # 1381 Exhibit, # 1382 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1383 Exhibit, # 1384 Exhibit, # 1385 Exhibit, # 1386 Exhibit, # 1387 Exhibit, # 1388 Exhibit, # 1389 Exhibit, # 1390 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1391 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1392 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1393 Exhibit, # 1394 Exhibit, # 1395 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1396 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1397 Exhibit, # 1398 Exhibit, # 1399 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1400 Exhibit, # 1401 Exhibit, # 1402 Exhibit, # 1403 Exhibit, # 1404 Exhibit, # 1405 Exhibit, # 1406 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1407 Exhibit, # 1408 Exhibit, # 1409 Exhibit, # 1410 Exhibit, # 1411 Exhibit, # 1412 Exhibit, # 1413 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1414 Exhibit, # 1415 Exhibit, # 1416 Exhibit, # 1417 Exhibit, # 1418 Exhibit, # 1419 Exhibit, # 1420 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1421 Exhibit, # 1422

Exhibit, # 1423 Exhibit, # 1424 Exhibit, # 1425 Exhibit, # 1426
Exhibit, # 1427 Exhibit, # 1428 Exhibit) (hler, 4). (Additional
attachment(s) added on 4/6/2015: # 1429 Exhibit, # 1430 Exhibit, #
1431 Exhibit, # 1432 Exhibit, # 1433 Exhibit, # 1434 Exhibit) (hler,
4). (Additional attachment(s) added on 4/6/2015: # 1435 Exhibit, #
1436 Exhibit, # 1437 Exhibit, # 1438 Exhibit) (hler, 4). (Additional
attachment(s) added on 4/6/2015: # 1439 Exhibit, # 1440 Exhibit, #
1441 Exhibit, # 1442 Exhibit, # 1443 Exhibit, # 1444 Exhibit, # 1445
Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1446
Exhibit, # 1447 Exhibit, # 1448 Exhibit, # 1449 Exhibit, # 1450
Exhibit, # 1451 Exhibit, # 1452 Exhibit, # 1453 Exhibit, # 1454
Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1455
Exhibit, # 1456 Exhibit, # 1457 Exhibit, # 1458 Exhibit, # 1459
Exhibit, # 1460 Exhibit) (hler, 4). (Additional attachment(s) added on
4/6/2015: # 1461 Exhibit, # 1462 Exhibit, # 1463 Exhibit, # 1464
Exhibit, # 1465 Exhibit, # 1466 Exhibit, # 1467 Exhibit, # 1468
Exhibit, # 1469 Exhibit) (hler, 4). (Additional attachment(s) added on
4/6/2015: # 1470 Exhibit, # 1471 Exhibit, # 1472 Exhibit, # 1473
Exhibit, # 1474 Exhibit, # 1475 Exhibit, # 1476 Exhibit, # 1477
Exhibit, # 1478 Exhibit, # 1479 Exhibit) (hler, 4). (Additional
attachment(s) added on 4/6/2015: # 1480 Exhibit, # 1481 Exhibit)
(hler, 4). (Additional attachment(s) added on 4/6/2015: # 1482 Exhibit,
# 1483 Exhibit, # 1484 Exhibit, # 1485 Exhibit) (hler, 4). (Additional
attachment(s) added on 4/6/2015: # 1486 Exhibit, # 1487 Exhibit, #
1488 Exhibit, # 1489 Exhibit) (hler, 4). (Additional attachment(s)
added on 4/6/2015: # 1490 Exhibit, # 1491 Exhibit, # 1492 Exhibit, #
1493 Exhibit, # 1494 Exhibit, # 1495 Exhibit, # 1496 Exhibit) (hler,
4). (Additional attachment(s) added on 4/6/2015: # 1497 Exhibit, #
1498 Exhibit, # 1499 Exhibit, # 1500 Exhibit, # 1501 Exhibit, # 1502
Exhibit, # 1503 Exhibit, # 1504 Exhibit, # 1505 Exhibit) (hler, 4).
(Additional attachment(s) added on 4/6/2015: # 1506 Exhibit, # 1507
Exhibit, # 1508 Exhibit, # 1510 Exhibit, # 1511 Exhibit, # 1512
Exhibit, # 1513 Exhibit, # 1514 Exhibit) (hler, 4). (Additional
attachment(s) added on 4/6/2015: # 1515 Exhibit, # 1516 Exhibit, #
1517 Exhibit, # 1518 Exhibit, # 1519 Exhibit, # 1520 Exhibit, # 1521
Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1522
Exhibit, # 1523 Exhibit, # 1524 Exhibit, # 1525 Exhibit, # 1526
Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1527
Exhibit, # 1528 Exhibit, # 1529 Exhibit, # 1530 Exhibit, # 1531
Exhibit, # 1532 Exhibit, # 1533 Exhibit, # 1534 Exhibit, # 1535
Exhibit, # 1536 Exhibit) (hler, 4). (Additional attachment(s) added on
4/6/2015: # 1537 Exhibit, # 1538 Exhibit, # 1539 Exhibit, # 1540
Exhibit, # 1541 Exhibit, # 1542 Exhibit, # 1543 Exhibit, # 1544
Exhibit, # 1545 Exhibit, # 1546 Exhibit) (hler, 4). (Additional
attachment(s) added on 4/6/2015: # 1547 Exhibit, # 1548 Exhibit, #
1549 Exhibit, # 1550 Exhibit, # 1551 Exhibit, # 1552 Exhibit, # 1553
Exhibit, # 1554 Exhibit, # 1555 Exhibit, # 1556 Exhibit) (hler, 4).
(Additional attachment(s) added on 4/6/2015: # 1557 Exhibit, # 1558
Exhibit, # 1559 Exhibit, # 1560 Exhibit, # 1561 Exhibit, # 1562
Exhibit, # 1563 Exhibit, # 1564 Exhibit, # 1565 Exhibit, # 1566
Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1567
Exhibit, # 1568 Exhibit, # 1569 Exhibit, # 1570 Exhibit, # 1571
Exhibit, # 1572 Exhibit, # 1573 Exhibit, # 1574 Exhibit, # 1575

| | | |
|---|---|---|
| | | Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1576 Exhibit, # 1577 Exhibit, # 1578 Exhibit, # 1579 Exhibit, # 1580 Exhibit, # 1581 Exhibit, # 1582 Exhibit, # 1583 Exhibit, # 1584 Exhibit, # 1585 Exhibit, # 1586 Exhibit, # 1587 Exhibit, # 1588 Exhibit, # 1589 Exhibit, # 1590 Exhibit, # 1591 Exhibit, # 1592 Exhibit) (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1593 Exhibit, # 1594 Exhibit, # 1595 Exhibit, # 1596 Exhibit, # 1597 Exhibit, # 1598 Exhibit, # 1599 Exhibit) (hler, 4). Modified on 4/6/2015 (hler, 4). (Additional attachment(s) added on 4/6/2015: # 1600 Exhibit, # 1601 Exhibit, # 1602 Exhibit, # 1603 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1604 Exhibit, # 1605 Exhibit, # 1606 Exhibit, # 1607 Exhibit, # 1608 Exhibit, # 1609 Exhibit, # 1610 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1611 Exhibit, # 1612 Exhibit, # 1613 Exhibit, # 1614 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1615 Exhibit, # 1616 Exhibit, # 1617 Exhibit, # 1618 Exhibit, # 1619 Exhibit, # 1620 Exhibit, # 1621 Exhibit, # 1622 Exhibit, # 1623 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1624 Exhibit, # 1625 Exhibit, # 1626 Exhibit, # 1627 Exhibit, # 1628 Exhibit, # 1629 Exhibit, # 1630 Exhibit, # 1631 Exhibit, # 1632 Exhibit, # 1633 Exhibit, # 1634 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1635 Exhibit, # 1636 Exhibit, # 1637 Exhibit, # 1638 Exhibit, # 1639 Exhibit, # 1640 Exhibit, # 1641 Exhibit, # 1642 Exhibit, # 1643 Exhibit, # 1644 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1645 Exhibit, # 1646 Exhibit, # 1647 Exhibit, # 1648 Exhibit, # 1649 Exhibit, # 1650 Exhibit, # 1651 Exhibit, # 1652 Exhibit, # 1653 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1654 Exhibit, # 1655 Exhibit, # 1656 Exhibit, # 1657 Exhibit, # 1658 Exhibit, # 1659 Exhibit, # 1660 Exhibit, # 1661 Exhibit, # 1662 Exhibit, # 1663 Exhibit, # 1664 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1665 Exhibit, # 1666 Exhibit, # 1667 Exhibit, # 1668 Exhibit, # 1669 Exhibit, # 1670 Exhibit, # 1671 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1672 Exhibit, # 1673 Exhibit, # 1674 Exhibit, # 1675 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1676 Exhibit, # 1677 Exhibit, # 1678 Exhibit, # 1679 Exhibit, # 1680 Exhibit, # 1681 Exhibit, # 1682 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1683 Exhibit, # 1684 Exhibit, # 1685 Exhibit, # 1686 Exhibit, # 1687 Exhibit, # 1688 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1690 Exhibit, # 1693 Exhibit, # 1694 Exhibit, # 1695 Exhibit, # 1696 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1697 Exhibit, # 1698 Exhibit, # 1699 Exhibit, # 1700 Exhibit, # 1701 Exhibit, # 1702 Exhibit, # 1703 Exhibit) (hler, 4). (Additional attachment(s) added on 4/7/2015: # 1704 Exhibit) (hler, 4). Modified on 4/8/2015 (hler, 4). (Entered: 03/11/2015) |
| 03/11/2015 | 236 | PLAINTIFFS TRIAL EXHIBITS, , # 1 Exhibit, # 2 Continuation, # 3 Continuation, # 4 Continuation) , # 5 Continuation, # 6 Continuation, # 7 Continuation, # 8 Continuation, # 9 Continuation), # 10 Continuation) # 11 Exhibits, # 12 Exhibit, # 13 Continuation, # 14 |

Continuation, # 15 Continuation) , # 16 Continuation, # 17
Continuation, # 18 Continuation, # 19 Continuation, # 20
Continuation) # 21 Continuation), # 22 Exhibits, # 23 Exhibits, # 24
Exhibit, # 25 Exhibit, # 26 Exhibit, # 27 Exhibit, # 28 Exhibits, # 29
Exhibit, # 30 Exhibit, # 31 Exhibit, # 32 Exhibit, # 33 Exhibits, # 34
Exhibit) (blacy, 4). (Additional attachment(s) added on 3/11/2015: #
35 Exhibit, # 36 Continuation, # 38 Continuation, # 39 Continuation, #
40 Continuation, # 41 Continuation, # 42 Continuation, # 43
Continuation, # 44 Continuation, # 45 Continuation), # 46
Continuation, # 47 Continuation, # 48 Continuation), # 49 Exhibit, #
50 Exhibit, # 51 Exhibit # 52 Exhibit, # 53 Exhibit, # 54 Exhibit, # 55
Exhibit, # 56 Exhibit, # 57 Continuation, # 58 Continuation, # 59
Continuation, # 60 Continuation, # 61 Continuation, # 62
Continuation, # 63 Continuation, # 64 Continuation, # 65
Continuation, # 66 Continuation, # 67 Exhibit # 68 Continuation, # 69
Continuation, # 70 Continuation, # 71 Continuation, # 72 Continuation
# 73 Exhibit, # 74 Exhibit, # 75 Exhibit, # 76 Exhibit, # 77 Exhibit, #
78 Exhibit # 79 Exhibit, # 80 Exhibit, # 81 Exhibit, # 82 Exhibit, # 83
Exhibit, # 84 Continuation, # 85 Exhibit # 86 Exhibit, # 87 Exhibit, #
88 Exhibit, # 89 Exhibit, # 90 Exhibit, # 91 Exhibit # 92 Exhibit, # 93
Exhibit, # 94 Exhibit, # 95 Exhibit, # 96 Exhibit, # 97 Exhibit # 98
Exhibit, # 99 Exhibit, # 100 Exhibit, # 101 Exhibit, # 102 Exhibit, #
103 Exhibit, # 104 Exhibit # 105 Exhibit, # 106 Exhibit, # 107 Exhibit,
# 108 Exhibit, # 109 Exhibit, # 110 Exhibit, # 111 Exhibit, # 112
Exhibit, # 113 Exhibit, # 114 Exhibit, # 115 Exhibit, # 116 Exhibit, #
117 Exhibit, # 118 Exhibit, # 119 Exhibit, # 120 Exhibit, # 121
Exhibit, # 122 Exhibit, # 123 Exhibit, # 124 Exhibit, # 125 Exhibit, #
126 Exhibit, # 127 Exhibit, # 128 Exhibit, # 129 Exhibit, # 130
Exhibit, # 131 Exhibit, # 132 Exhibit, # 133 Exhibit, # 134 Exhibit, #
135 Exhibit, # 136 Exhibit, # 137 Exhibit, # 138 Exhibit, # 139
Exhibit, # 140 Exhibit, # 141 Exhibit, # 142 Exhibit, # 143 Exhibit, #
144 Exhibit, # 145 Exhibit, # 146 Exhibit, # 147 Exhibit, # 148
Exhibit, # 149 Exhibit, # 150 Exhibit, # 151 Exhibit, # 152 Exhibit, #
153 Exhibit, # 154 Exhibit, # 155 Exhibit , # 156 Exhibit, # 157
Continuation, # 158 Continuation, # 159 Continuation, # 160
Continuation), # 161 Exhibit, # 162 Continuation, # 163 Continuation,
# 164 Continuation, # 165 Continuation), # 166 Exhibit, # 167 Exhibit,
# 168 Exhibit, # 169 Exhibit, # 170 Exhibit) , # 171 Exhibit, # 172
Exhibit, # 173 Exhibit, # 174 Exhibit, # 175 Exhibit, # 176 Exhibit, #
177 Exhibit, # 178 Exhibit, # 179 Exhibit), # 180 Exhibit, # 181
Exhibit, # 182 Exhibit, # 183 Exhibit, # 184 Errata, # 185 Exhibit, #
186 Exhibit), # 187 Exhibit, # 188 Exhibit, # 189 Exhibit, # 190
Exhibit, # 191 Exhibit, # 192 Exhibit, # 193 Exhibit) , # 194 Exhibit, #
195 Exhibit, # 196 Exhibit, # 197 Exhibit, # 198 Exhibit, # 199
Exhibit, # 200 Exhibit, # 201 Exhibit, # 202 Exhibit, # 203 Exhibit),#
205 Exhibit, # 206 Exhibit, # 207 Errata, # 208 Exhibit, # 209 Exhibit,
# 210 Exhibit, # 211 Exhibit, # 212 Exhibit, # 213 Exhibit), # 214
Exhibit, # 215 Exhibit, # 216 Exhibit, # 217 Exhibit, # 218 Exhibit, #
219 Exhibit, # 220 Exhibit, # 221 Exhibit, # 222 Exhibit, # 223
Exhibit) , # 224 Exhibit, # 225 Exhibit, # 226 Exhibit, # 227 Exhibit, #
228 Exhibit, # 229 Exhibit, # 230 Exhibit, # 231 Exhibit, # 232
Exhibit, # 233 Exhibit) , # 234 Exhibit, # 235 Exhibit, # 236 Exhibit, #
237 Exhibit, # 238 Exhibit) , # 239 Exhibit, # 240 Continuation, # 241

Continuation, # 242 Continuation, # 243 Continuation, # 244
Continuation, # 245 Continuation), # 246 Exhibit, # 247 Exhibit, # 248
Exhibit, # 249 Exhibit, # 250 Exhibit, # 251 Exhibit, # 252 Exhibit) , #
253 Exhibit, # 254 Exhibit, # 255 Exhibit, # 256 Exhibit, # 257
Exhibit, # 258 Exhibit, # 259 Exhibit), # 260 Exhibit, # 261
Continuation, # 262 Continuation, # 263 Continuation, # 264
Continuation, # 265 Continuation), # 266 Exhibit, # 267 Exhibit, # 268
Exhibit, # 269 Exhibit, # 270 Exhibit, # 271 Exhibit, # 272 Exhibit, #
273 Exhibit), # 274 Exhibit, # 275 Exhibit, # 276 Exhibit), # 277
Exhibit, # 278 Continuation, # 279 Continuation), # 280 Continuation,
# 281 Continuation, # 282 Continuation, # 283 Continuation) , # 284
Continuation, # 285 Continuation, # 286 Continuation, # 287
Continuation, # 288 Continuation), # 289 Continuation, # 290
Continuation, # 291 Continuation, # 292 Continuation, # 293
Continuation),: # 294 Exhibit, # 295 Exhibit, # 296 Exhibit, # 297
Continuation), # 298 Exhibit, # 299 Continuation, # 300 Continuation,
# 301 Continuation, # 302 Continuation, # 303 Continuation, # 304
Continuation) , # 305 Exhibit, # 306 Exhibit) , # 307 Exhibit, # 308
Continuation, # 309 Continuation, # 310 Continuation, # 311
Continuation, # 312 Continuation), # 313 Exhibit, # 314 Exhibit, # 315
Exhibit), # 316 Exhibit, # 317 Continuation, # 318 Continuation, # 319
Continuation, # 320 Continuation, # 321 Continuation), # 322 Exhibit,
# 323 Continuation, # 324 Continuation, # 325 Continuation, # 326
Exhibit, # 327 Exhibit, # 328 Exhibit), # 329 Exhibit, # 330
Continuation, # 331 Continuation, # 332 Continuation, # 333
Continuation, # 334 Continuation), # 335 Exhibit, # 336 Exhibit, # 337
Exhibit, # 338 Exhibit, # 339 Exhibit, # 340 Exhibit), # 341 Exhibit, #
342 Continuation, # 343 Continuation, # 344 Continuation, # 345
Continuation, # 346 Continuation), # 347 Exhibit, # 348 Exhibit, # 349
Continuation, # 350 Continuation, # 351 Continuation, # 352
Continuation, # 353 Continuation), # 354 Continuation, # 355
Continuation, # 356 Continuation, # 357 Continuation, # 358
Continuation, # 359 Continuation, # 360 Exhibit, # 361 Exhibit, # 362
Exhibit, # 363 Exhibit, # 364 Continuation, # 365 Continuation, # 366
Continuation, # 367 Continuation, # 368 Continuation, # 369
Continuation, # 370 Continuation, # 371 Continuation, # 372
Continuation, # 373 Continuation, # 374 Continuation, # 375 Exhibit,
# 376 Exhibit, # 377 Exhibit, # 378 Exhibit, # 379 Exhibit, # 380
Exhibit, # 381 Exhibit, # 382 Exhibit, # 383 Exhibit, # 384 Exhibit, #
385 Exhibit, # 386 Exhibit, # 387 Exhibit, # 388 Exhibit, # 389
Exhibit, # 390 Exhibit, # 391 Exhibit, # 392 Exhibit, # 393 Exhibit, #
394 Exhibit, # 395 Exhibit, # 396 Exhibit, # 397 Exhibit, # 398
Exhibit, # 399 Exhibit, # 400 Exhibit, # 401 Exhibit, # 402 Exhibit, #
403 Exhibit, # 404 Exhibit, # 405 Exhibit, # 406 Exhibit, # 407
Exhibit, # 408 Exhibit, # 409 Exhibit, # 410 Exhibit, # 411 Exhibit, #
412 Exhibit, # 413 Exhibit, # 414 Exhibit, # 415 Exhibit, # 416
Exhibit, # 417 Exhibit, # 418 Exhibit,(420) Exhibit, # 421 Exhibit, #
422 Exhibit, # 423 Exhibit, # 424 Exhibit, # 425 Exhibit, # 426
Exhibit, # 427 Exhibit, # 428 Exhibit, # 429 Exhibit, # 430 Exhibit, #
431 Exhibit, # 432 Exhibit, # 433 Exhibit, # 434 Exhibit, # 435
Exhibit, # 436 Exhibit, # 437 Exhibit, # 438 Exhibit, # 439 Exhibit, #
440 Exhibit, # 441 Exhibit, # 442 Exhibit, # 443 Exhibit, # 444
Exhibit, # 445 Exhibit, # 446 Exhibit, # 447 Exhibit, # 448 Exhibit, #

449 Exhibit, # 450 Exhibit, # 451 Exhibit, # 452 Exhibit, # 453
Exhibit, # 454 Exhibit, # 455 Exhibit, # 456 Exhibit, # 457 Exhibit, #
458 Exhibit, # 459 Exhibit, # 460 Exhibit, # 461 Exhibit, # 462
Exhibit, # 463 Exhibit, # 464 Exhibit, # 465 Exhibit, # 466 Exhibit, #
467 Exhibit, # 468 Exhibit, # 469 Exhibit, # 470 Exhibit, # 471
Exhibit, # 472 Exhibit, # 473 Exhibit, # 474 Exhibit, # 475 Exhibit, #
476 Exhibit, # 477 Exhibit, # 478 Exhibit, # 479 Exhibit, # 480
Exhibit, # 481 Exhibit, # 482 Exhibit, # 483 Exhibit, # 484 Exhibit, #
485 Exhibit, # 486 Exhibit, # 487 Exhibit, # 488 Exhibit, # 489
Exhibit, # 490 Exhibit, # 491 Exhibit, # 492 Exhibit, # 493 Exhibit, #
494 Exhibit, # 495 Exhibit, # 496 Exhibit, # 497 Exhibit, # 498
Exhibit, # 499 Exhibit, # 500 Exhibit, # 501 Exhibit, # 502 Exhibit, #
503 Exhibit, # 504 Exhibit, # 508 Exhibit, # 509 Exhibit, # 510
Exhibit, # 511 Exhibit, # 512 Exhibit, # 513 Exhibit, # 514 Exhibit, #
515 Exhibit, # 516 Exhibit, # 517 Exhibit, # 518 Exhibit, # 519
Exhibit, # 520 Exhibit, # 521 Exhibit, # 522 Exhibit, # 523 Exhibit, #
524 Exhibit, # 525 Exhibit, # 526 Exhibit, # 527 Exhibit, # 528
Exhibit, # 529 Exhibit, # 530 Exhibit, # 531 Exhibit, # 532 Exhibit, #
533 Exhibit, # 534 Exhibit, # 535 Exhibit, # 536 Exhibit, # 537 Exhibit
- Video not able to Image, # 538 Exhibit -Video not able to image, #
539 Exhibit -not able to image, # 540 Exhibit -video not able to image,
# 541 Exhibit -video not able to image, # 542 Exhibit -video not able
to image, # 543 Exhibit -video not able to image, # 544 Exhibit, # 545
Exhibit, # 546 Exhibit, # 547 Exhibit, # 548 Exhibit, # 549 Exhibit, #
550 Exhibit, # 551 Exhibit, # 552 Exhibit, # 553 Exhibit, # 554
Exhibit, # 555 Exhibit, # 556 Exhibit, # 557 Exhibit, # 558
Continuation, # 561 Continuation, # 562 Continuation, # 563
Continuation, # 564 Continuation, # 565 Continuation, # 566
Continuation, # 567 Continuation, # 568 Continuation, # 569
Continuation, # 570 Continuation, # 571 Continuation, # 572
Continuation, # 573 Exhibit, # 574 Exhibit, # 575 Exhibit, # 576
Exhibit, # 577 Exhibit, # 578 Exhibit, # 579 Exhibit, # 580 Exhibit, #
581 Exhibit, # 582 Exhibit, # 583 Exhibit, # 584 Exhibit, # 585
Exhibit, # 586 Exhibit, # 587 Exhibit, # 588 Exhibit, # 589 Exhibit, #
590 Exhibit, # 591 Exhibit,, # 592 Exhibit, # 593 Exhibit, # 594
Exhibit, # 595 Exhibit, # 596 Exhibit, # 597 Exhibit, # 598 Exhibit, #
599 Exhibit, # 600 Exhibit, # 601 Exhibit,: # 602 Exhibit, # 603
Exhibit, # 604 Exhibit, # 605 Exhibit, # 606 Exhibit, # 607 Exhibit, #
608 Exhibit, # 609 Exhibit, # 610 Exhibit, # 611 Exhibit, # 612
Exhibit, # 613 Exhibit, # 614 Exhibit # 615 Exhibit PX490-504, # 616
Exhibit PX505-518, # 617 Exhibit PX519 -525, # 618 Exhibit, # 619
Exhibit PX527-531, # 620 Exhibit, # 621 Exhibit PX533-538, # 622
Exhibit, # 623 Continuation, # 624 Continuation, # 625 Continuation,
# 626 Continuation, # 627 Continuation, # 628 Continuation, # 629
Continuation, # 630 Continuation, # 631 Exhibit, # 632 Exhibit, # 633
Exhibit, # 634 Exhibit, # 635 Continuation, # 636 Continuation, # 637
Continuation, # 638 Continuation, # 639 Continuation, # 640
Continuation, # 641 Continuation, # 642 Continuation) , # 643 Exhibit
PX544-546) ,# 644 Exhibit, # 645 Continuation, # 646 Continuation, #
647 Continuation, # 648 Continuation, # 649 Continuation, # 650
Continuation), # 651 Exhibit PX548-549) , # 652 Exhibit, # 653
Continuation, # 654 Continuation, # 655 Continuation, # 656
Continuation, # 657 Continuation, # 658 Continuation,# 659 Exhibit

| | | |
|---|---|---|
| | | PX551, 552, 554, # 660 Exhibit, # 661 Exhibit PX556-559, 568,569,578, 583, # 662 Exhibit, # 663 Continuation), # 664 Continuation), # 665 Continuation, # 666 Continuation, # 667 Continuation), # 668 Continuation, # 669 Continuation, # 670 Continuation) , # 671 Continuation, # 672 Continuation, # 673 Continuation, # 674 Continuation, # 675 Continuation, # 676 Exhibit, # 677 Exhibit, # 678 Continuation, # 679 Continuation, # 680 Continuation, # 681 Continuation, # 682 Continuation, # 683 Continuation, # 684 Continuation, # 685 Continuation, # 686 Continuation, # 687 Exhibit, # 688 Exhibit, # 689 Exhibit, # 690 Exhibit, # 691 Exhibit, # 692 Exhibit, # 693 Exhibit, # 694 Exhibit, # 695 Exhibit, # 696 Exhibit, # 697 Exhibit, # 698 Exhibit, # 699 Exhibit, # 700 Exhibit, # 701 Exhibit, # 702 Exhibit, # 703 Exhibit, # 704 Exhibit, # 705 Exhibit, # 706 Exhibit, # 707 Exhibit, # 708 Exhibit, # 709 Exhibit, # 710 Exhibit, # 711 Exhibit, # 712 Exhibit, # 713 Exhibit, # 714 Exhibit, # 715 Exhibit, # 716 Exhibit, # 717 Exhibit, # 718 Exhibit, # 719 Exhibit, # 720 Exhibit, # 721 Exhibit) (blacy, 4). (Entered: 03/11/2015) |
| 03/11/2015 | | (Court only) Appeal Remark: USB drive containing exhibits admitted and imaged. USB drive maintained by the Clerk's Office, (USCA No. 15-20030), filed. (blacy, 4) (Entered: 04/01/2015) |
| 03/11/2015 | 239 | PLAINTIFFS TRIAL EXHIBITS, filed. (Attachments: # 1 Exhibit 588, # 2 Continuation 588, # 3 Continuation 588, # 4 Continuation 588, # 5 Continuation 588, # 6 Continuation 588, # 7 Continuation 588, # 8 Continuation 588, # 9 Continuation 588, # 10 Continuation 588, # 11 Exhibit 589, # 12 Exhibit 590, # 13 Exhibit 591, # 14 Exhibit 592, # 15 Exhibit 593)(dnoriega, 1) (Additional attachment(s) added on 4/17/2015: # 16 Exhibit 594, # 17 Exhibit 595, # 18 Exhibit 596, # 19 Exhibit 597, # 20 Exhibit 598, # 21 Exhibit 599, # 22 Exhibit 600, # 23 Exhibit 601, # 24 Exhibit 602, # 25 Exhibit 603, # 26 Exhibit 604) (dnoriega, 1). (Additional attachment(s) added on 4/17/2015: # 27 Exhibit 605, # 28 Exhibit 607, # 29 Exhibit 609, # 30 Exhibit 610, # 31 Exhibit 610A, # 32 Exhibit 611, # 33 Exhibit 611A, # 34 Exhibit 612, # 35 Exhibit 613, # 36 Exhibit 614, # 37 Exhibit 615, # 38 Exhibit 616, # 39 Exhibit 617, # 40 Exhibit 618, # 41 Exhibit 619, # 42 Exhibit 620, # 43 Exhibit 621, # 44 Exhibit 622, # 45 Exhibit 623) (dnoriega, 1). (Entered: 04/17/2015) |
| 03/12/2015 | 240 | Letter from Josh Kratka re: Disk containing Excel Files, filed. (ealexander, 4) (Entered: 04/22/2015) |
| 04/01/2015 | | Supplemental Electronic record on appeal certified to the Fifth Circuit Court of Appeals re: USCA Case Number, 229 Notice of Appeal,, filed.(dnoriega, 1) (Entered: 04/01/2015) |
| 04/01/2015 | 237 | Transmittal Letter on Appeal re: 229 Notice of Appeal,. The supplemental electronic record on CD is being sent to Heather Govern & Jefferson Gregory Copeland via regular mail. (USCA No. 15-20030), filed. (dnoriega, 1) Modified on 4/1/2015 (dnoriega, 1). (Entered: 04/01/2015) |
| 04/08/2015 | 238 | (Court only) Document(s) Sent (supplemental ROA) by FedEx to Beck Redden Secrest LLP - receipt attached, access restricted to court users |

| | | |
|---|---|---|
| | | for privacy reasons -, filed. (avleal, 1) (Entered: 04/08/2015) |
| 04/13/2015 | | ***Delivery Confirmation; delivery date(s) 4/9/2015 re: 238 Document(s) Sent, filed. (hcarr, 4) (Entered: 04/13/2015) |
| 04/17/2015 | | (Court only) ***Docket Entry 239 is a duplicate of Plaintiffs Trial Exhibits in 236 . These were duplicated for appellate purposes.**(PRIVATE ENTRY), filed. (dnoriega, 1) (Entered: 04/17/2015) |
| 04/30/2015 | | Electronic Supplemental #2 record on appeal certified to the Fifth Circuit Court of Appeals re: USCA Case Number, 229 Notice of Appeal,, filed.(dnoriega, 1) (Entered: 04/30/2015) |
| 04/30/2015 | 241 | Transmittal Letter on Appeal re: 229 Notice of Appeal,. The second supplemental record is being sent to Heather Govern & Jefferson Gregory Copeland via regular mail. (USCA No. 15-20030), filed. (dnoriega, 1) (Entered: 04/30/2015) |
| 04/30/2015 | 242 | (Court only) Document(s) Sent by FedEx to Heather Govern - receipt attached, access restricted to court users for privacy reasons - re: 241 Transmittal Letter on Appeal, filed. (sbejarano, 1) (Entered: 04/30/2015) |
| 05/05/2015 | | ***Delivery Confirmation; delivery date(s) Fri 5/01/2015 9:23 am re: 242 Document(s) Sent, filed. (jdav, 4) (Entered: 05/05/2015) |
| 05/12/2015 | 243 | TRANSCRIPT re: Bench Trial - Day 3 of 13 held on February 12, 2014. This transcript replaces the transcript accidentally filed at Docket Entry Number 198. before Judge David Hittner. Court Reporter/Transcriber Dye. Release of Transcript Restriction set for 8/10/2015., filed. (gdye, ) (Entered: 05/12/2015) |
| 05/12/2015 | | Electronic Supplemental record on appeal certified to the Fifth Circuit Court of Appeals re: USCA Case Number, 229 Notice of Appeal,, filed.(dnoriega, 1) (Entered: 05/12/2015) |
| 05/12/2015 | 244 | Transmittal Letter on Appeal re: 229 Notice of Appeal,. The supplemental record is being sent to Heather Govern & Russell Post via regular mail. (USCA No. 15-20030), filed. (dnoriega, 1) (Entered: 05/12/2015) |
| 05/13/2015 | 245 | Notice of Filing of Official Transcript as to 243 Transcript,. Party notified, filed. (jdav, 4) (Entered: 05/13/2015) |
| 05/13/2015 | 246 | (Court only) Document(s) Sent by FedEx to Heather Govern - receipt attached, access restricted to court users for privacy reasons - re: 244 Transmittal Letter on Appeal, filed. (dnoriega, 1) (Entered: 05/13/2015) |
| 05/18/2015 | | ***Delivery Confirmation; delivery date(s) 5/13/2015 re: 246 Document(s) Sent, filed. (hcarr, 4) (Entered: 05/18/2015) |
| 05/27/2016 | 247 | Order of USCA - ORDER re: 229 Notice of Appeal, ; USCA No. 15-20030. It is ordered that the State of Texas' opposed motion on behalf of the Texas Commission of Environmental Quality to file amicus curiae brief out of time is granted., filed.(dnoriega, 1) (Entered: |

| | | |
|---|---|---|
| | | 05/27/2016) |
| 08/24/2016 | 248 | Order of USCA JUDGMENT; Judgment issued as mandate 8/24/2016 re: 229 Notice of Appeal; USCA No. 15-20030. The cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court. Case reopened on 8/24/2016, filed.(avleal, 1) (Entered: 08/24/2016) |
| 08/24/2016 | 249 | Order of USCA PER CURIAM re: 229 Notice of Appeal; USCA No. 15-20030. We accordingly VACATE the district court's judgment and REMAND for assessment of penalties based on the violations that are properly considered "actionable" in light of this opinion, filed. (avleal, 1) Modified on 8/24/2016 (avleal, 1). (Entered: 08/24/2016) |
| 08/24/2016 | 250 | Copy of Bill of Costs by USCA in the amount of $1146.65 against Exxon Mobil (USCA No. 15-20030), filed.(avleal, 1) (Entered: 08/24/2016) |
| 08/24/2016 | | (Court only) Notification of USCA Judgment and Per Curiam remanding case to USDC sent to case manager ***(PRIVATE ENTRY), filed. (avleal, 1) (Entered: 08/24/2016) |
| 08/29/2016 | 251 | ORDER that the parties shall submit revised proposed findings of fact and conclusions of law consistent with the Fifth Circuit's opinion as to Counts 1 through 4, the CAA penalty factors on which error was found, and the requisite analysis of whether penalties should be assessed for any actionable violation under these factors. The revised proposed findings of fact and conclusions of law are ordered limited to the foregoing scope, except to the extent it is necessary to incorporate the Court's previous findings of fact and conclusions of law that were undisturbed by or upheld in the Fifth Circuit's opinion. The revised proposed findings of fact and conclusions of law shall be submitted to the Court by October 31, 2016. Furthermore, the parties may submit a response to the revised proposed findings of fact and conclusions of law no later than November 21, 2016.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 08/29/2016) |
| 10/31/2016 | 252 | NOTICE *of Filing Proposed Revised and Supplemental Findings of Fact and Conclusions of Law* by ExxonMobil Corporation, filed. (Attachments: # 1 Proposed Revised and Supplemental Findings of Fact and Conclusions of Law)(Nichols, Eric) (Entered: 10/31/2016) |
| 10/31/2016 | 253 | NOTICE *of Filing of Proposed Findings of Fact and Conclusions of Law Following Remand* by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. (Attachments: # 1 Exhibit Plaintiffs' Proposed FFCL, # 2 Exhibit Plaintiffs' Proposed FFCL - Redline Version, # 3 Exhibit Description of Further Attachments, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit)(Kratka, Joshua) (Entered: 10/31/2016) |
| 10/31/2016 | 254 | First SUPPLEMENT to 253 Notice (Other),, by Environment Texas Citizen Lobby, Inc., filed.(Hilder, Philip) (Entered: 10/31/2016) |
| 11/21/2016 | 255 | RESPONSE to 252 Notice (Other) *Exxon's Revised Findings of Fact and Conclusions of Law*, filed by Environment Texas Citizen Lobby, |

| | | |
|---|---|---|
| | | Inc., Sierra Club. (Kratka, Joshua) (Entered: 11/21/2016) |
| 11/21/2016 | 256 | RESPONSE to 253 Notice (Other),, *Response of ExxonMobil to Plaintiffs' Proposed Findings of Fact and Conclusions of Law Following Remand*, filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(Rice, Bryon) (Entered: 11/21/2016) |
| 04/26/2017 | 257 | REVISED FINDINGS OF FACT AND CONCLUSIONS OF LAW(Signed by Judge David Hittner) (Attachments: # 1 Continuation, # 2 Continuation, # 3 Continuation, # 4 Continuation) Parties notified.(ealexander, 4) (Entered: 04/26/2017) |
| 04/26/2017 | 258 | FINAL JUDGMENT. Case terminated on April 26, 2017(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 04/26/2017) |
| 05/11/2017 | 259 | NOTICE *of Stipulation in Lieu of Supersedeas Bond* re: 258 Final Judgment by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. (Attachments: # 1 Stipulation)(Post, Russell) (Entered: 05/11/2017) |
| 05/24/2017 | 260 | MOTION to Alter JudgmentMotions referred to Stephen Smith. by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 6/14/2017. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Post, Russell) (Entered: 05/24/2017) |
| 06/14/2017 | 261 | RESPONSE in Opposition to 260 MOTION to Alter Judgment, filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Hilder, Philip) (Entered: 06/14/2017) |
| 06/21/2017 | 262 | MOTION for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and FindingsMotions referred to Stephen Smith. by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 7/12/2017. (Attachments: # 1 Proposed Order)(Nichols, Eric) (Entered: 06/21/2017) |
| 06/21/2017 | 263 | RESPONSE in Opposition to 262 MOTION for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and Findings, filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Attachments: # 1 Proposed Order)(Kratka, Joshua) (Entered: 06/21/2017) |
| 06/26/2017 | 264 | Supplemental MOTION for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and FindingsMotions referred to Stephen Smith. by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 7/17/2017. (Attachments: # 1 Reply in Support of Motion to Alter or Amend the Judgment and Findings)(Nichols, Eric) (Entered: 06/26/2017) |
| 06/26/2017 | 266 | |

| | | |
|---|---|---|
| | | ORDER denying 262 Motion for Leave to File a Reply in Support of Motion to Alter or Amend the Judgment and Findings.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 06/27/2017) |
| 06/27/2017 | 265 | OBJECTIONS to 264 Supplemental MOTION for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and Findings , filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Hilder, Philip) (Entered: 06/27/2017) |
| 06/30/2017 | 267 | MOTION for Leave to File Second Motion for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and FindingsMotions referred to Stephen Smith. by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company, filed. Motion Docket Date 7/21/2017. (Attachments: # 1 Exhibit A, # 2 Proposed Order)(Rice, Bryon) (Entered: 06/30/2017) |
| 07/03/2017 | 268 | RESPONSE in Opposition to 267 MOTION for Leave to File Second Motion for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and Findings, filed by Environment Texas Citizen Lobby, Inc., Sierra Club. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 07/03/2017) |
| 07/05/2017 | 269 | ORDER granting 267 Second Motion for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and Findings.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 07/06/2017) |
| 07/06/2017 | 270 | REPLY in Support of 260 MOTION to Alter Judgment, filed by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Rice, Bryon) (Entered: 07/06/2017) |
| 07/10/2017 | 271 | Unopposed MOTION for Extension of Time of Deadline for Submission of Plaintiffs' Application for Attorney's Fees, Expert Fees, and CostsMotions referred to Stephen Smith. by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 7/31/2017. (Attachments: # 1 Proposed Order)(Hilder, Philip) (Entered: 07/10/2017) |
| 07/11/2017 | 272 | ORDER granting 271 Motion for Extension of Time. Plaintiffs submit their application for attorney's fees, expert fees, and costs no later than 60 days following the entry of this Court's final disposition of Defendants' motion to alter or amend the judgment.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 07/11/2017) |
| 07/28/2017 | 273 | ORDER granting 264 Defendants' Supplement in Support of Motion for Leave to File Reply in Support of Motion to Alter or Amend the Judgment and Findings.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 07/28/2017) |
| 07/31/2017 | 274 | ORDER denying 260 Motion to Alter or Amend Judgment and Findings.(Signed by Judge David Hittner) Parties notified.(ealexander, 4) (Entered: 07/31/2017) |

| | | |
|---|---|---|
| 08/25/2017 | <u>275</u> | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: <u>258</u> Final Judgment, <u>274</u> Order on Motion to Alter Judgment by ExxonMobil Chemical Company, ExxonMobil Corporation, ExxonMobil Refining and Supply Company (Filing fee $ 505, receipt number 0541-18843775), filed.(Post, Russell) (Entered: 08/25/2017) |
| 08/30/2017 | <u>276</u> | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: <u>275</u> Notice of Appeal,. Fee status: Paid. Reporter(s): ERO, filed. (Attachments: # <u>1</u> NOA, # <u>2</u> Final Judgment, # <u>3</u> Order, # <u>4</u> Docket) (dnoriega, 1) (Entered: 08/30/2017) |
| 08/30/2017 | | Appeal Review Notes re: <u>275</u> Notice of Appeal,. Fee status: Paid. The appeal filing fee has been paid or an ifp motion has been granted.Hearings were held in the case. DKT13 transcript order form(s) due within 14 days of the filing of the notice of appeal.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(dnoriega, 1) (Entered: 08/30/2017) |
| 09/05/2017 | | Notice of Assignment of USCA No. 17-20545 re: <u>275</u> Notice of Appeal, filed.(rnieto, 1) (Entered: 09/05/2017) |
| 09/15/2017 | <u>277</u> | DKT13 TRANSCRIPT ORDER REQUEST by Russell Post. Transcript is already on file in Clerks office regarding appeal. (No transcript is needed). Court Reporter/Transcriber: Gayle Dye. This order form relates to the following: <u>275</u> Notice of Appeal,, filed.(Post, Russell) (Entered: 09/15/2017) |
| 09/18/2017 | | (Court only) ***(PRIVATE ENTRY) EROA requested by the Fifth Circuit, due 10/3/17 (17-20545), filed. (jtabares, 1) (Entered: 09/18/2017) |
| 09/18/2017 | | (Court only) Set/Cleared Flags. APPEAL_NAT flag cleared. (jtabares, 1) (Entered: 09/18/2017) |
| 09/26/2017 | <u>278</u> | Unopposed MOTION for Extension of Time By One Week for Plaintiffs' Application for Fees and Costs by Environment Texas Citizen Lobby, Inc., Sierra Club, filed. Motion Docket Date 10/17/2017. (Attachments: # <u>1</u> Proposed Order)(Kratka, Joshua) (Entered: 09/26/2017) |

# TAB 2

Notice of Appeal
(ROA.15560)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENVIRONMENT TEXAS CITIZEN LOBBY, INC. *and* SIERRA CLUB, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. H-10-4969 |
| EXXON MOBIL CORPORATION, *et al*., | § § § | |
| *Defendants*. | § § | JUDGE DAVID HITTNER |

---

## NOTICE OF APPEAL

---

Notice is hereby given that Defendants Exxon Mobil Corporation, ExxonMobil Chemical Company, and ExxonMobil Refining and Supply Company ("The ExxonMobil Defendants") appeal to the U.S. Court of Appeals for the Fifth Circuit from the Final Judgment (ECF Doc. No. 258), entered on April 26, 2017, and the Order denying The ExxonMobil Defendants' Motion to Alter or Amend the Judgment and Findings (ECF Doc. No. 274), entered on July 31, 2017.

