No. 17-20545

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ENVIRONMENT TEXAS CITIZEN LOBBY, INC.;
SIERRA CLUB
*Plaintiffs-Appellees*,

v.

EXXON MOBIL CORP.; EXXONMOBIL CHEMICAL CO.;
EXXONMOBIL REFINING & SUPPLY CO.
*Defendants-Appellants*.

Appeal from the U.S. District Court for the
Southern District of Texas
Civil Action No. H-10-4969 (Hon. David Hittner)

**BRIEF OF THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF APPELLEES AND
OPPOSING REHEARING EN BANC**

Of counsel:

MARK KATAOKA
ELIZABETH HUSTON
 *Attorneys*
Office of General Counsel
U.S. Environmental
 Protection Agency

TODD KIM
 *Assistant Attorney General*
DANIEL HALAINEN
CHRISTOPHER ANDERSON
 *Attorneys*
Environment and Natural
 Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, DC 20044
(202) 353-1834
christopher.anderson3@usdoj.gov

# TABLE OF CONTENTS

Interest of the United States ................................................................... 1

Background .............................................................................................. 1

Procedural History ................................................................................... 2

Argument .................................................................................................. 4

   I.   The standing analysis in CAA citizen suits is forward-looking. ................................................................................ 4

   II.  The panel's holding on traceability is consistent with Article III and limited to this case. ........................................... 6

   III. This Court's decisions on citizen suit standing accord with Supreme Court precedent. ............................................... 9

   IV. The petition presents no "question of exceptional importance." ............................................................................... 11

   V.  Exxon's arguments do not meet the threshold for en banc review. ............................................................................... 12

Conclusion............................................................................................... 13

# TABLE OF AUTHORITIES

## Cases

*Cent. & Sw. Servs., Inc. v. EPA*,
  220 F.3d 683–01 (5th Cir. 2000) ....................................................... 10

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ............................................................................ 5, 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .............................................................................. 11

*Ctr. for Biological Diversity v. EPA*,
  937 F.3d 533 (5th Cir. 2019) ............................................................. 7, 9

*Glynn Envt'l Coal., Inc. v. Sea Island Acquisition, LLC*,
  26 F.4th 1235 (11th Cir. 2022) ....................................................... 10, 11

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  47 F.4th 408 (5th Cir. 2022) ..................................................... 3, 4, 5, 6

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  968 F.3d 357 (5th Cir. 2020) ................................................ 3, 5, 6, 8, 11

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  824 F.3d 507 (5th Cir. 2016) ................................................................. 2

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  524 F. Supp. 3d 547 (S.D. Tex. 2021) ................................................... 3

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  Civil Action No. H-10-4969 (S.D. Tex. Apr. 26, 2017) (Slip Op.) ........... 3

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
  66 F. Supp. 3d 875 (S.D. Tex. 2014) ..................................................... 2

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
  204 F.3d 149 (4th Cir. 2000) (en banc) .......................................... 8, 10

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................... 2, 4, 5, 7, 9

<sup></sup>

*Nat. Res. Def. Council, Inc. v. Sw. Marine, Inc.*,
   236 F.3d 985 (9th Cir. 2000) ............................................................. 10

*Sierra Club v. Cedar Point Oil Co.*,
   73 F.3d 546 (5th Cir. 1996) ....................................................... 5, 6, 7, 8

*Sierra Club v. Morton*,
   405 U.S. 727 (1972).............................................................................. 9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................ 12

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1996) ................................................................................ 4

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ........................................................................ 10

*Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*,
   21 F.4th 1229 (10th Cir. 2022) ................................................... 8, 10, 11

**Statutes**

<u>Clean Air Act</u>

Section 113, 42 U.S.C. § 7413 ................................................................ 2, 7

Section 304, 42 U.S.C. § 7604 ........................................................... 1, 2, 12

**Rules**

5th Circuit Rule 35.1 ................................................................................ 13

5th Circuit Internal Operating Procedure 35 ............................................. 9