Respectfully submitted,

BECK REDDEN L.L.P.

By:  _/s/ Eric J.R. Nichols_
    Eric J.R. Nichols
    State Bar No. 14994900
    S.D. Tex. 13066
515 Congress Avenue, Suite 1750
Austin, Texas 78701
Tel: (512) 708-1000
Fax: (512) 708-1002
Email:  enichols@beckredden.com

**ATTORNEY-IN-CHARGE**
**FOR DEFENDANTS**

**OF COUNSEL:**
BECK REDDEN L.L.P.
Fields Alexander
State Bar No. 00783528
S.D. Tex. I.D. No. 16427
falexander@beckredden.com
Russell S. Post
State Bar No. 00797258
S.D. Tex. I.D. No. 23206
rpost@beckredden.com
Bryon A. Rice
State Bar No. 24065970
S.D. Tex. I.D.  No. 1118643
brice@beckredden.com
1221 McKinney, Suite 4500
Houston, Texas 77010-2010
Tel: (713) 951-3700
Fax: (713) 951-3720

17-20545.15561

## CERTIFICATE OF SERVICE

      A true and correct copy of the foregoing pleading was served on all counsel of record in compliance with the Federal Rules of Civil Procedure and the parties' agreement by email on this 25th day of August 2017.

                                  */s/    Russell S. Post*
                                    Russell S. Post

17-20545.15562

# TAB 3

Final Judgment
(ROA.15568)

United States District Court
Southern District of Texas
**ENTERED**
April 26, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENVIRONMENT TEXAS CITIZEN LOBBY, INC. *and* SIERRA CLUB, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-10-4969 |
| EXXONMOBIL CORPORATION, EXXONMOBIL CHEMICAL COMPANY, *and* EXXONMOBIL REFINING AND SUPPLY COMPANY, | § § § § § § | |
| Defendants. | § | |

## FINAL JUDGMENT

The Court has contemporaneously issued its Revised Findings of Fact and Conclusions of Law in the above-styled matter. Accordingly, based on the findings of fact, analysis, and conclusions of law set forth in the Court's order contemporaneously dated, the Court hereby

**RENDERS** judgment for Plaintiffs Environment Texas Citizen Lobby, Inc. and Sierra Club in the amount of **$19,951,278** in civil penalties pursuant the Clean Air Act and, subject to timely submission of proper documentation, attorneys' fees, expert fees, and costs in an amount to later be determined by the Court.

SIGNED at Houston, Texas, on this **26** day of April, 2017.


DAVID HITTNER
United States District Judge

2

17-20545.15569

# TAB 4

Revised Findings of Fact and Conclusions of Law
(ROA.13201)

United States District Court
Southern District of Texas

**ENTERED**

April 26, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENVIRONMENT TEXAS CITIZEN LOBBY, INC. *and* SIERRA CLUB, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. H-10-4969 |
| EXXONMOBIL CORPORATION, EXXONMOBIL CHEMICAL COMPANY, *and* EXXONMOBIL REFINING AND SUPPLY COMPANY, | § § § § § § | |
| Defendants. | § | |

REVISED FINDINGS OF FACT & CONCLUSIONS OF LAW[1]

On February 10, 2014, this Court commenced a non-jury trial in the above-

entitled matter. During the course of the thirteen-day proceeding, the Court

---

[1] As explained further below, the Fifth Circuit vacated the Court's prior judgment as expressed in the initial Findings of Fact and Conclusions of Law. However, the Fifth Circuit upheld the Court's findings as to Count VII; the denial of a declaratory judgment, permanent injunction, and appointment of a special master; and the CAA penalty factor for compliance history and good faith efforts to comply. The Court's initial findings as to Counts V and VI, and the following penalty factors—the size of the business and payment by the violator of penalties previously assessed for the same violation—were unaddressed and undisturbed by the Circuit's opinion. Because the Court's prior judgment was vacated in whole and not in part, where the Court's prior findings were undisturbed or upheld by the Fifth Circuit, the Court reincorporates the prior findings into the Revised Findings of Fact and Conclusions of Law. Part II of the revised findings of fact and conclusion of law adopts the previous Part II in its entirety, as the Circuit did not hold the Court made any clearly erroneous factual finding.

Case 4:10-cv-04969   Document 237   Filed in TXSD on 04/26/17   Page 2 of 20

received evidence and heard sworn testimony.[2]   On December 17, 2014, having

considered the evidence, testimony, and oral arguments presented during the trial,

along with post-trial submissions[3] and the applicable law, the Court entered its

initial findings of fact and conclusions of law pursuant to Federal Rule of Civil

Procedure 52(a).   The judgment was appealed.   The Fifth Circuit vacated the

Court's judgment and remanded the case for the determination of a new judgment

as consistent with the Circuit's opinion.   Accordingly, the Court issues the

following revised findings of fact and conclusions of law, as consistent with the

instructions on remand from the Fifth Circuit following the vacatur of the Court's

initial judgment.   Any finding of fact that should be construed as a conclusion of

law is hereby adopted as such.   Any conclusion of law that should be construed as

a finding of fact is hereby adopted as such.

## I. BACKGROUND

On December 13, 2010, Plaintiffs Environment Texas Citizen Lobby, Inc.

("Environment Texas") and Sierra Club ("Sierra Club") (collectively, "Plaintiffs")

brought suit under the citizen suit provision of the federal Clean Air Act (the

---

[2] The parties submitted 1,148 exhibits that span thousands of pages, and 25 witnesses testified.

[3] The post-trial submissions considered by the Court include the plaintiffs' and the defendants' original proposed findings of fact and conclusions of law, which are 455 pages and 361 pages in length, respectively.   On remand, the Court considered the revised proposed findings of fact and conclusions of law, and where relevant, the pre-appeal proposals (both the original and revised).

17-20545.13202

"CAA"), 42 U.S.C. § 7604, against Defendants ExxonMobil Corporation, ExxonMobil Chemical Company, and ExxonMobil Refining and Supply Company (collectively, "Exxon"). The case concerns Exxon's operation of a refinery, olefins plant, and chemical plant located in Baytown, Texas (the "Complex"), which is a suburb of Houston and within Harris County. Plaintiffs seek a declaratory judgment, penalties,[4] injunctive relief, and appointment of a special master for events at the Complex involving unauthorized air emissions or deviations from one of the Complex's air permits, during a period spanning from October 14, 2005, to September 3, 2013.

On December 17, 2014, the Court issued its initial findings of fact and conclusions of law.[5] Plaintiffs appealed the decision to the Fifth Circuit. On May 27, 2016, the Fifth Circuit issued an opinion vacating the Court's judgment and remanding for assessment of penalties based on the violations actionable as consistent with its opinion.[6] Specifically, the Circuit held: (1) as to Count I, the Court erred as a matter of law in treating the count as alleging violations of Maximum Allowable Emission Rate Table ("MAERT") limitations rather than

---

[4] Plaintiffs originally requested $1,023,845,000 in penalties, but they later reduced their request to $642,697,500 to account for overlapping violations alleged in the various counts of the complaint. On remand, Plaintiffs only seek $40,815,618 in penalties.

[5] *Findings of Fact & Conclusions of Law*, Document No. 225.

[6] *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507 (5th Cir. 2016).

3

special conditions 38 and 39; (2) as to Count II, the Court erred in requiring Plaintiffs to show repeated violations of the same numerical threshold per pollutant per emission point, rather than violations per pollutant per emission point, even if the numerical limitations varied due to amendment or renewal; (3) as to Counts III and IV, the Court erred in requiring corroboration for violations it explicitly found were uncontested; and (4) in assessing the penalty factors, the Court erred in failing to enter findings as to whether an economic benefit was received by delaying environmental improvement projects and abused its discretion in treating violations of shorter duration as offsetting longer duration violations and less serious violations as offsetting more serious violations.

On August 29, 2016, the Court ordered the parties to submit revised proposed findings of fact and conclusions of law consistent with scope of remand from the Fifth Circuit.  The Court instructed the parties that it would not revisit any finding of fact or conclusion of law upheld in or left undisturbed by the Fifth Circuit's opinion.  The parties submitted their proposals on October 31, 2016, and filed responses to the respective opposing party's proposal on November 21, 2016. Having considered the Fifth Circuit's opinion, the parties revised proposals and responses thereto, the Court revises its initial conclusions of law, as follows, on Counts I–IV; the economic benefit, duration, and seriousness penalty factors; enters conclusions of law in the first instance on the affirmative defenses asserted

17-20545.13204

in Exxon's revised proposal; and its judgment on the amount of penalties to be assessed.[7]

## II. FINDINGS OF FACT

The following facts have been established by a preponderance of the evidence:

### A.  *Exxon and the Complex*

1.    ExxonMobil Chemical Company and ExxonMobil Refining and Supply Company are wholly owned subsidiaries of ExxonMobil Corporation.[8] ExxonMobil Corporation is the largest publicly traded oil company in the world as measured by market evaluation.[9]  In addition, it is one of the largest publicly traded companies in the world measured by both revenue and market capitalization.[10] Total after-tax profits of ExxonMobil Corporation were $41 billion in 2011 and $44 billion in 2012.[11]

---

[7] The Court deems abandoned any argument asserted in the initial proposed finding facts and conclusions of law that was not re-urged on remand in the revised proposals or the responses thereto.

[8] *Defendant ExxonMobil Corporation, ExxonMobil Chemical Company, and ExxonMobil Refining and Supply Company's Original Answer*, ¶¶ 12–13.

[9] *Trial Transcript* at 5-61:6–9.

[10] *Trial Transcript* at 5-60:5–21.

[11] *Trial Transcript* at 5-61:11–13.

17-20545.13205

2.      Exxon owns and operates the Complex, which consists of a refinery, olefins plant, and chemical plant.[12]  The Complex is one of the largest and most complex industrial sites in the United States.[13]   Specifically, it is the largest petroleum and petrochemical complex in the United States.[14]   It sits on approximately 3,400 acres, with a circumference of approximately 13.6 miles.[15]  It has the capacity to process more than 550,000 barrels of crude oil per day and to produce about 13 billion pounds of petrochemical products each year.[16]  These products range from jet fuel to plastic.[17]  The Complex has a vast array of equipment, including roughly 10 thousand miles of pipe, 1 million valves, 2,500 pumps, 146 compressors, and 26 flares.[18]  It employs over 5,000 people.[19]

-----

[12] *Defendant ExxonMobil Corporation, ExxonMobil Chemical Company, and ExxonMobil Refining and Supply Company's Original Answer*, ¶¶ 11–13.

[13] *Trial Transcript* at 3-74:21–25, 4-171:21 to 4-172:6, 4-173:3–5.

[14] *Plaintiffs' Exhibit* 556 at 25.

[15] *Trial Transcript* at 3-71:14 to 3-72:6–9, 8-50:20–22.

[16] *Trial Transcript* at 3-77:5 to 3-80:1.

[17] *Trial Transcript* at 3-56:2–18, 3-60:16–18.

[18] *Trial Transcript* at 3-24:19–21, 3-25:4–5, 3-250:5–11, 7-238:23 to 7-239:10, 3-72:20 to 3-73:24.

[19] *Trial Transcript* at 3-75:15–18.

17-20545.13206

3.    The Complex is located in Baytown, Texas, which is a suburb of Houston.  The nearby area in which the Complex operates is populated with numerous other refineries, petrochemical plants, and industrial facilities.[20]

## B.    *Title V Permits*

4.    The Complex is governed, in part, by operating permits issued by the Texas Commission on Environmental Quality (the "TCEQ") pursuant to Title V of the CAA.[21]  The Title V permits incorporate—typically by reference—numerous regulatory requirements, such as United States Environmental Protection Agency ("EPA") air pollution regulations and State of Texas air pollution regulations, as well as other permits, such as New Source Review permits and Prevention of Significant Deterioration permits.[22]  Taking all permit conditions together, the Complex is regulated by over 120,000 permit conditions related to air quality, each of which is tracked by the Complex for compliance purposes.[23]

---

[20] *Trial Transcript* at 11-33:19 to 11-39:16.

[21] *Trial Transcript* at 2-207:18 to 2-208:9, 2-212:1–3; *see* 30 TEX. ADMIN. CODE § 122.142(b).

[22] *Trial Transcript* at 1-245:9–17, 2-208:13 to 2-209:13.

[23] *Trial Transcript* at 3-81:9 to 3-82:1.

7

17-20545.13207

## C.    *Reportable Events, Recordable Events, and Deviations*

5.    Exxon documents noncompliance and indications of noncompliance with its Title V permits in three ways.[24]   First, the TCEQ requires Exxon to document and submit to the TCEQ—via a State of Texas Environmental Electronic Reporting System ("STEERS") report—information about "emissions events" that release greater than a certain threshold quantity of pollutants, called "reportable emissions events."[25]   Second, the TCEQ requires Exxon to document information about "emissions events" that release less than the aforementioned threshold quantity of pollutants, called "recordable emissions events;" documentation of recordable emissions events are kept on-site at the Complex and are not submitted to the TCEQ via a STEERS report.[26]   Third, the TCEQ requires Exxon to document and submit to the TCEQ information about Title V "deviations" in semi-annual Title V "deviation reports."[27]   It is undisputed Exxon complied with the TCEQ's aforementioned reporting and recording requirements.   Plaintiffs and

---

[24] *Trial Transcript* at 2-205:13 to 2-206:14, 2-216:3–20.

[25] 30 TEX. ADMIN. CODE §§ 101.1(88), 101.201; *Trial Transcript* at 2-232:13–20, 2-236:3–24, 12-164:11–23.

[26] 30 TEX. ADMIN. CODE §§ 101.1(71), 101.201(b); *Trial Transcript* at 2-232:21 to 2-233:16, 12-164:11–23.   The terms "non-reportable emissions event" and "recordable emissions event" are interchangeable.

[27] 30 TEX. ADMIN. CODE §§ 122.10(6), 122.145(2); *Trial Transcript* at 2-217:4 to 2-218:19.

17-20545.13208

Exxon stipulated to the contents of Exxon's STEERS reports of reportable emissions events, records of recordable emissions events, and Title V deviation reports covering the time period at issue in this case, which is October 14, 2005, to September 3, 2013.[28]   These stipulations are contained in Excel spreadsheets spanning hundreds of pages, admitted at trial as Plaintiffs' Exhibits 1A through 7E. Specifically, at issue are 241 reportable emissions events (the "Reportable Events"), 3,735 recordable emissions events (the "Recordable Events"), and 901 Title V deviations (the "Deviations") (collectively, the "Events and Deviations" or the "Events or Deviations").[29]

## D.   *Investigation, Enforcement, and Corrective Actions*

6.   The TCEQ investigates each reportable emissions event.[30]   Following an investigation, the TCEQ determines whether it will initiate enforcement based, in part, on whether the event was "excessive" and whether the applicable statutory affirmative defense criteria were met.[31]   Similarly, the TCEQ reviews

---

[28] *Trial Transcript* at 1-246:3–15.

[29] *Plaintiffs' Exhibits* 1A–7E.

[30] *Defendants' Exhibit* 546 at 8, ¶ 24; *Trial Transcript* at 2-241:14–21, 2-244:10–18, 4-5:21–23, 8-85:11–16.

[31] 30 TEX. ADMIN. CODE § 101.222; *Defendants' Exhibit* 546 at 3–4, ¶ 10, 4–5, ¶ 12; *Trial Transcript* at 2-242:19–25, 12-160:2 to 12-162:8; *see Trial Transcript* at 12-161:10 to 12-162:8.

9

the records of recordable emissions events and takes enforcement action should it determine the records reflect an inappropriate trend.[32]

7.      In addition to the TCEQ's investigation, for each of the Reportable Events, Exxon conducted an extensive internal investigation, evaluated the root cause of the event, and implemented corrective actions to try to prevent recurrence.[33]  Similarly, for the Recordable Events and Deviations, Exxon analyzed the records for trends and ways to improve, identified root causes, and implemented corrective actions.[34]  A root cause analysis requires consideration of a number of factors, including the type of equipment involved, the component of the equipment that may have failed, and human interaction with the equipment.[35]  A root cause analysis is necessary—as a factual matter in this case—to determine whether the Events and Deviations resulted from a recurring pattern, and to determine whether improvements could have been made to prevent recurrence.[36] The number of events involving a certain type of equipment, a certain unit, or a

---

[32] *Defendants' Exhibit* 546 at 5–7, ¶¶ 13–18.

[33] *Trial Transcript* at 3-114:25 to 3-117:4, 4-26:4–16.

[34] *Trial Transcript* at 3-117:5–22, 10-39:24 to 10-40:8, 10-219:11 to 10-220:13.

[35] *Trial Transcript* at 10-231:15 to 10-232:14.

[36] *Defendants' Exhibit* 546 at 6, ¶¶ 16–17.

17-20545.13210

certain type of issue (such as leaks) does not alone mean that any of the Events or Deviations resulted from a recurring pattern or were preventable.[37]

8.      After investigating, the TCEQ assessed $1,146,132 in penalties against Exxon for some of the Events and Deviations.[38]  In addition, Harris County assessed $277,500 in penalties for some of the Events and Deviations.[39]  Thus, in total, Exxon has paid $1,423,632 in monetary penalties for Events and Deviations at issue in this case.[40]  Along with those penalties, the TCEQ required Exxon to take certain corrective actions or document the corrective actions already taken.[41]

9.      Moreover, after investigating, the TCEQ elected not to pursue enforcement on 97 Reportable Events because the TCEQ determined the applicable affirmative defense criteria were met.[42]  Such applicable affirmative defense criteria include finding that the unauthorized emissions could not have been prevented, were not part of a recurring pattern, and did not contribute to a

---

[37] *Defendants' Exhibit* 546 at 6, ¶ 17; *Trial Transcript* at 10-232:15 to 10-233:10, 10-234:25 to 10-277:15, 11-5:17 to 11-21:18.

[38] *Plaintiffs' Exhibit* 337.

[39] *Defendants' Exhibit* 502 at 1–10.

[40] Exxon claims it has paid $2,022,288 in penalties, while Plaintiffs claim Exxon has paid $1,423,632 in penalties.  After thoroughly reviewing all of the evidence submitted to support each amount, the Court finds Plaintiffs' claim ($1,423,632) to be better supported by the evidence.

[41] *E.g.*, *Defendants' Exhibits* 472 at 3–4, 475 at 2, 486 at 2, 488 at 2.

[42] *Defendants' Exhibits* 18–20; *Trial Transcript* at 3-202:14 to 3-206:3.

17-20545.13211

condition of air pollution.[43]  Also, after investigating, the TCEQ elected to pursue

enforcement but not impose penalties or require further action on 55 Reportable

Events because Exxon either agreed to take certain corrective actions or had

already taken corrective actions.[44]  An example of one such Reportable Event

occurred on August 30, 2006, at the Butadiene Unit due to operator error.[45]

Exxon's root cause analysis determined the event occurred because a technician

misunderstood a request via radio from a computer console operator and opened

the wrong valve.[46]  The incorrect action was corrected within 12 minutes, and

Exxon used the event as an example to its employees to reinforce the importance

of effectively communicating via radio and repeating field expectations before

performing action.[47]  Another example of one such Reportable Event occurred on

April 11, 2007, at the BOP-X Expansion Flare when the methanator shut down

resulting in flaring.[48]  Exxon's root cause analysis determined the methanator shut

down because of a high temperature swing in the furnace crossover temperature

during the feed-in of steam shortly after the furnace completed a routine decoke

---

[43] 30 TEX. ADMIN. CODE § 101.222.

[44] *Defendants' Exhibits* 24–29; *Trial Transcript* at 3-200:9 to 3-202:13.

[45] *Defendants' Exhibits* 26, 26E.

[46] *Defendants' Exhibit* 26E.

[47] *Defendants' Exhibit* 26E.

[48] *Defendants' Exhibits* 26, 26I.

17-20545.13212

Case 4:10-cv-04969    Document 254-1    Filed in TXSD on 04/26/2017    Page 13 of 20

cycle.[49] That event was the first time in the 10 years the methanator had been in service that such an incident had occurred, which was 1 out of approximately 1,000 feed-ins.[50]  To prevent similar events from occurring, Exxon increased the methanator trip point from 700 to 800 degrees and modified its operating procedures in three ways: operating windows for crossover temperatures, dimethyl sulphide injection prior to feed-in, and removal of 225 pounds of steam prior to feed-in.[51]

10.    The distinction the TCEQ makes between reportable emissions events and recordable emissions events demonstrates the agency's belief that emissions from recordable emissions events are less serious and less potentially harmful to human health than emissions from reportable emissions events.[52]  Of the 3,735 Recordable Events, 43% were 1/2 an hour or less in duration, 55% were 1 hour or less duration, 62% were 2 hours or less in duration, 73% were 5 hours or less in duration, 82% were 12 hours or less in duration, and 89% were 24 hours or less in duration.[53]  Further, 58% had total emissions of 20 pounds or less, 80% had total

---

[49] *Defendants' Exhibit* 26I.

[50] *Defendants' Exhibit* 26I.

[51] *Defendants' Exhibit* 26I.

[52] *Trial Transcript* at 12-164:11–23.

[53] *Defendants' Exhibit* 1007A at 1; *see Plaintiffs' Exhibits* 1B, 2B, 2D, 2F.

17-20545.13213

emissions of 100 pounds or less, 87% had total emissions of 200 pounds or less,
and 93% had total emissions of 500 pounds or less.[54]  For example, Exxon tracked,
as a Recordable Event, smoke that emanated from a power receptacle due to an
electrical issue when an extension cord was plugged in, which lasted such a short
time that the duration was recorded as 0 hours and which emitted a total of 0.02
pounds of emissions.[55]  As another example, Exxon tracked, as a Recordable
Event, a fire in a cigarette butt can that lasted less than one minute and emitted a
total of 0.02 pounds of emissions, the corrective action for which was to pour
water in the cigarette butt can.[56]

11.    Of the 901 Deviations, 45% involved no emissions whatsoever.[57]  The
Deviations not involving emissions typically relate to late reports or incomplete
reports.[58]  For example, Exxon recorded, as Deviations, failure to maintain a record
of a drain inspection; late submission of a report of an engine's hours of operation;
and failure to perform a quarterly engine test due to engine malfunction, the

---

[54] *Defendants' Exhibit* 1007A at 2; *see Plaintiffs' Exhibits* 1B, 2B, 2D, 2F.

[55] *Plaintiffs' Exhibit* 1B at row 800; *Trial Transcript* at 10-216:17 to 10-218:6, 12-234:3–12.

[56] *Plaintiffs' Exhibit* 2D at row 2432.

[57] *Trial Transcript* at 3-118:9–13, 10-204:11–13, 10-208:1–8.

[58] *Trial Transcript* at 10-208:9 to 10-209:17; *see Plaintiffs' Exhibits* 7A–E.

14

17-20545.13214

corrective action for which was testing the engine upon repair and startup.[59]  Of the 493 Deviations that involved emissions, 78 involved emissions occurring in the normal course of operations, and thus those emissions are not at issue in this case.[60] The emissions from the remaining 415 Deviations are categorized as either a Reportable Event or Recordable Event depending on the amount of emissions, and thus those emissions are addressed in the Court's findings related to Reportable Events or Recordable Events.[61]

## E.   *Agreed Enforcement Order*

12.   On February 22, 2012, Exxon and the TCEQ agreed on an enforcement order regarding the Complex (the "Agreed Order").[62]  The Agreed Order, inter alia: (1) resolved enforcement for certain past reportable emissions events; (2) established stipulated penalties for future reportable emissions events, while precluding Exxon from asserting the applicable affirmative defense; (3) required specified emissions reductions; and (4) mandated implementation of 4

---

[59] *Plaintiffs' Exhibit* 7C at row 36, 142; *Trial Transcript* at 10-207:1–7.

[60] *Trial Transcript* at 10-209:18 to 10-210:1.

[61] *Trial Transcript* at 10-203:11 to 10-204:10, 10-210:7–12.

[62] *Defendants' Exhibit* 222.

17-20545.13215

environmental improvement projects.[63]  The environmental improvement projects

are as follows:

> a.      Plant Automation Venture.  Install computer applications to
> improve real-time monitoring, identification, diagnostics and online
> guidance/management of operations.  The project is intended to
> provide early identification of potential events and/or instrumentation
> abnormalities, allowing proactive response.
>
> * * *
>
> b.    Fuels  North  Flare  System  Monitoring/Minimization. . . .
> Additional instrumentation, including monitoring probes and on-line
> analyzers  are  intended  to  improve  the  identification  and
> characterization of flaring events.  The development of flare
> minimization practices . . . are intended to reduce loads on the flare
> system.
>
> * * *
>
> c.      BOP/BOPX Recovery Unit Simulators.  Develop, implement
> and use high-fidelity process training simulators . . . intended to
> improve operator training and competency, resulting in reduced
> frequency and severity of emissions events.
>
> * * *
>
> d.      Enhanced Fugitive Emissions Monitoring. . . . The program will
> use infrared imaging technology to locate potential VOC and HRVOC
> leaks. . . .[64]

The Agreed Order states these projects "will reduce emissions at the Baytown

Complex, including emissions from emissions events . . . ."[65]  Indeed, the Agreed

Order requires certain amounts of emissions reductions.[66]  Exxon could not have

---

[63] *Defendants' Exhibit* 222 at ¶¶ I.13, III.3, III.4, III.10, III.12; *Trial Transcript* at 3-32:25 to 3-40:5, 12-205:15 to 12-207:8.

[64] *Defendants' Exhibit* 222 at ¶ III.12.

[65] *Defendants' Exhibit* 222 at ¶ III.12.

[66] *Defendants' Exhibit* 222 at ¶ III.10.

16

been required to undertake these projects under existing laws and regulations.[67] Implementation of these projects will cost approximately $20,000,000.[68] They must be implemented within 5 years of the date of the Agreed Order, and Exxon must submit semi-annual reports to the TCEQ that provide information on the progress of these projects.[69] In addition, Exxon must submit annual reports to the TCEQ that identify emissions reductions, including "an explanation of how recent air emissions performance continues the overall emissions reduction trends at the Baytown Complex," and provide information on activities undertaken to improve environmental performance.[70]

## F.    *Efforts to Improve Environmental Performance and Compliance*

13.    The Complex has a governing philosophy that all employees work toward plant reliability and environmental compliance.[71] It has a Safety Security Health and Environmental ("SSHE") group comprised of approximately 75 employees, including approximately 30 dedicated to environmental compliance,

---

[67] *Defendants' Exhibit* 222 at ¶ III.12; *Trial Transcript* at 3-190:6–24, 12-177:12 to 12-178:6.

[68] *Trial Transcript* at 3-32:25 to 3-40:5.

[69] *Defendants' Exhibit* 222 at ¶¶ III.12, 13.

[70] *Defendants' Exhibit* 222 at ¶ III.14.

[71] *Trial Transcript* at 3-82:2 to 3:83:20, 3-273:20 to 3-274:20.

17

with an annual budget of $25 million in 2014.[72]  Over the past several years Exxon has spent more than $1 billion on regulatory compliance and environmental improvement projects at the Complex.[73]  Specifically, for the years at issue in this case, Exxon spent the following on maintenance and maintenance-related capital projects at the Complex: $464 million in 2005, $539 million in 2006, $519 million in 2007, $599 million in 2008, $642 million in 2009, $598 million in 2010, $583 million in 2011, $607 million in 2012, and $685 million in 2013.[74]

14.    The Complex employs a wide variety of emissions-reduction equipment such as wet gas scrubbers, selective catalytic reduction, amine treating towers, flares, flare gas recovery systems, external floating roof tanks, sulfur recovery units, a regenerative thermal oxidizer, and more than one hundred low nitrogen oxide ("$NO_x$") burners; the Complex also employs emissions-detection equipment such as continuous emissions monitoring systems and forward-looking infrared cameras.[75]  Approximately half of the flares at the Complex are connected to flare gas recovery compressors.[76]  All of the flares have flow rate velocity

---

[72] *Trial Transcript* at 2-195:1–2, 2-203:8–12, 3-89:22 to 3-90:9, 12-214:19 to 12-215:5, 12-226:4–13.

[73] *Trial Transcript* at 12-239:22 to 12-240:6.

[74] *Defendants' Exhibit* 413.

[75] *Trial Transcript* at 10-47:5 to 10-78:19.

[76] *Trial Transcript* at 10-56:13–16.

18

Case 4:10-cv-04969    Document 294-1    Filed in TXSD on 08/2/2017    Page 20 of 20

meters and are monitored for vent gas heat content, and Exxon takes steps to ensure each flare operates in compliance with applicable regulatory requirements.[77] Exxon has also generated and implemented a flare minimization plan to reduce flaring at the Complex.[78]   Further, Exxon's maintenance policies and procedures conform or exceed industry standards and codes.[79]

15.    Both the TCEQ and the EPA recognize it is not possible to operate any facility—especially one as complex as the Complex—in a manner that eliminates all emissions events and deviations.[80]   Despite good practices, at any industrial facility there will always be mechanical failure and human imperfection leading to noncompliance with Title V permit conditions.[81]

## G.    *Improvement*

16.    In the Agreed Order, the TCEQ recognized the Complex's historical reductions in emissions when making the following finding of fact:

---

[77] *Trial Transcript* at 10-61:5–17.

[78] *Trial Transcript* at 12-231:16 to 12-232:1.

[79] *Trial Transcript* at 7-225:3–14, 11-274:25 to 11-275:7, 12-15:4 to 12-16:9, 12-20:15–20, 12-25:14–25, 12-26:16–23.

[80] *Defendants' Exhibit* 190 at 7–8, 14–15; *Defendants' Exhibit* 546 at 11, ¶¶ 32–34; *Trial Transcript* at 3-112:2–8.

[81] *Defendants' Exhibit* 190 at 7–8, 14–15; *Defendants' Exhibit* 546 at 11, ¶¶ 32–34; *Trial Transcript* at 3-112:2–8.

17-20545.13219

> The annual emissions inventory reports that ExxonMobil has
> submitted for the Baytown Complex under 30 TEX. ADMIN. CODE
> § 101.10 reflect a positive trend of reductions in actual emissions,
> including unauthorized emissions associated with emissions events
> and scheduled MSS activities, from Baytown Complex. From 2000 to
> 2010, ExxonMobil has reported a 60 percent reduction in aggregate
> emissions of VOC, HRVOC, CO, S02 and $NO_x$ from the Baytown
> Complex. Over that same time period, reported emissions of VOC
> from the Baytown Complex have dropped by 44 percent, reported
> emissions of CO have dropped by 76, and reported emissions of $NO_x$
> have dropped by 63 percent.[82]

Likewise, evidence in this case shows the total amount of emissions at the

Complex generally declined year-to-year over the years at issue in the case.[83]  In

addition, the annual amount of unauthorized emissions of criteria pollutants at the

Complex decreased by 95% from 2006 to 2013.[84]  Similarly, the annual number of

Reportable Events that occurred at the Complex decreased by 81% percent from

2005 to 2013.[85]  Flaring at the Complex has been reduced by 73% since 2000.[86]

---

[82] *Defendants' Exhibit* 22 at ¶ I.12.

[83] *Defendants' Exhibits* 1004, 1008.

[84] *Defendants' Exhibit* 1002.  Under the CAA, the EPA establishes minimum air
quality levels in the form of "national ambient air quality standards" for six pollutants
(known as "criteria pollutants") to protect public health.  42 U.S.C. § 7409.  The six
criteria pollutants are sulfur dioxide, particulate matter, carbon monoxide, ozone, oxides
of nitrogen/nitrogen dioxide, and lead.  40 C.F.R. §§ 50.4–17.

[85] *Defendants' Exhibit* 1000 at 1.

[86] *Defendants' Exhibit* 547 at 12:11–12.

17-20545.13220

Case 4:10-cv-04969    Document 254-1    Filed in TXSD on 04/28/17    Page 18 of 20

17.    In addition, each year at issue, total emissions were far below the annual emissions limits.[87]  For example, in 2012, the annual emissions limit of volatile organic compounds ("VOCs") was 7,778.4 tons, but the Complex only emitted 2,958.1 tons of VOCs in that year.[88]  Also, each year at issue, unauthorized emissions were a very small percentage of total emissions and an even smaller percentage of the annual emissions limits.[89]  For example, in 2012, of the total VOCs emitted, only 54.9 tons were unauthorized, which is only 1.9% of the Complex's total VOC emissions that year and only 0.7% of the annual VOC emissions limit.[90]

## H.    *Plaintiffs and Plaintiffs' Members*

18.    Environment Texas is a non-profit corporation with a purpose "to engage in activities, including public education, research, lobbying, litigation, issue advocacy, and other communications and activities to promote pro-environment political ideas, policies and leaders."[91]  It has approximately 2,900 dues-paying

---

[87] *Defendants' Exhibits* 1004, 1008.  Emissions from "event emissions" are at issue in this case, not "permitted emissions."