**Other Authorities**

EPA, Current Nonattainment Counties for All Criteria Pollutants,
   https://www3.epa.gov/airquality/greenbook/ancl.html ........................ 2

## INTEREST OF THE UNITED STATES

The United States submits this brief as amicus curiae pursuant to the Court's invitation of October 18, 2022. The United States has a substantial interest in the proper application of Article III standing analysis in citizen suits brought under section 304 of the Clean Air Act ("CAA"), 42 U.S.C. § 7604. As the primary enforcer of the CAA, in cooperation with individual states, the U.S. Environmental Protection Agency has an interest in ensuring that unduly restrictive applications of standing requirements do not hinder enforcement of the Act. The United States is also a defendant in citizen suits alleging unlawful emissions from federal facilities and thus has an interest in rigorous application of standing requirements.

## BACKGROUND

Section 304 of the CAA authorizes "any person" to bring suit "against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of . . . an emission standard or limitation." 42 U.S.C. § 7604(a)(1). An "emission standard or limitation" includes "any . . . standard, limitation, or schedule established under any [CAA] permit." *Id.* § 7604(f). Upon finding a defendant liable, district courts are authorized to "enforce such an emission standard or

limitation . . . and to apply any appropriate civil penalties." *Id.* § 7604(a). When determining the penalty amount, district courts must apply the factors enumerated in section 113(e)(1) of the Act. *Id.* § 7413(e)(1). Penalties are paid directly into the Treasury, not to the citizen-plaintiffs. *Id.* § 7604(g). Because they do not compensate citizen-plaintiffs for past injuries, civil penalties assessed in CAA citizen suits are a prospective form of relief that, like an injunction, is awarded to compel future compliance with the Act. *See Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 186 (2000).

## PROCEDURAL HISTORY

Plaintiffs brought this suit in the Southern District of Texas on December 13, 2010, to address ongoing permit violations at Exxon's Baytown, Texas facility. Baytown is in Harris County, which EPA has designated as a severe air quality nonattainment area for ozone. EPA, Current Nonattainment Counties for All Criteria Pollutants, https://www3.epa.gov/airquality/greenbook/ancl.html.

The district court conducted a bench trial in February 2014. The court initially held Exxon liable for only a few violations and declined to award any relief. 66 F. Supp. 3d 875, 903–14. A panel of this Court reversed. 824 F.3d 507, 533–34. On remand, the district court found Exxon liable for

16,386 days of violations, Slip Op. 92, and imposed a $19.95 million penalty, *id.* at 96.

Exxon appealed, challenging plaintiffs' Article III standing. A divided panel affirmed in part and reversed in part. The majority accepted Exxon's argument that plaintiffs needed to establish standing for each violation for which a penalty was sought. 968 F.3d 357, 365–66. The panel then held that plaintiffs had established injury and redressability, but remanded for further analysis of traceability. *Id.* at 367–72. Judge Oldham dissented in part, arguing that plaintiffs needed to prove Exxon's past violations were a "but-for" cause of their injuries to establish traceability. *Id.* at 377–78.

On the second remand, the district court held that plaintiffs established traceability for a total of 3,651 days of past violations. 524 F. Supp. 3d 547, 565. Because plaintiffs had not established standing for each of Exxon's days of past violations, the district court reduced the total penalty to $14.25 million. *Id.* at 577.

The same divided panel affirmed. The majority first rejected Exxon's challenges to its previous opinion as barred by the law-of-the-case doctrine. 47 F.4th 408, 415–18. The majority then determined the district court correctly applied its earlier guidance on standing. *Id.* at 419. Judge Oldham again dissented, arguing the majority erred by "defin[ing] the injury

3

generically and create[ing] *per se* rules for when the district court must irrebuttably presume that the generic injury is traceable to a specific violation." *Id.* at 424.