[88] *Defendants' Exhibit* 1004 at 1.

[89] *Defendants' Exhibits* 1004, 1008.

[90] *Defendants' Exhibit* 1004 at 1.

[91] *Plaintiffs' Exhibit* 338 at ¶ II(2); *Trial Transcript* at 1-227:16–25.

21

17-20545.13221

members in Texas.[92]  Similarly, Sierra Club is a non-profit corporation with a purpose to protect humanity, the environment, and the ability to enjoy the outdoors.[93]  The Lone Star (Texas) Chapter of the Sierra Club has approximately 25,000 members.[94]  Plaintiffs called four members of either Environment Texas or Sierra Club to testify.

19.    First, Diane Aguirre Dominguez is a member of Environment Texas and Sierra Club.[95]  She grew up in Baytown at her parents' home, which is about a mile and a half from the Complex.[96]  The Complex is the closest industrial facility to her parents' home.[97]  She lived in Houston from 2006 through 2013 while attending college and working, during which time she regularly visited her parents' home in Baytown.[98]  In March 2013, she moved to Oakland, California.[99]  She has returned to Baytown to visit her family at her parent's home, and she has plans to

---

[92] *Trial Transcript* at 1-234:24 to 1-235:4.

[93] *Trial Transcript* at 2-125:11–22.

[94] *Trial Transcript* at 2-125:23 to 2-126:4.

[95] *Trial Transcript* at 1-192:2–22.

[96] *Trial Transcript* at 1-193:8 to 1-194:16.

[97] *Trial Transcript* at 1-194:17–20.

[98] *Trial Transcript* at 1-196:6 to 1-199:9.

[99] *Trial Transcript* at 1-199:8–9.

22

17-20545.13222

Case 4:10-cv-04969    Document 254-1    Filed in TXSD on 04/28/17    Page 3 of 20

visit Baytown again for the holidays in 2014.[100]  While growing up in Baytown, she often smelled odors at her parents' home and other places in Baytown, and she had allergies characterized by running nose, watery eyes, and chest constriction, for which she took medication.[101]  These symptoms improved when she moved away from Baytown and she was able to stop taking medication, but the symptoms return whenever she visits her family in Baytown.[102]  However, she cannot correlate any of these symptoms to specific Events or Deviations at issue in this case.[103]  Further, she has seen flares, smoke, and a brownish haze over the Complex.[104]  She finds these sights and smells worrisome because she thinks they indicate Exxon is emitting harmful chemicals; she is also concerned about the risk of explosion from an emergency condition at the Complex.[105]  However, she understands some flaring is a normal, permitted part of the operation of the Complex, and she does not know of a time when she observed unpermitted flaring.[106]  Lastly, she enjoys running outdoors, but when she is visiting Baytown,

_____

[100] *Trial Transcript* at 1-199:10–25.

[101] *Trial Transcript* at 1-200:1 to 1-201:15, 1-205:6–25, 1-219:1–14.

[102] *Trial Transcript* at 1-205:19 to 1-206:11.

[103] *Trial Transcript* at 1-207:25 to 1-209:23, 1-220:1 to 1-222:4.

[104] *Trial Transcript* at 1-202:2 to 1-203:8, 1-218:6–17.

[105] *Trial Transcript* at 1-203:9 to 1-204:9.

[106] *Trial Transcript* at 1-218:3–24.

23

17-20545.13223

Case 4:10-cv-04969    Document 254-1    Filed in TXSD on 04/28/17    Page 91 of 20

she refrains from doing so because she experiences labored breathing and an abrasive feeling in her throat and lungs.[107]

20.    Second, Marilyn Kingman is a member of Sierra Club.[108] She lives in a town that neighbors Baytown, but she shops, banks, attends church, and conducts other activities several times a week in Baytown, including nearby the Complex.[109] She has smelled a chemical smell around the Complex, seen flares at the Complex, and seen a gray or brown haze over the Complex.[110] The odors she has smelled, which she attributes to the Complex, cause her to be concerned for her health.[111] She limits her outdoor activities in Baytown when she smells odors or sees haze.[112] Also, flaring at the Complex concerns her because she is afraid of explosion and because she believes flaring indicates something is wrong.[113] However, she does not claim to have any physical ailments or health conditions that she attributes to

---

[107] *Trial Transcript* at 1-204:10 to 1-205:5.

[108] *Trial Transcript* at 6-69:11–14.

[109] *Trial Transcript* at 6-71:3 to 6-75:6.

[110] *Trial Transcript* at 6-75:2 to 6-76:15.

[111] *Trial Transcript* at 6-76:16–23, 6-83:6–12.

[112] *Trial Transcript* at 6-76:24 to 6-77:24.

[113] *Trial Transcript* at 6-78:13 to 6-80:5.

24

17-20545.13224

anything happening at the Complex.[114]  Also, she was not able to correlate any of

her experiences or concerns to specific Events or Deviations at issue in this case.[115]

    21.    Third, Richard Shae Cottar is a member of Sierra Club.[116]  From April

2010 through September 2012, he lived a quarter of a mile from the Complex.[117]

Since September 2012, he has lived approximately two miles from the Complex.[118]

While living at the closer address, he saw or heard flaring events at the Complex

from his home that were audibly disruptive, woke him up, rattled the windows of

his house, involved plumes of black smoke, involved large flames, and lasted for

several hours in duration.[119]  He also smelled strong, pungent odors that, on

occasion, caused him headaches and awoke him in the night.[120]  He attributed

odors at his home to being caused by the Complex because when the wind was

blowing from the Complex towards him during flaring events, he smelled the

---

[114] *Trial Transcript* at 6-95:14–20.

[115] *Trial Transcript* at 6-91:23 to 6-95:9.  On February 13, 2014, Kingman smelled an odor she attributed as emanating from the Complex, and a Recordable Event occurred that day; however, February 13, 2014, is outside the time frame of this case.

[116] *Trial Transcript* at 1-98:18 to 1-99:13.

[117] *Trial Transcript* at 1-102:7 to 1-103:6.

[118] *Trial Transcript* at 1-102:3–4, 1-106:5–11.

[119] *Trial Transcript* at 1-108:5–24, 1-109:12–20, 1-118:13–24, 1-121:7 to 1-123:18, 1-128:2–3.

[120] *Trial Transcript* at 1-109:21 to 1-112:3, 1-131:5 to 1-132:4, 1-176:6–9.

25

17-20545.13225

Case 4:10-cv-04969   Document 254-1   Filed in TXSD on 04/26/17   Page 93 of 20

odors, but when the wind was blowing towards the Complex away from him during flaring events, he did not smell the odors.[121]   He has also smelled odors that became more intense the closer he got to the Complex while driving.[122]   His asthmatic symptoms were exacerbated when living at the closer address, and since moving further from the Complex, his asthmatic symptoms have decreased.[123]   He moved further away from the Complex out of concern for his health and safety.[124]   When visiting the nature center next to the Complex, he does not stay if he sees emissions.[125]   He does not want to breathe unauthorized emissions, and his concerns about air quality would be lessened if Exxon were to reduce its unauthorized emissions.[126]   However, he understands that certain emissions and flaring are allowed by permits.[127]   In total, he was able to credibly correlate three flaring events he observed to specific Events or Deviations, one of which woke him up from noise and involved a "sweet odor" outside his home.[128]

---

[121] *Trial Transcript* at 1-119:5–18.

[122] *Trial Transcript* at 1-111:10–20.

[123] *Trial Transcript* at 1-148:3 to 1-149:19, 1-187:12 to 1-188:1.

[124] *Trial Transcript* at 1-144:21 to 1-145:17.

[125] *Trial Transcript* at 1-152:11–21.

[126] *Trial Transcript* at 1-153:9–20.

[127] *Trial Transcript* at 1-153:9–13, 1-169:3–18.

[128] *Trial Transcript* at 1-123:19 to 1-131:1, 1-168:17 to 1-181:12.

17-20545.13226

22.     Fourth, Sharon Sprayberry is a member of Sierra Club.[129]  She lived in
Baytown from 2004 until June 2012, about one mile from the Complex.[130]  While
living in Baytown, she heard flares at the Complex from inside her home, saw
smoke coming from the flares, saw haze over the Complex, and smelled a chemical
odor outdoors when the wind was blowing from the Complex towards her or when
she saw flares.[131]  These smells concerned her because she was afraid they were
toxic or harmful.[132]  While living in Baytown, she also experienced respiratory
issues.[133]  Her respiratory problems went away within a few weeks of moving to a
different city—McGregor, Texas.[134]  She would like to return to Baytown to visit
friends and attend events, but she is unlikely to return because during her last visit
the air quality affected her breathing.[135]  She would have retired in Baytown if the
air quality were better.[136]  She understands not all flares involve unauthorized

---

[129] *Trial Transcript* at 6-5:19–23.

[130] *Trial Transcript* at 6-11:23 to 6-13:13, 6-37:2–5, 6-40:3–10.

[131] *Trial Transcript* at 6-15:18 to 6-16:19, 6-33:12 to 6-36:13.

[132] *Trial Transcript* at 6-36:16 to 6-37:1.

[133] *Trial Transcript* at 6-15:7–17.

[134] *Trial Transcript* at 6-37:9–24.

[135] *Trial Transcript* at 6-38:2–19.

[136] *Trial Transcript* at 6-38:20–22.

27

17-20545.13227

emissions because some flares and emissions are authorized by permit.[137]  In total, she was able to credibly correlate two events she observed to Events or Deviations.[138]

## I.    *Baytown Residents Called by Exxon*

23.    Exxon called three residents of the Baytown community to testify. First was Fred Aguilar, who has lived approximately eight blocks from the Complex for **35 years**.[139]  He has no health issues or concerns that he attributes to the Complex, does not worry about living near the Complex, and has never had any concerns about any emissions events or flares that have occurred at the Complex.[140]  He has only rarely heard very loud noise from flaring, the last time being six or seven years ago, and such noise never affected his ability to enjoy his property.[141]

24.    Second was Billy Barnett, who has lived across the street from the Complex for 17 years and in close proximity to the Complex for a total of **37**

---

[137] *Trial Transcript* at 6-50:12–20.

[138] *Trial Transcript* at 6-17:7 to 6-23:8, 6-45:20 to 6-49:16, 6-65:20 to 6-67:24.

[139] *Trial Transcript* at 10-130:11 to 10-131:9.

[140] *Trial Transcript* at 10-140:8–24, 10-142:1–6, 10-155:4–12.

[141] *Trial Transcript* at 10-142:7–18.

17-20545.13228

Case 4:10-cv-04969    Document 254-1    Filed in TXSD on 04/26/17    Page 98 of 20

years.[142]  He does not "feel impacted or influenced" by his close proximity to the Complex.[143]  Specifically, he has had no health issues that he attributes to living across the street from the Complex, flaring at the Complex has not disturbed his enjoyment of his property, and he has not had problems with loud noises coming from the Complex.[144]  He has smelled substantial odors a couple of times in 37 years but does not characterize the odors as overpowering.[145]

25.    Third, Gordon Miles has lived very close to the Complex for **28 years**.[146]  He has never experienced any problems with flaring, odors, or noises coming from the Complex; has no health problems that he attributes to anything happening at the Complex; and has no complaints about Exxon as a neighbor.[147]

### III. CONCLUSIONS OF LAW

***A.    Standing***

1.    An organization "has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and

---

[142] *Trial Transcript* at 11-101:8 to 11-102:3, 11-104:10–19.

[143] *Trial Transcript* at 11-114:13–18.

[144] *Trial Transcript* at 11-113:7–11, 11-114:19 to 11-115:1, 11-115:10–14.

[145] *Trial Transcript* at 11-115:5–9.

[146] *Defendants' Exhibit* 545; *Trial Transcript* at 12-82:11 to 12-86:5.

[147] *Trial Transcript* at 12-89:22 to 12-90:14, 12-96:13–22.

17-20545.13229

Case 4:16-cv-04505   Document 25-4-1   Filed in TXSD on 04/26/2017   Page 308 of 20

(3) neither the claim asserted nor the relief requested requires the participation of individual members." *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000). Exxon does not contest the second and third requirements, and the Court finds these requirements are met. At issue is the first requirement.

      2.    In order for a member to have standing to sue in his or her own right, (1) he or she must have suffered an actual or threatened injury, (2) that is fairly traceable to the defendant's action, and (3) the injury must likely be redressed if the plaintiff prevails in the lawsuit. *Id.* The plaintiff has the burden to prove these requirements by the preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Envtl. Conservation Org. v. City of Dallas*, No. 3-03-CV-2951-BD, 2005 WL 1771289, at *4 n.2 (N.D. Tex. July 26, 2005). Each requirement is addressed in turn.

### *a.*   *Injury-in-Fact*

      3.    To satisfy the injury-in-fact requirement, the plaintiff must prove injury to himself or herself, not injury to the environment. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). There is a "low threshold for sufficiency of injury" to confer standing. *Save Our Cmty. v. EPA*, 971 F.2d 1155, 1161 (5th Cir. 1992). For an environmental plaintiff, effect to his or her recreational or aesthetic interests constitutes injury-in-fact. *Laidlaw,*

17-20545.13230

Case 4:10-cv-04969    Document 257-1    Filed in TXSD on 04/26/2017    Page 218 of 20

528 U.S. at 183. Also, "breathing and smelling polluted air is sufficient to demonstrate injury-in-fact and thus confer standing under the CAA." *Texans United*, 207 F.3d at 792; *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 670–71 (E.D. La. 2010).

    4.    In this case, four members of either Environment Texas or Sierra Club testified. As detailed supra in paragraphs II.19–22, while living or visiting near the Complex during the time period at issue in this case, at least one of these members experienced the following, inter alia: allergies; respiratory problems; the smell of pungent odors, which occasionally caused headaches; audibly disruptive noise; and visions of flares, smoke, and haze. In addition, at least one of these members was worried about the risk of explosion after seeing flares and worried about his or her health after seeing flares, smoke, and haze.[148] Because of at least one of the aforementioned experiences or worries, at least one of these members made the following changes in his or her life, inter alia: refrained from running outdoors, limited outdoor activities when odors were smelled or haze seen, left the nature center next to Complex early, and moved away from Complex.[149] Collectively, these experiences, worries, and changes satisfy the injury-in-fact requirement.

---

[148] *Supra* ¶¶ II.19–22.

[149] *Supra* ¶¶ II.19–22.

17-20545.13231

Case 4:16-cv-04959   Document 25-1 Filed in TXSD on 04/4/2017   Page 92 of 20

### b.    Traceability

5.    So long as there is a fairly traceable connection between a plaintiff's injury and the defendant's violation, the traceability requirement of standing is satisfied. *Comer v. Murphy Oil USA*, 585 F.3d 855, 864 (5th Cir. 2009).  To confer standing, the plaintiff's injury does not have to be linked to exact dates that the defendant's violations occurred, and the plaintiff does not have to "show to a scientific certainty that defendant's [emissions], and defendant's [emissions] alone, caused the precise harm suffered by the plaintiffs." *Texans United*, 207 F.3d at 793; *Save Our Cmty.*, 971 F.2d at 1161 (internal quotation marks omitted); *see Tex. Campaign for the Env't v. Lower Colo. River Auth.*, No. H-11-791, 2012 WL 1067211, at *4–5 (S.D. Tex. Mar. 28, 2012) (Miller, J.).  Rather, circumstantial evidence of traceability suffices, such as observation of smoke coming from the defendant's plant while at the same time smelling odors, and expert evidence that on certain days when the defendant's violations occurred, excess emissions were detectable in the plaintiff's neighborhood. *Texans United*, 207 F.3d at 793.

6.    Even though Plaintiffs' members' injuries do not have to be linked to exact dates that the Events and Deviations occurred, Plaintiffs' members correlated some of the experiences described supra, such as odor and noise, to five Events or Deviations.[150]  Also, Plaintiffs' members have seen flares, smoke, and haze over

---

[150] *Supra* ¶¶ II.19–22 (Dominguez-0, Kingman-0, Cottar-3, and Sprayberry-2).

17-20545.13232

the Complex.[151]   Some of the members smelled odors at their homes while living very close to the Complex, particularly when the wind was blowing towards their homes from the Complex, and the Complex was the closest industrial facility to their homes.[152]   One member who lived a quarter of a mile from the Complex saw or heard flaring events at the Complex from his home, and he smelled odors that became more intense the closer he got to the Complex while driving.[153]   Some of the members' allergies and respiratory problems decreased when they moved away from the Complex.[154]   Additionally, Plaintiffs submitted evidence of the potential health effects caused by the types of pollutants emitted during the Events and Deviations, and some of these potential health effects match some of the experiences of Plaintiffs' members.[155]   All the aforementioned evidence suffices to establish a fairly traceable connection between Plaintiffs' members' injuries and the Events and Deviations at the Complex.   Accordingly, the traceability requirement is satisfied.

---

[151] *Supra* ¶¶ II.19–22.

[152] *Supra* ¶¶ II.19, 21–22.

[153] *Supra* ¶ II.21.

[154] *Supra* ¶¶ II.19, 21–22.

[155] For example, hydrogen sulfide can smell badly and cause headaches, and one of Plaintiffs' members smelled strong, pungent odors that, on occasion, caused him headaches. *Plaintiffs' Exhibit* 476 at 38–39; *Plaintiffs' Exhibit* 540 at 1, 4, 10; *Trial Transcript* at 7-89:25 to 7-91:9, 9-161:24 to 9-162:8; *supra* ¶ II.21.

17-20545.13233

### c.    *Redressability*

7.    A plaintiff must prove redressability "for each form of relief sought." *Laidlaw*, 528 U.S. at 185.    Relief that prevents or deters violations from reoccurring satisfies the redressability requirement. *Id.* at 185–86.  Here, Plaintiffs request penalties for the Events and Deviations, an injunction enjoining Exxon from violating the CAA, a special master to monitor compliance with the injunctive relief, and a declaratory judgment that Exxon violated its Title V permits.  Civil penalties in a CAA citizen suit satisfy the redressability requirement of standing because they deter future violations.  *Texans United*, 207 F.3d at 794; *Laidlaw*, 528 U.S. at 185–86.[156]  An injunction requiring the defendant to cease its violations also satisfies the redressability requirement of standing.  *Texans United*, 207 F.3d at 794; *Envtl. Conservation Org.*, 2005 WL 1771289, at *4.  Because the purpose of the special master in this case would be to ensure violations do not recur, the request for a special master in this particular case also satisfies the redressability requirement.   Lastly, because a public, court-ordered declaratory judgment that Exxon has violated its Title V permits would help deter Exxon from

_____

[156] To the extent the redressability requirement in a CAA case is only satisfied as to penalties for ongoing violations, not wholly past violations, the Court notes Exxon has some ongoing violations.  *See infra* ¶¶ III.9–48 (finding that because Exxon violated some of the same emission standards or limitations both before and after the complaint was filed, those violations are considered ongoing under the CAA and are thus actionable in a citizen suit).

violating in the future, the request for a declaratory judgment in this particular case satisfies the redressability requirement. Accordingly, the redressability requirement is satisfied as to all relief sought.

8.    Because the injury-in-fact, traceability, and redressability requirements are satisfied, Plaintiffs' members have standing to sue in their own right, and Plaintiffs have standing.

## B.    *Actionability*

9.    It is undisputed Exxon violated some emission standards or limitations under the CAA.[157] The issue is whether such violations are actionable under the CAA as a citizen suit. The CAA provides citizens may bring a civil action "against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation under [the CAA]." 42 U.S.C. § 7604(a)(1). The plaintiff must prove these requirements by a preponderance of the evidence. *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061, 1063–64 (5th Cir. 1991).[158] The plaintiff

---

[157] Specifically, Exxon does not dispute that the alleged violations under Counts II, III, IV, and V of Plaintiffs' complaint constitute violations of an emission standard or limitation. However, Exxon does dispute that the alleged violations under Counts I, VI, and VII constitute violations of an emission standard or limitation.

[158] *Carr* is a Clean Water Act ("CWA") case. The "to be in violation" provision in the CAA is identical to the "to be in violation" provision in the CWA. *Compare* 42 U.S.C. § 7604(a) (CAA), *with* 33 U.S.C. § 1365(a)(1) (CWA). Interpretations of the CWA provision are instructive when analyzing the CAA provision. *See United States v. Anthony Dell'Aquila, Enters. & Subsidiaries*, 150 F.3d 329, 338 n.9 (3d Cir. 1998).

17-20545.13235

Case 4:10-cv-04969   Document 251-1   Filed in TXSD on 04/20/17   Page 16 of 20

can prove a person is "in violation," otherwise known as proving ongoing violation, in one of two ways: first, "by proving violations that continue on or after the date the complaint is filed, or [second] by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of recurrence in intermittent or sporadic violations." *Id.* at 1062.   Proof of one post-complaint violation is conclusive that the corresponding pre-complaint violation is actionable. *Id.* at 1065 n.12; *Natural Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 2 F.3d 493, 502 (3d Cir. 1993).   The plaintiff can prove "a continuing likelihood of recurrence" in one of two ways: "[f]irst, by proving a likelihood of recurring violations of the same parameter; or second, by proving a likelihood that the same inadequately corrected source of trouble will cause recurring violations of one or more different parameters." *Texaco Ref.*, 2 F.3d at 499.   In summary, the plaintiff must prove by the preponderance of the evidence one of the following in a CAA citizen suit:

> (1) "to have violated": repeated violation of the same emission standard or limitation before the complaint was filed; or
>
> (2) "to be in violation":
>
> > (a) violation of the same emission standard or limitation both before and after the complaint was filed; or
> >
> > (b) continuing likelihood of recurrence:

17-20545.13236

(i) likelihood of recurring violations of the same parameter; or

(ii) likelihood that the same inadequately corrected source of trouble will cause recurring violations of one or more different parameters.

*See* 42 U.S.C. § 7604(a)(1); *Carr*, 931 F.2d at 1062; *Texaco Ref.*, 2 F.3d at 499; *see also Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, No. H-10-4969, ECF No. 126 at 10–13 (S.D. Tex. Apr. 3, 2013) (Smith, Mag.) (memorandum and recommendation on motion for summary judgment in this case), *adopted by* ECF No. 135 (S.D. Tex. May 2, 2013) (Hittner, J.) (order adopting the memorandum and recommendation). The definition of "emission standard or limitation" includes any "standard," "limitation," "schedule," "term," or "condition" in a Title V permit. 42 U.S.C. § 7604(f)(4).

10. Here, Plaintiffs claim Exxon either (1) repeatedly violated the same emission standards or limitations in its Title V permits before the complaint was filed, or (2)(a) violated the same emission standards or limitations in its Title V permits both before and after the complaint was filed. Plaintiffs do not claim satisfaction of the third method of proving actionability: method (2)(b) continuing likelihood of recurrence.[159]

---

[159] Because Plaintiffs do not claim a continuing likelihood of recurrence for purposes of actionability, the Court declines to address in detail this method of proving actionability. However, the Court does find that the preponderance of the credible

37

17-20545.13237

11.    Title V permits incorporate numerous, different regulatory requirements, and the Complex is regulated by over 120,000 permit conditions.[160] Plaintiffs must prove Exxon repeatedly violated *an* emission standard or limitation, which includes a standard, limitation, schedule, term, or condition *in* one of Exxon's Title V permits. *See* 42 U.S.C. § 7604(a)(1), (f)(4). Thus, it is insufficient to prove violation of one standard or limitation followed by violation of a different standard or limitation. *ExxonMobil Corp.*, ECF No. 126 at 13 (holding that the CAA allows citizen suits for a wholly past violation so long as there is a second violation of the *same* emission standard or limitation) (citing

---

evidence does not support such a finding. The number of Events and Deviations does not alone prove a likelihood of recurring violations. *See supra* ¶ II.7; *infra* ¶¶ III.60–61. The testimony of Keith Bowers, particularly his opinion that the Events and Deviations had "common causes," is not persuasive to prove the same inadequately corrected source of trouble will cause recurring violations of different parameters. *See infra* ¶ III.61 n.224. There is no credible evidence that any of the Events or Deviations resulted from the same root cause. *Infra* ¶ III.61. Accordingly, none of the Events or Deviations are actionable due to a continuing likelihood of recurrence.

Exxon contends that to be actionable, the law requires the violations to have involved the same equipment, the same emissions point, and the same root cause. Such considerations may be applicable to one way to prove actionability: method (2)(b) continuing likelihood of recurrence, particularly method (2)(b)(ii) likelihood that the same inadequately corrected source of trouble will cause recurring violations of one or more different parameters. However, such considerations are not required to prove actionability the other two ways: method (1) repeated violation of the same emission standard or limitation pre-complaint, or method (2)(a) violation of the same emission standard or limitation both before and after the complaint. For additional background on why violations are not required to have involved the same equipment, the same emissions point, and the same root cause to be actionable, see *ExxonMobil Corp.*, ECF No. 126 at 11–13.

[160] *Supra* ¶ II.4.

17-20545.13238

*Patton v. Gen. Signal Corp.*, 984 F. Supp. 666, 672 (W.D.N.Y. 1997)) (citing *Satterfield v. J.M. Huber Corp.*, 888 F. Supp. 1561, 1564–65 (N.D. Ga. 1994)). Similarly, it is insufficient to prove repeated violation a Title V permit, without showing which specific standard, limitation, schedule, term, or condition in the Title V permit was repeatedly violated.

12.    As evidentiary support for the actionability of the alleged violations in each count of their complaint, Plaintiffs cite to the stipulated spreadsheets of Events and Deviations;[161] spreadsheets created by Plaintiffs that correspond to the stipulated spreadsheets, the only difference being a column added containing Plaintiffs' "number of days of violation" calculations; and tables that tally the alleged number of days of pre-complaint and post-complaint violations from the aforementioned spreadsheets.[162]  The Court addresses each count of Plaintiffs' complaint in turn.

---

[161] *Plaintiffs' Exhibits* 1A–7E; *see supra* ¶ II.5.  These stipulated spreadsheets span hundreds of pages and contain thousands of rows of alleged violations.  The Court has reviewed the details of all these spreadsheets.

[162] *Plaintiffs' Exhibits* 9–15.

17-20545.13239

### a.    *Count I*

#### 1.    *Special conditions 38 and 39 are standards or limitations within the meaning of the CAA*

13.    Plaintiffs contend the language in flexible permit 18287's special conditions 39 and 39 stating upset emissions are "not authorized" is a standard or limitation under the CAA. Exxon contends that special conditions 38 and 39 are not standards or limitations under the CAA because the term "not authorized" exempts upset emissions from the permit.

14.    The Court's initial opinion found Plaintiffs failed to provide corroborating evidence of violations of special conditions 38 and 39 because the evidence provided in support of Count I failed to specify which standards and limitations were allegedly violated. To the extent Plaintiffs did allege a violation of air containment conditions or limitations, the Court found the evidence did not prove a repeated violation of the same, specific limitation. On appeal, the Circuit held the Court conflated its analysis of Count I with the alleged MAERT limitation violations in Count II. As a matter of law, the Circuit held Count I sufficiently alleged an alternate theory from Count II, that every emissions event at the refinery constitutes a violation of the "no upset emissions" provision in special conditions 38 and 39. The Court's judgment on Count I was vacated and remanded. The Circuit determined the Court "appl[ied] the wrong law to the events set forth" by

17-20545.13240

using the incorrect permit provisions in its analysis. The Court, therefore, must in the first instance examine whether violations of special conditions 38 and 39 are actionable under the CAA, and if so, what the statutory scope of liability is for each upset event.[163]

15.    The Court first turns to whether special conditions 38 and 39 are an "emission standard or limitation" within the meaning of CAA. An "emission standard or limitation" is defined as "any standard, limitation or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(f)(4). Permit 18287 is a Title V permit within

---

[163] The Fifth Circuit remanded the case because it determined the Court applied the wrong law. The Court acknowledged in its original opinion (as did the Fifth Circuit opinion) that it did not reach the legal question of whether any violation was actionable under the CAA. Instead, the Court had determined it did not need to address that legal question because, even if the emission events were actionable under the CAA, Plaintiffs did not meet their burden of proof. Exxon contends that because the Fifth Circuit only remanded to this Court with instructions to treat Count I as alleging violations of special conditions 38 and 39, and not MAERT violations, any language in the opinion pertaining to the validity of Exxon's theory that the permits do not govern upset emissions is not binding on remand. To the extent Exxon is correct—that any discussion by the Fifth Circuit pertaining to Exxon's argument that upset emissions are not governed by permits is dicta—the Court notes that it has independently undertaken an analysis of the argument. The Court (as addressed in detail below) agrees with the Fifth Circuit's analysis of Exxon's argument. As such, the Court finds it not necessary to address which portions of the Fifth Circuit's opinion as to Count I may be dicta, and therefore, not binding on the Court on remand.

17-20545.13241

the meaning of the CAA.[164]   Therefore, liability turns on whether the "not authorized" language in special conditions 38 and 39 is a limitation in the permit or an exemption from the permit.

16.   On its face, the language in special conditions 38 and 39 is a limitation within the meaning of the CAA.  The relevant provision in the special conditions states:  "This permit does not authorize upset emissions, emissions from maintenance activities that occur as a result of upsets, or any unscheduled/unplanned emissions associated with an upset.  Upset emissions are not authorized, including situations where that upset is within the flexible permit emission cap or an individual emissions limit."[165]   The term "not authorized" cannot be interpreted in isolation from the surrounding text.  The modifying language within the text, that this provision applies even when an upset is "within the flexible permit emission cap or an individual emissions limit," clarifies any ambiguity as to whether the term "not authorized" should be interpreted as a limitation.   Rather than exempting upset emissions from the permit, the terminology provides a further limitation on standards and limitations found elsewhere in the permit.

---

[164] Title V permit O1229 incorporates permit 18287.

[165] Plaintiffs' Exhibit 176, Special Condition ¶¶ 38, 39 (emphasis added).

42

17.    Exxon's contention the phrasing of general condition 15 indicates that each special condition would need to explicitly state failure to comply with a limit in a permit is a "violation" where an emission is "not authorized" is unavailing. General condition 15 states: "The permit holder shall comply with all the requirements of this permit. Emissions that exceed the limits of this permit are not authorized ***and*** are violations of this permit."[166]    The phrase "are not authorized and are violations of the permit" modifies the first part of the sentence "[e]missions that exceed the limits of this permit."    The "not authorized" terminology from special condition 38 and 39 does not parallel the modifying "not authorized and . . . violations of the permit" language in general condition 15, such that the term should not be interpreted as violations unless explicitly deemed such.    Special conditions 38 and 39's language is best classified as instead defining when an upset event "exceeds the limits of this permit."    As discussed above, by the special conditions' terms, any upset emission—even one within the flexible permit emission cap or an individual emissions limit—exceeds the limits of permit 18287.

18.    The cases Exxon cites in support of holding that special conditions 38 and 39 exempt upset emissions from the permit are inapposite.    The analysis of the distinction between "authorizing" and "prohibiting" an event in *Association of Civilian Technicians v. FLRA*, 269 F.3d 1112, 1116 (D.C. Cir. 2001), turned on an

---

[166] Plaintiffs' Exhibit 176, General Condition ¶ 15 (emphasis added).

43

agency's reliance on a non-applicable statute to interpret a collective bargaining provision and its interpretation that the lack of authorization in that inapplicable statute prohibited an expenditure. The statutory provision at issue did not use the term "not authorized." *Id.* As such, the D.C. Circuit was not even interpreting the term "not authorized" and differentiating the term from "prohibiting"; any discussion of a lack of authorization merely pertained to the general principle that an expenditure is not authorized unless affirmatively recognized by a law or regulation. *Id.* The special conditions at issue here turn on the definition of the explicit term "not authorized." *Cabazon Band of Mission Indians v. Wilson*, 37 F.3d 430, 433 (9th Cir. 1994), involved a statute that did not confer authority to tax, but neither did the statute prohibit taxation if another source of authority for taxing power could be shown. Here, Exxon has not directed the Court to an alternate authority source that authorizes upset emissions.[167]  Additionally, in context of the entire text of the provision at issue in special conditions 38 and 39, the term "not authorized" on its face prohibits upset emissions.

19.    Nor does Exxon find support for its position in the regulatory framework. Special conditions 38 and 39 pertain to "upset emissions." As permit 18287 does not define the term, the Court turns to the definition found in Texas's regulatory framework. An "upset event" is defined under Texas law as "[a]n

_____

[167] *Infra* ¶¶ III.19–20.

44

17-20545.13244

unplanned and unavoidable breakdown or excursion of a process or operation that results in unauthorized emissions. . . ."[168]  30 TEX. ADMIN. CODE § 101.1 (110). "[U]nauthorized emissions" are defined as "[e]missions of any air contaminant except water, nitrogen, ethane, noble gases, hydrogen, and oxygen that exceed any air emission limitation in a permit, rule, or order of the commission or as authorized by Texas Health and Safety Code, §382.0518(g)."  *Id.* § 101.1(108). The regulations themselves refer back to the limitations set out in a permit.  Exxon has not pointed the Court to a regulation that governs upset emissions that would potentially conflict with special conditions 38 and 39.[169]

20.    The Court has not found any ambiguity as to whether the term "not authorized" in special conditions 38 and 39 pertains to a limitation.  The Court found the language in the relevant special conditions is plain on its face and is a

---

[168] In full, the definition states: "Upset event--An unplanned and unavoidable breakdown or excursion of a process or operation that results in unauthorized emissions. A maintenance, startup, or shutdown activity that was reported under §101.211 of this title (relating to Scheduled Maintenance, Startup, and Shutdown Reporting and Recordkeeping Requirements), but had emissions that exceeded the reported amount by more than a reportable quantity due to an unplanned and unavoidable breakdown or excursion of a process or operation is an upset event."  30 TEX. ADMIN. CODE § 101.1(110).

[169] 30 Texas Administrative Code § 101.1 merely sets out the definitions for terms used in air quality rules; section 101.1 does not provide any affirmative regulation pertaining to those definitions.  Even if Exxon were able to direct the Court to such a provision, general provision 13 in permit 18287 states the special conditions in the permit may be more restrictive than the requirement of Title 30 of the Texas Administrative Code.  See Plaintiffs' Exhibit 176, General Condition ¶13.

45

limitation within the meaning of the CAA.  Even if there were to be ambiguity,
however, the evidence Exxon cites from the TCEQ and the purported applicability
of *Auer* deference is unpersuasive.  The Agreed Order states: "Emission events and
MSS activities, other than planned MSS activities, are not subject to permitting
under 30 Tex. Admin. Code Chapters 106 or 116, and are regulated under 30 Tex.
Admin. Code Chapter 101 and Tex. Health & Safety Code §§ 382.0215, 382.0216
and 382.085."[170]  Chapter 106 pertains to permits by rule.  *See* 30 TEX. ADMIN.
CODE § 106.4.  Chapter 116 pertains to permitting for new construction or
modification.  *See* 30 TEX. ADMIN. CODE § 116.10.  The Agreed Order is best
interpreted as stating Exxon cannot receive a permit allowing emissions events or
unplanned MSS activities by rule or during new construction and modification.
Emissions events and unplanned MSS activity is not exempted from a permit;
instead, Exxon is prohibited from receiving a permit allowing emissions events and
unplanned MSS activities pursuant to those chapters.  The Agreed Order prohibits
issuing a permit that allows emissions events and unplanned MSS activities, and
states the events and activities are additionally subject to the cited regulatory
schemes.  A permit could still include a provision that prohibits emissions events
and unplanned MSS activities and would be consistent with the Agreed Order.

---

[170] *Defendants' Exhibit* 222, Finding ¶ I.2.

17-20545.13246

22.   Exxon further contends the trial evidence establishes agency regulatory policy considers special conditions 38 and 39 not to be stand-alone emissions standards or limitations, and the agency's treatment of these special conditions is entitled to *Auer* deference.[171]   At trial, Karen Olson ("Olson"), a former TCEQ permit reviewer and manager, testified that special conditions 38 and 39, "define what is within the scope of the permit and what is not within the scope of the permit as handled through Chapter 101."[172]   However, there was no testimony that specifically stated whether upset emissions were within the scope of the permit or not.[173]   Even if the Court were to interpret Olson's testimony as stating the agency did not consider special conditions 38 and 39 as stand-alone limitations, *Auer* deference would not apply to that testimony.   *See Paralyzed Veterans of Am. V. D.C. Arena L.P.*, 117 F.3d 579, 587 (D.C. Cir. 1997), *abrogated on other grounds by Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199

---

[171]   *Auer* deference is the proposition that, where an agency's regulation is ambiguous, courts "defer to an agency's interpretation of its regulations, even in a legal brief, unless the interpretation is plainly erroneous or inconsistent with the regulations or there is any other reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 546 U.S. 50, 59 (2011) (internal quotations omitted).

[172]   *Trial Transcript*, 11-149:5 to 150:15.

[173]   Further, the Court sustained Plaintiffs' objection to Exxon's tender of Olson for the purpose of "establish[ing] the TCEQ's understanding of the permit, the regulations that apply to the permit, and how the TCEQ views permit and permitting issues, and how they interpreted those rules." *Trial Transcript*, 11-127:8 to 128:5.