Exxon petitioned for rehearing en banc on two issues, both related to standing, Pet. 1, but noted that if rehearing were granted it would also raise "an important issue" regarding the penalty calculation, Pet. 4 n.1. Because Exxon did not expound on that issue in its petition, the United States does not address it.

## ARGUMENT

### I.    The standing analysis in CAA citizen suits is forward-looking.

In *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998), the Supreme Court held that when a statute, such as the CAA, makes penalties payable to the Treasury, citizen-plaintiffs lack standing to seek penalties for past violations because those penalties do not provide the plaintiffs any redress. *Id.* at 106–07. The Court clarified in *Laidlaw*, however, that citizen-plaintiffs may seek civil penalties to redress ongoing or threatened future harm because penalties deter future unlawful conduct. 528 U.S. at 185–88.

The standing analysis in a CAA citizen suit must therefore focus on the citizen-plaintiffs' ongoing or threatened future injuries, not past harms. And to establish traceability, citizen-plaintiffs must show their injuries are traceable to the defendant's ongoing unlawful conduct, not past violations. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Finally, citizen-plaintiffs must show that the defendant's conduct may be deterred through the imposition of penalties. *Laidlaw*, 528 U.S. at 186–87.

Both the panel majority and the dissent failed to recognize that the standing analysis must be forward-looking. That oversight led both opinions to frame the standing inquiry in terms of Exxon's past violations, rather than its ongoing conduct. 968 F.3d at 365–66 (majority); 47 F.4th at 424 (dissent). Both opinions erred insofar as they held citizen-plaintiffs need to establish standing for each day of past violations.

Despite the error in framing, however, the majority correctly recognized that plaintiffs' harms must be "'ongoing at the time of the complaint'" for "civil penalties [to] redress injuries caused by those violations." 968 F.3d at 371 (quoting *Laidlaw*, 528 U.S. at 188). The majority also applied the traceability framework for ongoing permit violations established by this Court in *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546 (5th Cir. 1996). The majority was therefore able to conclude,

5

correctly, that the imposition of penalties would deter Exxon from committing similar violations in the future. 968 F.3d at 372.

The majority's inconsistency between framing and application underlies the disagreement between it and the dissent. As the dissent correctly observed, the *Cedar Point* framework is inappropriate for addressing traceability for past violations because it does not require a connection between a specific past violation and a specific past injury. 968 F.3d at 375. The dissent reached the wrong conclusion, however, because it would have required a showing of causation appropriate for past injuries, even though CAA citizen suits afford only prospective relief. 47 F.4th at 425.

## II. The panel's holding on traceability is consistent with Article III and limited to this case.

Relying on *Cedar Point*, the panel held that plaintiffs needed to make two showings on traceability: First, they had to establish that Exxon's conduct "'causes or contributes to the kinds of injuries' they allege." 968 F.3d at 369–70 (quoting *Cedar Point*, 73 F.3d at 557). Second, they needed to prove "a 'specific geographic or other causative nexus' such that the violation could have affected their members." *Id.* (quoting *Cedar Point*, 73 F.3d at 558 n.24).

Exxon attacks the first prong of that holding because it only required plaintiffs to demonstrate that Exxon's conduct contributes to the "kinds of injuries alleged," rather than tying their members' injuries to specific past violations. Pet. 7. That argument orients the traceability analysis in the wrong direction, however. Because the CAA only provides prospective remedies, the traceability analysis must ask whether plaintiffs' ongoing injuries are traceable to the defendant's ongoing—not past—violations. *See Cedar Point*, 73 F.3d at 557; *see also Lyons*, 461 U.S. at 105. And because CAA citizen suit penalties deter future conduct, citizen-plaintiffs can only establish traceability for *kinds* of ongoing or threatened harm (rather than specific injuries) because the harms to be redressed have not yet occurred. *See Laidlaw*, 528 U.S. at 184. If that linkage is established, the number of days of past violations is relevant, not to Article III standing, but to the "appropriate" penalty amount. 42 U.S.C. § 7413(e)(1).