47

Case 4:10-cv-04969    Document 291-1    Filed in TXSD on 04/26/17    Page 6 of 20

(2015) ("A speech of a mid-level official of an agency, however, is not the sort of 'fair and considered judgment' that can be thought of as an authoritative departmental position."). Olson's testimony would be the equivalent of a speech by a mid-level official in *Paralyzed Veterans*, which the Court would not—without more—ascribe authority to as a departmental position. *Auer* deference, therefore, is inapplicable. Accordingly, the Court finds that special conditions 38 and 39 are standards and limitations within the CAA

     2.    *Violations of Special Conditions 38 and 39*

23.    Plaintiffs contend that each pollutant emitted during an upset event is a separate violation. Exxon does not address this contention. The Court did not reach the question in its initial opinion as to whether violations are determined per upset event or on a contaminant-by-contaminant basis.

24.    Interpretations of the CWA provision are instructive when analyzing a CAA provision. *See United States v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 338 n.9 (3d Cir. 1998). The CWA utilizes a pollutant-by-pollutant analysis in determining violations. *See Texaco*, 2 F.3d 493, 498–99 (discussing that one unresolved source of trouble can result in violations of multiple parameters, all of which are actionable in citizen's suit). Additionally, the language of special conditions 38 and 39 refers to "upset emissions" not "upset

17-20545.13248

events."[174]    As discussed above, under Texas's regulatory framework "upset events" are defined as resulting in "unauthorized emissions."[175]    The Court determines that the statutory framework and language of the special conditions indicate a pollutant-by-pollutant approach should be adopted here.  Accordingly, the Court will count each emission of a separate pollutant during an upset event as an individual violation.

25.    The evidentiary support cited for violations of Count I is Plaintiff's Exhibits 1A and 1B (stipulated spreadsheets), 587 and 588 (Plaintiffs' corresponding spreadsheets), and 9 (tallied table).[176]    These exhibits all reference permit 18287.  The information contained within the spreadsheets pertaining to the date, time, duration of release, and amount released is undisputed.  The Court found that pursuant to special conditions 38 and 39 these emissions were not authorized in any amount, even if the emissions fell within an emissions cap or

---

[174] Plaintiffs' Exhibit 176, Special Condition ¶¶ 38, 39.

[175] *Supra* ¶ III.19.

[176] On remand, Plaintiffs submitted resorted versions of Plaintiffs' Exhibits 587–94. *Description of Re-Sorted Versions of Plaintiffs' Exhibits 587–594*, Document No. 253, Exhibit 3.  The resorted versions show how repeated violations of specific emissions were identified and calculated, as well as grouped by duration.  The spreadsheets were submitted to the Court in native format.  The Court has reviewed the resorted exhibits and finds they are consistent with the spreadsheets initially submitted at trial.

17-20545.13249

individual emission limit.[177]    Therefore, the hourly emission limit is zero. Plaintiff's spreadsheets comport with the Court's analysis of special conditions 38 and 39.

26.    Each day of violation is subject to a civil penalty under the CAA. *See* 42 U.S.C. § 7413(b); 40 C.F.R § 19.4.  Neither party has directed the Court to a definition within a statute or permit for the term "day."  The Court adopts the definition of "day" as a twenty-four hour period, as has been adopted in the context of the CWA. *See San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 762 (N.D. Cal. 2011) (noting the twenty-four hour period calculation, as opposed to a calendar day definition, was more favorable to the defendant, the non-moving party).  As the Court found each separate emission of a pollutant during an upset event is a separate violation, to the extent multiple violations by the same pollutant occur on the same calendar day, those violations are counted as separate violations.  However, a continuous violation of pollutant resulting from one upset event utilizes the twenty-four hour period definition in calculating days of violations.

---

[177] To the extent the spreadsheets reference MAERT limits the Court will consider those violations in the alternative under Count II.  The Court will analyze permit 18287 violations individually under each count.  To the extent Counts I and II overlap—and as consistent with the Circuit's instructions on remand—the Court will not double count any violations under Counts I and II in calculating the penalties.

17-20545.13250

27.    The Court has reviewed the spreadsheets and tallied table submitted by Plaintiffs relevant to Count I and agrees with the methodology used in calculating the total violations per pollutant listed therein. The evidence shows the refinery emitted twenty-four different pollutants in continuing or repeated violations totaling 10,583 days of violations. Accordingly, the Court finds under Count I, Plaintiffs have proven 10,583 days of repeated or continued violations of special conditions 38 and 39 by a preponderance of the evidence.

### b.    Count II

28.    Plaintiffs contend—given the Fifth Circuit's holding that even if the numerical limits per pollutant within a permit vary due to amendment or renewal, exceeding those differing limits qualifies as a violation of the same permit—the violations in Count II are undisputed. Exxon contends it merely stipulated the data in the evidentiary spreadsheets supporting Count II was correct, but did not concede that entries on those spreadsheets listing the emission limit as zero or not authorized were violations.

29.    The Court's initial opinion found Plaintiffs' spreadsheets supporting their allegations of violations of the hourly MAERT limits needed to reference and provide corroborating evidence of repeated or continuing violations of a specific permit condition. Additionally, the Court found where the numeric limit for a specific permit varied, each numeric violation constituted a separate permit for

51

purposes of showing repeated violations. Only as to the chemical plant permits, did the Court find the spreadsheets corroborated repeated violations of the same, specific hourly emission limitation.[178] The Fifth Circuit held the Court erred in treating variations in numerical limits for a pollutant within a permit due to amendment or renewal as different conditions or limitations. "[W]ith respect to specific limits on particular pollutants from particular sources that change numerically due to amendments or renewal . . . such limits constitute the same 'standards or limitations' for purposes of determining whether violations are 'repeated' or 'ongoing' under the CAA citizen suit provision." *Env't Tex. Citizen Lobby v. ExxonMobil Corp.*, 824 F.3d 507, 519 (5th Cir. 2016) (citing 42 U.S.C. §§ 7604(a)(1) & (f)(4)). The Court was instructed on remand to calculate the correct number of actionable Count II violations using the correct definition of the "same standard or limitation."

30.    Exxon contends the Fifth Circuit only vacated in part the Court's initial conclusions of law for Count II. Undisturbed by the Circuit's opinion, Exxon argues, are the Court's initial conclusions of law paragraphs 19, 22, and 25. These paragraphs originally found that where certain emissions were listed as "not specifically authorized" or authorized by the particular permit, the spreadsheets did

---

[178] The Court found sixteen violations of Count II utilizing that interpretation of violating the same, specific permit condition. *See Findings of Fact and Conclusions of Law*, Document No. 225, Appendix.

17-20545.13252

not corroborate violations of "specific conditions." As such, Exxon contends it is free on remand to challenge the sufficiency of entries on the spreadsheets that use the notations "not specifically authorized" or an hourly emissions limit rate of zero, to prove repeated violations. Exxon is mistaken. Footnote five of the Circuit's opinion forecloses any argument on remand as to whether these entries constitute violations. In that note, the Circuit addresses Exxon's argument on appeal "that it 'never admitted' any entries under Count II were violations, 'and the district court plainly understood that position since it did not find liability on all of the allegations in' that count." *Env't Tex.*, 824 F.3d at 518 n.5. Holding that Exxon conceded that filing a reportable STEERS event is a violation, the Circuit explained this Court's finding of no liability on some events did not necessitate the Court having adopted Exxon's position. *Id.* Because the CAA requires proving repeated violations, the existence of a single reported violation does not create per se liability under the CAA. *Id.* The Court noted in its initial findings (which the Circuit's opinion cited) that Exxon "[did] not dispute that the alleged violations under Count II . . . of Plaintiff's complaint constitute violations of an emission standard or limitation."[179] The Circuit's opinion did not find any error with the finding that the Count II violations were undisputed. Therefore, the Court declines

---

[179] *Findings of Fact and Conclusions of Law*, Document No. 225, ¶ III.9, ¶ III.9 n.153.

17-20545.13253

on remand to revisit that conclusion. Accordingly, the Court finds, as to Exxon's

contention it is entitled to contest on remand whether entries for which the limit is

listed as zero or not specifically authorized are violations, the Courts initial

findings forecloses that argument on remand.[180]

31.    The Circuit's analysis of Counts III and IV is instructive to the extent

Exxon contends the Court's initial conclusion, that entries with limitations listed as

"not specifically authorized" or zero were not corroborated and therefore not

proven, was not vacated.  The Circuit interpreted the Court's initial conclusions of

law paragraphs 19, 22, and 25 as not being corroborated as to the "same limit"—

not that an entry listing the limit as "not authorized" or zero required additional

corroboration. *Env't Tex.*, 824 F.3d at 521.  The term corroboration referred not to

additional evidentiary proof that an entry was a violation, but instead to whether

such a violation was repeated or continuous such that it would be actionable under

the CAA.[181]  Accordingly, the Court finds as consistent with the Circuit's opinion,

---

[180] *Supra* ¶ III.9 n.153; *Findings of Fact & Conclusions of Law*, Document No. 225, ¶ III.9 n.153.

[181] To the extent the Court's initial conclusions could be interpreted to support Exxon's theory, the Court finds any such interpretation is foreclosed by the Fifth Circuit's opinion.  Specifically, the opinion states: "[T]he district court clearly assumed each Count II event counted by Plaintiffs was undisputed as a violation because it limited its focus in its findings of fact and conclusions of law to whether identical numerical permit limits were present in Plaintiffs' tables such that repeated or ongoing violations of the *same* limits were 'corroborated.'" *Env't Tex.*, 824 F.3d at 524.  Whether this characterization of the Court's initial conclusions simplified any nuances in that opinion is immaterial on remand.  The Circuit vacated Count II in its entirety, not in part.  Exxon

54

17-20545.13254

that where a limit is listed as zero or "not authorized," that term refers to a limitation within the CAA and any entry on the spreadsheet listed as such is a violation. In calculated the number of violations, the Court below will note the permit conditions the Plaintiffs allege were violated and the spreadsheets providing the evidentiary support documenting those violations. [182]

32.    General condition 8 and special condition 1 of each of Exxon's state-issued permits identify a MAERT. For each pollutant, the MAERT identifies the pollution source, termed the "emission point." Flexible permits contain a single

---

is attempting on remand to assert arguments the Circuit specifically found were waived. In repeated footnotes, in regards to Count II, the Circuit stated: "Exxon never contested those emissions as violations below, and the district court rightly understood there was no dispute on the point." *Id.* at 524 n. 9; *see also, id.* at 518 n.5 (noting Exxon did not contest on the record whether "specific entries in which the emission quantity—standing alone—would appear to fall below the applicable listed threshold were not shown to be violative of MAERT limits"). The Court interprets these notes as instructing it to consider each entry on Count II as an undisputed violation and that any interpretation otherwise would be error. On remand, the Circuit did give Exxon leave to contest whether an entry on the spreadsheet was attributable to planned MSS activity. *Id.* at 519. In other words, Exxon was free on remand to direct the Court to which entries were attributable to authorized MSS activity (essentially to assert which violations were subject to affirmative defenses). Violations that result from planned MSS activity are an affirmative defense pursuant to 30 Texas Administrative Code § 101.222. Except to the extent Exxon has addressed MSS activity in its briefing on the affirmative defenses, Exxon has not otherwise directed the Court to which violations could be attributable to planned MSS activity. Accordingly, the Court on this count will treat all violations as uncontested and then determine when it addresses Exxon's affirmative defenses whether all the repeated violations provide a basis for liability under the CAA.

[182] As noted in the previous footnote, the following subsections calculate the repeated violations in total. The Court will address in the section on affirmative defenses whether all the repeated violations proven in Count II give rise to liability under the CAA prior to calculating the base number used in determining the amount of a penalty to assess.

17-20545.13255

hourly emission limit for a pollutant—a cap—governing all sources in aggregate. 30 TEX. ADMIN. CODE § 116.715(c)(7). Standard permit MAERTs list the hourly emission limit per pollutant for each source.[183] "An exceedance of the flexible permit emission cap(s) or individual emission limitations is a violation of the permit." *Id.* § 116.715(b). MAERTs, and any other special conditions listed in a permit, govern the emission limits for flexible permits. *Id.* § 116.715(c)(7) (stating only those sources of emissions and air contaminants listed in the table are permitted). The corollary of the MAERT defining the universe of sources and contaminants a permit allows within the limits set forth is, that if an emission is not listed in the MAERT, it is not allowed by permit and not authorized. Therefore, the effective limit for that unauthorized contaminant is zero.

33. Plaintiffs submitted spreadsheets in native format sorted based on the information provided in the stipulated spreadsheets. The Court has reviewed Plaintiffs' spreadsheets and determined that violations are properly counted, based on the above findings, where the emissions rate is "not specifically authorized," zero, or where portions of an emission is authorized, but the emission exceeds the applicable pounds/hour rate limit, without any additional corroboration needed. As with Count I, the Court concludes the use of a twenty-four hour period, as opposed to a calendar day, to calculate days of violation is appropriate.

---

[183] *See e.g.*, *Plaintiffs' Exhibit* 139 at ETSC 076146–47.

17-20545.13256

### i.    *Refinery Flexible Permit 18287*[184]

34.    Refinery Flexible Permit 18287 provides for MAERT limitations in general conditions 8 and 15, special condition 1, and the table set forth in accordance with those conditions.[185]    General condition 8 provides, in relevant part, that "[f]lexible permitted sources are limited to the emission limits and other conditions specified in the table attached to the flexible permit."[186]    General condition 15 requires the permit holder to comply with all requirements of the permit, and states emissions exceeding the limits thereof are not authorized and are permit violations.[187]    Special condition 1 provides that "[t]his permit covers only those emissions from those points listed in the attached table entitled "Emission Sources – Emission Caps,' and the facilities covered by this permit are authorized to emit to the emission rate limits and other conditions specified in this permit."[188]

35.    The evidentiary support cited for MAERT violations of permit 18287 is Plaintiff's Exhibits 2A and 2B (stipulated spreadsheets), 589 and 590 (Plaintiffs'

---

[184] Count II violations involving 18287 are calculated here without respect to the Court's findings on Count I.  The Count II violations are to an extent duplicative of the Count I violations.  In calculating the amount of a penalty to assess, the Court will use the violations in Count I, as special conditions 38 and 39 are more restrictive than the MAERT limitations in Count II, and encompass the Count II violations.

[185] *Plaintiffs' Exhibit* 176 at ETSC 077534.

[186] *Plaintiffs' Exhibit* 176, General Condition ¶ 8.

[187] *Plaintiffs' Exhibit* 176, General Condition ¶ 15.

[188] *Plaintiffs' Exhibit* 176, Special Condition ¶ 1.

57

17-20545.13257

corresponding spreadsheets), and 10 (tallied table). The Court has reviewed the spreadsheets and tallied table submitted by Plaintiffs relevant to Count II, permit 18287, and agrees with the methodology used in calculating the total violations per pollutant listed therein. The evidence shows the refinery emitted twenty-four different pollutants in continuing or repeated violations totaling 7,920 days of violations. Accordingly, the Court finds as to permit 18287, Plaintiffs have proven 7,920 days of repeated or continued violations of MAERT limits by a preponderance of the evidence.[189]

### ii.    Olefins Plant Flexible Permit 3452

36.    Olefins Plant Flexible Permit 3452 provides for MAERT limitations in general condition 8, special condition 1, and the table set forth in accordance with those conditions.[190] General condition 8 provides, that "[t]he total emissions of air contaminants from any of the sources of emissions must not exceed the values stated on the table attached to the permit entitled 'Emission Sources – Maximum Allowable Emission Rates.'"[191] Special condition 1 provides that "[t]his permit authorizes emissions only from those points listed in the attached

---

[189] The Court finds the Count II violations as to permit 18287 in the alternative to any violations found as to that permit in Count I.

[190] *Plaintiffs' Exhibit* 132 at ETSC 076033 et seq.

[191] *Plaintiffs' Exhibit* 133, General Condition ¶ 8.

17-20545.13258

table entitled "Emission Points, Emission Caps, and Individual Emission Limitations."[192]

37.    The evidentiary support cited for MAERT violations of permit 3452 is Plaintiff's Exhibits 2C and 2D (stipulated spreadsheets), 591 and 592 (Plaintiffs' corresponding spreadsheets), and 10 (tallied table). The Court has reviewed the spreadsheets and tallied table submitted by Plaintiffs relevant to Count II, permit 3425, and agrees with the methodology used in calculating the total violations per pollutant listed therein. The evidence shows the plant emitted fourteen different pollutants in continuing or repeated violations totaling 4,038 days of violations. Accordingly, the Court finds as to permit 3452, Plaintiffs have proven 4,038 days of repeated or continued violations of MAERT limits by a preponderance of the evidence.

> ### iii.    *Chemical Plant Permits: 4600 (Flare Stack 23), 5259 (Furnaces), 20211 (Flare Stack 12, Butyl Units, Aromatics Units), 36476 (Flare 28, Syngas Fugitives), and No Permit Authorization*[193]

38.    The Chemical Plant permits provide for MAERT limitations in general condition 8, special condition 1, and the tables set forth in accordance with

---

[192] *Plaintiffs' Exhibit* 133, Special Condition ¶ 1.

[193] The Court in its initial findings of fact and conclusions of law did find repeated violations of the Chemical Plant permits on Count II. However, as the Circuit determined the Court used an erroneous definition of the term "same permit," the Court reanalyzes the Chemical Plant permits anew using the correct standard. This necessitates entering entirely new findings as to these permits.

17-20545.13259

the conditions of permits 4600, 5259, 20211, 36476. General condition 8 of permits 4600, 5259, and 36476 provides, that "[t]he total emissions of air contaminants from any of the sources of emissions must not exceed the values stated on the table attached to the permit entitled 'Emission Sources – Maximum Allowable Emission Rates.'"[194] General condition 8 of permit 20211 provides, in relevant part, that "[f]lexible permitted sources are limited to the emission limits and other conditions specified in the table attached to the flexible permit."[195] Special condition 1 of permits 4600 and 36476 provides that "[t]his permit authorizes emissions only from those points listed in the attached table entitled "Emission Sources – Maximum Allowable Emission Rates' and facilities covered by this permit are authorized to emit subject to the emission rate limits on that table and other operating conditions specified in this permit."[196] Special condition 1 of permit 5259 states that "[t]his permit covers only those sources of emissions listed in the attached table entitled 'Emission Sources – Maximum Allowable Emission Rates,' and those sources are limited to the emission limits and other conditions

---

[194] *Plaintiffs' Exhibit* 140, General Condition ¶ 8; *Plaintiffs' Exhibit* 144, General Condition ¶ 8; *Plaintiffs' Exhibit* 139, General Condition ¶ 8.

[195] *Plaintiffs' Exhibit* 123, General Condition ¶ 8.

[196] *Plaintiffs' Exhibit* 140, Special Condition ¶ 1; *Plaintiff's Exhibit* 139, Special Condition 139. The MAERT table for permit 4600 is located at *Plaintiffs' Exhibit* 140 at ETSC 76161 et seq. The MAERT table for permit 36476 is located at *Plaintiffs' Exhibit* 140 at 076146 et seq.

17-20545.13260

specified in the attached table."[197] Special condition of permit 20211 provides, in
relevant part, that "the facilities covered by this permit are authorized to emit
subject to the emission rate limits on the maximum allowable emission rates table
(MAERT) table and other requirements specified in Special Condition Nos. 54
through 68."[198]

39.    The evidentiary support cited for MAERT violations of the Chemical
Plant permits is Plaintiff's Exhibits 2E and 2F (stipulated spreadsheets), 593 and
594 (Plaintiffs' corresponding spreadsheets), and 10 (tallied table).  The Court has
reviewed the spreadsheets and tallied table submitted by Plaintiffs relevant to
Count II, chemical plant permits, and agrees with the methodology used in
calculating the total violations per pollutant listed therein. The evidence shows the
plant emitted different pollutants in continuing or repeated violations totaling 1,671
days of violations.  Accordingly, the Court finds as to the Chemical Plant permits,
Plaintiffs have proven 1,671 days of repeated or continued violations of MAERT
limits by a preponderance of the evidence.

---

[197] *Plaintiffs' Exhibit* 144, Special Condition ¶ 1.  The MAERT table for permit
5259 is located at *Plaintiffs' Exhibit* 140 at ETSC 76187.

[198] *Plaintiffs' Exhibit* 120, Special Condition ¶ 1.  The MAERT table for permit
20211 is located at *Plaintiff's Exhibit* 120 at 075736 et seq.

17-20545.13261

### c.    Count III

40.    Under Count III, Plaintiffs allege thirteen violations of the rule that limits plant-wide emissions of highly reactive volatile organic compounds to no more than 1,200 pounds per hour (the "HRVOC Rule").[199]    The evidentiary support cited to is Plaintiffs' Exhibits 3 (stipulated spreadsheet), 595 (Plaintiffs' corresponding spreadsheet), and 11 (tallied table).  Plaintiffs divided this count by plant for the purpose of proving repeated violations.[200]

41.    The Court in its initial opinion determined that Plaintiffs provided corroborating evidence sufficient to prove nine violations.  The Fifth Circuit held the Court erred in requiring corroboration of the Count III violations, as the Court had expressly found the violations under Counts II, III, IV, and V were undisputed.  On remand, the Court was instructed to include in its tally of Count III violations, those violations which it had previously deemed uncorroborated.

42.    For each plant, the Court finds that Plaintiffs' Exhibit 3 establishes either at least two violations of the HRVOC rule prior to, or at least one violation proceeding and following, the complaint's filing.  As the Court found that violations in Count III were undisputed, and the Circuit held that no corroboration

---

[199] *Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, Document No. 218 at 100.

[200] *Plaintiffs' Exhibit* 11.  Only violations at the olefins and chemical plant are listed; no violations at the refinery are listed.

17-20545.13262

Case 4:10-cv-04969    Document 257-3    Filed in TXSD on 04/20/17    Page 3 of 20

of the undisputed violations was required, all of the alleged violations are actionable. Accordingly, the Court finds as to the HRVOC rule violations, Plaintiffs have proven thirteen repeated or continued violations, totaling eighteen days of violation, by a preponderance of the evidence.[201]

### d.    *Count IV*

43.    Under Count IV, Plaintiffs allege forty-two violations of the rule that prohibits visible emission from flares except for periods not to exceed five minutes in two consecutive hours (the "Smoking Flares Rule").[202] The evidentiary support cited to is Plaintiffs' Exhibits 4 (stipulated spreadsheet), 596 (Plaintiffs' corresponding spreadsheet), and 12 (tallied table). Plaintiffs divided this count by plant for the purpose of proving repeated violations.

44.    The Court in its initial opinion determined that Plaintiffs provided corroborating evidence sufficient to prove twenty-eight violations. The Fifth Circuit held the Court erred in requiring corroboration of the Count IV violations, as the Court had expressly found the violations under Counts II, III, IV, and V were undisputed. On remand, the Court was instructed to include in its tally of

---

[201] As with the prior counts, the Court will later address the applicability of any affirmative defenses to the Count III violations.

[202] *Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, Document No. 218 at 101.

17-20545.13263

Count IV violations, those violations which it had previously deemed uncorroborated.

45.    For each plant, the Court finds that Plaintiffs' Exhibit 4 establishes either at least two violations of the Smoking Flare rule prior to, or at least one violation proceeding and following, the complaint's filing.  As the Court found that violations in Count IV were undisputed, and the Circuit held that no corroboration of the undisputed violations was required, all of the alleged violations are actionable.  Accordingly, the Court finds as to the Smoking Flare rule violations, Plaintiffs have proven forty-two repeated or continued violations, totaling forty-four days of violation, by a preponderance of the evidence.[203]

### e.    Count V

46.    Under Count V, Plaintiffs allege violations of the rule that requires flares to operate with a pilot flame present at all times (the "Pilot Flame Rule").[204] The evidentiary support cited to is Plaintiffs' Exhibits 5 (stipulated spreadsheet), 597 (Plaintiffs' corresponding spreadsheet), and 13 (tallied table).  Plaintiffs divided this count by plant for the purpose of proving repeated violations.[205]

---

[203] As with the prior counts, the Court will later address the applicability of any affirmative defenses to the Count IV violations.

[204] *Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, Document No. 218 at 101.

[205] *Plaintiffs' Exhibit* 13.

17-20545.13264

Violation of this rule is corroborated by these spreadsheets for all of the Events and
Deviations counted by Plaintiffs as at least one day of violation. The violations are
corroborated because the spreadsheets contain verbiage that pilot outages occurred
under one of two "cause reported" columns. For example, for the Event or
Deviation starting March 25, 2010, the spreadsheets report, "[h]igh winds
extinguished flare pilots."[206] For each plant, there are either (1) at least two
corroborated violations of the Pilot Flame Rule that occurred before the complaint
was filed, or (2)(a) at least one corroborated violation of the Pilot Flame Rule both
before and after the complaint was filed. Therefore, Plaintiffs have met their
burden to prove all of the alleged violations of the Flame Pilot Rule under Count V
are actionable.[207]

### f.    *Count VI*

47.    Under Count VI, Plaintiffs allege fugitive emissions are actionable.
Specifically, Plaintiffs contend violations of permits 18287, 3452, 20211, 28441,
36476, and 9571; general conditions 8 and 14/15; special condition 1; and MAERT

---

[206] *Plaintiffs' Exhibits* 5 at row 17, 597 at row 17.

[207] All the violations listed in Plaintiffs' Exhibit 5 are actionable. The Court is not
required to revisit its methodology in determining that all violations are actionable
because the Fifth Circuit did not address Count VI on appeal.

65

17-20545.13265

limits for emissions of various air contaminants.[208]  Exxon disputes that the events

under Count VI constitute violations of an emissions standard or limitation.  The

evidentiary support cited to by Plaintiffs is Plaintiffs' Exhibits 6 (stipulated

spreadsheet), 598 (Plaintiffs' corresponding spreadsheet), and 14 (tallied table).

As in Count I and parts of Count II, violation of the aforementioned conditions

cannot be corroborated by these spreadsheets.  The spreadsheets reference the

aforementioned permit numbers, such as 18287, in a column entitled "plant

(refinery/olefins/chemical);"[209] however, listing a permit number associated with

plant does not mean that permit was violated.  Regardless, the spreadsheets do not

appear to reference any specific *conditions* of the permits.[210]  The spreadsheets list

emissions limits, but Plaintiffs claim all emissions limits should be considered zero

under this Count, which conflicts with the limits listed on the spreadsheets.[211]  At

most, the spreadsheets corroborate that fugitive emissions of various contaminants

occurred; however, the spreadsheets do not corroborate violations of any specific

standards or limits of a Title V permit.  Further, Plaintiffs have not provided any

---

[208] *Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, Document No. 218 at 102; *Plaintiffs' Revised Proposed Findings of Fact and Conclusions of Law*, Document No. 222 at 58–59; *Plaintiffs' Exhibit 14* at 1.

[209] *Plaintiffs' Exhibits* 6 (capitalization omitted), 598 (capitalization omitted).

[210] *See Plaintiffs' Exhibits* 6, 598.

[211] *Plaintiffs' Exhibit* 598.

17-20545.13266

other persuasive evidence that the emissions listed in the spreadsheets violate the Title V permit conditions or limits referenced under this Count. For these reasons, Plaintiffs have not met their burden to prove either repeated violation pre-complaint or violation both before and after the complaint of the same emission standard or limitation under Count VI.[212]

### g.   Count VII[213]

48.   Under Count VII, Plaintiffs allege Exxon's Deviations are actionable.[214]  Exxon disputes that the Deviations under Count VII constitute violations of an emissions standard or limitation. The CAA citizen suit provision requires Exxon "to have violated . . . or to be in violation of . . . an emission standard or limitation." 42 U.S.C. § 7604(a)(1). However, a deviation is defined as "[a]ny *indication* of noncompliance with a term or condition of the permit . . . ." 30 Tex. Admin. Code § 122.10(6) (emphasis added).[215] "A deviation is not always a violation. . . . Included in the meaning of deviation [is] . . . [a] situation where

---

[212] The Court notes that Plaintiffs recognize violations under Count VI overlap with violations under other counts.

[213] The Fifth Circuit affirmed the Court's judgment as to Count VII, and the Court instructed the parties it would not revisit its findings as to this Count on remand.

[214] The evidentiary support cited to is Plaintiffs' Exhibits 7A–7E (stipulated spreadsheets), 599–603 (Plaintiffs' corresponding spreadsheets), and 15 (tallied tables).

[215] *See also Trial Transcript* at 10-203:3–13, 10-209:7–14 (discussing how deviations are indications of noncompliance with a permit condition).

67

17-20545.13267

process or emissions control device parameter values *indicate* that an emission limitation or standard has not been met . . . ."    40 C.F.R.  § 71.6(a)(3)(iii)(C) (emphasis added).   Plaintiffs have not met their burden to show how, in light of these provisions, the Deviations at issue in this case are actual violations and not merely *indications* of noncompliance.   Accordingly, Plaintiffs have not met their burden to prove any of the Deviations under Count VII are actionable.

## D.    *Affirmative Defenses*

49.    The Court addresses the applicability of Exxon's asserted affirmative defenses prior to addressing the relief sought by Plaintiffs, because if an affirmative defense is proven applicable to a violation, the Court in its assessment of the penalty factors will not consider that violation.   In the initial findings of fact and conclusions of law, the Court declined to address Exxon's affirmative defenses as it had found no penalties or other relief warranted.   In vacating and remanding that judgment, the Fifth Circuit recognized the Court would likely be called to rule upon the applicability of the affirmative defenses on remand.   Exxon contends Hurricane Ike was an Act of God that shields it from liability for emissions violations occurring during the duration of Governor's proclamation and that it is entitled to affirmative defenses under 30 Texas Administrative Code Chapter 101.222.  Plaintiffs contend the defenses are not available as a matter of law or are not supported by sufficient proof.

68

### 1.   *Hurricane Ike Defenses*

50.   Exxon contends the Texas Governor's proclamation prior to Hurricane Ike's landfall, and the TCEQ's guidance that the proclamation abrogated a need to seek prior approval for exceedance of emission limits directly related to the hurricane response, precludes liability for ten reportable events resulting violations. Plaintiffs contend the CAA does not contain an Act of God defense, and therefore, the defense is not available because Exxon has not met its burden to show any such provision was incorporated in Texas's State Implementation Plan ("SIP").[216]

51.   A state regulatory defense "must itself be authorized or permitted by the SIP." *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1346–50 (11th Cir. 2005) (explaining why a state provision that provided a defense that the "EPA has never sanctioned . . . and has yet to accept or reject [the defense] as a proposed SIP revision" is inapplicable). Texas Water Code § 7.215 provides: "If a person can establish that an event that would otherwise be a violation of a statute within the commission's jurisdiction or a rule adopted or an order or a permit issued under such a statute was caused solely by an act of God, war, strike, riot, or other catastrophe, the event is not a violation of that statute, rule, order, or permit." TEX.

_____

[216] Exxon contends Plaintiffs did not previously raise the argument that § 7.251 of the Texas Water Code is not included in the Texas SIP. That is incorrect. *See Plaintiff's Revised Proposed Findings of Fact and Conclusions of Law*, Document No. 218, ¶ 42.

17-20545.13269

WATER CODE § 7.251 (enacted in 1997 and current through the end of the 2015 Regular Session of the 84th Legislature). Exxon contends that because Texas's SIP incorporates § 7.251's predecessor statute, which includes an Act of God provision, the Act of God defense is recognized by Texas's SIP. *See* 40 C.F.R. § 52.2270(e) (incorporating Texas Clean Air Act (Article 4477-5), Vernon's Texas Civil Statutes, as amended by S.B. 48 of 1969). The problem with this argument is that the SIP incorporates a previous version of the statute, not the current provision. A state regulatory defense has to be specifically authorized or permitted by the state SIP. Exxon is claiming a state regulatory defense pursuant to Texas Water Code § 7.251. Section 7.251 is not specifically authorized or permitted by the SIP; its predecessor is. There is no indication in the record or the statutory provisions cited that EPA has ever sanctioned § 7.251 or considered the provision as a proposed SIP revision.[217] Accordingly, the Court finds as a matter of law that Exxon's Act of God defense is inapplicable and Exxon is subject to liability under the CAA for the events purportedly covered by this defense.

2.    *30 Texas Administrative Code § 101.222 Affirmative Defenses*

50.    Exxon contends affirmative defenses under 30 Texas Administrative Code § 101.222 apply to ninety-eight of the events. Plaintiffs contend Exxon did

---

[217] Nor is there any provision in the SIP adopting the Governor's Hurricane Ike proclamation. The CAA does not provide an Act of God defense. Without specific authorization in the CAA or Texas's SIP, the Act of God defense is inapplicable here.

17-20545.13270

not set forth specifically how the statutory criteria are met for each event for which an affirmative defense is asserted, but that Exxon instead impermissibly relied on TCEQ's acceptance of the asserted affirmative defenses.

51.    The burden to show the applicability of an affirmative defense rests on the party seeking entitlement to the defense. *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 855 (5th Cir. 2013).    That party must prove the "enumerated factors, including that the period of excess emissions was minimized to the extent practicable and that the emissions were not due to faulty operations or disrepair of equipment." *Id.* (quoting 75 FED. REG. at 68,992 and citing 30 TEX. ADMIN. CODE § 101.222(b), (c)) (rejecting the contention that a defendant only need make a prima facie showing of applicability and that the burden will then shift to the plaintiff to show the defense does not apply).

52.    Pursuant to 30 Texas Administrative Code § 101.222(b), non-excess upset events are subject to affirmative defenses in enforcement actions, where the **"owner or operator proves all of the following**:"

> (1) the owner or operator complies with the requirements of §101.201 of this title (relating to Emissions Event Reporting and Recordkeeping Requirements). . . .;

> (2) the unauthorized emissions were caused by a sudden, unavoidable breakdown of equipment or process, beyond the control of the owner or operator;

17-20545.13271

(3) the unauthorized emissions did not stem from any activity or event that could have been foreseen and avoided or planned for, and could not have been avoided by better operation and maintenance practices or technically feasible design consistent with good engineering practice;

(4) the air pollution control equipment or processes were maintained and operated in a manner consistent with good practice for minimizing emissions and reducing the number of emissions events;

(5) prompt action was taken to achieve compliance once the operator knew or should have known that applicable emission limitations were being exceeded, and any necessary repairs were made as expeditiously as practicable;

(6) the amount and duration of the unauthorized emissions and any bypass of pollution control equipment were minimized and all possible steps were taken to minimize the impact of the unauthorized emissions on ambient air quality;

(7) all emission monitoring systems were kept in operation if possible;

(8) the owner or operator actions in response to the unauthorized emissions were documented by contemporaneous operation logs or other relevant evidence;

(9) the unauthorized emissions were not part of a frequent or recurring pattern indicative of inadequate design, operation, or maintenance;

(10) the percentage of a facility's total annual operating hours during which unauthorized emissions occurred was not unreasonably high; and

(11) the unauthorized emissions did not cause or contribute to an exceedance of the national ambient air quality standards (NAAQS),

72

prevention of significant deterioration (PSD) increments, or to a condition of air pollution.

30 TEX. ADMIN. CODE § 101.222(b) (emphasis added).

53.    The evidentiary support cited for the affirmative defenses is Defendant's Exhibits 18, 19, and 20, and the corresponding STEERS reports attached thereto. Exxon also directs the Court to paragraphs 476 through 687 of its initial proposed findings of facts and conclusions of law.[218] Therein, Exxon cites to expert testimony of Dr. Christopher S. Buehler, Dr. Lucy Fraiser, and Mr. David Cabe.[219]

54.    The Court finds that Exxon has not met its burden to demonstrate that the eleven statutory criteria are met as to the ninety-eight events. The Court has reviewed paragraphs 476 to 687 in full. As to each STEERS event, Exxon cites to a finding by the TCEQ that an affirmative defense applies to that event. However, the TCEQ's determination of the applicability of an affirmative defense at best rises to the level of prima facie proof. Reliance on the TCEQ's determination is not sufficient to meet Exxon's evidentiary burden at trial to demonstrate all eleven criteria are met. Neither is Exxon's general citation to the testimony of its experts

---

[218] *Proposed Findings of Fact and Conclusions of Law*, Document No. 216, Exhibit 1.

[219] *Proposed Findings of Fact and Conclusions of Law*, Document No. 216, Exhibit 1, ¶¶ 677–86.

17-20545.13273

Case 4:10-cv-04969    Document 254-3    Filed in TXSD on 04/26/04    Page 34 of 20

sufficient to demonstrate all ninety-eight STEERS events are subject to affirmative defenses. **Exxon has the burden to demonstrate that all eleven criteria are met for each specific event to which an affirmative defense would apply**. Exxon did not, for each purported STEERS event for which an affirmative defense was asserted, direct the Court to the evidentiary testimony from the experts that demonstrated each of the eleven criteria were met as to that specific event.[220] Accordingly, the Court finds Exxon has not met its burden to show the applicability of 30 Texas Administrative Code § 101.222 under the eleven enumerated factors to each of the relevant STEERS events.

## C.   *Declaratory Judgment*

55.    Plaintiffs request a "declaratory judgment that Exxon violated its Title V permits and thus the CAA."[221]   The Court declines to issue such declaratory judgment because the issue in a citizen suit is not *solely* whether the defendant

---

[220] For example, while Dr. Buehler testified in his opinion the criteria were met as to all the events, he did not testify as to whether *all* the criteria were met, as Mr. Cabe and Dr. Fraiser testified as to the air quality criterion. *Trial Transcript*, 11-241:24 to 242:22. The Court would then further have to refer back to respective expert reports and next piece together any testimony and information from the reports to match that evidence the respective STEERS events. Rather than direct the Court to pinpointed testimony and supporting documentation in the expert reports for the eleven criteria for each separate STEERS event, Exxon has only provided a general citation to the testimony and record. The Court finds this is not sufficient to prove each of the enumerated factors as to each STEERS event.

[221] *Plaintiffs' Proposed Findings of Fact and Conclusions of Law*, Document No. 218 at 405; *Plaintiffs' Revised Proposed Findings of Fact and Conclusions of Law*, Document No. 222 at 58.