Exxon also challenges the second prong of the panel's analysis, arguing the panel replaced this Court's fact-intensive approach to traceability, *e.g.*, *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 545 (5th Cir. 2019), with "per se rules" for establishing geographic nexus. Pet. 6. But that argument overlooks the fact-bound nature of the panel's opinion: Rather than establishing "per se" rules for traceability, the panel's analysis

7

was limited to assessing the inferences that could be permissibly drawn from *this* record.

The panel addressed geographic nexus separately for three categories of violations. For violations related to flares, smoke, and haze, it held that a nexus was established because the record shows plaintiffs' members personally observe those phenomena emanating from Exxon's facility. 968 F.3d at 371. For small-quantity violations, the panel held that the record was inconclusive and remanded for further findings.[1] *Id.* at 370.

For larger-quantity violations, such as those Exxon was required to report to state regulators, the panel held that a geographic nexus could be inferred from the fact of the violation, given the proximity of plaintiffs' members to the facility. *Id.* at 370–71. There was nothing unprecedented about that holding. *Cedar Point* allowed a similar inference of traceability based on proximity, 73 F.3d at 558, as have other courts, *e.g.*, *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1245 (10th Cir. 2021); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp*, 204 F.3d 149, 162 (4th Cir. 2000) (en banc). Even Exxon concedes the inference is reasonable in some cases. Pet. 8. Whether such an

---

[1] On remand, the district court found plaintiffs failed to establish a geographic nexus for any small-quantity violations. Plaintiffs did not appeal those findings.

inference is appropriate will always turn on the facts of the individual case, *see Ctr. for Biological Diversity*, 937 F.3d at 539 (holding the inference inapplicable), and the panel did not suggest otherwise. Its holding was therefore limited to this record and did not create per se rules for future cases. Although reasonable jurists may differ as to whether the record supports the inference, en banc review is inappropriate for such run-of-the-mill applications of law to fact, lest disappointed litigants be encouraged to seek rehearing routinely. *See* 5th Cir. I.O.P. 35.

### III. This Court's decisions on citizen suit standing accord with Supreme Court precedent.

There is no conflict between this Court's decisions on citizen suit standing and Supreme Court precedent. This Court's case law is also consistent with the law in other circuits.

The leading Supreme Court case on citizen suit standing is *Laidlaw*, which held that citizen-plaintiffs demonstrate standing by showing "they use the affected area and are persons 'for whom the aesthetic and recreational values of the area *will be* lessened' by the challenged activity." 528 U.S. at 183 (emphasis supplied) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)). Although it predates *Laidlaw*, *Cedar Point* is fully consistent with that decision, and this Court has cited the cases together,

9

*e.g.*, *Cent. & Sw. Servs., Inc. v. EPA*, 220 F.3d 683, 700 (5th Cir. 2000). The Fourth, Ninth, and Tenth Circuits have also cited *Cedar Point* approvingly in cases relying on *Laidlaw*. *Gaston Copper*, 204 F.3d at 159–60; *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995 (9th Cir. 2000); *Diesel Power Gear*, 21 F.4th at 1244.

    Echoing Judge Oldham's dissent, Exxon argues that *Laidlaw* and *Cedar Point* have been undermined by *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), but that is incorrect. *TransUnion* addressed whether certain violations of the Fair Credit Reporting Act constitute injury-in-fact in suits for "retrospective damages" and held that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Id.* at 2210–2211. The Court expressly distinguished cases seeking forward-looking relief, for which a "material risk of future harm" is sufficient. *Id.* at 2210. Because the *TransUnion* Court held the plaintiffs failed to show injury, it did not address traceability. *See id.* at 2214. *TransUnion* thus has little bearing on this litigation and casts no doubt on *Laidlaw* or *Cedar Point*.