17-20545.13274

violated the CAA. Indeed, it is undisputed Exxon violated some emission standards or limitations. Rather, the issue is whether any such violations are actionable under the CAA as a citizen suit. As such, the issue is whether there was repeated violation pre-complaint, violation both before and after the complaint, or a continuing likelihood of recurrence.[222] The Court has already made these findings.[223]

## D.    *Penalties*

56.    Having found on remand, that a majority of events are actionable under the CAA's citizen suit provision, the Court will exercise its discretion to conduct a penalty assessment for those events.

57.    "In determining the amount of any penalty to be assessed under" the CAA in a citizen suit, the Court "shall take into consideration (in addition to such other factors as justice may require)" the following penalty assessment factors:

> the size of the business,
> the economic impact of the penalty on the business,
> the violator's full compliance history and good faith efforts to comply,
> the duration of the violation as established by any credible evidence . . . ,
> payment by the violator of penalties previously assessed for the same
> violation,
> the economic benefit of noncompliance, and
> the seriousness of the violation.

---

[222] *Supra* ¶¶ III.9–12.

[223] *Supra* ¶¶ III.13–48.

17-20545.13275

42 U.S.C. § 7413(e)(1).

58.    The Court is not required to assess a penalty for violations.  42 U.S.C.

§ 7413(e)(2) ("A penalty *may* be assessed for each day of violation." (emphasis

added)); *Luminant*, 714 F.3d at 852 ("[T]he penalty assessment criteria . . . are

considered by the courts . . . in determining *whether or not* to assess a civil penalty

for violations and, if so, the amount." (emphasis added)); *see also* 42 U.S.C.

§ 7413(e)(1) ("In determining the amount of *any* penalty to be assessed . . . ."

(emphasis added)); *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 530

("[E]ven in the event of a successful citizen suit, the district court is not bound to

impose the maximum penalty afforded under the statute.").[224]  Rather, the amount

of any penalty, the analysis of the factors, and the process of weighing the factors

are "'highly discretionary' with the trial court." *Sierra Club, Lone Star Chapter v.

Cedar Point Oil Co.*, 73 F.3d 546, 576 (5th Cir. 1996) (quoting *Tull v. United

States*, 481 U.S. 412, 427 (1987)); *United States ex rel. Adm'r of EPA v. CITGO

Petroleum Corp.*, 723 F.3d 547, 551 (5th Cir. 2013).   Each of the penalty

assessment factors are considered in turn.

---

[224] Because the penalty provisions in the CAA are similar to the penalty provisions
in the CWA, "CWA cases are instructive in analyzing [penalty] issues arising under the
CAA." *Pound v. Airosol Co.*, 498 F.3d 1089, 1094 n.2 (10th Cir. 2007) (citing *United
States v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 338 n.9 (3d Cir.
1998)).

17-20545.13276

a.    *Size of the Business and Economic Impact of the Penalty on the Business*

59.    Plaintiffs contend the large size and profitability of Exxon weigh towards imposing a penalty.  Specifically, Plaintiffs contend Exxon will only be impacted by a large penalty and has the ability to pay the alleged maximum penalty.  Exxon does not dispute these contentions, and the Court agrees given the facts found supra in paragraph II.1.  Accordingly, both the size and economic impact factors weigh towards assessing a penalty.

b.    *Violator's Full Compliance History and Good Faith Efforts to Comply*

60.    Quantitatively, the number of Events and Deviations at issue in this case is high: 241 Reportable Events, 3,735 Recordable Events, and 901 Title V Deviations.[225]  Thus, based on the total number of Events and Deviations alone, Exxon's compliance history appears to be arguably inadequate.  However, the Complex is one of the largest and most complex industrial sites in the United States.[226]  Therefore, there are numerous opportunities for noncompliance, and the number of Events and Deviations alone is not the best evidence of compliance history.[227]   In other words, the number of Events and Deviations must be

---

[225] *See supra* ¶ II.5.

[226] *Supra* ¶ II.2.

[227] *See Trial Transcript* at 10-220:14 to 10-223:16.

77

17-20545.13277

considered with respect to the size of the Complex. For example, in 2012 the refinery averaged one pin hole leak for every 167 linear miles of pipe.[228]

61.     Moreover, the number of Events and Deviations does not alone mean Exxon did not make a good faith effort to comply. Despite good practices, it is not possible to operate any facility—especially one as complex as the Complex—in a manner that eliminates all Events and Deviations.[229] Based on the facts expounded supra in paragraphs II.12–14, the Court finds Exxon made substantial efforts to improve environmental performance and compliance, including implementing four environmental improvement projects to reduce emissions and employing a vast array of emissions-reduction and emissions-detection equipment. Likely due to Exxon's substantial efforts, the Complex achieved significant reduction in the number of Reportable Events, the amount of unauthorized emissions of criteria pollutants, and the total amount of emissions over the years at issue in this case.[230] For reasons explained infra in footnote 240, the Court is not persuaded by Keith Bowers's opinion that certain capital improvements or additional spending on

---

[228] *Trial Transcript* at 10-221:24 to 10-222:10.

[229] *Supra* ¶ II.15. The Court understands impossibility is not a defense to penalties, except as it might apply to the applicable affirmative defense criteria. The Court does not consider the fact that it is not possible to operate the Complex in a manner that eliminates all Events and Deviations as a reason to not impose penalties. Rather, the Court notes this fact only to explain that the number of Events and Deviations does not alone mean Exxon did not make a good faith effort to comply.

[230] *Supra* ¶ II.16.

78

maintenance would have prevented the Emissions and Deviations.  In addition, the Court does not accept Plaintiffs' view that the number of events involving a certain type of equipment, a certain unit, or a certain type of issue is alone adequate to support a conclusion that any of the Events or Deviations were preventable.[231] Rather, as expounded supra in paragraph II.7, a root cause analysis is necessary to determine whether the Events and Deviations resulted from a recurring pattern and to determine whether improvements could have been made to prevent recurrence.  Plaintiffs did not put forth any credible evidence that any of the Events or Deviations resulted from the same root cause.[232]  Therefore, there is no credible evidence that any of the Events or Deviations resulted from a recurring pattern or that improvements could have been made to prevent recurrence.  For each of the Reportable Events, Exxon conducted an extensive internal investigation, evaluated the root cause of the event, and implemented appropriate corrective actions to try

---

[231] *Supra* ¶ II.7.

[232] In particular, the Court finds Bowers's testimony regarding the Events and Deviations having "common causes" is neither credible nor persuasive.  For example, the Events and Deviations that Bowers categorizes as having the same common cause of "power supply failures" include the following: moisture got into the connections of improperly installed lightening arresters, causing them to short out; a squirrel bypassed animal traps, causing some electrical equipment to short circuit; and a hawk dropped a snake on top of Substation One, causing an electrical power disruption.  *Defendants' Exhibits* 1020C, 1020I–O; *Trial Transcript* at 10-244:17 to 10-253:17.  Categorizing such varied events together does not prove the events had a common cause, resulted from a recurring pattern, or were preventable.

17-20545.13279

to prevent recurrence.[233]   Similarly, for the Recordable Events and Deviations, Exxon analyzed the records for trends and ways to improve, identified root causes, and implemented corrective actions.[234]   Additionally, Exxon's maintenance policies and procedures conform or exceed industry standards and codes.[235]   The Court finds the opinion of Dr. Christopher S. Buehler, a chemical engineer, that the Complex ranks at or near the top of petrochemical facility "leaders in maintenance and operation practices" is persuasive and credible.[236]   Lastly, the Court finds the opinions of John Sadlier, the former Deputy Director of the Office of Compliance and Enforcement at the TCEQ who dealt with Exxon for 20 years while working at the TCEQ, persuasive and credible when he opined that he "always felt and continue[s] to feel today that Exxon had always made a concerted effort to comply[,] that their dealings with [the TCEQ] were straightforward frank discussions," that Exxon is "[a]bsolutely not" a "bad actor," and that he has no reason to not believe Exxon "will earnestly try to achieve the goals" in the Agreed Order of reducing emissions.[237]   After evaluating all the evidence, the Court finds

---

[233] *Supra* ¶¶ II.7–9.

[234] *Supra* ¶ II.7.

[235] *Supra* ¶ II.14.

[236] *Trial Transcript* at 12-16:10–20.

[237] *Defendants' Exhibit* 546 at 14–15, ¶¶ 40–44.

80

17-20545.13280

the preponderance of the credible evidence shows Exxon made good faith efforts to comply with the CAA.[238]   Accordingly, Exxon's full compliance history and good faith efforts to comply weigh against assessing a penalty.

### c.   *Duration of the Violation*

62.   The Fifth Circuit's opinion held the Court abused its discretion by viewing violations of a longer duration as offset by violations of a shorter duration. The Circuit's opinion also indicated the Court should revisit its approach as to, whether in calculating the duration of a violation, a court should look to the duration of each individual violation or the period of time over which the violations occurred. *See Env't Tex.*, 824 F.3d at 531. The Court was instructed on remand, if it continued to consider durations of the violations individually, to determine whether any violation standing alone was sufficient to justify imposing a penalty.[239]

63.   The Court first turns to the proper standard for determining whether this factor requires examining the length of an individual violation or the period of

---

[238] In addition to the aforementioned issues, Plaintiffs contend Exxon's policy of always asserting the affirmative defense to penalties to the TCEQ is, in itself, bad faith. Based on the greater weight of the credible evidence, the Court disagrees such policy is in bad faith.  Although Exxon initially asserts the affirmative defense when reporting an event to the TCEQ, the TCEQ, after investigation, determines whether the affirmative defense actually does apply.

[239] Exxon contends the Court should continue to look to duration of the violations standing alone in analyzing this factor.  However, Exxon cites no case law to support this proposition.

17-20545.13281

time over which the violations occurred.  Exxon does not address the case law

cited by Plaintiffs, and referred to by the Fifth Circuit, that indicates the Court

should consider the period of time over which the violations occurred on this

factor. *See United States v. Vista Paint Corp.*, No. EDCV 94-0127 RT, 1996 WL

477053, at *15 (C.D. Cal. Apr. 16, 1996); *United States v. B & W Inv. Props., Inc.*,

No. 91 C 5886, 1994 WL 53781, at *4 (N.D. Ill. Feb. 18, 1994); *United States v.*

*Midwest Suspension & Brake*, 824 F. Supp. 713, 736–37 (E.D. Mich. 1993);

*United States v. A.A. Mactal Constr. Co. Inc.*, Civ. A. No. 89-2372-V, 1992 WL

245690, at *3 (D. Kan. Apr. 10, 1992).  Nor does Exxon argue that the plain

meaning of the phrase "duration of the violation" requires examining each

individual violation as opposed to the period of time over which the violations

occurred.  The Court, in light of the Fifth Circuit's notation of the authority

supporting the position, adopts the interpretation of this factor that examines the

period of time over which the credible evidence establishes the violations occurred.

64.    The Court next turns to, whether looking to the period of time over

which the violations occurred, the duration factor supports imposing a penalty.

The credible evidence establishes the violations at issue occurred over an eight-

year period.  During that eight-year time period, Exxon averaged more than one

82

violation per day. Accordingly, the Court finds the duration factor weighs in favor of assessing a penalty.[240]

### d. *Payment by the Violator of Penalties Previously Assessed for the Same Violation*

65.     Exxon has paid $1,423,632 in monetary penalties for the Events and Deviations at issue in this case to either the TCEQ or Harris County.[241] Plaintiffs accede this amount should be deducted from the total penalty determined by the Court, and the Court agrees. Accordingly, $1,423,632 will be deducted from any penalty otherwise warranted.[242]

### e. *Economic Benefit of Noncompliance*

66.     Generally, economic benefit of noncompliance is the financial benefit obtained by *"delaying* capital expenditures and maintenance costs on pollution-

---

[240] The Court finds even under its previous interpretation of this factor, looking to the individual violation's duration, there are individual violations of a sufficient duration to weigh in favor of assessing penalties. The Court previously found that any longer violations where balanced out by the numerous cursory violations. The Circuit held utilizing the balancing methodology for analyzing the duration factor was an abuse of discretion. As directed by the Circuit on remand, the Court now looks to the actionable violations and determines that a sufficient quantity of violations of a sufficient duration occurred to weigh in favor of assessing penalties. For example, under Count II, there were 138 actionable violations that were more than forty-eight hours in duration. *See Plaintiffs' Exhibits* 589, 590, 591, 592, 593 & 594.

[241] *Supra* ¶ II.8.

[242] Plaintiffs contend on remand this amount should be reduced given the Court's finding on Count VII; however, as this issue was not appealed or part of the Fifth Circuit's instructions on remand, the Court will not revisit the issue.

17-20545.13283

control equipment." *CITGO Petroleum Corp.*, 723 F.3d at 552 (emphasis added). "[T]here are two general approaches to calculate economic benefit: (1) the cost of capital, i.e., what it would cost the polluter to obtain the funds necessary to install the equipment necessary to correct the violation; and (2) the actual return on capital, i.e., what the polluter earned on the capital that it declined to divert for installation of the equipment." *Id.* (internal quotation marks omitted). A district court must make a reasonable estimate of economic benefit of noncompliance. *Id.* at 552–53.

67.    The Fifth Circuit held this Court erred in failing to enter findings as to whether Exxon received an economic benefit in delaying implementation of the four environmental improvement projects from the Agreed Order.[243] Although the Circuit upheld the Court's rejection of Bower's expert testimony on this issue as not credible,[244] the Circuit held that Plaintiffs elicited testimony on this issue from

---

[243] *Supra* ¶ II.12.

[244] As to Bower's testimony, the Court's initial opinion made the following findings, in paragraphs 41–42 of the Court's *Findings of Fact and Conclusions of Law*, Document No. 225:

> 41.    Plaintiffs claim Exxon's economic benefit of noncompliance is $657 million as of June 2014. This number is based on Bowers's opinion that the Events and Deviations would not have occurred if (1) if Exxon would have spent $90 million more annually on maintenance and (2) if Exxon would have installed certain capital equipment (an additional sulfur unit costing $100 million, an additional sour gas flare costing $10 million, and two additional compressor stations costing $50 million each). Plaintiffs offered the testimony of an economist, Jonathan Schefftz, who

84

17-20545.13284

Shefftz that was independent of Bower's testimony. *Env't Tex.*, 824 F.3d at 529,

529 n.17.  The Circuit noted this Court found Shefftz's method for calculating the

economic benefit reliable.   On remand, the Court was instructed that "the

economic benefit estimate must 'encompass *every* benefit that defendants received

---

used Bowers's inputs as to maintenance and capital expenditure costs
delayed to calculate present-day economic benefit using the weighted-
average cost of capital.  The Court finds Schefftz's method of calculating
economic benefit to be reliable.  However, Schefftz made it very clear that
he had no opinion as to the reliability of the inputs given to him by Bowers.
For reasons explained infra, the Court finds Bowers's inputs to be neither
reliable, credible, nor persuasive.  Therefore, Schefftz's economic benefit
of noncompliance figure is equally unreliable.

       42.   Bowers is a retired refinery and chemical plant
engineer.  Bowers's opinions and the bases for his opinions were vague and
undetailed.  Of the $90 million Bowers opined should have been spent on
maintenance, Bowers opined half of the $90 million needed to be spent to
hire 900 new employees to "run[ ] around inspecting things" and "[j]ust do
more" maintenance and "stuff that needs to be done."   He opined the
remainder of the $90 million needed to be spent on "material."  He said his
estimate was a "crude estimate," and he did not create a detailed budget of
the type that he would have created when he was a project manager.
Neither Bowers nor any other evidence credibly demonstrated that
spending an additional $90 million on maintenance would have prevented
any of the Events or Deviations.  Similarly, neither Bowers nor any other
evidence credibly demonstrated that any of Bowers's suggested capital
improvements would have prevented any of the Events or Deviations.
Instead, the preponderance of the credible evidence shows Bowers's
suggested capital improvements would not help reduce emissions.
Moreover, Exxon has spent a substantial amount of money on maintenance,
emissions-reduction and emissions-detection equipment, and capital
improvement projects in an effort to reduce emissions and unauthorized
emissions events.   This includes four environmental improvement projects
costing approximately $20 million that Exxon was not required to
undertake under law, and over $500 million on maintenance and
maintenance-related capital projects each year at issue.

Case 4:10-cv-04969   Document 297-1   Filed in TXSD on 04/26/17   Page 151 of 21

from violation of the law' regardless of the inherently speculative nature of the inquiry." *Id.* at 530 n.19 (citing *United States v. Gulf Park Water Co.*, 14 F. Supp. 2d 854, 864 (S.D. Miss 1998)). Further, after making such findings, the Court was instructed to consider whether those four improvement projects were necessary to correct the violations. The Circuit noted the evidence indicated the projects "appear to be correlated in at least a general way" and the Court's inquiry on remand "should center on whether the projects will ameliorate the kinds of general problems that have resulted in at least some of the permit violations upon which Plaintiffs have sued." *Id.* at 530, 530 n.19.

68.    The Court interprets the Fifth Circuit's opinion as instructing it to do a two-step analysis on remand: (1) enter findings based on Shefftz's testimony as to the economic benefit Exxon received from delaying implementation of the projects[245]; and (2) enter findings on the "necessary to correct" prong as to whether the four improvement projects would generally ameliorate the violations on which the Plaintiffs have sued, without requiring a showing that the projects are specifically tied to the prevention of each violation.

---

[245] The Court interprets the Circuit's opinion as holding that Shefftz's testimony alone is sufficient to carry Plaintiff's burden of proof on the first step. To the extent Exxon contests the sufficiency of Shefftz's testimony, in regards to the interest rate chosen in the calculations and because he failed to account for the cost of delay by ignoring the increase in equipment expense, the Circuit instructed the Court to consider "*every* benefit . . . regardless of the inherently speculative nature of the inquiry." *Env't Tex.*, 824 F.3d at 530 n.19 (emphasis in original).

17-20545.13286

69.    On the first step, the Court turns to Shefftz's testimony as to any economic benefit Exxon received from delaying implementation of the four projects in the Agreed Order.  The Court previously found Shefftz's methodology reliable.    Shefftz calculated the economic benefit to Exxon from delaying implementation as $11,746,234 as of November 22, 2013 (the date of Shefftz's report).[246]  The economic benefit would increase by $61,066 per month until the economic benefit was disgorged in the form of a civil penalty.[247]  It is now April 2017, which is forty-one additional months from the date of Shefftz's report. Therefore, the economic benefit would encompass an additional $2,503,706 and the total economic benefit from delay is $14,249,940.   Accordingly, the Court finds Exxon received an economic benefit of $14,249,940 from the delayed implementation of the improvement projects.[248]

---

[246] *Trial Transcript* 5-57:14 to 58:13; *Plaintiffs' Exhibit* 556 at 1, 18–21.

[247] *Plaintiffs' Exhibit* 556 at 14, 19.  *Trial Transcript*, 5-49:5–9, 5-52:6–10.

[248] Plaintiffs also contend on remand that because the Circuit instructed the Court to consider every benefit, the one billion dollars the Court found demonstrated Exxon's good faith efforts to comply should now be included in the calculation of the economic benefit from delay.  The scope of the Circuit's remand was clear that its instructions pertained to the Shefftz's testimony about the four projects and every benefit derived from the delaying the projects' implementation.  Even if Plaintiffs' contention were within the scope of remand, the Court finds the evidence cited insufficient to support even a highly speculative inquiry, and additionally, the argument is waived because it was not raised in any of the previously filed proposed findings of fact and conclusions of law.

17-20545.13287

70.    The Court now turns to the Circuit's direction on the second step, whether a delayed project is "necessary to correct" the types of violations in the complaint. The Circuit has articulated a general correlation standard to utilize in analyzing this step.[249]    As an example of the general correlation standard, the Circuit notes that "one project aims to 'more effectively monitor and troubleshoot' a refinery flare system in order to 'improve the identification and characterization of flaring events' (Count IV) and the order estimates that the projects will specifically achieve reductions in HRVOC emissions (Count III)." *Env't Tex.*, 824 F.3d at 530. Given the Fifth Circuit's holding that at least one project meets the general correlation standard, the Court finds the Plaintiffs have met their burden as to at least one project on the "necessary to correct" step. Additionally, the Circuit noted this Court had previously recognized in its order the "projects reflect 'an effort to reduce emissions and unauthorized emissions events' at the Baytown complex."[250]    *Id.*    As the Fifth Circuit instructed the Court to analyze the "necessary to correct" step at a high level of generality, the Court finds Plaintiffs have carried their burden of proof.[251]    Plaintiffs have demonstrated that: (1) the

---

[249] *Supra* ¶ III.67.

[250] *Supra* ¶ II.12.

[251] To the extent Exxon argues the projects were voluntary and not required for compliance, and therefore, not a proper basis for determining delayed economic benefit, the Court notes the Fifth Circuit directed it to use those projects on remand in its analysis of the factor.

88

Plant Automation Venture "is intended to provide early identification of potential events and/or instrumentation abnormalities, allowing proactive response"[252]; (2) the Fuels North Flare System Monitoring/Minimization Project is intended to "more effectively monitor and troubleshoot" the refinery flares[253]; (3) the BOP/BOPX Recovery Unit Simulators Project is intended to "improve operator training and competency, resulting in reduced frequency and severity of emissions events"[254]; and (4) the Enhanced Fugitive Emissions Monitoring Project is a program to locate VOC and HRVOC leaks.[255]  Accordingly, under the generally correlated standard articulated by the Fifth Circuit, the Court finds the four improvement projects were "necessary to correct" the violations at issue in this suit.

71.    The Court has found Exxon received an economic benefit of $14,249,940 by delay four implementation of four improvement projects that were necessary to correct the violations at issue in this suit.  Accordingly, the Court finds the economic benefit of noncompliance factor weighs in favor of assessing a penalty.

---

[252] *Defendants' Exhibit* 222, ¶ 12.a.

[253] *Defendants' Exhibit* 222, ¶ 12.a.

[254] *Defendants' Exhibit* 222, ¶ 12.b.

[255] *Defendants' Exhibit* 222, ¶ 12.d.

17-20545.13289

### f.    Seriousness

72.    The CAA does not define "seriousness" in relation to the penalty
assessment factors.  *See* 42 U.S.C. § 7413(e)(1).  Some circuit courts, not including
the Fifth Circuit, have held that "a court may still impose a penalty if it finds there
is a risk or potential risk of environmental harm" even if there is "a lack of
evidence on the record linking [a defendant's] CAA violations to discrete damage
to either the environment or the public."  *Pound*, 498 F.3d at 1099 (citing *Pub.
Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64,
79 (3d Cir. 1990)).  The Fifth Circuit, however, did not issue any guidance in its
opinion as to the proper definition of the term.  Instead, the Fifth Circuit held the
Court abused its discretion in viewing the violations it found to be more serious as
offset by the numerous less serious violations.  In doing so, the Circuit noted—
without explicitly adopting—courts have recognized that "the overall number and
quantitative severity of emissions or discharges may properly be relied upon as
evidence of seriousness."  *Env't Tex.*, 824 F.3d at 532 (citing *Pub. Interest
Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 79 (3d
Cir. 1990)).

17-20545.13290

73.    In light of the Circuit's guidance, the Court looks to the overall

number and quantitative severity of the emissions or discharges.[256]  The overall

_____

[256] The Court maintains its findings from its initial findings of fact and conclusions
of law that most the violations were not serious from a public health and environmental
perspective.  As is necessary for parts of the Court's initial judgment left undisturbed by
the Fifth Circuit's opinion, which relied on those findings, the Court reiterates here
paragraphs 47 and 48 from the *Findings of Fact and Conclusions of Law*, Document No.
225:

47.    Plaintiffs claim the Events and Deviations were serious
because they adversely affected public health.  To support this claim,
Plaintiffs submitted evidence of the potential health effects caused by the
types of pollutants emitted during the Events and Deviations.  For example,
hydrogen sulfide, which smells like rotten eggs or feces, can cause sore
throat, cough, fatigue, headaches, nausea, and poor memory at low
concentrations.    Factors affecting potential risk of harm from pollutants
include duration of exposure and concentration of pollutants.  As discussed
supra, the Events and Deviations differ tremendously in terms of duration
and amount.  Plaintiffs' aforementioned evidence of the potential health
effects caused by the types of pollutants emitted does not include credible
evidence that any of the specific Events and Deviations were of a duration
and concentration to—even potentially—adversely affect human health or
the environment.   Although Plaintiffs' evidence of potential health effects
provides some support of a potential risk of harm to human health, this
evidence in this case is too tenuous and general to rise above mere
speculation.

48.    Plaintiffs also claim the Events and Deviations were serious
because they created "nuisance-type impacts" to the community that
interfered with daily life.  Four Plaintiffs' members experienced impacts to
their life while living or visiting near the Complex, including pungent
odors, allergies, respiratory problems, disruptive noise from flaring,
concerns for their health after seeing haze believed to be harmful, and fears
of explosion after seeing flares.   However, these impacts could have been
caused by Exxon's authorized emissions or other companies' emissions,
because certain emissions and flares are authorized by permit and the
nearby area in which the Complex operates is populated with numerous
other refineries, petrochemical plants, and industrial facilities.    Indeed,
unauthorized emissions were a very small percentage of total emissions at
the Complex for each year at issue.  Plaintiffs' members were only able to

91

number of violations weighs in favor finding the violations serious.  16,386 days of violations are supported by the evidence.[257]  As to the quantitative severity of the emissions, approximately ten million pounds of pollutants were released into the atmosphere as a result of the violations in this case.[258]  Accordingly, the Court finds given the number of days of violations and the quantitative amount of emissions released as a result, the seriousness factor weighs in favor of the assessment of a penalty.

### g.    *Balancing the Factors*

74.    The maximum penalty for each day of violation is $32,500 for violations occurring before January 13, 2014, and $37,500 for violations occurring on January 13, 2009, and thereafter.  42 U.S.C. § 7413(e)(2); 40 C.F.R. § 19.4.

---

correlate some of the impacts, such as odor and noise, to five Events or Deviations at issue in this case.    Moreover, Plaintiffs' members' testimonies regarding impacts were controverted by persuasive testimony from three other residents of the community who have lived very close to the Complex for many years.    These residents testified the Complex has not impacted their lives, including that they have had no health problems they attribute to the Complex and that they have not experienced any problems with flaring, odors, noises, or emissions coming from the Complex.    For all these reasons, the proposition that the Events or Deviations were serious because they created nuisance-type impacts on the surrounding community is not supported by the preponderance of the credible evidence.

[257] Days of violations per count are as follows: (1) Count I: 10,583 days; (2) Count II: 5,709 days; (3) Count III: 18 days; (4) Count IV: 44 days; and (5) Count V: 32 days.

[258] *Plaintiffs' Exhibit* 609.

17-20545.13292

Plaintiffs contend the total maximum penalty, after deducting for overlapping violations, is $573,510,000. However, Plaintiffs are only seeking $40,815,618 in penalties on remand.[259] Exxon contends it should not be assessed a penalty.

75. After carefully considering all of the penalty assessment factors discussed above, the Court determines a penalty is appropriate in this case.[260] The size and economics factor, duration factor, economic benefit from noncompliance factor, and seriousness factor, all weigh towards assessing a penalty. While Exxon's compliance history weighs against assessing a penalty, that factor is not sufficient to outweigh the factors supporting assessing a penalty. Any penalty assessed will deduct the $1,423,632 Exxon was already penalized from the amount.

76. The CAA does not prescribe a specific method for determining appropriate penalties. Some courts use the top-down approach, in which the court starts at the maximum penalty allowed by law and reduces downward as appropriate considering the factors as mitigating factors. *CITGO Petroleum Corp.*, 723 F.3d at 552. Other courts employ the bottom-up approach, in which the court

---

[259] *Plaintiffs' Proposed Findings of Fact and Conclusions of Law Following Remand*, Document No. 253, Exhibit 1, ¶52.

[260] Exxon did not contend in its initial proposed findings of fact and conclusions of law that the Court should consider the "justice so requires" factor. Therefore, the Court declines to address those arguments on remand.

17-20545.13293

starts at the economic benefit of noncompliance and adjusts upward or downward as appropriate considering the factors. *Id.* Rejecting a requirement that a district court must employ either the top-down or bottom-up approach, some circuit courts have held the district court can "simply rely[ ] upon [the] factors to arrive at an appropriate amount" without starting at a specific amount because "[t]he statute only requires that the [penalty] be consistent with a consideration of each of the factors." *United States v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 339 (3d Cir. 1998); *see Pound*, 498 F.3d at 1095. "The [Fifth] [C]ircuit has never held that a particular approach must be followed" and has left such decision to the discretion of the district court. *CITGO Petroleum Corp.*, 723 F.3d at 552, 554.

77. Plaintiffs calculate the maximum penalty as follows[261]: (1) Count I: 10,583 days of violation with a $370,405,000 penalty; (2) Count II: 7,920 days of refinery violations with a $277,200,000 penalty, 4,038 days of olefins violations with a $141,330,000 penalty, and 1,671 days of chemical plant violations with a $58,485,000 penalty; (3) Count III: 18 days of violations with a $630,000 penalty; (4) Count IV: 44 days of violations with a $1,540,000 penalty; and (5) Count V: 32

---

[261] Plaintiffs apply a penalty rate of $35,000 per day across the board, given that approximately half the violations occurred when the rate was $32,500 and half when the rate was $37,500. Defendants do not contest this specific point in determining the maximum penalty. Therefore, as it is uncontested, the Court adopts this methodology as well.

94

days of violations with a $1,120,000 penalty. The Court agrees with this calculation. As the Court found Exxon liable on the refinery violations in Count I, it will not include the refinery violations in Count II when calculating the maximum penalty. The total maximum penalty, therefore, is $573,510,000.

78.    **Plaintiffs** have submitted proposed findings of fact and conclusions of law that **adopt a bottom-up approach**, which calculates the penalty at an amount that is **fifty percent** higher than the economic benefit from noncompliance.[262] Therefore, as the Court has discretion as to which method to follow, the Court adopts the method proposed by Plaintiffs. The Court determined the economic benefit from noncompliance to be $14,249,940.[263] Using Plaintiffs' proposed methodology for calculating the penalty (which includes a 50% multiplier), the resulting penalty is $21,374,910. The Court determines, considering its finding that Exxon made a good faith effort to comply, the amount is sufficient to account for the factors that weighed towards assessing a penalty. The majority of the factors weigh towards imposing a penalty, which the Court determines justifies an increase from the base economic benefit from noncompliance number. Subtracting

[262] *Plaintiffs' Proposed Findings of Fact and Conclusions of Law Following Remand*, Document No. 253, Exhibit 1, ¶52.

[263] Plaintiffs' proposed findings of fact and conclusions of law utilized a higher base amount (approximately $28 million); however, as the Court rejected Plaintiffs' theory that led to the higher base amount, the Court uses the amount in the actual finding to calculate the penalty. *Supra* ¶ III.69, III.69 n.248; *Plaintiffs' Proposed Findings of Fact and Conclusions of Law Following Remand*, Document No. 253, Exhibit 1, ¶52.

17-20545.13295

the $1,423,632 already paid by Exxon in penalties, the resulting penalty amount is $19,951,278.

### E.    *Injunctive Relief*

79.    "The party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).   "Other Fifth Circuit authority recognizes that the inadequacy of monetary damages also is a factor in the analysis." *Reservoir, Inc. v. Truesdell*, No. 4:12-2756, 2013 WL 5574897, at *7 (S.D. Tex. Oct. 9, 2013) (Atlas, J.) (citing *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir.2008)).   "[A]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010).   It is within the court's discretion to grant or deny injunctive relief. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).   Even if a plaintiff prevails in a citizen suit, the court does not have to award any injunctive relief. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 530 (5th Cir. 2008).

80.    Plaintiffs request Exxon be enjoined for five years from violating the emission standards and limitations found by this Court to be actionable.   The CAA

17-20545.13296

provides that district courts have jurisdiction to enforce emission standards or limitations. 42 U.S.C. § 7604(a). However, "[t]he grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law." *Weinberger*, 456 U.S. at 313. "Denial of injunctive relief does not necessarily mean that the district court has concluded there is no prospect of future violations for civil penalties to deter." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000). Rather, the court in a "citizen suit properly may conclude that an injunction would be an excessively intrusive remedy, because it could entail continuing superintendence of the permit holder's activities by a federal court—a process burdensome to court and permit holder alike." *Id.* In addition, an injunction ordering a party to obey the law allows for a possible contempt citation and threat of judicial punishment should the party disobey the law. *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). In determining whether to grant injunctive relief, the court may consider the "attitude and laudable efforts" of a defendant "in continuously trying to improve the level of emissions." *See Ala. Air Pollution Control Comm'n v. Republic Steel Corp.*, 646 F.2d 210, 214 (5th Cir. Unit B 1981) (internal quotation marks omitted).

97

81.     Enjoining Exxon from violating CAA standards and limitations would do nothing more than require Exxon to obey the law in the future.  The Court finds that such an injunction is unnecessary and that Plaintiffs have not established injury to the public outweighs damage to Exxon.  Exxon—without an injunction ordering it to comply with the CAA—already faces threat of TCEQ enforcement actions, including penalties, and threat of citizen suits should it not comply with the CAA.  The Court believes any additional benefit the public would gain from Exxon having the additional threat of judicial contempt and punishment for violation of a court order is minimal.  Additionally, for reasons explained supra in footnote 251, the greater weight of the credible evidence does not support a finding that the Events or Deviations were harmful to the public or the environment, and there is no evidence that any potential future emissions events or deviations will be more harmful to the public or the environment than past Events and Deviations allegedly were.  To the contrary, the number of Reportable Events, the total amount of emissions, and the amount of unauthorized emissions of criteria pollutants have all decreased over the years at issue.[264]  This is likely due to Exxon's substantial efforts to improve environmental performance and compliance.[265]  Moreover, proving compliance with the CAA to this Court for five

---

[264] *Supra* ¶ II.16.

[265] *See supra* ¶¶ II.12–14.

17-20545.13298

years would be unduly burdensome on Exxon.  Likewise, ensuring Exxon's compliance with the CAA for five years would be unduly burdensome on this Court.  For these reasons, the Court finds Plaintiffs have not established denial of the requested injunction will cause injury to the public that outweighs damage the injunction would cause Exxon.  Accordingly, Plaintiffs have not established the third requirement for injunctive relief, and injunctive relief is denied.

## F.    *Special Master*

82.    Plaintiffs request the Court appoint a special master to monitor compliance with the injunctive relief granted in this Order.  Plaintiffs request the special master be paid for by Exxon; have full access to the Complex, its personnel, and records; and be able to retain services of professional and technical people as needed.  Having found no injunctive relief is warranted, a special master to monitor compliance with injunctive relief is consequently not warranted.

83.    Moreover, even if the Court had granted the requested injunctive relief, a special master would still not be warranted.  Plaintiffs did not show by the preponderance of the credible evidence that a special master could do a better job at reducing emissions events and deviations than the Complex's existing workforce.  In addition, a special master would be excessively intrusive to Exxon's operations.  Accordingly, Plaintiffs' request that the Court appoint a special master is denied.

17-20545.13299

## G.   *Attorneys' Fees*

84.   Plaintiffs request an award of attorneys' fees, expert witness fees, and costs pursuant to 42 U.S.C. § 7604(d).[266]   Exxon has not responded in opposition to this request.   The Court finds an award of reasonable attorneys' fees, expert fees, and costs is appropriate as the Plaintiffs have substantially prevailed.   Plaintiffs have ninety days to file their costs.   The Plaintiffs are directed to file an appropriate and timely application for fees following the entry of judgment.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that Plaintiffs Environment Texas Citizen Lobby, Inc. and Sierra Club's requests in this case for a declaratory judgment, injunctive relief, and appointment of a special master, are **DENIED**.   Plaintiffs' request for penalties against Defendants is **GRANTED IN THE AMOUNT OF $19,951,278**.   Further, the Court

**ORDERS** that Plaintiffs' request for attorneys' fees, expert witness fess, and costs is **GRANTED**.   The Court further

---

[266] *Addendum to Plaintiffs' Proposed Findings of Fact and Conclusions of Law Following Remand*, Document No. 254.   Exxon did request attorneys' fees and costs in its proposal; as Exxon is not the substantially prevailing party, the Court denies that request.

17-20545.13300

**ORDERS** that Defendants' request for attorneys' fees and costs is **DENIED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, on this **26** day of April, 2017.

<div style="text-align:center">

DAVID HITTNER
United States District Judge

</div>

17-20545.13301

# TAB 5

Order denying Exxon Defendants'
Motion to Alter or Amend the Judgment and Findings
(ROA.15551)

United States District Court
Southern District of Texas
**ENTERED**
July 31, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENVIRONMENT TEXAS CITIZEN §
LOBBY, INC. *and* SIERRA CLUB, §
§
Plaintiffs, §
§
v. §        Civil Action No. H-10-4969
§
EXXONMOBIL CORPORATION, §
EXXONMOBIL CHEMICAL §
COMPANY, *and* EXXONMOBIL §
REFINING AND SUPPLY §
COMPANY, §
§
Defendants. §

## ORDER

Pending before the Court is The ExxonMobil Defendants' Motion to Alter or Amend the Judgment and Findings (Document No. 260). Having considered the motion, submissions, and applicable law, the Court determines the motion should be denied.

The Court entered a final judgment in the above-titled matter on April 26, 2017. On May 24, 2017, Exxon moved to alter or amend the judgment in five respects, as to: (1) the calculation of the economic benefit of noncompliance factor; (2) the Court's increase of the base penalty by fifty percent; (3) the affirmative

defense findings; (4) the calculation of the "days of violations"; and (5) the credit for prior payment of penalties factor.

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." FED. R. CIV. P. 59(e). Rule 59(e) motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). As such, the "motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* The Court addresses Exxon's grounds for altering or amending the judgment in turn pursuant to this standard.