    No court has adopted Exxon's view of *TransUnion*. Since *TransUnion*, two circuits have addressed standing in environmental citizen suits, and both courts relied on *Laidlaw* without suggesting it had been

10

limited by *TransUnion*. *Diesel Power Gear*, 21 F.4th at 1241; *Glynn Envt'l Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1241 (11th Cir. 2022). Both courts were aware of *TransUnion*, however, and cited it for other purposes. *Diesel Power Gear*, 21 F.4th at 1243; *Glynn Envt'l Coal.*, 26 F.4th at 1243.

More relevant is *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), in which the Court held that the plaintiffs were not injured by possible government surveillance because it was entirely speculative whether the feared surveillance would occur. *Id.* at 414. The Court contrasted the concrete injuries alleged in *Laidlaw* on the grounds that Laidlaw's violations were ongoing, and the plaintiffs' harms were therefore not speculative. *Id.* at 419. Because Exxon's violations are also ongoing, 968 F.3d at 372, *Clapper* confirms that the harms threatened by those violations suffice for Article III standing.

## IV. The petition presents no "question of exceptional importance."

The panel's opinion is a fact-bound application of long-settled law. It did not create substantial new precedent. There is therefore no reason to believe it will "open[] the floodgates" of citizen suit litigation. Pet. iv.

11

Nor, contrary to Exxon's arguments, does the panel's decision raise separation-of-powers concerns. EPA, the agency with primary responsibility for enforcing the CAA, recognizes that citizen suits are a beneficial supplement to agency enforcement. The CAA also contains safeguards to ensure EPA and state agencies remain in control of enforcement policy, such as prohibiting suits when agencies are pursuing enforcement actions and allowing EPA to intervene as of right when suits are filed. *See* 42 U.S.C. § 7604. Finally, existing standing doctrine confines the scope of CAA citizen suits to the abatement of ongoing violations and restricts the universe of plaintiffs to those personally harmed by the unlawful conduct. That limited—but important—role for citizen suits in protecting private interests fully aligns with traditional understandings of the separation of powers. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 347 (2016) (Thomas, J., concurring).

V. **Exxon's arguments do not meet the threshold for en banc review.**

The panel's opinion was imperfect, but its analysis shows that plaintiffs established standing with respect to Exxon's ongoing violations. Thus, rehearing is unlikely to result in a materially different outcome, and the petition does not advance any argument that a correct analysis of

12

standing would alter the district court's penalty assessment. Nor has Exxon shown any conflict between this Court's precedents and Article III that requires correction en banc.

Considerations of judicial economy also weigh against rehearing. En banc review "is a serious call on limited judicial resources." 5th Cir. R. 35.1. Standing analysis is fact-intensive. If rehearing were granted, the full Court would need to grapple with an extensive record, spanning over 75,000 pages. Resolution of this case—which has been vigorously litigated for over twelve years—would be further delayed to the cost of all.

## CONCLUSION

The petition for rehearing en banc should be denied.

Respectfully submitted,

Of counsel:

MARK KATAOKA
ELIZABETH HUSTON
 *Attorneys*
Office of General Counsel
U.S. Environmental
 Protection Agency

January 17, 2023
DJ 90-12-16434

 s/ Christopher Anderson
TODD KIM
 *Assistant Attorney General*
DANIEL HALAINEN
CHRISTOPHER ANDERSON
 *Attorneys*
Environment and Natural
 Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, DC 20044
(202) 353-1834
christopher.anderson3@usdoj.gov

13

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2,600 words, excluding the parts exempted under Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), as required by Federal Rule of Appellate Procedure 29(b)(4), because it has been prepared in a proportionally spaced typeface (14-point Georgia) using Microsoft Word.

                                             s/ Christopher Anderson
                                             CHRISTOPHER ANDERSON

                                             Counsel for the United States
                                               as amicus curiae

# CERTIFICATE OF SERVICE

I, Christopher Anderson, certify that on January 17, 2023, I electronically filed the foregoing brief of the United States as amicus curiae using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

 s/ Christopher Anderson
CHRISTOPHER ANDERSON

Counsel for the United States
 as amicus curiae