A.   *Calculation of the Economic Benefit of Noncompliance Factor*

Exxon contends the Court should recalculate its finding as to the amount of economic benefit Exxon received from noncompliance because the finding utilized an erroneous start date. Plaintiffs contend the Court did not err in its finding because the touchpoint for calculating when noncompliance began is when the violations of the Clean Air Act commenced and the Court utilized the outset of the limitations period for the violations as the start date.

2

17-20545.15552

The Fifth Circuit's opinion makes clear that the penalty factor is based on noncompliance with the Clean Air Act ("CAA")—not a project proposed in the 2012 Agreed Order. *See Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.,* 824 F.3d 507, 528 (2016) ("Caselaw makes clear that 'economic benefit' in the penalty context can be calculated as the 'benefit realized by a violator from delayed expenditures to comply with the Act.'"). Here, the noncompliance with the CAA began when the permit violations began; whether the four TCEQ projects included in the 2012 Agreed Order could have been required by the TCEQ is not relevant to the factor's analysis. The relevant noncompliance for this factor is noncompliance with the statute, not noncompliance with an order by a regulatory entity.

Further, the analysis on this factor requires a court to consider whether delayed expenditure would have been necessary to correct the underlying CAA violations. *See id.* at 530 ("both the approaches to calculating economic benefit identified in our caselaw require some showing that delayed expenditures would be 'necessary to correct' the violations at in the suit"). Plaintiffs did not sue because Exxon failed to implement the four TCEQ projects. Plaintiffs sued on the actionable permit violations under the CAA. The "necessary to correct" step of the analysis, therefore, further clarifies that the touchpoint for this factor is the start of the violations in the suit. Because the relevant touchpoint is the start of noncompliance with the CAA, the Court finds no error with beginning the

3

calculation of the economic benefit received at the outset of the limitations period for the violations of the Act.[1]   Accordingly, the Court denies Exxon's motion to alter or amend its finding on the economic benefit of non-compliance factor.

B.     *The Court's Imposition of a Fifty Percent Penalty Increase*

Exxon contends the Court acted arbitrarily in assessing a fifty percent enhancement from the economic benefit from noncompliance base because it did not properly account for the finding on the good faith effort to comply factor. Plaintiffs contend the Court acted within its discretion in assessing the penalty. The Court reiterates its previous finding: "The Court determines, considering its finding that Exxon made a good faith effort to comply, the amount is sufficient to account for the factors that weighed towards assessing a penalty. The majority of the factors weigh towards imposing a penalty, which the Court determines justifies an increase from the base economic benefit from noncompliance number."[2]   The

---

[1] Further, the Court notes the Fifth Circuit—in directing this Court to enter findings based on Shefftz's expert testimony—noted that "Shefftz took implementation dates from the order itself and cost estimates from one of Exxon's environmental coordinators and used those figures to calculate the overall benefit from delaying implementation of the TCEQ projects between 2005 and 2012." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 529 (2016). The Fifth Circuit stated the dates that encompassed Shefftz's calculations: 2005 to 2012. *See id.* If as Exxon contends, non-compliance could not begin as a matter of law until the 2012 Agreed Order, any failure to consider Shefftz's testimony and enter findings would have been harmless error and would not have required remand on the issue. Instead, the Court was instructed to make findings based on Shefftz's testimony on remand.

[2] *Revised Findings of Fact & Conclusions of Law*, Document No. 257, Part III, ¶ 78.

4

Court further clarifies for the record, that without the finding of the good faith effort to comply, the penalty multiplier might have been higher given the seriousness and the duration factor findings.   The Court did not merely count factors as Exxon contends; the Court weighed the factors and in its discretion accounted for its finding that Exxon made a good faith effort to comply. Accordingly, the Court denies the motion to alter or amend its judgment as to the amount of the penalty assessed.

## C.   *The Affirmative Defenses*

Exxon contends the Court should amend its findings on the affirmative defenses asserted because the defenses were adequately supported by the evidence. Plaintiffs contend (1) Exxon failed to initially offer adequate evidentiary support; (2) the Court was directed to evidence showing the deficiencies for each affirmative defense asserted; and (3) any error by the Court would be harmless given the relatively small number of violations covered by the affirmative defenses.

On remand, Exxon in its proposed revised findings of fact and conclusions of law directed the Court to its previous submissions to find the evidentiary support for the affirmative defenses.[3]   The Court in turn reviewed in full the previous

---

[3] *Defendants' Notice of Filing Proposed Revised and Supplemental Findings of Fact and Conclusions of Law*, Document No. 252, Exhibit 1, ¶ 32 *([Proposed] Revised and Supplemental Findings of Fact and Conclusions of Law*).

17-20545.15555

proposed findings of fact and conclusions of law as to the affirmative defenses.[4]
The paragraphs to which Exxon directed the Court merely state that the TCEQ
determined the specific event met the affirmative defense criteria under Texas
law.[5]  Exxon then has eleven paragraphs that include general citations to expert
testimony and reports in support of the affirmative defenses.[6]  Exxon had the
burden of proof on its affirmative defenses to prove all eleven statutory elements of
the affirmative defense for each event.  The Court found that, by failing to provide
pinpointed evidentiary support demonstrating the affirmative defense criteria for
each event were met, [7] Exxon failed to carry its evidentiary burden.  Exxon now
submits an exhibit purported to provide evidentiary support sufficient to meet that
burden of proof.  Exxon could have submitted this summary of evidence in support
prior to the Court's entry of judgment with its proposed findings of fact and
conclusions of law following remand.  Exxon did not, and the Court finds Exxon
cannot now meet its burden to show a manifest error that allows the new exhibit to

---

[4] *See The ExxonMobil Defendants' Notice of Filing of Proposed Findings of Fact
and Conclusions of Law*, Document No. 216, Exhibit 1, ¶¶ 476–687 *([Proposed]
Findings of Fact and Conclusions of Law)*.

[5] *[Proposed] Findings of Fact and Conclusions of Law*, *supra* note 4, ¶¶ 476–676.

[6] *[Proposed] Findings of Fact and Conclusions of Law*, *supra* note 4, ¶¶ 677–687.

[7] The Court notes the record in this case contains several thousand pages of
exhibits and transcripts, in addition to well-over a thousand pages of briefing between the
various iterations of the proposed findings of fact and conclusions of law and the
respective responses.

6

be considered on a Rule 59(e) motion.   Accordingly, the Court denies Exxon's motion to alter or amend the judgment as to the affirmative defenses.

### D.   Days of Violations Count on Counts I and II

Exxon contends the Court utilized an incorrect definition of the term "days of violation" resulting in utilizing an incorrect count and that the Plaintiffs' spreadsheets contained erroneous counts, even utilizing Plaintiffs' method of counting.   Plaintiffs contend the Court utilized the proper definition of "days of violation" and Exxon waived any error in the stipulated tables by not previously objecting.

First, there is no manifest error of law in counting more than one violation of an emission standard occurring on the same day as a separate daily penalty.   *See* 42 U.S.C. § 7412(b); *Atl. States Legal Found. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1138–39 (11th Cir. 1990) (holding multiple violations of the Clean Water Act on the same day are subject to separate daily penalties).[8]   Second, the Court finds Exxon waived its argument as to whether the tallies on the stipulated tables are correct.   Even assuming Exxon did not need to object to the counts at the time of trial, and would not have raised the issue on appeal as the initially prevailing party, it had the opportunity to do so on the briefing following remand.   Exxon had the

---

[8] Interpretations of the Clean Water Act provision are instructive when analyzing a CAA provision.   *See United States v. Anthony Dell'Aquila, Enters. & Subsidiaries*, 150 F.3d 329, 338 n.9 (3d Cir. 1998).

7

opportunity on remand both to file its own proposed findings of fact and conclusions of law and to respond to Plaintiff's proposed findings of fact and conclusions of law.[9]  Exxon did not call any purported counting errors to the Court's attention at that time.  Having no previous objection to the exhibits on file, the Court will not now go back post-judgment and revisit the evidence submitted. Accordingly, the Court denies Exxon's motion to alter or amend the "days of violations" count for Counts I and II.

## E.  *Prior Payment of Penalty Factor*

Exxon contends the Court should revisit the amount of the prior penalties paid credit calculation because the alleged errors only became relevant upon the Court assessing a penalty on remand.  Plaintiffs contend the issue is not properly raised at this time.  Although the Court limited the scope of proposed findings of fact and conclusions of law on remand to the issues affected by the Fifth Circuit's ruling, Exxon was aware the Court might adopt the Plaintiffs' new proposal and assess penalties.  Exxon was given an opportunity to respond to the Plaintiffs' proposal following remand.  At that time, Exxon could have requested leave of the Court to address the prior penalties paid factor if it felt it would be prejudiced by the Court's limitation of the briefing in the event the Court assessed penalties

---

[9] The Court further notes that it imposed no pages limits on either the proposed findings of fact and conclusions of law following remand or the responses thereto. See *Order*, Document No. 251.

against Exxon. It did not do so and the Court finds the issue is now waived.

Accordingly, the Court denies Exxon's motion to alter or amend the judgment as to

the credit for penalties paid.

Accordingly, the Court hereby

**ORDERS** that The ExxonMobil Defendants' Motion to Alter or Amend the

Judgment and Findings (Document No. 260) is **DENIED**.

SIGNED at Houston, Texas, on this **31** day of July, 2017.

DAVID HITTNER
United States District Judge

17-20545.15559

  
# TAB 6

The ExxonMobil Defendants' Motion to Bifurcate Trial
(ROA.6376)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ENVIRONMENT TEXAS CITIZEN LOBBY, INC. *and* SIERRA CLUB, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. H-10-4969 |
| EXXON MOBIL CORPORATION, *et al.*, | § § § | |
| *Defendants*. | § § | JUDGE DAVID HITTNER |

**THE EXXONMOBIL DEFENDANTS'**
**MOTION TO BIFURCATE TRIAL**

TO THE HONORABLE JUDGE OF THIS COURT:

Defendants Exxon Mobil Corporation, ExxonMobil Chemical Company, and ExxonMobil Refining and Supply Company (collectively, "the ExxonMobil Defendants") file this motion to bifurcate the trial of this matter. In support of this motion, the ExxonMobil Defendants respectfully show the Court as follows:

**INTRODUCTION**

This lawsuit concerns citizen suit claims under the federal Clean Air Act ("CAA"), with respect to the operation of the Baytown Complex, a facility that includes a large integrated refinery, chemical plant, and olefins plant located in Baytown, Texas. Plaintiffs' complaint references over 1400 events and incidents

1

17-20545.6376

that they allege were self-reported by the ExxonMobil Defendants to the Texas Commission on Environmental Quality ("TCEQ") over a five-plus year time span. The events and incidents at issue range from a self-reported failure to properly document the start and stop times of plant operation during maintenance and testing activities to self-reported events involving emissions of pollutants due to interruptions of operations at the Baytown Complex.

The ExxonMobil Defendants have filed a motion for summary judgment that would resolve all of the Plaintiffs' claims. That motion also contains alternative grounds that would significantly streamline the issues to be presented to the Court at a trial. The ExxonMobil Defendants file this motion for the Court's consideration only should the Court determine that resolution of the entire case on summary judgment is not appropriate.

As discussed more fully in the motion for summary judgment, Plaintiffs seek to serve as private attorneys general in pursuing citizen suit claims. As the Court is well aware, citizen suit plaintiffs can only assert CAA claims under very narrow circumstances. First, they must meet their burden of establishing personal standing to sue, with respect to each claimed CAA violation. Plaintiffs must also prove in this case, to meet the requirements of the citizen suit statute, that there has been either a repeated historical violation or an ongoing violation of an emissions standard or limitation under the CAA. 42 U.S.C. § 7604(a)(1).

2

Case 4:10-cv-04969    Document 90-1    Filed in TXSD on 10/16/12    Page 3 of 10

For judicial economy, and to conserve the parties' resources, the ExxonMobil Defendants respectfully submit that the Court conduct this bench trial in three phases. During the first phase, Plaintiffs would be required to establish their standing to proceed with respect to one or more of the over 1400 events and incidents they list in their Complaint. The second trial phase would address whether any of the events and incidents for which the Court determines Plaintiffs have standing constitute "repeated" violations within the meaning of the CAA's citizen suit provision. The third phase would address the remaining issues with respect to that subset of claims for which Plaintiffs satisfy their burdens to the Court's satisfaction in the first two phases. As further set forth below, dividing this bench trial into three phases should serve both to conserve judicial resources and to minimize the burdens and expenses of trial on the litigants.

## COURT'S DISCRETION

Under Federal Rule 42(b), this Court has broad discretion to order separate trials as to discrete issues for convenience, to avoid prejudice, or to expedite and economize the proceedings. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 892 (5th Cir. 1998); *see also Perforaciones Maritimas Mexicanas S.A. de C.V. v. Seacor Holdings, Inc.*, Civ. A. No. 4:05-CV-419, 2008 WL 7627803,*1 (S.D. Tex. Apr. 29, 2008). "Whether to conduct separate trials under [Rule 42(b)] is 'a matter left to the sound discretion of the trial court on the basis of circumstances of the

17-20545.6378

litigation before it.'" *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 773–74 (5th Cir. 2009) (quoting 9A C.A. Wright & A.R. Miller, FEDERAL PRACTICE & PROCEDURE § 2388 (3d ed. 2008)).

## ARGUMENT AND AUTHORITIES

As discussed at length in the motion for summary judgment, the ExxonMobil Defendants have tried, unsuccessfully, to have Plaintiffs focus their claims on specific events and incidents listed in the Complaint. Plaintiffs have not done so, and continue instead to press claims arising out of all of the self-reports that the ExxonMobil Defendants made over the five-plus year time span covered by this suit.

The ExxonMobil Defendants therefore present this phased alternative to a trial on all issues involving claims for over 1400 events and incidents. Such a full-blown trial would involve presentation of evidence on events and incidents for which the Court could ultimately determine it has no subject matter jurisdiction to address, either because Plaintiffs lack standing to pursue them or because they are not "repeated" violations within the meaning of the CAA.

The ExxonMobil Defendants respectfully suggest that a bench trial could be efficiently handled by conducting the proceedings in three phases. The first phase would be directed to the threshold issue of standing. As discussed at length in the ExxonMobil Defendants' motion for summary judgment, private citizens are not

4

Case 4:17-cv-54569   Document 90-1   Filed on 09/15/12 in page 3 of 10

permitted to file suit under the CAA just because they disapprove of the operations of a regulated facility. Pursuant to Article III of the U.S. Constitution, a citizen suit plaintiff must establish an actual injury in fact (standing) to raise claims for violations of the CAA. *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Furthermore, because the Plaintiffs in this action are associations and not individuals, each must separately establish that it has organizational standing to bring suit on behalf of its members. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 169 (2000). Unless Plaintiffs can demonstrate standing with respect to a particular event or incident, the Court is not required to address citizen suit claims on that event or incident.

The Court's front-end consideration of the issue of standing would significantly streamline what would otherwise be a lengthy and cumbersome trial. Requiring the Plaintiffs to first meet their burden of standing would force them to focus on those specific events or incidents for which they believe they can demonstrate adverse impact, as a factual matter, on one or more of their members. The Court could thus conduct a focused inquiry and review of Plaintiffs' proffered evidence of adverse impact as to specific events and incidents. If the Plaintiffs are unable to establish standing, phase one would end this lawsuit following a targeted examination of this predicate issue. If the Plaintiffs are able to establish standing

5

Case 4:17-cv-04069   Document 90-1 Filed on 03/16/22 in TXSD   Page 6 of 10

as to specific events and incidents, the trial would proceed to a second phase (discussed below) with respect to those matters.

If this case is not bifurcated, the issue of standing would need to be litigated alongside the multitude of merits and remedy issues in this case. The parties have designated thirteen retained and five non-retained experts to address the disparate issues at play in this case. Taken together, the reports of the retained experts (excluding attachments) constitute almost 480 pages of analysis and opinions. A number of fact witnesses are expected to testify as well. The subject matters of this testimony will include, over and above the threshold standing issues: whether any of the events and incidents constitute repeat violations of emissions standards and limitations, including an examination of the root causes of the events and incidents and the permit, order, or rule allegedly violated for each; TCEQ and EPA regulations and policies; operation and maintenance of refinery and petrochemical facilities; the ExxonMobil Defendants' corrective actions and ongoing efforts (both with the regulators and independent of them) to prevent and reduce such events or incidents; defenses to CAA liability for those events and incidents; and economic issues related to penalties and other forms of relief requested by Plaintiffs.

Should either of the Plaintiffs establish constitutional standing to proceed, the ExxonMobil Defendants submit that this Court should next conduct a phase-two bench trial concerning the issue of whether events and incidents for which the

17-20545.6381

Case 4:10-cv-04969   Document 96-1   Filed on 06/10/11 on Page 184 of 219

Plaintiffs demonstrate standing fall within the Court's subject matter jurisdiction under the CAA's citizen suit provision.  Again, a private plaintiff's rights under the CAA are limited.  Unlike public agencies charged with CAA enforcement, citizens are only permitted to bring such suits if a defendant has repeatedly violated or is currently in violation of (a) an emission standard or limitation under the CAA or (b) an order issued by TCEQ, the EPA, or a state authority with respect to such a standard or limitation.  *See* 42 U.S.C. § 7604(a)(1).  Consequently, the ExxonMobil Defendants suggest that phase two of this trial should focus on which of the events or incidents for which Plaintiffs establish standing actually involve repeated violations.

The final phase of this trial, should it prove necessary, would consist of evidence and argument concerning the remaining fact-intensive issues as to those events or incidents for which the Court determines Plaintiffs have met their burdens in the first two phases.  These issues would include, among others, those discussed above that are specific to the remaining events and incidents:  EPA and TCEQ enforcement, corrective actions taken by the ExxonMobil Defendants, defenses to citizen suit CAA liability, and evidence and argument concerning Plaintiffs' proposed remedies and penalties.

In sum, the ExxonMobil Defendants submit that trying this bench trial in three phases would focus the parties on the specific claims for which Plaintiffs

17-20545.6382

Case 4:10-cv-04969   Document 90-1   Filed X85   on 08/16/11   Page 8 of 10

establish both their standing and the Court's jurisdiction. The ExxonMobil Defendants respectfully suggest that such a procedure would conserve a significant amount of time and resources. Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the ExxonMobil Defendants request that the trial of any issues that survive the Court's review of summary judgment be conducted in the three phases described above.

Respectfully submitted,

By:   /s/ Eric J.R. Nichols
Eric J.R. Nichols
State Bar No. 14994900
S.D. Tex. 13066
BECK, REDDEN & SECREST, L.L.P.
515 Congress Avenue, Suite 1750
Austin, Texas  78701
Tel:  (512) 708-1000
Fax:  (512) 708-1002
Email:  enichols@brsfirm.com

**ATTORNEY-IN-CHARGE
FOR DEFENDANTS**

17-20545.6383

# TAB 7

Excerpts from Plaintiffs' Trial Exhibits Counting Actionable Violations
(ROA.67910, 67929-30, 67937-40, 67942, 69271, 69279-80)

Case 4:10-cv-04969   Document 236-689   Filed in TXSD on 03/11/15   Page 1 of 36



Calculation of Number of Days of Violation in Plaintiffs' Exhibit 2C

This exhibit adds one column to the stipulated table in PX 2C, that column is entitled "Number of Days of Violation." The number of days of violation are calculated as follows:

1. 1 day of violation is counted for each 24-hour period an emission event lasts (e.g., 30-hour Duration = 2 days of violation).

2. Because the Baytown Complex permits regulate emissions on a pollutant-by-pollutant basis, days of violation are calculated separately for each regulated air contaminant released in an event. VOCs are grouped together as one pollutant because they are regulated that way (except for benzene, which is regulated separately in the Refinery permit); oxides of Nitrogen are similarly grouped together as one pollutant.

3. To determine whether the emission of any pollutant was unauthorized, the following process was followed:

If the "Limit" column lists the emission limit as "0" , a violation is counted for the pollutant emitted.

If the "Limit" column contains a number, a violation is counted only if:
   a. The "Authorization" column says "Not specifically authorized"; or
   b. The "Authorization" column says "portions authorized" or "parts authorized/parts not authorized"; or
   c. The "Amount" released (from all emission points releasing that pollutant) is larger than number in the "Limit" column AFTER dividing the total released (from all sources of that pollutant in the event) by the hours/duration of the event.

4. Because many of the Baytown Complex permits contain flexible emission caps that group emission sources together, only 1 violation per day for each pollutant released in an emission event is counted, regardless of how many emission points in the same event emitted that pollutant.

| Tracking Number | Bates Number(s) of STEERS Report | Start Date & Time | End Date & Time | Duration (hrs) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 11/22/2005 11:00 | 12/13/2005 11:00 | 288.00:00 | Not Specifically Authorized | BOP Cooling Tower | BOP Cooling Tower | BOPCT | Carbon Monoxide | 64.00 | 0.00 | Odd Ends exchanger, 12-05, has a leak that has formed on the process side of the 12-05 exchanger into the cooling water side, traditine cooling tower emissions are permitted under permit 45451. | 11 |
| 58288 | STEC 000370-000372 | 11/22/2005 11:00 | 12/15/2005 11:00 | 288.00:00 | Not Specifically Authorized | BOP Cooling Tower | BOP Cooling Tower | BOPCT | TOTAL VOC; 1,2-Butadiene, 1-Hexene, Akerylene, Benzene, Butane, Butene, Butenene, Cis-2-butene, Cis-2-butene, Cyclopentadiene, Dimethylnaphth, Ethylene (gaseous), Isobutane, Isobutylene, Isoprene, Pentadiene, Pentene, Pentene, Pentane, Propene, Propylene (Propene), Toluene | 44,004.00 | 0.00 | Odd Ends exchanger, 15-05, has a leak that has formed on the process side of the 12-05 exchanger into the cooling water side, routine cooling tower emissions are permitted under permit 45452. | 11 |
| 69028 | STEC 000263-000298 | 12/10/2005 13:20 | 12/10/2005 16:15 | 2:50 | Permit 3452 | Area BOP Operating Area | Secondary Flare | Flare 2 | Carbon Monoxide | 636.00 | 8627.58 | Seal Leak TFOS. Isolation initiated flaring. | 1 |
| | | 12/10/2005 13:20 | 12/10/2005 16:15 | 2:50 | Permit 3452 | Area BOP Operating Area | Secondary Flare | Flare 2 | TOTAL NOX; Nitrogen Dioxide, Nitrogen Oxide | 98.00 | 3559.61 | Seal Leak TFOS. Isolation initiated flaring. | 1 |
| 69027 | STEC 000267-000268 | 12/10/2005 13:04 | 12/10/2005 15:54 | 2:50 | Permit 3452 | Area BOP Operating Area | Primary Flare | Flare 1 | TOTAL VOC; benzene, 1,3 Butadiene, Butene H, Butene, Butylene, Ethylene (gaseous), Isobutene, Propadiene, Propene, Propylene, Propene, Propylene (Propene), trans-2-butene, VOC | -956.02 | 705.48 | Seal Leak TFOS. Isolation initiated flaring. | 1 |
| | | 12/10/2005 13:04 | 12/10/2005 15:54 | 2:50 | Permit 3452 | area BCP Operating Area | Secondary Flare | Flare 1 | DPACITY | 520.00% | 20.00% | Seal Leak TFOS. Isolation initiated flaring. | 1 |
| | | 12/10/2005 13:04 | 12/10/2005 15:54 | 2:00 | Permit 3452 | Area BOP Operating Area | Secondary Flare | Flare 2 | TOTAL VOC; Propylene (Propene) | 919.25 | 9.35 | Seal Leak TFOS. Isolation initiated flaring. | 1 |
| | | 12/10/2005 13:04 | 12/10/2005 15:54 | 2:50 | Permit 3452 | Pair BOP Operating Area | Truth Flare | | TOTAL VOC; Propane, Propylene (Propene) | 12,476.00 | 700.48 | Seal Leak TFOS. Isolation initiated flaring. | already counted |
| 69842 | STEC 000328-000323 | 12/31/2005 15:33 | 1/1/2006 13:00 | 37:45 | no specific emissions authorizations for this facility | ESP-05 Lube Reservoir | BP3 Unit | Lube Oil Reservoir | TOTAL VOC; 1,2-Butadiene, Butanol | 403.57 | 0.00 | seal failure on compressor RG-C1. | 3 |

1

17-20545.67910

Calculation of Number of Days of Violation in Plaintiffs' Exhibit 2C

| | Tracking Number | Bates Number(s) of STEERS Report | Start Date & Time | End Date & Time | Duration (hrs) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | A | B | C | D | E | F | G | H | I | J | K | L | M | N |
| 224 | | | 1/12/2009 11:00 | 1/12/2009 14:00 | 3:00 | No specific authorizations for this facility | Butadiene Unit | Line Pipe FN-5008 | FN-5008 | TOTAL VOC: C3, Hexene, Pentane, Pentene | 555.00 | 795.44 | Leak occurred, due to hole in FN-5008,and this event has ended. 80 unit is authorized by PAL permit number 1452/PSD-TX-002M2. | 1 |
| 225 | 118856 | ETIC 000458-000459 | 1/12/2009 11:00 | 1/12/2009 14:00 | 3:00 | No specific authorizations for this facility | UT101 Tower | Primary Flare | Flare 1 | Carbon Monoxide | 23.00 | 6,027.58 | Leak occurred due to hole in FN-5008,and this event has ended. 80 unit is authorized by PAL permit number 1452/PSD-TX-002M2. | 1 |
| 226 | | | 1/12/2009 11:00 | 1/12/2009 14:00 | 3:00 | No specific authorizations for this facility | UT101 Tower | Primary Flare | Flare 1 | NOX | 1.00 | 1,890.75 | Leak occurred due to hole in FN-5008,and this event has ended. 80 unit is authorized by PAL permit number 1452/PSD-TX-002M2. | 1 |
| 227 | | | 1/12/2009 11:00 | 1/12/2009 14:00 | 3:00 | No specific authorizations for this facility | UT101 Tower | Primary Flare | Flare 1 | TOTAL VOC: C5, Pentane, Pentene | 19.00 | 795.44 | Leak occurred due to hole in FN-5008,and this event has ended. 80 unit is authorized by PAL permit number 1452/PSD-TX-002M2. | already counted |
| 228 | | | 1/19/2009 20:00 | 1/20/2009 7:00 | 11:00 | 25.14 lbs of the 201.76 lbs are authorized | Import Line Feed | Primary Flare | Flare 1 | Carbon Monoxide | 355.79 | 6,027.58 | Flaring due to depressurizing portions of the Propylene Recovery Unit. Event has ended. Sections of this unit are authorized by Permit 8642/PSD-TX-002M2. | 1 |
| 229 | 119068 | ETIC 000446-000467 | 1/19/2009 20:00 | 1/20/2009 7:00 | 11:00 | 3.46 lbs of the 42.36 lbs are authorized | Import Line Feed | Primary Flare | Flare 1 | NOX | 42.54 | 1,670.75 | Flaring due to depressurizing portions of the Propylene Recovery Unit. Event has ended. Sections of this unit are authorized by Permit 8642/PSD-TX-002M2. | 1 |
| 230 | | | 1/19/2009 20:00 | 1/20/2009 7:00 | 11:00 | 7.57 lbs of the 345.48 lbs are authorized | Import Line Feed | Primary Flare | Flare 1 | TOTAL VOC: Ethylene (ethanol), Propane, Propylene (Propene), VOC | 345.48 | 739.48 | Flaring due to depressurizing portions of the Propylene Recovery Unit. Event has ended. Sections of this unit are authorized by Permit 8642/PSD-TX-002M2. | 1 |
| 231 | | | 1/29/2009 16:41 | 1/29/2009 18:50 | 1:00 | 5 lbs of the 5 lbs are authorized | Cold Ends, Converter Interstage Drum NO-02 | Primary Flare | Flare 1 | Carbon Dioxide | 5.00 | 795.44 | The de-propanizer at Cold Ends experienced an increase in feed that was rich in propane and propylene. This increased the overhead rate which resulted in a release of a safety valve. Portions of the unit are authorized by permit numbers 3432 and PSD-TX-002M2. | 1 |
| 232 | 119812 | ETIC 000444-000447 | 1/29/2009 16:40 | 1/29/2009 18:10 | 1:00 | 73.5 lbs of the 102 lbs are authorized | Cold Ends, Converter Interstage Drum NO-02 | Primary Flare | Flare 1 | Carbon Monoxide | 102.00 | 6027.58 | The de-propanizer at Cold Ends experienced an increase in feed that was rich in propane and propylene. This increased the overhead rate which resulted in a release of a safety valve. Portions of the unit are authorized by permit numbers 3432 and PSD-TX-002M2. | 1 |
| 233 | | | 1/29/2009 16:40 | 1/29/2009 04:03 | 1:00 | 16 lbs of the 29 lbs are authorized | Cold Ends, Converter Interstage Drum NO-02 | Primary Flare | Flare 1 | NOX | 29.00 | 1690.75 | The de-propanizer at Cold Ends experienced an increase in feed that was rich in propane and propylene. This increased the overhead rate which resulted in a release of a safety valve. Portions of the unit are authorized by permit numbers 3432 and PSD-TX-002M2. | 1 |
| 234 | | | 1/29/2009 16:40 | 1/29/2009 18:10 | 4:02 | 108.3 lbs of the 493.5 lbs are authorized | Cold Ends, Converter Interstage Drum NO-02 | Primary Flare | Flare 1 | TOTAL VOC: 1,3-Butadiene, Acetylene, Butene-H, C9, Decii-butene, Ethylene (ethanol), Isobutane, Isobutylene, Propane, Propylene (Propene), Trans-2-Butene | 493.50 | 700.44 | The de-propanizer at Cold Ends experienced an increase in feed that was rich in propane and propylene. This increased the overhead rate which resulted in a release of a safety valve. Portions of the unit are authorized by permit numbers 3432 and PSD-TX-002M2. | 1 |
| 235 | | | 4/19/2009 3:00 | 4/20/2009 1:00 | 22:08 | 14.24 is are authorized by FLEX/PAL permit 3453 | Cold Ends Unit | Primary Flare | Flare 1 | Carbon Monoxide | 10,725.71 | 6,027.58 | Process gas compressor tripped sending feed streams to the flare system. In past flaring events related to this incident, opacity was reported. During this event 8642/3453 an offsite opacity reading could not be interpreted in the absence of sunlight. Portions of this event are authorized under PAL permit 3452. Event has ended. | 1 |
| 236 | | | 4/19/2009 3:00 | 4/20/2009 1:00 | 22:00 | 2.78 is are authorized by FLEX/PAL permit 3453 | Cold Ends Unit | Primary Flare | Flare 1 | NOX | 1,795.82 | 1,630.15 | Process gas compressor tripped sending feed streams to the flare system. In past flaring events related to this incident, opacity was reported. During this event 8642/3453 an offsite opacity reading could not be interpreted in the absence of sunlight. Portions of this event are authorized under PAL permit 3452. Event has ended. | 1 |

17-20545.67929

Case Case 4:10-cv-4969 DoDocument 44489 FRaged 189 SD Date Filed: 01/12/2018 of 36

17-29545.7930

| | Tracking Number | Bates Number(s) of STEERS Report | Start Date & Time | End Date & Time | Duration (h:m) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 237 | 122584 | ETSC 000441 - 000443 | 4/19/2009 3:00 | 4/20/2009 1:00 | 22:00 | 17.83 lbs are authorized by FLEX/PAL permit 3452 | Cold Ends Unit | Primary Flare | Flare 1 | TOTAL VOC: 1,3-Butadiene, Acetylene, Benzene, Butane N-, Cis-2-butene, Ethylene (gaseous), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene, VOC (unspecified) | 10,144.12 | 709.48 | Process gas compressor tripped sending feed streams to the flare system. In past flaring events related to this incident, opacity was reported. During this event (04/19/09) an official opacity reading could not be completed in the absence of sunlight. Portions of this event are authorized under PAL permit 3452. Event has ended. | 1 |
| 238 | | | 4/19/2009 3:00 | 4/20/2009 1:00 | 22:00 | Not specifically authorized | Cold Ends Unit | Secondary Flare | Flare 2 | Carbon Monoxide | 16,749.01 | 0.00 | Process gas compressor tripped sending feed streams to the flare system. In past flaring events related to this incident, opacity was reported. During this event (04/19/09) an official opacity reading could not be completed in the absence of sunlight. Portions of this event are authorized under PAL permit 3452. Event has ended. | already counted |
| 239 | | | 4/19/2009 3:00 | 4/20/2009 1:00 | 22:00 | Not specifically authorized | Cold Ends Unit | Secondary Flare | Flare 2 | NOX | 2,590.70 | 0.00 | Process gas compressor tripped sending feed streams to the flare system. In past flaring events related to this incident, opacity was reported. During this event (04/19/09) an official opacity reading could not be completed in the absence of sunlight. Portions of this event are authorized under PAL permit 3452. Event has ended. | already counted |
| 240 | | | 4/19/2009 3:00 | 4/20/2009 1:00 | 22:00 | Not specifically authorized | Cold Ends Unit | Secondary Flare | Flare 2 | TOTAL VOC: 1,3-Butadiene, Acetylene, Benzene, Butane N-, Cis-2-butene, Ethylene (gaseous), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene, VOC (unspecified) | 16,828.52 | 0.00 | Process gas compressor tripped sending feed streams to the flare system. In past flaring events related to this incident, opacity was reported. During this event (04/19/09) an official opacity reading could not be completed in the absence of sunlight. Portions of this event are authorized under PAL permit 3452. Event has ended. | already counted |
| 241 | 124689 | ETSC 000439 - 000440 | 5/26/2009 10:00 | 5/29/2009 15:15 | 77:15 | Not specifically authorized | Baytown Olefins Plant Utilities | Steam, sewer, condensate | | TOTAL VOC: 1-Butene, 1-Pentene, 1-heptene, Benzene, Butane, Cumene, Ethylbenzene, Hexane, Isobutane, Nonane, Octanes, Octene, Pentane, Propane, Toluene, m-Xylene, decane, ethyl cyclohexane | 77,439.00 | 0.00 | Pluggage in naphtha line to BOP tower KT-01 resulted in hydrocarbons mixing with steam system. Hydrocarbon exited steam system through atmospheric emission locations in the steam, sewer, condensate and other systems. Event began at approximately 5/24/09 00:45. Portions of this unit are authorized under PAL Permit 3452. | 4 |
| 242 | 127632 | ETSC 000435 - 000438 | 8/6/2009 14:54 | 8/7/2009 7:30 | 16:36 | 12.7 lbs out of 2100 are authorized by Flexible Permit/PAL 3452 and PSD-TX-302M2 | Baytown Olefins Plant | Primary Flare | Flare 1 | Carbon Monoxide | 2,100.00 | 6627.58 | Power surge and subsequent stabilization of operations lead to controlled partial shutdown and startup of various units. Portions of this event are authorized under Flexible Permit/PAL 3452 and PSD-TX-302M2. | 1 |
| 243 | | | 8/6/2009 14:54 | 8/7/2009 7:30 | 16:36 | 2.49 lbs out of 338 are authorized by Flexible Permit/PAL 3452 and PSD-TX-302M2 | Baytown Olefins Plant | Primary Flare | Flare 1 | NOX | 338.00 | 1630.75 | Power surge and subsequent stabilization of operations lead to controlled partial shutdown and startup of various units. Portions of this event are authorized under Flexible Permit/PAL 3452 and PSD-TX-302M2. | 1 |
| 244 | | | 8/6/2009 14:54 | 8/7/2009 7:30 | 16:36 | 16.52 lbs out of 2,503.00 are authorized by Flexible Permit/PAL 3452 and PSD-TX-302M2 | Baytown Olefins Plant | Primary Flare | Flare 1 | TOTAL VOC: 1,3-Butadiene, Acetylene, Benzene, Butane N-, Cis-2-butene, Ethylene (gaseous), Isobutane, Propane, Propylene, Trans-2-butene, VOC. | 2,503.00 | 709.48 | Power surge and subsequent stabilization of operations lead to controlled partial shutdown and startup of various units. Portions of this event are authorized under Flexible Permit/PAL 3452 and PSD-TX-302M2. | 1 |
| 245 | | | 8/6/2009 14:54 | 8/7/2009 7:30 | 16:36 | Not specifically authorized | Baytown Olefins Plant | Secondary Flare | Flare 2 | Carbon Monoxide | 1,116.00 | 6627.58 | Power surge and subsequent stabilization of operations lead to controlled partial shutdown and startup of various units. Portions of this event are authorized under Flexible Permit/PAL 3452 and PSD-TX-302M2. | already counted |

# Calculation of Number of Days of Violation in Plaintiffs' Exhibit 2C

17-20545.67937

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | Tracking Number | Bates Number(s) of STEERS Report | Start Date & Time | End Date & Time | Duration (h:m) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
| 310 | | 000478 | 12/28/2010 1:38 | 12/28/2010 20:38 | 19:00 | Portions may be authorized under permit #3452/PSD-TX-302M2 | Propylene Recovery Unit (PRU) | Secondary Flare | FLARE2 | Carbon Monoxide | 38.60 | 6,627.58 | Flaring due to PRU feed filter safety relief valve opening to the flare. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| 311 | | | 12/28/2010 1:38 | 12/28/2010 20:38 | 19:00 | Portions may be authorized under permit #3452/PSD-TX-302M2 | Propylene Recovery Unit (PRU) | Secondary Flare | FLARE2 | Nitrogen Oxides | 5.34 | 1,680.75 | Flaring due to PRU feed filter safety relief valve opening to the flare. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| 312 | | | 12/28/2010 1:38 | 12/28/2010 20:38 | 19:00 | Portions may be authorized under permit #3452/PSD-TX-302M2 | Propylene Recovery Unit (PRU) | Secondary Flare | FLARE2 | TOTAL VOC: 1,3-Butadiene, Benzene, Butene, Butene, Ethylene (gaseous), Propane, Propylene (Propene), VOC | 53.79 | 709.48 | Flaring due to PRU feed filter safety relief valve opening to the flare. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| 313 | 149507 | ETSC 000479 - 000480 | 1/17/2011 8:50 | 1/17/2011 10:40 | 0:50 | 18.8 lbs of 1072.8 lbs are authorized under permit #3452 | C2 splitter bottoms pump, (XMP-06B) | BOPX Flare | FLAREX | Carbon Monoxide | 1,054.00 | 6,627.58 | Pump XMP-06B shutdown resulting flaring at FlareX. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| 314 | | | 1/17/2011 8:50 | 1/17/2011 10:40 | 0:50 | 3.7 lbs of 151.7 lbs are authorized under permit #3452 | C2 splitter bottoms pump, (XMP-06B) | BOPX Flare | FLAREX | Nitrogen Oxides | 148.00 | 1,630.75 | Pump XMP-06B shutdown resulting flaring at FlareX. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| 315 | | | 1/17/2011 8:50 | 1/17/2011 10:40 | 0:50 | 6.3901 lbs of 890.6901 lbs are authorized under permit #3452 | C2 splitter bottoms pump, (XMP-06B) | BOPX Flare | FLAREX | TOTAL VOC: 1,3-Butadiene, Acetylene, Benzene, Butane N-, Cis-2-butene, Ethylene (gaseous), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene, VOCs | 884.30 | 709.48 | Pump XMP-06B shutdown resulting flaring at FlareX. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| 316 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 2072 lbs out of total 4494 lbs are authorized under Permit #3452/PSD-TX-302M2 | | BOPX Flare | FLAREX | Carbon Monoxide | 2,421.00 | 6,627.58 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | 5 |
| 317 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 287 lbs of total 623 lbs are authorized under Permit #3452/PSD-TX-302M2 | | BOPX Flare | FLAREX | NOX | 336.00 | 1,680.75 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | 5 |
| 318 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | No specific emissions authorization for this facility | | BOPX Flare | FLAREX | Opacity | 100.00% | 0.00% | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | 5 |
| 319 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 739 lbs out of total 3,421 lbs are authorized under Permit #3452/PSD-TX-302M2 | | BOPX Flare | FLAREX | TOTAL VOC: 1,3-Butadiene, Acetylene, Butane N-, Cis-2-butene, Ethylene (gaseous), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene, VOC (unspeciated) | 2,679.00 | 709.48 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | 5 |

Calculation of Number of Days of Violation in Plaintiffs' E... it 2C

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | Tracking Number | Bates Number(s) of STEERS Report | Start Date & Time | End Date & Time | Duration (h:m) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
| 320 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | No specific emissions authorization for this facility | | IBN PN 4320 Rupture Disc | NA | TOTAL VOC: VOCs | 28.00 | 0.00 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| 321 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 1330 lbs out of total 13939 lbs are authorized under Permit #3452/PSD-TX-302M2 | | Primary Flare | FLARE1 | Carbon Monoxide | 12,608.00 | 6,627.58 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| 322 | 150177 | ETSC 000481 – 000485 | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 261 lbs out of total 2061 lbs are authorized under Permit #3452/PSD-TX-302M2 | | Primary Flare | FLARE1 | NOX | 1,800.00 | 1,630.75 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| 323 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | No specific emissions authorization for this facility | | Primary Flare | FLARE1 | Opacity | 100.00% | 0.00% | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| 324 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 1,343.3 lbs out of total 19,572.0 lbs are authorized under Permit #3452/PSD-TX-302M2 | | Primary Flare | FLARE1 | TOTAL VOC: 1,3-Butadiene, Acetylene, Benzene, Butane N-, Cis-2-butene, Ethylene (gaseous), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene, VOC (unspeciated) | 18,228.20 | 709.48 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| 325 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 0 lbs out of total 5684 lbs are authorized under Permit #3452/PSD-TX-302M2 | | Secondary Flare | FLARE2 | Carbon Monoxide | 5,684.00 | 6,627.58 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| 326 | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114:47 | 0 lbs out of total 788 lbs are authorized under Permit #3452/PSD-TX-302M2 | | Secondary Flare | FLARE2 | NOX | 788.00 | 1,630.75 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |



Case: 17-20545 Document: 00514481 Page: 191 Date Filed: 05/17/2018

17-20545.67938

Calculation of Number of Days of Violation in Plaintiffs' Exhibit 2C

| | Tracking Number | Dates Number(s) of STERRS Report | Start Date & Time | End Date & Time | Duration (h:m) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 2/3/2011 0:13 | 2/6/2011 19:00 | 139:47 | No specific emissions authorization for this facility | | Secondary Flare | FLAE02 | Olefin | 100.006 | 5.000 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze related instrumentation and safety valves, (4) safety relief to vent capture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portion of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| | | | 2/2/2011 0:13 | 2/6/2011 15:00 | 114:47 | 0 lbs out of total 7,563.04 lbs are authorized under Permit #3452/PSD-TX-302M1 | | Secondary Flare | FLAE02 | TOTAL VOC:1,3-Butadiene, Acetylene, Benzene, Butene-bs, Cis-2-Butene, Ethylene (gaseous), Propane, Propylene, Trans-2-butene, VOC (unspeciated) | 7,563.04 | 709.40 | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze related instrumentation and safety valves, (4) safety relief to vent capture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portion of unit are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| | | | 4/4/2011 13:07 | 4/5/2011 0:00 | 10:53 | 167.9 lbs out of total 1384.3 lbs are authorized under Permit #3452/PSD-TX-302M2 | BB Unit | Primary Flare | Flare1 | Carbon Monoxide | 1284.40 | 4822.50 | Flaring caused by KC-01 Compressor shutdown. Portion of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| 172930 | | ETSC 000686 - 000495 | 4/4/2011 13:07 | 4/5/2011 0:00 | 10:53 | 55.9 lbs out of total 215.3 lbs are authorized under Permit #3452/PSD-TX-302M2 | BB Unit | Primary Flare | Flare1 | NOX | 165.00 | 3690.73 | Flaring caused by KC-01 Compressor shutdown. Portion of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| | | | 4/4/2011 13:07 | 4/5/2011 0:00 | 10:53 | 107.71 lbs out of total 4,159.71 lbs are authorized under Permit #3452/PSD-TX-302M2 | BB Unit | Primary Flare | Flare1 | TOTAL VOC:1,3-Butadiene, Acetylene, Butene IV, Cis-2-butene, Ethylene (gaseous), isobutane, isobutene, Pentanes Propane, Propylene, Trans-2-butene | 3655.60 | 708.44 | Flaring caused by KC-01 Compressor shutdown. Portion of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | 1 |
| | | | 4/4/2011 13:07 | 4/5/2011 0:00 | 10:53 | 387.5 lbs out of total 387.5 lbs are authorized under Permit #3452/PSD-TX-302M2 | BB Unit | Secondary Flare | Flare2 | Carbon Monoxide | 387.80 | 4927.50 | Flaring caused by KC-01 Compressor shutdown. Portion of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| | | | 4/4/2011 13:07 | 4/5/2011 0:00 | 10:53 | 55.9 lbs out of total 55.9 lbs are authorized under Permit #3452/PSD-TX-302M2 | BB Unit | Secondary Flare | Flare2 | NOX | 55.90 | 1492.79 | Flaring caused by KC-01 Compressor shutdown. Portion of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| | | | 4/4/2011 13:07 | 4/5/2011 0:00 | 10:53 | 1,006.1 lbs out of total 1,006.1 lbs are authorized under Permit #3452/PSD-TX-302M2 | BB Unit | Secondary Flare | Flare2 | TOTAL VOC:1,3-Butadiene, Acetylene N, Cis-2-butene, Ethylene (gaseous), isobutane, isobutylene, Pentanes, Propane, Propylene, Trans-2-butene | 1,006.10 | 708.44 | Flaring caused by KC-01 Compressor shutdown. Portion of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. | already counted |
| | 105645 | ETSC 000499 - 000490 | 4/12/2011 | 6/22/2011 21:00 | 1135:00 | Not specifically authorized | Baytown Olefins Plant, SOH X | Tubing Leak on XXG 06 | | Propylene | 105,709.00 | 0.00 | On 6/2/11 at 1130 AM a tubing leak was discovered and isolated within 60 minutes. The emissions were calculated to be 32 pounds of propylene. On 4/8/11 at 2:35 PM, preliminary process data indicated that the 6/2/11 tubing leak may have been occurring since 4/12/11. The event ended on 4/2/11. Portions of the unit are authorized by Permit #3452/PSD-TX-302M2. | 32 |
| | | | 7/26/2011 1:57 | 7/26/2011 XXX | 1:07 | 177.30 lbs of total 479.51 lbs are authorized under Permit #3452/PSD-TX-302M2 | Baytown Olefins Plant, SOH X | FLAREX | FLAREX | Carbon Monoxide | 251.51 | 4,927.50 | Flue analyzer indication resulted in flaring. Portions of the unit are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | 1 |

17-20545.67939

Calculation of Number of Days of Violation in Plaintiffs' Exh. 2C

| | Tracking Number | Permit Number(s) of STEERS Report | Start Date & Time | End Date & Time | Duration (hrs) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 132279 | STSC-068026-068026 | 7/26/2011 1:57 | 7/24/2011 9:00 | 1:03 | 57.20 lbs of total 55.00 lbs are authorized under Permit #8452/PSD-TX-802M2 | Baytown Olefins Plant, ROP-X | FLAREX | FLAREX | NOX | 11.71 | 1,690.75 | False analyzer indication resulted in flaring. Portions of the unit emissions are authorized by Permit #8452/PSD-TX-902M2. The event has ended. | 1 |
| | | | 7/23/2011 1:57 | 7/24/2011 9:00 | 1:03 | 277.442 lbs of total 998.032 lbs are authorized under Permit #8452/PSD-TX-902M2 | Baytown Olefins Plant, ROP-X | FLAREX | FLAREX | TOTAL VOC: Acetylene, 1,3-Butadiene, Butene Nz, Ethylene (granule), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene, VOCs | 198.69 | 708.46 | False analyzer indication resulted in flaring. Portions of the unit emissions are authorized by Permit #8452/PSD-TX-902M2. The event has ended. | 1 |
| | 152249 | STSC-068021-068025 | 7/26/2011 4:00 | 7/26/2011 8:45 | 3:53 | 827 lbs of 2250 lbs are authorized by Permit #8452/PSD-TX-902M2 | Cold Ends | Primary Flare | FLARE1 | Carbon Monoxide | 1,595.00 | 6,927.59 | Transmitter failure resulted in offspec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. | 1 |
| | | | 7/26/2011 4:00 | 7/26/2011 8:45 | 3:53 | 205 lbs of 575 lbs are authorized by Permit #8452/PSD-TX-902M2 | Cold Ends | Primary Flare | FLARE1 | NOX | 159.00 | 1,630.75 | Transmitter failure resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. | 1 |
| | | | 7/26/2011 4:00 | 7/26/2011 8:45 | 3:53 | 1,423.4 lbs of 3,565.8 lbs are authorized by Permit #8452/PSD-TX-902M2 | Cold Ends | Primary Flare | FLARE1 | TOTAL VOC: Butene, Cis-2-butene, Ethylene (granule), Isobutene, Isobutylene, Propane, Propylene, Trans-2-Butene | 1,079.00 | 709.46 | Transmitter failure resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. | 1 |
| | | | 7/26/2011 4:30 | 7/26/2011 8:45 | 3:58 | 218.6 lbs of 1463 lbs are authorized by Permit #8452/PSD-TX-902M2 | Cool Ends | Secondary Flare | FLARE2 | Carbon Monoxide | 3,464.00 | 6,927.59 | Transmitter failure resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. | already counted |
| | | | 7/26/2011 4:30 | 7/26/2011 8:45 | 3:55 | 35.7 lbs of 205 lbs are authorized by Permit #8452/PSD-TX-902M2 | Cold Ends | Secondary Flare | FLARE2 | NOX | 153.00 | 1,630.75 | Transmitter failure resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. | already counted |
| | | | 7/26/2011 4:00 | 7/26/2011 8:45 | 3:58 | 558.904 lbs of 1,581.224 lbs are authorized by permit #8452/PSD-TX-902M2 | Cold Ends | Secondary Flare | FLARE2 | TOTAL VOC: Butene, Ethylene (granule), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene | 867.42 | 709.46 | Transmitter failure resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. | already counted |
| | 158620 | STSC-068004-068028 | 9/30/2011 8:05 | 9/29/2011 9:40 | 1:20 | Not specifically authorized | Propylene Recovery Unit (PRU) | Hole in pipe on TD-010A safety valve bypass | | TOTAL VOC: 1-Butene, Ethylene (granule), Isobutane, Butene N, Cis-2-butene, Ethylene (granule), Isobutane, Isobutylene, Propane, Propylene, Trans-2-butene | 1,085.00 | 0.00 | Emissions from hole in pipe near safety valve bypass on TD-010A. | 1 |
| | 162894 | STSC-068028-068027 | 12/17/2011 0:01 | 12/17/2011 13:01 | 13:00 | 5595.6 lbs of total 5546.5 lbs are authorized under Permit #8452/PSD-TX-902M2 | Baytown Olefins Plant Cold Ends (BOP-CE) | Primary Flare | Flare1 | Carbon Monoxide | 4,499.00 | 6,927.59 | Unexpected contamination resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. This event has ended. | 1 |
| | | | 12/17/2011 0:01 | 12/17/2011 13:00 | 13:00 | 377.4 lbs of total 782.7 lbs are authorized under Permit #8452/PSD-TX-902M2 | Baytown Olefins Plant Cold Ends (BOP-CE) | Primary Flare | Flare1 | Nitrogen Oxides | 405.90 | 1,630.75 | Unexpected contamination resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. This event has ended. | 1 |
| | | | 12/17/2011 0:01 | 12/17/2011 13:00 | 13:00 | 2,900.05 lbs of total 5,126.02 lbs are authorized under Permit #8452/PSD-TX-902M2 | Baytown Olefins Plant Cold Ends (BOP-CE) | Primary Flare | Flare1 | TOTAL VOC: Acetylene, Ethylene (granule), Propane, Propylene | 2,717.11 | 709.46 | Unexpected contamination resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. This event has ended. | 1 |
| | | | 12/17/2011 0:01 | 12/17/2011 13:01 | 13:00 | 722.3 lbs of total 4199 lbs are authorized under Permit #8452/PSD-TX-902M2 | Baytown Olefins Plant Cold Ends (BOP-CE) | Secondary Flare | Flare 2 | Carbon Monoxide | 3,444.00 | 6,927.59 | Unexpected contamination resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. This event has ended. | already counted |
| | | | 12/17/2011 0:01 | 12/17/2011 13:01 | 13:00 | 27.61 lbs of total 577.2 lbs are authorized under Permit #8452/PSD-TX-902M2 | Baytown Olefins Plant Cold Ends (BOP-CE) | Secondary Flare | Flare 2 | Nitrogen Oxides | 394.2 | 1630.75 | Unexpected contamination resulted in off-spec product and subsequent flaring. Portions of the unit emissions are authorized by permit #8452/PSD-TX-902M2. This event has ended. | already counted |

17-20545.67940

alculation of Number of Days of Violation in Plaintiffs' Exhil    .C

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tracking Number | Dates Number(s) of STEERS Report | Start Date & Time | End Date & Time | Duration (hrs:m) | Authorization | Unit | Emission Point | EPN | Contaminant | Reported Amount Released (lbs) | Reported Emission Limit (lbs/hr) | Cause | Number of Days of Violation |
| 363 | 149899 | | 4/14/2012 12:45 | 4/14/2012 23:59 | 12:14 | 1,046.82 lbs of total 1,161.74 lbs are authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Secondary Flare | FLARE2 | TOTAL VOC: 1,3-Butadiene, Di-2-butene, Trans-2-butene, Benzene, Butene N-, Ethylene (gaseous), Isobutylene, Propane, Propylene, VOCs | 701.12 | 705.48 | Flaring during plant startup. Portions the unit emissions are authorized under Permit #3452/PSD-TX-302M2. The event has ended. | already counted |
| 364 | | | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | Not specifically authorized | Cold Ends Unit | Hidden crack in piping | | Ethylene (gaseous) | 26.80 | 0.00 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | 1 |
| 365 | | | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | 667.29 lbs of 2450.05 lbs are authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Primary Flare | FLARE 1 | Carbon Monoxide | 2,508.72 | 7,027.36 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | 1 |
| 366 | | | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | 113.73 lbs of 303.18 lbs are authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Primary Flare | FLARE 1 | NOX | 254.35 | 1,830.15 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | 1 |
| 367 | | ETRC 070902 - 072668 | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | 643.38 lbs of 2,407.73 lbs are authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Primary Flare | FLARE 1 | TOTAL VOC: 1,3-Butadiene, Acetylene, Butene N-, Cis-2-butene, Ethylene (gaseous), Isobutane, Isobutene, Propane, Propylene, Trans-2-butene, VOCs | 1,585.44 | 709.46 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | 1 |
| 368 | | | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | Portions may be authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Pump NP-06 | NOTFLFG | TOTAL VOC: Ethylene (gaseous) | 814.37 | 709.46 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | already counted |
| 369 | | | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | 321.50 lbs of 4535.32 lbs are authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Secondary Flare | FLARE 2 | Carbon Monoxide | 4,545.72 | 6,427.58 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | already counted |
| 370 | | | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | 145.06 lbs of 504.35 lbs are authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Secondary Flare | FLARE 2 | NOX | 445.20 | 1,630.25 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | already counted |
| 371 | | | 5/22/2012 21:35 | 5/23/2012 3:35 | 6:00 | 1,552.03 lbs of 4212.44 lbs are authorized under Permit #3452/PSD-TX-302M2 | Cold Ends Unit | Secondary Flare | FLARE 2 | TOTAL VOC: 1,3-Butadiene, Acetylene, Ethylene (gaseous), Isobutane, Propane, Propylene, VOCs | 1,790.41 | 709.48 | Pump seal failure resulted in emissions to atmosphere and subsequent flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. The event has ended. | already counted |
| 372 | 143677 | 1350.692628 - 072688 | 6/19/2012 8:00 | 6/19/2012 12:00 | 4:00 | 12-65.43 lbs of 7404.45 total lbs are authorized under Permit #3452/PSD-TX-302M2 | Baytown Olefins Plant | Flare X | FLAREX | Carbon Monoxide | 6,204.87 | 6,627.58 | Flare shutdown from electrical surge resulted in flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. This event has ended. | 1 |
| 373 | | | 6/19/2012 8:00 | 6/19/2012 12:00 | 4:00 | 321.77 lbs of 1036.88 total lbs are authorized under Permit #3452/PSD-TX-302M2 | Baytown Olefins Plant | Flare X | FLAREX | NOX | 694.44 | 1,630.75 | Flare shutdown from electrical surge resulted in flaring. Portions of the unit emissions are authorized by permit #3452/PSD-TX-302M2. This event has ended. | 1 |
| 374 | | | 6/19/2012 8:00 | 6/19/2012 12:00 | 8:00 | 3,397.183 of 6,366.56 total lbs are authorized under Permit #3452/PSD-TX-302M2 | Baytown Olefins Plant | Flare X | FLAREX | TOTAL VOC: Acetylene, 1,3-Butadiene, Butene N-, Cis-2-butene, Ethylene (gaseous), Isobutene, Isobutylene, Propene N-, Propylene, Trans-2-butene, VOCs | 4,395.87 | 709.46 | Flare shutdown from electrical surge resulted in flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. This event has ended. | 1 |
| 375 | | | 6/22/2012 9:00 | 6/22/2012 12:00 | 3:00 | 127.45 lbs of total 664.37 lbs are authorized under Permit #3452/PSD-TX-302M2 | Baytown Olefins Plant | Flare X | FLAREX | Carbon Monoxide | 516.44 | 6,627.58 | During planned startup, a compressor shutdown resulted in flaring. Portions of the unit emissions are authorized by Permit #3452/PSD-TX-302M2. This event has ended. | 1 |

33

17-20545.67942

Calculation of Number of Days of Violation in Plaintiffs' Exhibit 3

| STEERS Tracking Number | Bates Number(s) of STEERS Report | Reporting Period; Deviation # | Bates Number in Deviation Report | Start Date & Time* | Duration (Hours) | Unit(s) | Emission Point(s) | EPN(s) | Contaminant(s) | Amount Released (lbs) | Cause Reported in STEERS | Cause Reported in Deviation Report | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 122984 | ETSC 000441 - 000443 | 12/17/08- 6/16/09; Deviation #1 | EOMCS 00001957 | 4/19/09 5:00 | 18.00; This event is identified as an exceedance of the HRVOC limit for 7 hrs in the deviation report. | Cold Ends Unit, Process Gas Compressor | Primary Flare, Secondary Flare | Flare 1, Flare 2 | 1,3-Butadiene, Cis-2-butene, Ethylene (gaseous), Isobutylene, Trans-2-butene, Propylene (Propene) | 15,441.21 | Process gas compressor tripped sending feed streams to the flare system. In part flaring events related to this incident, opacity was reported. During this event (04/19/09) an official opacity reading could not be completed in the absence of sunlight. Portions of this unit are authorized under PAL permit 3452. Event has ended. | During a plant upset, flaring from the primary (PRIMFL) and Secondary (SECFL) flares exceeded the PAL hourly VOC limit for 11 hours and the HRVOC limit for 7 hours. | 1 |
| 134225 | ETSC 000423 - 000426 | 12/17/09- 6/16/10; Deviation #3 | EOMCS 00001999 | 1/3/10 8:00 | 11.08; This event is identified as an exceedance of the HRVOC limit for 2 hrs in the deviation report. | BOP Cold Ends | BOPX Flare, Primary Flare, Tank XZTK02, Valve TP-07A | FLAREX, PRIMFL, XZTK02, TP-07A | 1,2-Butadiene, Cis-2-butene, Ethylene (gaseous), Isobutylene, Trans-2-butene, Propylene (Propene) | 7,136.37 | Flaring at FLARE1 due to a line restriction at BO-IBN, flaring at FLAREX due to a valve failure, tank overfill of XZTK02 due to a level gauge malfunction, and valve leak on TP-07A due to a line restriction. All caused by inclement weather. Portions of the Olefins plant are authorized under PAL permit 3452. | Extreme freezing weather conditions resulted in flaring with opacity for more than 5 minutes in two consecutive hours and site-wide emissions over the permit VOC hourly limit for six hours and over the HRVOC limit for two hours. Temperatures below freezing caused a level instrument malfunction on storage tank, XZTK-02, resulting in wastewater outside of the waste management unit. | 1 |
| 150177 | ETSC 000461 - 000465 | 12/17/10- 6/16/11; Deviation #3 | EOMCS 00002027 | 2/2/2011 0:33 | 114.78; This event is identified as an exceedance of the HRVOC limit as an "intermittently" in the deviation report | BOP, BOPX, BOPX Flare, Base BOP, IBN UT101 Rupture Disc, Primary Flare, Secondary Flare | BOPX Flare, Primary Flare, Secondary Flare | FLAREX, Flare 1, Flare 2 | 1,3-Butadiene, Cis-2-butene, Ethylene (gaseous), Isobutylene, Propylene, Trans-2-butene | 22,023.00 (see authorization column of STEERS report) | Flaring during inclement weather due to multiple causes including (1) loss of hydrogen flow to acetylene converters, (2) shutdown of butadiene compressor, (3) freeze-related instrumentation and safety valves, (4) tattle tale on one rupture disk vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment plugging. Portions of unit are authorized by Permit #3452/P50-TX-302M2. | During extreme freezing weather conditions, instrument malfunctions and equipment shutdowns resulted in flaring with opacity for more than 5 minutes in two consecutive hours. Site-wide emissions also intermittently exceeded the PAL hourly VOC limit and the hourly HRVOC limit. | 5 |
| 177835 | ETSC 072508- 072910 | | | 1/8/2012 6:46 | 10.22 | Cold Ends Unit, Process Gas Compressor (LC-02) | Primary Flare, Secondary Flare | FLARE1, FLARE2 | 1,3-Butadiene, Cis-2-Butene, Ethylene (gaseous), Isobutylene, Propylene, Trans-2-Butene | 20,510.30 (see authorization column of STEERS report) | Process gas compressor trip resulted in safe utilization of the flare system. | | 1 |

2

17-20545.69271

Calculation of Number of Days of Violation in Plaintiffs' Exhibit 4

| STEERS Tracking Number | Bates Number of First Page of STEERS Report | Reporting Period; Deviation # | Bates Number in Deviation Report | Start Date & Time | End Date & Time | Duration (Hours) | Unit | EPN | Contaminant | Opacity (%) | Reported Emission Limit (% Opacity) | Plant; Title V Permit # | Cause Reported in STEERS | Cause Reported in Deviation Report | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 115509 | ETSC 000401 | 6/17/08 - 12/15/08; #15 | EOMCS 00001892 | 12/27/08 12:06 | 12/27/08 12:13 | 0.12 | ROP-K Cold Ends | FLAREX | Opacity | 100.00% | 0.00% | Olefins; O-01553 | Equipment began to pressure up as a result of valve control issues. Pressure relieved to the flare. Portions of this unit are authorized under PAL permit # 5452/PSD-TX-302M2. | During unplanned flaring in the ROP-K Oxiesition section, the ROP-X flare (FLAREX) smoked for seven minutes. | 1 |
| 193344 | ETSC 000427 | | | 12/10/09 16:50 | 12/11/09 0:50 | 8.00 | Cold Ends | FLARE1 | Opacity | 25.00% | 0.00% | Olefins; O-01553 | Flaring due to propylene compressor shutdown. Portions of this unit are authorized under PAL permit # 3452 and PSD-TX-302M2. | | 1 |
| | | | | 12/10/09 16:50 | 12/11/09 0:50 | 8.00 | Propylene Compressor, TC-01 | FLARE2 | Opacity | 100.00% | 0.00% | Olefins; O-01553 | | | 1 |
| 134225 | ETSC 000423 | 12/17/09 - 6/16/10; #3 | EOMCS 00001989 | 1/9/10 8:00 | 1/9/10 19:05 | 11.08 | ROP Cold Ends | FLAREX | Opacity | 30.00% | 0.00% | Olefins; O-01553 | Flaring at FLAREX due to a line restriction at 401-004, flaring at FLAREX due to a valve failure, tank overfill of KZTR02 due to a level gauge malfunction, and valve leak on TP-07A due to a line restriction. All caused by inclement weather. Portions of the Olefins Plant are authorized under PAL permit 3452. | Extreme freezing weather conditions resulted in flaring with opacity for more than 5 minutes in two consecutive hours and site-wide emissions over the permit VOC hourly limit for six hours and over the reVOC limit for two hours. Temperatures below freezing caused a level instrument malfunction on storage tank, KZTR-02, resulting in wastewater outside of the waste management unit. | 1 |
| Deviation Report Only for EPN's PRIMPL and MCPL | | | | 1/9/10 8:00 | 1/9/10 19:05 | 11.05 | | PRIMPL | 111.111 (a)(4)(A) [Opacity] | | | | | | 1 |
| | | | | 1/9/10 8:00 | 1/9/10 19:05 | 11.08 | | MCPL | 111.111 (a)(4)(A) [Opacity] | | | | | | 1 |
| 193721 | ETSC 000430 | 12/17/09 - 6/16/10; #5 | EOMCS 00002001 | 2/10/10 10:54 | 2/10/10 11:11 | 0.28 | ROP-K | FLAREX | Opacity | 51.00% | 0.00% | Olefins; O-01553 | Compressor turbine 3VCY-03 tripped on low control oil pressure. Portions of this unit are authorized by Permit 3452/PSD-TX-302M2. Event duration is estimated. | ROP-K Process Gas Compressor auto shutdown on low control oil pressure, resulting in unit shutdown and flaring. Flaring resulted in opacity for more than 5 minutes in a 2 hour consecutive period. | 1 |
| | | | | 2/2/2011 0:13 | 2/6/2011 19:09 | 114.78; this event is identified as "flaring with opacity for more than 5 minutes in two consecutive hours" in the deviation report | FLAREX | Opacity | 100.00% | 0.00% | Olefins; O-01553 | | Flaring during inclement weather due to multiple causes including (1) loss | 1 |

4

17-20545.69279

alculation of Number of Days of Violation in Plaintiffs' Exhibi.

| | STEERS Tracking Number | Bates Number of First Page of STEERS Report | Reporting Period; Deviation # | Bates Number in Deviation Report | Start Date & Time | End Date & Time | Duration (Hours) | Unit | EPN | Contaminant | Opacity (%) | Reported Emission Limit (% Opacity) | Plant; Title V Permit # | Cause Reported in STEERS | Cause Reported in Deviation Report | Number of Days of Violation |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P |
| 37 | 158177 | ETSC 000481 | 12/17/10-1/16/11; #1 | EOMCS 00002027 | 2/2/2011 0:13 | 2/6/2011 19:00 | 114.78; This event is identified as "flaring with opacity for more than 5 minutes in two consecutive hours" in the deviation report | FLARE1 | Opacity | 100.00% | 0.50% | Olefins; CI-01553 | In hydrogen flow to atmosphere connectors, (2) shutdown of benzene comparator, (3) instrument related instrumentation and safety valves, (4) bottle relay on line options that vented to atmosphere, (5) low steam pressure and steam availability and (6) equipment upsets. Portions of unit are authorized by Permit #8452/PSD-TX-002M2. | During extreme freezing weather conditions, instrument malfunctions and equipment shutdowns resulted in flaring with opacity for more than 5 minutes in two consecutive hours. Site-wide emissions also intermittently exceeded the PAL hourly VOC limit and the hourly HRVOC limit. | 1 |
| 38 | | | | | 2/2/2011 0:13 | 2/6/2011 19:00 | 114.78; This event is identified as "flaring with opacity for more than 6 minutes in two consecutive hours" in the deviation report | FLARE2 | Opacity | 100.00% | 0.00% | Olefins; CI-01553 | | | 1 |
| 39 | 167187 | ETSC 044638 | 12/17/13-6/16/12; #1 | ETSC 072807 | 4/14/12 16:00 | 4/14/12 19:09 | 3.38 | Cold Ends Unit | FLARE2 | Opacity | 50.00% | 0.30 | Olefins; CI-01553 | Flaring during plant startup. Portions of the unit emissions are authorized under Permit #8452/PSD-TX-001M2. | Flaring during unit start up. | 1 |
| 40 | 170147 | ETSC 072887 | 8/17/12-11/16/12; #2 | ETSC 072986 | 8/21/12 9:00 | 8/22/11 23:07 | 1.00 | Baytown Olefins Plant | FLARE3 | Opacity | 100.00% | 0.00% | Olefins; CI-01553 | During planned startup, a compressor shutdown resulted in flaring. Portions of the unit emissions are authorized by Permit #8452/PSD-TX-002M2. This event has ended. | During planned startup, a compressor shutdown resulted in flaring. | 1 |
| 41 | 177865 | ETSC 072908 | 12/17/12-3/31/13; #3 | EOMCS 00031391 | 1/8/2013 9:00 | 1/8/2013 17:50 | 11.20 | Process Gas Compressor LLC (D) | FLARE2 | Opacity | 80.00% | 0.00% | Olefins; CI-01553 | Process gas compressor trip resulted in safe utilization of the flare system. | Process gas compressor trip resulted in safe utilization of the flare system. | 1 |
| 42 | | | | | | | | CHEMICAL PLANT | | | | | | | | |
| 43 | | | 4/13/06-10/12/06; #7 | EOMCS 00002236 | 7/11/06 14:38 | 7/11/06 14:44 | 0.10 | Olefins and Aromatics | FS24 | 113.111(a)(4)(A) (Visible emissions from Gas Flare) | | | Chemical; CI-01778 | | While sending Hydrocarbons to the flare, the opacity limit was exceeded. | 1 |
| 44 | 127939 | ETSC 000134 | 4/1/09-9/30/09; #2 | EOMCS 00002159 | 8/6/09 14:54 | 8/6/09 16:35 | 1.88 | Baytown Chemical Plant | F512 | Opacity | 100.00% | 0.00% | Chemical; CI-02369 | Power surge and subsequent malfunction of operations led to controlled social shutdown and startup of various units. Portions of these units are controlled. | Observed opacity resulting from a power disruption and shutdown of various equipment at the Baytown Chemical Plant. | 1 |
| 45 | | | | | 8/6/09 14:54 | 8/6/09 16:35 | 1.68 | Baytown Chemical Plant | F523 | Opacity | 100.00% | 0.00% | | | 1 |
| 46 | | | 4/1/09-9/30/09; #7 | EOMCS 00002425 | 8/6/09 14:54 | 8/6/09 16:35 | 1.68 | Baytown Chemical Plant | F524 | Opacity | 100.00% | 0.00% | Chemical; CI-01278 | under Permit #20311, 4600, and 496435. | Observed opacity resulting from a power disruption and shutdown of various equipment at the Baytown Chemical Plant. | 1 |
| 47 | | | | | 8/6/09 14:54 | 8/6/09 16:35 | 1.68 | Baytown Chemical Plant | F68 | Opacity | 100.00% | 0.00% | | | 1 |

5

17-20545.69280

# TAB 8

Excerpts from Closing Arguments
(ROA.18929, 18931, 19011-12, 19045-47)

Case: 17-20545    Document: 44-1    Page: 199    Date Filed: 01/12/2018
Case 4:10-cv-04969   Document 213-1   Filed on 04/22/14 in TXSD   Page 1 of 160

13-1

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
 2                     HOUSTON DIVISION

 3   ENVIRONMENT TEXAS CITIZEN    )
     LOBBY, INC., and SIERRA      )
 4   CLUB,                        )
                                  )
 5          Plaintiffs,           )        No. 4-10-cv-4969
                                  )
 6   vs.                          )
                                  )        Houston, Texas
 7   EXXONMOBIL CORPORATION and   )        February 28, 2014
     EXXONMOBIL CHEMICAL          )           1:42 p.m.
 8   COMPANY,                     )
              Defendants.         )
 9
            TRANSCRIPT OF PROCEEDINGS - CLOSING ARGUMENTS
10             BEFORE THE HONORABLE DAVID HITTNER
                 UNITED STATES DISTRICT JUDGE
11
     For the Plaintiffs:      David A. Nicholas
12                            20 Whitney Road,
                              Newton, Massachusetts 02460
13                            617.964.1548
                              Dnicholas@verizon.net
14
                           HILDER & ASSOCIATES
15                         Philip Harlan Hilder
                           William B. Graham
16                         819 Lovett Blvd.
                           Houston, Texas  77006-3905
17                         Phone:  713.655.9111
                           Fax:  713.655.9112
18                         Philip@hilderlaw.com
                           William@hilderlaw.com
19
                       NATIONAL ENVIRONMENTAL LAW CENTER
20                         Joshua R. Kratka
                           Heather Govern
21                         44 Winter St.
                           4th Floor
22                         Boston, Massachusetts  02108
                           Phone:  617.747.4333
23                         Fax:  617.292.8057
                           Heather.govern@verizon.net
24                         Josh.kratka@verizon.net

25
```

1                              INDEX

2    ENVIRONMENT TEXAS CITIZEN LOBBY, INC., et al., Plaintiffs vs.

3             EXXONMOBIL CORPORATION, et al. Defendants.

4                           02/28/2014

5                                                          <u>Page</u>

6    CLOSING ARGUMENTS ON BEHALF OF THE PLAINTIFFS ...... 8
          BY MR. NICHOLAS................................ 8
7                                                          46
     CLOSING ARGUMENTS ON BEHALF OF THE PLAINTIFFS ......
8         BY MR. KRATKA................................. 46
                                                          79
9    CLOSING ARGUMENTS ON BEHALF OF THE DEFENDANTS.......
          BY MR. NICHOLS................................ 79
10                                                         98
     CLOSING ARGUMENTS ON BEHALF OF THE DEFENDANTS.......
11        BY MR. RICE................................... 98
                                                          117
12   CLOSING ARGUMENTS ON BEHALF OF THE DEFENDANTS.......
          BY MR. NICHOLS................................ 117

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 17-20545   Document: 44-1   Page: 201   Date Filed: 01/12/2018
Case 4:10-cv-04969   Document 218-1   Filed in TXSD on 04/27/14   Page 9 of 160

13-83

 1  events that TCEQ in its discretion says do not need to be

 2  reported within 24 hours, and you have reportable events.

 3        So the gotcha theory holds that no matter what

 4  category an event falls into, anytime a man or a woman at the

 5  Baytown complex makes a record or makes a report concerning

 6  any event that happens at the Baytown complex, that a citizen

 7  suit can be brought, maximum penalties can be sought, and we

 8  gotcha.

 9        Your Honor, the gotcha theory in their view

10  works regardless of whether an event even involves emissions.

11  The gotcha theory holds whether an event such as a reportable

12  event involves an amount of emissions that even conceivably

13  could ever leave the confines of the Baytown complex.

14        And, Your Honor, the gotcha theory holds that a

15  citizen suit can be brought and pursued with penalties,

16  maximum penalties achieved, if there is no evidence that any

17  of those events adversely affected one of the members.

18        THE COURT:  Right.  I'm sure you'll get to it, but

19  some of the cases -- the cases that were cited by the

20  plaintiffs say it's extremely wide, you don't have to show

21  that much damage, a trifle of effectiveness on an individual,

22  so I'm sure you'll get to that.

23        MR. NICHOLS:  Yes, sir.  And, more particularly, I

24  don't want to steal Mr. Rice's thunder.  He's going to cover

25  the standing issues.

1          THE COURT:  Okay.  Right.  Fair enough.

2          MR. NICHOLS:  But the most extreme, Your Honor, the

3    plaintiffs' position on the gotcha theory taken to the most

4    extreme would completely eviscerate the standing requirements

5    of the United States Constitution.

6          THE COURT:  I'll wait till Mr. Rice gets up.

7          MR. NICHOLS:  Now, Your Honor, there's an obvious

8    attraction of the gotcha model for environmental groups.  I

9    think you frankly heard reference to that in the closing

10   arguments today.  The attraction of the gotcha theory is that

11   basically we -- as environmental groups, we don't have to do

12   any work.  We will take the records and reports that are

13   filed pursuant to state regulatory requirements, we'll put

14   those in charts, we will send a notice to the company to say

15   that we're going to sue over all these violations without

16   doing any work to evaluate the individual seriousness of any

17   of those events, the individual facts and circumstances

18   behind any of those events, and, furthermore, we're going to

19   file a lawsuit over that, and, furthermore, we're going to

20   send you a notice telling you we're going to sue you,

21   regardless of whether at that time we have anyone, any one of

22   our members who has come forward to complain about what we as

23   lawyers seek to sue over.

24          What's the attraction of the gotcha model in

25   this way?

Case: 17-20545    Document: 44-1    Page: 203    Date Filed: 01/12/2018
Case 4:10-cv-04969    Document 113-1    Filed in TXSD on 04/22/16    Page 14 of 18    160

13-117

```
 1   this case came about is not what Congress intended for
 2   citizens suits.
 3        THE COURT:  You have about 33 minutes, Mr. Nichols.
 4        CLOSING ARGUMENTS ON BEHALF OF THE DEFENDANTS
 5   BY MR. NICHOLS:
 6        MR. NICHOLS:  Yes, sir.  So I'm going to pick up
 7   where Mr. Rice left off and pick up with an argument that you
 8   heard the plaintiffs' counsel make earlier today, which is
 9   they're fond of saying that you do not need to approach
10   standing on a violation-by-violation basis.
11             Your Honor, we'll submit additional briefing
12   after this argument, but I believe that in that briefing, we
13   will demonstrate how the types of cases they rely on for that
14   principle do not apply to this situation.  Why do I say that?
15        THE COURT:  You can also address that in your
16   findings of fact and conclusions of law.
17        MR. NICHOLS:  Yes, sir, I will.  But, in general,
18   they are fond of citing a case called Cedar Point.  You saw
19   that on their slides.  Cedar Point was a Clean Water Act case
20   that involved one discharge point into an identified body of
21   water, Galveston Bay, of material without a permit.
22             And the Court held in that case that there was
23   sufficient showing that folks who actually use that body of
24   water could sustain the type of trifle of harm that the Court
25   has referred to.
```

 1          In this case, Judge, think about the difference
 2    between that fact situation and ours.  In this fact
 3    situation, you've got everything that ranges in the gamut of
 4    events over eight years that I discussed earlier, everything
 5    from the failure to inspect a drain to a small recordable
 6    event two and a half miles away from where Mr. Cottar lives
 7    to the larger events that are of the type that Mr. Cottar
 8    testified to, but I do think, Your Honor, that what the 5th
 9    Circuit has said, vital to the Court's decision was the fact
10    that all of the group members actually used the specific area
11    of Galveston Bay subject to the discharge for recreational
12    activity.
13          So in that situation, with one discharge point,
14    it may not be necessarily to do a violation-by-violation
15    standing analysis, but in this case, Your Honor, where you
16    have some events that have no emissions, you have some events
17    that, if modeled, would never show pollutants going outside
18    the fence line, and you have other events that relate to a
19    complex as broad and as vast as the Baytown complex, the type
20    of analysis under a case like Cedar Point just does not
21    apply.
22          So, Judge, to answer your earlier question,
23    even if the plaintiffs could demonstrate standing with
24    respect to a 2012 event that came some 18 months after the
25    plaintiffs filed this lawsuit, how in the world can you use

 1  that fact to claim standing for a series of events that go

 2  back to October of 2005 and that involve the range of

 3  activities that the plaintiffs are suing over?

 4              And that, Your Honor, is the fundamental

 5  problem with the gotcha theory.  This case would be

 6  different, this case would be more like a Cedar Point case,

 7  if you had an individual person like Mr. Shae Cottar who

 8  said, "I lived across the street from this particular flare;

 9  there were repeat flare events at that flare; I was

10  repeatedly exposed to pollutants from that flare," but that's

11  not the way the plaintiffs want to frame their case.

12              That is the weakness in the gotcha theory.

13              Now, Your Honor, I want to go back to the

14  bases.

15              And go to second base, which is the issue of

16  violation.

17              The first thing I want to make sure is clear

18  is, with respect to the stipulated tables, Your Honor, that

19  are in evidence.  The stipulated tables are not stipulations

20  as to violations.

21              They are stipulations as to the -- as to the

22  records and the information that is contained within the

23  records.

24              Why do I make that distinction?

25              It's important for various parts of the

# TAB 9

DX222, TCEQ Agreed Order dated February 22, 2012
(ROA.44835)

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY



| | | |
|---|---|---|
| **IN THE MATTER OF AN ENFORCEMENT ACTION CONCERNING EXXON MOBIL CORPORATION; RN102579307; RN102212925; RN102574803** | §<br>§<br>§<br>§<br>§<br>§ | **BEFORE THE**<br><br>**TEXAS COMMISSION ON**<br><br>**ENVIRONMENTAL QUALITY** |

## AGREED ORDER

### DOCKET NO. 2011-2336-AIR-E

At its **FEB 2 2 2012** _____ agenda meeting, the Texas Commission on Environmental Quality ("Commission" or "TCEQ") considered this agreement of the parties (the "Agreed Order") regarding Exxon Mobil Corporation ("Respondent" or "ExxonMobil") under the authority of TEX. WATER CODE ch. 7 and TEX. HEALTH & SAFETY CODE ch. 382. The Executive Director of the TCEQ and Respondent presented this Agreed Order to the Commission.

Respondent understands that it has certain procedural rights at certain points in the enforcement process, including, but not limited to, the right to formal notice of violations, notice of an evidentiary hearing, the right to an evidentiary hearing, and a right to appeal. By entering into this Agreed Order, Respondent agrees to waive all notice and procedural rights.

It is further understood and agreed that this Agreed Order represents the complete and fully-integrated agreement of the parties. The duties and responsibilities imposed by this Agreed Order are binding upon Respondent.

The Commission makes the following Findings of Fact and Conclusions of Law:

### I.    FINDINGS OF FACT

1.  Respondent owns and operates the Baytown Refinery (RN102579307) at 2800 Decker Drive in Baytown, Harris County, Texas; the Baytown Olefins Plant (RN102212925) at 3525 Decker Drive in Baytown, Harris County, Texas; and the Baytown Chemical Plant (RN102574803) at 5000 Bayway Drive in Baytown, Harris County (collectively referred to as the "Baytown Complex"). The Complex consists of one or more sources as defined in TEX. HEALTH & SAFETY CODE § 382.003(12). Respondent must authorize the construction or modification of facilities at the Baytown Complex and comply with New Source Review Permits issued under 30 TEX. ADMIN. CODE Chapters 106 and 116 and the Texas Clean Air Act. Respondent must operate in compliance with Federal Operating Permits issued by the Executive Director under 30 TEX. ADMIN. CODE Chapter 122.

2.  In accordance with the federally enforceable State Implementation Plan (Texas SIP), the TCEQ regulates the unauthorized emissions that result from emissions events and maintenance, startup and shutdown ("MSS") activities by requiring maintenance of records and reporting of emissions events and MSS activities pursuant to the Texas



Defendants'
Exhibit

**DX222**

H-10-4969

17-20545.44835
EOMCS00066893

Clean Air Act.   Emissions events and MSS activities, other than planned MSS activities, are not subject to permitting under 30 TEX. ADMIN. CODE Chapters 106 or 116, and are regulated under 30 TEX. ADMIN. CODE Chapter 101 and TEX. HEALTH & SAFETY CODE §§ 382.0215, 382.0216 and 382.085.

3.   ExxonMobil submitted applications to authorize the emissions from planned MSS activities at the Baytown Refinery and Baytown Chemical Plant in 2007 and to authorize the emissions from planned MSS activities at the Baytown Olefins Plant in 2008.   The TCEQ issued and/or amended NSR Permit(s) 18287/PAL7, 20211/PAL16 and 3452 authorizing the emissions from planned MSS activities at the Baytown Complex under 30 TEX. ADMIN. CODE Chapter 116 on June 3, 2010, June 16, 2011, and May 16, 2011, respectively.

4.   As soon as practicable, but not later than 24 hours after the discovery of an emissions event, the owner or operator of a regulated entity must determine if the event is a reportable emissions event and, if the event is reportable, notify the TCEQ.  30 TEX. ADMIN. CODE § 101.201(a).  The owner or operator must also create a record of all reportable and non-reportable emissions events as soon as practicable, but no later than two weeks after the end of an emissions event.   30 TEX. ADMIN. CODE § 101.201(b).  The reports and records shall include sufficient information to inform the TCEQ's response, including the event cause and the actions taken to correct the event and minimize the emissions.  30 TEX. ADMIN. CODE § 101.201(b)(1), (2).

5.   The owner or operator of a regulated entity conducting a scheduled MSS activity must notify the TCEQ at least 10 days prior to any scheduled MSS activity that is expected to cause an unauthorized emission that equals or exceeds a reportable quantity in any 24-hour period.  30 TEX. ADMIN. CODE § 101.211(a).  The owner or operator must also create a record of all scheduled MSS activities with unauthorized emissions as soon as practicable, but no later than two weeks after the end of an emissions event.  30 TEX. ADMIN. CODE § 101.211(b).   The reports and records shall include sufficient information, including the actions taken to correct the event and minimize the emissions.  30 TEX. ADMIN. CODE § 101.211(b)(1), (2).

6.   In accordance with TEX. HEALTH & SAFETY CODE § 382.0216(b) and 30 TEX. ADMIN. CODE § 101.222(a), the TCEQ has established criteria for determining when emissions events are excessive.  Excessive emissions events are subject to the requirements of 30 TEX. ADMIN. CODE § 101.223, *Actions to Reduce Excessive Emissions*.   If an event is determined to be excessive, the TCEQ requires an owner or operator to take action to reduce emissions and either file a corrective action plan (CAP) or, if the emissions are sufficiently frequent, quantifiable, and predictable, in which case the owner or operator may file a letter of intent to obtain authorization from the commission for emissions from such events, in lieu of a CAP. 30 TEX. ADMIN. CODE § 101.223.  An enforcement action is brought and penalties are assessed to resolve the event.

7.   If an event is determined not to be an excessive emissions event, the TCEQ evaluates the owner or operator under established criteria for determining if an emissions event or unplanned MSS activity qualifies for an affirmative defense to TCEQ enforcement. 30 TEX. ADMIN. CODE § 101.222(b) and (c).

8.   ExxonMobil has emitted air contaminants resulting from emissions events and MSS activities in the course of its operations.   The TCEQ has investigated and taken

Case 4:10-cv-04969  Document 255-1336  Filed in TXSD on 03/11/15  Page 3 of 18

**Exxon Mobil Corporation**
**TCEQ Docket No. 2011-2336-AIR-E**
**Page 3**

appropriate enforcement to resolve violations in accordance with the Texas SIP and agency policy for Baytown Complex emissions events and MSS activities.

9.  The Baytown Complex sources are governed by federal operating permits issued by the Executive Director under 30 TEX. ADMIN. CODE Chapter 122. Under the federal operating permit program, ExxonMobil is required to report "all instances of deviations" in accordance with 30 TEX. ADMIN. CODE § 122.145. For those deviations reported under FOP Nos. O-1229, O-1553, O-2269, O-2270 and O-1278 and reviewed by the TCEQ, the TCEQ has taken appropriate enforcement to resolve violations in accordance with agency policy.

10. During a record review conducted from November 7 through November 21, 2011, TCEQ staff documented the release of 42,932.2 pounds ("lbs") of carbon monoxide ("CO"), 5,568.16 lbs of sulfur dioxide ("SO2"), 898.97 lbs of nitrogen oxides ("NOx"), 2.25 lbs of hydrogen sulfide ("H2S"), and 8.9 lbs of volatile organic compounds ("VOC") from Flare Stack 25 and Flare Stack 26 during an emissions event (Incident No. 160475) that began on October 12, 2011, and lasted for 58 hours and 15 minutes. The event occurred as the result of a breakdown of the bottom pump-around circuit on the Flexicoker Fractionator, which caused the temperature in the fractionator to increase, resulting in a release of excess overhead gas from the fractionator to the flare system. The TCEQ has determined that insufficient information was provided by ExxonMobil regarding the cause of the emissions event. The Executive Director (ED) recognizes that ExxonMobil pulled feed from the Flexicoker unit, and through operational troubleshooting, reestablished flow in the bottom circuit of the fractionator and put feed back into the unit by October 15, 2011.

11. During a record review conducted from November 15 through November 29, 2011, TCEQ staff documented the release of 47,710.11 lbs of CO, 93.59 lbs of NOx, 2,594.21 lbs of SO2, 629.76 lbs of VOC, 28.08 lbs of H2S, 60.5 lbs of particulate matter, and 35.83 lbs of ammonia from Flares 3, 4, 5, and 6, and the Fluid Catalytic Cracking Unit 2 Wet Gas Scrubber during an emissions event (Incident No. 161050) that began on October 25, 2011, and lasted one hour and 25 minutes. The event occurred when an isolation switch at a substation failed to achieve a closed circuit, which caused an electrical arc to occur, resulting in the shutdown of the Wet Gas Compressor. The TCEQ has determined that insufficient information was provided by ExxonMobil regarding the cause of the switch failure. The ED recognizes that ExxonMobil upgraded and replaced the isolation switch to prevent recurrence of a same or similar event by October 30, 2011.

12. The annual emissions inventory reports that ExxonMobil has submitted for the Baytown Complex under 30 TEX. ADMIN. CODE § 101.10 reflect a positive trend of reductions in actual emissions, including unauthorized emissions associated with emissions events and scheduled MSS activities, from Baytown Complex. From 2000 to 2010, ExxonMobil has reported a 60 percent reduction in aggregate emissions of VOC, HRVOC, CO, SO$_2$ and NO$_X$ from the Baytown Complex. Over that same time period, reported emissions of VOC from the Baytown Complex have dropped by 44 percent, reported emissions of CO have dropped by 76, and reported emissions of NO$_X$ have dropped by 63 percent.

13. This Agreed Order resolves enforcement for unauthorized emissions from pending emissions events as set forth in Paragraphs 10 and 11; establishes a structure for

EOMCS00066895

Case 4:10-cv-04969   Document 255-1336   Filed in TXSD on 03/11/15   Page 4 of 18

Exxon Mobil Corporation
TCEQ Docket No. 2011-2336-AIR-E
Page 4

stipulated penalties to resolve violations for future reportable emissions events; requires specified emissions reductions; and mandates environmental improvement projects at the Baytown Complex to further reduce emissions, including emissions from emissions events and unplanned MSS activities.

14.  The stipulated penalty structure set forth in this Agreed Order takes into account the factors to be considered in determining the penalty amount, including the nature, circumstances, extent, duration and gravity of the prohibited act, as required under TEX. WATER CODE § 7.053.

15.  For purposes of this Agreed Order, Respondent is responsible for compliance with all terms of this Agreed Order, including payment of stipulated penalties to resolve violations for future reportable emission events occurring at any of the Baytown Complex sources including those owned and operated by any subsidiary of Respondent at the Baytown Complex.

## II.    CONCLUSIONS OF LAW

1.  As evidenced by Finding of Fact No. 1, ExxonMobil is subject to the jurisdiction of the TCEQ pursuant to TEX. HEALTH & SAFETY CODE ch. 382 and TEX. WATER CODE ch. 7 and the rules of the Commission.

2.  As evidenced by Finding of Fact No. 10, ExxonMobil failed to prevent unauthorized emissions, in violation of 30 TEX. ADMIN. CODE §§ 101.20(3), 116.115(b)(2)(F) and (c), and 122.143(4), TEX. HEALTH & SAFETY CODE § 382.085(b), Permit Nos. 18287 and PSDTX730M4, and Federal Operating Permit No. O1229.  Since insufficient information was provided regarding the cause of the emissions event,  ExxonMobil is precluded from asserting the affirmative defense under 30 TEX. ADMIN. CODE § 101.222.

3.  As evidenced by Finding of Fact No. 11, ExxonMobil failed to prevent unauthorized emissions, in violation of 30 TEX. ADMIN. CODE §§ 101.20(3), 116.115(b)(2)(F) and (c), and 122.143(4), TEX. HEALTH & SAFETY CODE § 382.085(b), Permit Nos. 18287 and PSDTX730M4, and Federal Operating Permit No. O1229.     Since insufficient information was provided regarding the cause of the emissions event, ExxonMobil is precluded from asserting the affirmative defense under 30 TEX. ADMIN. CODE § 101.222.

4.  Pursuant to TEX. WATER CODE § 7.051, the Commission has the authority to assess an administrative penalty against ExxonMobil for violations of the Texas Water Code and the Texas Health and Safety Code within the Commission's jurisdiction; for violations of rules adopted under such statutes; or for violations of orders or permits issued under such statutes.

5.  An administrative penalty in the amount of Ninety-Eight Thousand Dollars ($98,000) is justified by facts recited in this Agreed Order, and considered in light of the factors set forth in TEX. WATER CODE § 7.053.  The respondent has paid Forty-Nine Thousand Dollars ($49,000) of the administrative penalty.   Forty-Nine Thousand Dollars ($49,000) shall be conditionally offset by the respondent's completion of a Supplemental Environmental Project (SEP).

17-20545.44838
EOMCS00066896

## III. ORDERING PROVISIONS

**NOW, THEREFORE, THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY ORDERS that:**

1. ExxonMobil is assessed an administrative penalty in the amount of Ninety-Eight Thousand Dollars ($98,000) as set forth in Conclusion of Law No. 5 above, for violations of TCEQ rules and state statutes.  The payment of this administrative penalty and ExxonMobil's compliance with Section III, Paragraph 2 of this Agreed Order and all of the associated terms and conditions set forth in this Agreed Order resolve only the violations set forth by this Agreed Order in this action.  However, the Commission shall not be constrained in any manner from requiring corrective action or penalties for violations that are not raised here.  Administrative penalty payments shall be made payable to "TCEQ" and shall be sent with the notation "Re:  ExxonMobil Corporation, Docket No. 2011-2336-AIR-E" to:

   > Financial Administration Division, Revenues Section
   > Attention:  Cashier's Office, MC 214
   > Texas Commission on Environmental Quality
   > P.O. Box 13088
   > Austin, Texas 78711-3088

2. ExxonMobil shall implement and complete a Supplemental Environmental Project ("SEP") in accordance with TEX. WATER CODE § 7.067.  As set forth in Conclusion of Law No. 5, Forty-Nine Thousand Dollars ($49,000) of the assessed administrative penalty shall be offset with the condition that ExxonMobil implement the SEP defined in Exhibit B, incorporated herein by reference.  ExxonMobil's obligation to pay the conditionally offset portion of the administrative penalty assessed shall be discharged upon final completion of all provisions of the SEP agreement.

3. From the effective date of this Agreed Order until the date of termination of this Agreed Order, ExxonMobil shall be liable to the Commission for stipulated penalties for each emissions event (as defined in 30 TEX. ADMIN. CODE § 101.1 to include upset events and unscheduled MSS activities) at the Baytown Complex during which the quantity of unauthorized emissions, as defined in 30 TEX. ADMIN CODE § 101.1, exceeds the applicable reportable quantity ("RQ"), as defined in 30 TEX. ADMIN. CODE § 101.1, and for each excess opacity event, as defined in 30 TEX. ADMIN. CODE § 101.1, at the Baytown Complex.  The amount of the stipulated penalty for each discrete event shall be as set forth in Exhibit A.  This paragraph does not apply to:

   a. emissions caused by an act of God, war, strike, riot, or other catastrophe as provided for in TEX. WATER CODE § 7.251;

   b. emissions events that qualify as "excessive emissions events" under 30 TEX. ADMIN. CODE § 101.222; or

   c. emissions events that have adversely impacted human health and the environment but which do not otherwise qualify as "excessive emission events" under 30 TEX. ADMIN. CODE § 101.222.

17-20545.44839
EOMCS00066897

Case 4:10-cv-04969   Document 255-1336   Filed in TXSD on 03/11/15   Page 6 of 18

Exxon Mobil Corporation
TCEQ Docket No. 2011-2336-AIR-E
Page 6

4. Paragraph 3 applies, notwithstanding any demonstration of an affirmative defense pursuant to 30 TEX. ADMIN. CODE § 101.222.

5. Emissions and reporting violations to which Paragraph 3 apply shall not

   a. be the subject of a notice of violation; or

   b. be treated as violations under 30 TEX. ADMIN. CODE Chapter 60.

6. Payment of stipulated penalties does not constitute an admission of liability by ExxonMobil.

7. Within 60 days after the end of an event for which stipulated penalties are due, ExxonMobil shall send to TCEQ the stipulated penalties due for that event.  Through advance coordination with the TCEQ SEP Program, fifty percent (50%) of the stipulated penalties may be directed to one or more SEPs listed on the Commission's approved SEP list for the Houston/Galveston/Brazoria (including Chambers County) area.     The stipulated penalties shall be made payable to "TCEQ" with the notation "Re:  ExxonMobil Corporation, Docket No. 2011-2336-AIR-E" and shall be sent by certified mail, return receipt requested to:

> Financial Administration Division, Revenues Section
> Attention:  Cashier's Office, MC 214
> Texas Commission on Environmental Quality
> P.O. Box 13088
> Austin, Texas 78711-3088

8. The Executive Director has the right to renegotiate the stipulated penalty amounts set forth in Exhibit A if the Texas Legislature amends the laws of the State of Texas to increase the maximum penalty that the TCEQ may assess for violations of Chapter 382 of the Texas Health and Safety Code and that statutory increase becomes effective within five (5) years of the effective date of this Agreed Order.  Any increase to the stipulated penalty amounts set forth in Exhibit A shall be no greater than the proportional increase in the statutory maximum penalty that the TCEQ may assess for a violation of Chapter 382 of the Texas Health and Safety Code.  The Executive Director shall provide ExxonMobil with written notice of intent to renegotiate the stipulated penalty amounts set forth in Exhibit A of this Agreed Order.

9. The Executive Director may exclude an emissions event from the stipulated penalty obligation under Paragraph 3 provided the Executive Director gives written notice to ExxonMobil setting forth the basis for such exclusion under Paragraphs 3(b) or 3(c) no later than 90 days after receipt of the transmittal of funds under Paragraph 7 for that emissions event.  ExxonMobil will have 30 days from receipt of the written notice to respond to the notice and provide reasons why such exclusion should not be made. The Executive Director will make a final decision on the exclusion within 60 days of receipt of ExxonMobil's written response.   In the event that the Executive Director decides to exclude an emissions event under this paragraph and ExxonMobil has submitted funds intended as a stipulated penalty payment for that event, the funds will be returned and no payment will be deemed to have been made.  For all events that the Executive Director has excluded from the stipulated penalty provisions of this Agreed Order, the

EOMCS00066898

**Exxon Mobil Corporation**
**TCEQ Docket No. 2011-2336-AIR-E**
**Page 7**

Executive Director may seek all administrative and/or civil enforcement remedies, including injunctive relief, available under the Texas Clean Air Act, Texas Health and Safety Code Chapter 382, and the Texas Water Code with respect to claims arising under or related to that emissions event, and ExxonMobil retains and may assert all defenses applicable and available to it under law or regulation, including retaining the right to legally challenge the Executive Director's decision to exclude the event from the stipulated penalty provisions of this Agreed Order.

10. ExxonMobil will undertake projects, including the Ordered Environmental Improvement Projects described in Paragraph 12, at the Baytown Complex that will reduce VOC emissions, including VOC emissions from emissions events and MSS activities, from Baytown Complex facilities by 126 tons from a baseline emission rate determined using the affected facilities' average emissions (excluding force majeure events) reported in the 2006-2010 Emissions Inventory by the end of the fifth calendar year after the effective date of this Agreed Order. The emissions reductions required by this Agreed Order will occur on the following schedule:

   a. On or before the end of the third calendar year after the effective date of this Agreed Order, VOC emissions reductions of 45 tons.

   b. On or before the end of the fourth calendar year after the effective date of this Agreed Order, VOC emissions reductions of 71 tons.

   c. On or before the end of the fifth calendar year after the effective date of this Agreed Order, VOC emissions reductions of 126 tons.

ExxonMobil estimates that the Ordered Environmental Improvement Projects will achieve corresponding reductions of the following pollutants: Highly Reactive Volatile Organic Compounds (HRVOC), Carbon Monoxide (CO), Sulfur Dioxide ($SO_2$), and Nitrogen Oxides ($NO_x$). As part of each project implemented under Paragraph 12, ExxonMobil will track and report on the corresponding reductions in HRVOC, CO, $SO_2$, and $NO_x$.

Identification of the Baytown Complex facilities that will be used to satisfy this emissions reduction requirement rests solely with ExxonMobil. For purposes of demonstrating compliance with this paragraph, ExxonMobil will calculate VOC emissions, as well as corresponding reductions from pollutants identified above, from the Baytown Complex facilities in a manner that is consistent with the annual emissions inventory required by 30 TEX. ADMIN. CODE § 101.10.

VOC emissions reductions from projects undertaken by ExxonMobil to satisfy this paragraph will not be used to generate emission reduction credits or discrete emission reduction credits under any TCEQ emissions credit trading program.

The emissions reduction projects undertaken pursuant to this Agreed Order do not qualify as a potential voluntary pollution reduction or early compliance program under 30 TEX. ADMIN. CODE Chapter 60.

11. Renegotiation and Early Termination. The Executive Director has the right to renegotiate the terms of this Agreed Order if (1) ExxonMobil (A) has not achieved the interim VOC emissions reduction thresholds established in Paragraph 10 or (B) is not implementing one or more of the Ordered Environmental Improvement Projects in accordance with the project description submitted in accordance with Paragraph 12 or

EOMCS00066899

(2) ExxonMobil elects not to incorporate the Executive Director's requested modifications to ExxonMobil's project descriptions submitted under Paragraph 12. In the event that the Executive Director elects to renegotiate the terms of this Agreed Order, the Executive Director shall provide ExxonMobil with written notice within 45 days of the date that a ground arises under this paragraph. If the Executive Director and ExxonMobil are unable to reach mutual agreement on modified terms of this Agreed Order within 90 days of that notice, then the Executive Director shall have the right to Early Termination of this Agreed Order. If the Executive Director elects to exercise the right of Early Termination, the Executive Director shall then provide ExxonMobil with a written 15-day notice of the termination.

12. Ordered Environmental Improvement Projects. ExxonMobil will implement the following Ordered Environmental Improvement Projects at the Baytown Complex within 5 years of the effective date of this Agreed Order. The Ordered Environmental Improvement Projects will reduce emissions at the Baytown Complex, including emissions from emissions events and MSS activities. ExxonMobil has represented that it would not have committed to the Ordered Environmental Improvement Projects at the Baytown Complex at the time this Agreed Order is executed on the schedule required by this Agreed Order and with a focus on achieving the reductions of emissions absent the requirements of this Agreed Order.

ExxonMobil will, no later than 60 days prior to a project start date listed below, or in cases where the project start predates the effective date of this Agreed Order, no later than 60 days after the effective date of this Agreed Order, submit to the TCEQ a project description that identifies the emission unit(s) and process area(s) involved in the project, describes the new equipment or work practices that will be implemented as part of the project, describes how the new equipment or work practices are designed to prevent and/or reduce emissions from the Baytown Complex, and establishes interim implementation dates for the project. Within 30 days of receiving ExxonMobil's project description, the Executive Director may provide comments and request modifications to the scope or implementation of a project, including project(s) commenced prior to the effective date of this Agreed Order, based on its review of the project description submitted by ExxonMobil. In the event ExxonMobil elects not to incorporate such requested modifications, the Executive Director may exercise the rights identified in Paragraph 11.

a. Plant Automation Venture. Install computer applications to improve real-time monitoring, identification, diagnostics and online guidance/management of operations. The project is intended to provide early identification of potential events and/or instrumentation abnormalities, allowing proactive response.

ExxonMobil shall implement the Plant Automation Venture on or before the following dates:

| | Project Start (no later than) | Project Completion |
|---|---|---|
| Baytown Refinery | June 30, 2012 | December 31, 2014 |
| Baytown Chemical Plant | June 30, 2012 | December 31, 2013 |
| Baytown Olefins Plant | June 30, 2012 | June 30, 2016 |

b. Fuels North Flare System Monitoring/Minimization. Install additional instru-
mentation and develop tools and procedures to more effectively monitor and
troubleshoot the Baytown Refinery Fuels North Flare System ("FNFS").
Additional instrumentation, including monitoring probes and on-line analyzers
are intended to improve the identification and characterization of flaring
events. The development of flare minimization practices, including practices
for Equipment Clearing Scheduling and reducing flare gas generation and/or
Flare Gas Recovery System Cushion Management, are intended to reduce
loads on the flare system.

ExxonMobil shall implement the Fuels North Flare System Monitoring/
Minimization project on or before the following dates:

|  | Project Start (no later than) | Project Completion |
|---|---|---|
| Monitoring Instrumentation | September 30, 2013 | December 31, 2014 |
| Flare Minimization Practices | March 1, 2012 | September 30, 2012 |

c. BOP/BOPX Recovery Unit Simulators. Develop, implement and use high-
fidelity process training simulators for the Recovery Unit Trains at the
Baytown Olefins Plant ("BOP") and Baytown Olefins Plant Expansion ("BOPX").
The recovery unit simulators enable realistic instruction and practice for
specific scenarios such as start-ups, shutdowns and loss-of-feed, and are
intended to improve operator training and competency, resulting in reduced
frequency and severity of emissions events.

ExxonMobil shall implement the BOP/BOPX Recovery Unit Simulators
project on or before the following dates:

|  | Start Development of Simulator | Completion and Testing of Simulator |
|---|---|---|
| BOP Recovery Unit Simulator | June 30, 2012 | December 31, 2014 |
| BOPX Recovery Unit Simulator | June 30, 2012 | December 31, 2013 |

d. Enhanced Fugitive Emissions Monitoring. Establish a program of enhanced
fugitive component monitoring and repair at the Baytown Refinery, Chemical
Plant and Olefins Plant. The program will use infrared imaging technology to
locate potential VOC and HRVOC leaks. Confirmed leaks will be subject to the
repair requirements of applicable federal and state regulations. Surveys will

EOMCS00066901

generally be conducted in months when applicable federal and state monitoring is not required and during process unit startups. Surveys will be equally spaced between monitoring events required by applicable federal and state regulations to the extent practicable. Surveys will be performed by personnel who are certified in infrared imager operation. Imagers will receive maintenance according to manufacturer's recommendations or equivalent.

ExxonMobil shall start the implementation of the Enhanced Fugitive Emissions Monitoring Project at the Baytown Complex no later than 90 days after the effective date of this Agreed Order. The Enhanced Fugitive Emissions Monitoring Project shall be complete and in use no later than 12 months after the effective date of this Agreed Order.

13. Semi-Annual Reports. By August 31 (for the report covering January 1 - June 30) and by March 31 of each year or by the date on which the Annual Emissions Inventory is due, whichever is later. (for the report covering July 1 - December 31), ExxonMobil will submit to the Executive Director Semi-Annual Reports for the Baytown Complex regarding compliance with this Agreed Order.

a. With regard to any of the Ordered Environmental Improvement Projects identified in Paragraph 12 of this Agreed Order for which work was performed in the prior semiannual period, each Semi-Annual Report will identify:

i. The name of the Ordered Environmental Improvement Project;

ii. The date on which ExxonMobil started work on the Ordered Environmental Improvement Project;

iii. The date on which ExxonMobil completed work on the Ordered Environmental Improvement Project, or the estimated date of completion, if work on the Ordered Environmental Improvement Project was not complete by the end of the semiannual period; and

b. With regard to the stipulated penalties established in Paragraph 3 of this Agreed Order, each Semi-Annual Report will:

i. Provide a copy of the payment;

ii. State the total amount of the stipulated penalties due for the prior semiannual period;

iii. Identify, for each emissions event for which stipulated penalties are due, the following:

1. The STEERS report number for the event; and
2. The amount of the stipulated penalty.

c. ExxonMobil may combine the Semi-Annual report for July - December with the Annual Report required under this Agreed Order.

14. Annual Reports. Starting in 2013, ExxonMobil will submit to the Executive Director Annual Reports for the Baytown Complex regarding compliance with this Agreed Order. The Annual Report shall be due by March 31 of each year or by the date on which the Annual Emissions Inventory is due, whichever is later.

    a. With respect to the emissions reductions required by Paragraph 10 of this Agreed Order, the Annual Reports will:

        i. Identify the VOC, HRVOC, CO, $SO_2$ and $NO_X$ emissions reductions achieved over the prior calendar year; and

        ii. Identify the cumulative VOC, HRVOC, CO, $SO_2$ and $NO_X$ emissions reductions achieved under this Agreed Order.

    d. The Annual Reports will:

        i. provide actual emissions data for the Baytown Complex for the prior calendar year based on Emission Inventories submitted in accordance with 30 TEX. ADMIN. CODE § 101.10, with an explanation of how recent air emissions performance continues the overall emissions reduction trends at the Baytown Complex; and

        ii. include a summary of activities at the Baytown Complex related to continuing efforts to improve environmental performance.

15. The reports required by Paragraphs 13 and 14 above shall be submitted to:

        Order Compliance Team
        Enforcement Division, MC 149A
        Texas Commission on Environmental Quality
        P.O. Box 13087
        Austin, Texas  78711-3087

    with a copy to:

        Air Section, Manager
        Houston Regional Office
        Texas Commission on Environmental Quality
        5425 Polk Avenue, Suite H
        Houston, Texas 77023-1486

16. The reporting requirements of this Agreed Order do not relieve ExxonMobil of any reporting obligations to the TCEQ, including 30 TEX. ADMIN. CODE §§ 101.201 and 101.211. All emissions events subject to a stipulated penalty under this Agreed Order must be reported under 30 TEX. ADMIN. CODE § 122.145.

17. If the Executive Director identifies a violation for which a stipulated penalty has not been paid upon review of a report submitted under this Agreed Order, the Executive Director

EOMCS00066903

**Exxon Mobil Corporation**
**TCEQ Docket No. 2011-2336-AIR-E**
**Page 12**

will notify ExxonMobil of the violation and stipulated penalty due in writing within 45 days of receipt of the report. ExxonMobil will submit payment in accordance with Paragraph 7 of this section no later than 60 days after receipt of notification from the Executive Director under this paragraph.

18. The provisions of this Agreed Order shall apply to and be binding upon ExxonMobil, its agents and assigns. ExxonMobil is ordered to give notice of this Agreed Order to personnel who maintain day-to-day control over the Baytown Complex operations referenced in this Agreed Order.

19. If ExxonMobil fails to comply with any of the Ordering Provisions in this Agreed Order within the prescribed schedules, and that failure is caused solely by an act of God, war, strike, riot, or other catastrophe, ExxonMobil's failure is not a violation of this Agreed Order. ExxonMobil shall have the burden of establishing to the Executive Director's satisfaction that such an event has occurred. ExxonMobil shall notify the Executive Director within 15 days after ExxonMobil becomes aware of a delaying event and shall take all reasonable measures to mitigate and minimize any delay.

20. The Executive Director may grant an extension of any deadline in this Agreed Order or in any report or other document submitted pursuant to this Agreed Order, upon a written and substantiated showing of good cause. All requests for extensions by ExxonMobil shall be made in writing to the Executive Director. Extensions are not effective until ExxonMobil receives written approval from the Executive Director. The determination of what constitutes good cause rests solely with the Executive Director.

21. Notwithstanding any other provisions of this Agreed Order, the TCEQ reserves the right to fully pursue Respondent for any and all criminal liability, even if such liability is related to a matter otherwise covered by this Agreed Order.

22. This agreement may be executed in multiple counterparts, which together shall constitute a single original instrument. Any executed signature page to this agreement may be transmitted by facsimile to the other parties, which shall constitute an original signature for all purposes.

23. This Agreed Order shall terminate five years from its effective date, subject to the Renegotiation and Early Termination provisions contained in Ordering Provision No. 11, above. Under 30 Tex. Admin. Code § 70.10(b), the effective date is the date of hand-delivery of this Agreed Order to ExxonMobil, or three days after the date on which the Commission mails notice of this Agreed Order to ExxonMobil, whichever is earlier. The Chief Clerk shall provide a copy of this Agreed Order to each of the parties.

Exxon Mobil Corporation
TCEQ Docket No. 2011-2336-AIR-E
Page 13

## SIGNATURE PAGE

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY**

For the Commission

For the Executive Director          Date   1/23/2012

I, the undersigned, have read and understand the attached Agreed Order. I represent that I am authorized to agree to the attached Agreed Order on behalf of Exxon Mobil Corporation, and I do agree to the terms and conditions specified therein. I further acknowledge that the TCEQ, in accepting payment for the penalty amount, is materially relying on such representation.

I also understand that failure to comply with the Ordering Provisions in this order and/or failure to timely pay the penalty amount may result in:

- A negative impact on compliance history;
- Greater scrutiny of any permit applications;
- Referral of this case to the Attorney General's office for contempt, injunctive relief, additional penalties, and/or attorney fees, or to a collection agency;
- Increased penalties in any future enforcement actions;
- Automatic referral to the Attorney General's Office of any future enforcement actions; and
- TCEQ seeking other relief as authorized by law.

In addition, I understand that any falsification of any compliance documents may result in criminal prosecution.

Signature                              Date   DEC 28, 2011

Name (Printed or typed)  STEVEN R. COPE      Title   REFINERY MANAGER
Authorized representative of Exxon Mobil Corporation